**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOROOF TRADING DEVELOPMENT COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>GE FUEL CELL SYSTEMS, LLC<br>GE MICROGEN, INC., and<br>PLUG POWER INC.<br><br>Defendants. | No. 10 Civ. 1391 (LTS) (JCF) |

**LOCAL RULE 56.1**
**STATEMENT OF MATERIAL FACTS**

**1.** This litigation originally commenced on July 1, 2008, when Soroof initiated AAA arbitration proceedings against GE Fuel Cell. GE Fuel Cell filed a Motion to Dismiss and asserted, among other things, that GE Fuel Cell was a dissolved entity, and, consequently, it claimed that Soroof could maintain no actions against it.

**2.** Soroof opposed GE Fuel Cell's Motion to dismiss, arguing, *inter alia*, that GE Fuel Cell, as a Delaware limited liability company, was required by the Delaware Code to "make such provision as will be reasonably likely to be sufficient to provide compensation" for claims that are either known or reasonably should have been known to GE Fuel Cell. See DEL. CODE ANN. Tit. 6, § 18-804(b)(3). GEFCS made no such provisions and failed to notify Soroof of its dissolution. See Complaint at ¶ ¶ 27-29.

**3.** The Arbitration Panel, chaired by the Hon. Kathleen Roberts, a retired federal judge from this Honorable Court, addressing the same arguments now before this Court, denied GE Fuel Cell's Motion to Dismiss without prejudice to GE Fuel Cell filing a motion for summary judgment after discovery. See Ex. A, Prehearing Order No. 2.

**4.** In or about February 1999, GE, acting through GE Microgen, and Plug Power established GE Fuel Cell; GE Microgen owned sixty percent and and Plug Power owned forty percent of GE Fuel Cell. See Ex. B, Plug Power 8-K at PP1000149.

**5.** GE Fuel Cell was established to act as the worldwide distributor of Plug Power's Proton Exchange Membrane Fuel Cell (the "Product"). See Ex. C, Scovello Dep. Tr. at 33:4-13.

**6.** Both GE Fuel Cell and its immediate parent GE Microgen were undercapitalized. The funding for GE Fuel Cell came directly from GE itself. See Ex. D, Scovello Dep. Tr. at 44:23-25.

**7.** Likewise, GE Fuel Cell did not have any employees. See Ex. C, Scovello Dep. Tr. at 32:14-33:3; see Ex. D, Conway Dep. Tr. at 20:23-21:3. Instead, all of the individuals tasked to the GE Fuel Cell project were actually employed by GE. Ex. C, Scovello Dep. Tr. at 32:22-25; Ex. D, Conway Dep. Tr. at 6:25-7:3 and 20:23-21:3.

**8.** Frank Scovello, a GE employee, served as the president of both GE Microgen and GE Fuel Cell, although he was really employed by GE. See Ex. F, Termination Agreement at GE 000061; see also Ex. D, Scovello Dep Tr. at 12:18-20; 24:4-5; and 32:22-33:3.

**9.** Richard Stewart, a GE employee, served as director of GE Microgen, on the Management Committee of GE Fuel Cell and on the Board of Plug Power. See Ex. E; Action by Written Consent of Directors; Plug Power 8-K at PP1000151.

**10.** The Management Committee of GE Fuel Cell was composed entirely of GE and Plug Power representatives. See Ex. E, Action by Written Consent of Members of GE Fuel Cell Systems, LLC; see also Ex. C, Scovello Dep. Tr. at 33:1-2. .

**11.** GE Fuel Cell did not maintain its own office. Instead, the only offices maintained were marked by a GE Microgen sign at Plug Power's headquarters with no indication of any GE Fuel Cell presence. See Ex. D, Conway Dep. Tr. at 18:24-19:4, 22:13-22.

**12.** GE Fuel Cell was never capitalized or owned anything other than nominally-valued assets. GE agreed to fund the initial expenses of GE Fuel Cell Systems, LLC. Ex. C, Scovello Dep. Tr. at 44:23-25. At the time of GE Fuel Cell's dissolution, it had "no cash on hand," "was not really a going concern," and its only assets were "a server," "a telephone switch," and a "small amount of furniture." Id. at 48:22-24, 49:1-9.

**13.** On June 6, 2000 GE Fuel Cell entered into the "Distributor Agreement Between GE Fuel Cell Systems, LLC, and Soroof Trading Development Company Ltd." on or about June 6, 2000. See Ex. G, Agreement.

**14.** Specifically, GE warranted in the Agreement that "[i]t has full authority and capability to enter into and perform its obligations under this Agreement." See Ex. G, Agreement at ¶ 10.1.2.

**15.** GE further warranted that it had "full legal right, power and authority to enter into and perform this Agreement." See Ex. G, Agreement at ¶ 10.1.4.

**16.** Pursuant to the Agreement, Soroof paid GE a "distributor fee" of $1 million. See Ex. G, Agreement at ¶ 6.4.

**17.** The $1 million paid by Soroof was used to pay the salaries of GE Energy employees working at GE Fuel Cell. See Ex. C, Scovello Dep. Tr. at 121:15-20.

**18.** Soroof hired staff, outfitted offices and in total incurred additional costs of over $1 million in expenditures, which were required by GE, as part of its efforts to be prepared to distribute Product. See Ex. H, Jackson Decl. at ¶ 6.

**19.** Soroof undertook all of these expenses under the belief that GE Fuel Cell actually had saleable Product to deliver. See Ex. H, Jackson Decl. at ¶ 7.

**20.** Under the Agreement, GE Fuel Cell maintained a continuing obligation to make available for Soroof "a sufficient quantity" of Product for Soroof to distribute throughout Saudi Arabia, and to use "reasonable efforts to supply" this Product. See Ex. G, Agreement at ¶ ¶ 5.1 and 5.2.

**21.** In the event that there was any change in the ability to deliver Product, GE Fuel Cell had a continuing obligation "to share promptly relevant information, including but not limited to product performance, failure and liability issues...." See Ex. G, Agreement at ¶ 7.4.

**22.** The first scheduled delivery of Product was to occur in 2001. See Ex. G, Agreement at ¶ 6.6.

**23.** GE assured Soroof that Product would be ready for distribution by the middle of 2001 and encouraged Soroof to continue expanding its infrastructure in preparation for eventual delivery and distribution. See Ex. H, Jackson Decl. at ¶ 8.

**24.** GE missed the 2001 deadline and every subsequent deadline regarding when Product would be available for delivery. See Ex. H, Jackson Decl. at ¶ 9.

**25.** In light of its continued failure to meet its delivery deadline, GE Fuel Cell agreed to expand Soroof's distribution territory to include Lebanon. See Ex. H, Jackson Decl. at ¶ 9.

**26.** In light of GE Fuel Cell's continued assurances, Soroof entered into negotiations with third-parties whereby Soroof would deliver potentially thousands of units of Product throughout Saudi Arabia and Lebanon. See Ex. H, Jackson Decl. at ¶ 11.

**27.** The fuel cell contracted for was supposed to produce power continuously, twenty-four hours a day, seven days a week. See Ex. C, Scovello Dep. Tr. at 38:8-21. Throughout the term of the Agreement, Plug Power, which was overseeing the development of the Product could never produce a fuel cell to meet the specifications or the design functions required. Id. at 101:21-25. The best Plug Power could develop was a back-up generator. Id. at 74:22-75:6.

**28.** Defendants knew as early as 2001 that Plug Power was unlikely to ever successfully develop commercially marketable Product. See Exhibit C, Scovello Dep. Tr. at 102:11-19. Mr. Scovello explained that "it became clearer and clearer to us the challenge that was involved and that the product would never be developed." Id. at 103:1-3

**29.** In or about early 2005, Defendants finally conceded that problems with the Product could not be resolved and that they would not be able to make delivery. See Exhibit H; Jackson Decl. at ¶ 12. As Mr. Scovello testified, "we had no product to give them as GE." See Ex. C, Scovello Dep. Tr. at 91:5-6 (emphasis added).

**30.** The Agreement by its terms was to expire on December 31, 2005. See Ex. G, Agreement at ¶ 2.1.

**31.** Prior to dissolving GE Fuel Cell, Defendants were aware that Soroof had potential legal claims against Defendants. See Exhibit I, January 5, 2006 E-mail from A. Bucknam, Plug Power's Vice President of Business Development, to Mark Sperry, Plug Power's former Chief Marketing Officer; Ex. D, Conway Dep. Tr. at 34:14-19 and 13:23-25; Ex. J, January 26, 2006 E-mail from R. Menon, a Plug Power employee charged with sales and development, to Frank Scovello; Ex. D, Conway Dep. Tr. 45:11-13; Ex. K, February 28, 2006 E-mail from Greg Silvestri, former Chief Operating Officer of Plug Power, to Sergey Polikarpov; Ex. D., Conway Dep. Tr. at 61:14-15; see also Exhibit C, Scovello Dep. Tr. at 37:2-38:7; 90:19-91:21; and120:16-121:1.

**32.** It was GE that decided to terminate the venture and dissolve GE Fuel Cell. See Ex. C, Scovello Dep. Tr. at 115:12-116:1 GE sought a broad indemnity from Plug Power as part of the dissolution of GE Fuel Cell because it was concerned about legal claims by Soroof. See Ex. C, Scovello Dep. Tr. at 125:21-126:9; see also Ex. D, Conway Dep. Tr. at 66:11-68:22 and 71:17-72:25.

**33.** Plug Power refused to grant GE an unlimited indemnity. See Ex. K, February 28, 2006 G. Silvestri E-mail; see also Ex. C, Scovello Dep. Tr. at 125:21-126:9; Ex. D, Conway Dep. Tr. at 71:17-72:25.

**34.** As part of the GE Fuel Cell termination agreement, Plug Power agreed to indemnify GE Microgen from, "any losses, liabilities, damages, causes of action, claims, costs and expenses (including reasonable attorneys fees), related to or associated with the failure of [Plug Power] to obtain adequate releases from Soroof and Flint, respectively; provided, however, that such indemnification shall not exceed...$1,000,000 as to Soroof." See Ex. F, Termination Agreement; Ex. B, Plug Power 8-K at GE 000060.

**35.** In its 8-K filed in 2006 Plug Power stated that "[Plug Power] and GE are terminating their joint venture, GE Fuel Cell Systems ("GEFCS"), and the associated distributor and other agreements. [Plug Power] and GE agreed that GEFCS was not an effective entity for marketing [Plug Power's] products" See Ex. B, Plug Power 8-K at PP1000149.

**36.** The Certificate of Cancellation dissolving GE Fuel Cell became effective on December 29, 2006. See Ex. M, Filed Certificate of Cancellation of GE Fuel Cell.

**37.** Defendants never informed Soroof about the dissolution of GE Fuel Cell. See Ex. C, Scovello Dep. Tr. at 92:22-25; Ex. D, Conway Dep. Tr. at 27:7-10.

**38.** It was not until 2007 that James Jackson, president of Soroof, discovered that GE Fuel Cell had been dissolved through a chance reading of a partial SEC filing. See Ex. H, Jackson Decl. at ¶ 14.

Dated: February 28, 2011

Respectfully submitted,

KALBIAN HAGERTY LLP

By: /s/ Haig V. Kalbian

Haig V. Kalbian (*pro hac vice*)
Mary M. Baker (*pro hac vice*)
Aaron W. Knights (*pro hac vice*)
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
T: (202) 223-5600
F. (202) 223-6625
hkalbian@kalbianhagerty.com
mmb@kalbianhagerty.com
aknights@kalbianhagerty.com

James R. Lynch (JL-2778)
Jason Kaufman
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York, New York 10018
T: (212) 302-2400
F: (212) 302-2210
lynch@lawlynch.com
kaufman@lawlynch.com

*Counsel for Plaintiff Soroof Trading Development Company, Ltd.*