UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SOROOF TRADING DEVELOPMENT COMPANY, LTD.,

Plaintiff,

v.

GE FUEL CELL SYSTEMS, LLC,
GE MICROGEN, INC., and
PLUG POWER INC.,

Defendants.

Civil Action No. 10 CIV 1391

**DEFENDANTS PLUG POWER INC. AND GE MICROGEN, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

**Page**


**INTRODUCTION** .......... **1**

**SUMMARY OF UNDISPUTED MATERIAL FACTS** .......... **3**

I. FACTUAL BACKGROUND .......... 3

II. PROCEDURAL BACKGROUND .......... 8

**STANDARD OF REVIEW** .......... **9**

**ARGUMENT** .......... **10**

I. DELAWARE LAW BARS SOROOF FROM BRINGING SUIT AGAINST GEFCS AS A DISSOLVED LLC .......... 11

A. Delaware Law Prohibits Lawsuits Initiated After the Filing of a Certificate of Cancellation. .......... 11

B. Defendants Did Not Wrongfully Dissolve GEFCS. .......... 13

1. GEFCS Was Not Obligated to Make Provision Under Section 18-804(b)(1) or (2) Because Soroof Did Not Make a Claim to GEFCS. .......... 14

2. GEFCS Was Not Obligated to Make Provision Under Section 18-804(b)(3) Because No Claim By Soroof Was Likely to Arise or Become Known Based on the Facts Known to GEFCS at the Time of Its Dissolution. .......... 15

3. To the Extent GEFCS Was Required to Make Provision for a Potential Claim by Soroof, GEFCS Made Provision That Was Reasonably Likely to be Sufficient to Provide Compensation for a Claim by Soroof. .......... 18

4. Section 18-804(b) Only Requires Provision If the LLC Has Assets for Distribution at the Time of Dissolution. .......... 21

II. SOROOF MAY NOT BRING SUIT AGAINST THE FORMER MEMBERS OF GEFCS .......... 22

A. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because There Was No Fraud in GEFCS' Formation or Dissolution. .......... 23

B. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because GEFCS Was Not an Alter Ego of Its Former Members. .......... 24

**CONCLUSION** .......... **25**

**INTRODUCTION**

This lawsuit derives from a commercial agreement between two sophisticated business parties. In June 2000, Plaintiff Soroof Trading Development Company, Ltd. ("Soroof") entered into a contract with defendant GE Fuel Cell Systems, LLC ("GEFCS") to allow Soroof to serve as the exclusive distributor in certain geographic areas of a fuel cell product that was in development (the "Agreement"). Ultimately, after devoting millions of dollars to the development of the product, GEFCS was unable to produce the product to commercial specifications. As a result, the Agreement expired by its terms at the end of 2005 without any product available to Soroof (or any of the other distributors with which GEFCS had contracted) to distribute under the Agreement. Soroof now complains that GEFCS and its former members should be required to return the nonrefundable distributor fee Soroof paid under the Agreement as well as additional damages that Soroof allegedly suffered in connection with the Agreement.

Under the unambiguous terms of the Agreement and applicable statutes of limitations, Soroof's claims fail as detailed in the pending Motion for Judgment on the Pleadings Under Rule 12(b)(6) (Docket No. 45). Separate and apart from those deficiencies, however, Soroof's lawsuit cannot stand. Long after the Agreement had expired and long before Soroof ever filed this action (or its predecessor arbitration proceeding), GEFCS had dissolved. And the law is clear that a dissolved limited liability company ("LLC") organized under Delaware law, such as GEFCS, *cannot* be sued in these circumstances. Under Delaware law, lawsuits cannot be initiated against a dissolved LLC following the filing of the LLC's certificate of cancellation. Soroof did not file any arbitration or lawsuit against GEFCS or its members until well after that certificate was filed.

In the face of that clear prohibition, Soroof is left to argue that it can bring this suit against GEFCS and its former members based on allegations that GEFCS failed to wind up in

compliance with Delaware law and failed to make "provision" for anticipated claims by Soroof. The undisputed facts demonstrate, however, that GEFCS's dissolution complied with Delaware law. As explained in detail below, Soroof pursued no formal claim for damages prior to GEFCS's dissolution and, in the absence of any such claim, GEFCS had no obligation to make any provision for Soroof. To be sure, Soroof had articulated "dissatisfaction" with the fact that it was unable to distribute any product under the Agreement; but this "dissatisfaction" does not amount to a claim for which provision must be made under Delaware law. Indeed, no one was more dissatisfied with GEFCS's inability to produce the product than Defendants themselves who had invested millions of dollars and dedicated hundreds of employees to this venture. But disappointment that a business risk did not turn out as hoped does not amount to a cognizable claim under Delaware LLC law.

Moreover, even if Soroof's generalized allegations of "dissatisfaction" with GEFCS's ability to produce the product constituted a fact that made a claim likely to arise under Delaware LLC law – and it does not – GEFCS was obligated to do no more than make a provision that would be "reasonably likely to be sufficient to provide compensation" for that claim. Where, as here, the terms of the Agreement made clear that there could be no valid claim by Soroof arising out of its "dissatisfaction," no provision was required. And even if provision was required, GEFCS made such provision by offering Soroof an alternative distributorship opportunity through its former member, Plug Power Inc. ("Plug Power"). Indeed, because GEFCS dissolved with virtually no assets, there is little else it could have done. For these reasons, summary judgment should be granted in favor of all Defendants.

In addition, Soroof's claims against the former members of GEFCS, GE Microgen, Inc. ("GE Microgen") and Plug Power should be dismissed because they are not liable for the actions

of GEFCS. Delaware law is clear that the members of an LLC are not individually liable for the acts of the LLC. Further, Soroof cannot meet the heavy burden of showing that the Court should pierce the corporate veil of GEFCS based on its allegations that GEFCS was dissolved fraudulently or that it was a mere "alter ego" of its members. As discovery has shown, the facts do not support these bald allegations. For these additional reasons, Defendants are entitled to summary judgment in their favor on all counts.[1]

## SUMMARY OF UNDISPUTED MATERIAL FACTS

## I. FACTUAL BACKGROUND

*Formation of GE Fuel Cell Systems, LLC*

In February 1999, Plug Power and GE Microgen entered into an agreement to form a limited liability company, GEFCS, organized under the laws of the State of Delaware. Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment ("SOF") ¶ 1. GE Microgen and Plug Power were the sole members of GEFCS. *Id.*

Plug Power and GE Microgen formed GEFCS to sell and market fuel cell products that Plug Power was developing. SOF ¶ 2. The product that Plug Power was developing, and GEFCS was planning to distribute, was a Proton Exchange Membrane ("PEM") fuel cell (the "Product"). The Product was a "prime power fuel cell system . . . its intended application was to replace the generator, the power generation at a residence or small commercial facility." SOF ¶ 3. The Product – a complex interconnection of three components that included a fuel cell – was

[1] At the outset of this litigation, the Parties agreed to conduct discovery in two phases. The first phase was confined to "limited discovery regarding the dissolution and/or winding up of GE Fuel Cell Systems and the role of Defendants (or other GE affiliate) in same" to be followed by dispositive motions on that issue. *See* Preliminary Pre-Trial Statement, Exhibit A (Docket No. 13). This motion is the dispositive motion contemplated to follow Phase I discovery.

intended to be a continuous power product that would produce power twenty-four hours a day, seven days a week. SOF ¶ 4.

The purpose of GEFCS was to market and sell the resulting PEM fuel cell product to various subdistributors around the world. SOF ¶ 5. In connection with the formation of the LLC, Plug Power and GEFCS entered into a Master Distributor Agreement setting forth GEFCS's obligations to market, sell, and provide services for the Product. SOF ¶ 6. Thus, GEFCS was the vehicle for distributing the product. GE Microgen's role in GEFCS was to manage sales and marketing, and Plug Power's role was to develop and manufacture the product. SOF ¶ 7.

During the operation of GEFCS, employees of both GE Microgen and Plug Power supported the activities of GEFCS. SOF ¶ 8. Plug Power devoted over 300 employees toward the effort of developing the Product to specifications, while GE Microgen engaged in efforts to market the product nationwide and around the world through its network of subdistributors. SOF ¶ 9. GE Microgen and Plug Power communicated regularly regarding Plug Power's efforts in developing the fuel cell product. SOF ¶ 10. In addition, GE Microgen leased office space at Plug Power's facility to facilitate that communication. GE Microgen had office space for more than twenty employees in Plug Power's facility, and each company's office space was separate – they were identified by separate signs and each company was unable to access the other company's space. SOF ¶¶ 11, 12.

*Distributor Agreement Between GEFCS and Soroof*

Among the subdistributors with which GEFCS contracted was Soroof. On June 6, 2000, GEFCS and Soroof entered into a Distributor Agreement (the "Agreement") that would allow Soroof to be the exclusive distributor for the Product within the Kingdom of Saudi Arabia. SOF

¶ 13. At the time that Agreement was negotiated and executed, the Product was still in development. SOF ¶ 14. In exchange for the right to be the sole and exclusive distributor of the Product in Saudi Arabia, Soroof paid a $1,000,000 distributor fee that was specified as "non-refundable" under the terms of the Agreement. SOF ¶ 15. The Distributor Agreement expired on its own terms on December 31, 2005. SOF ¶ 17. At the time the Agreement expired, GEFCS had been unable to produce the PEM Fuel Cell products to commercial specifications and no Product was available for distribution. SOF ¶ 18.

*Dissolution of GEFCS*

Ultimately, the GEFCS business venture was unsuccessful in developing the specified PEM fuel cell product for distribution. SOF ¶ 19. Despite the investment of substantial effort and expense, technological challenges in the development of the Product could not be overcome. *Id.* Plug Power was unable to produce the product as originally envisioned due to these technical challenges, and the LLC was subsequently dissolved for this reason. *Id.*

Since Plug Power went public in 1999, it spent over a half a billion dollars trying to bring the PEM fuel cell products to the marketplace. SOF ¶ 20. This involved the efforts of over 300 employees in research and development of the fuel cell products. *Id.* Further, GE Microgen and other General Electric Company affiliates contributed to this investment through the payment of $42.5 million for Plug Power stock during the existence of GEFCS. SOF ¶ 21. As a result, all parties involved were disappointed that technical challenges prevented the production and distribution of the Product, as both GE Microgen and Plug Power expended substantial amounts of time and money trying to create and market the Product for distribution. SOF ¶ 22.

The members of GEFCS decided to dissolve GEFCS and entered into a Termination Agreement on March 24, 2006 in which they approved the dissolution, termination, and winding

up of GEFCS. SOF ¶ 23. A certificate of cancellation for GEFCS was filed on December 29, 2006 and took effect on December 31, 2006. SOF ¶ 24. At the time of dissolution, GEFCS did not have any cash assets. SOF ¶ 25. GEFCS's only assets at the time of dissolution were a computer server, a phone switch, a small amount of furniture, and distribution rights for Plug Power's technology. SOF ¶ 26.

In connection with the termination and dissolution, GEFCS terminated existing distribution agreements with subdistributors who had agreements that were still in operation by their terms. SOF ¶ 27. At the time the decision to terminate the GEFCS LLC Agreement and dissolve GEFCS was made, the Soroof Agreement had already expired. SOF ¶ 28. GEFCS had no ongoing obligations to Soroof under that expired contract. SOF ¶ 29.

Prior to GEFCS's dissolution, Soroof had never pursued any formal claim against GEFCS or its members for return of its nonrefundable distributor fee or for any other related expenses. SOF ¶ 48. As Soroof's own representative attests, Soroof had only expressed that it was "dissatisfied with GE's total lack of performance of the Agreement." SOF ¶ 30. Because the Agreement with Soroof had expired by its terms, and because Soroof had articulated no viable claim against GEFCS and no claim would be viable under the Agreement in any event, GE Microgen and Plug Power viewed the expiration of the Agreement as the end of the contractual relationship between GEFCS and Soroof; and did not believe there was any possible or viable claim by Soroof. SOF ¶ 31.

Because Plug Power had an interest in continuing to develop its business relationship with Soroof, Plug Power entered into discussions with Soroof about a potential new distributor agreement between Plug Power and Soroof. SOF ¶ 32. Likewise, GE Microgen encouraged these discussions. SOF ¶ 33. Accordingly, in the Termination Agreement, Plug Power agreed to

"make commercially reasonable efforts to enter into separate nonexclusive distributor agreements for Plug Power's GenCore product with Soroof" and one other subdistributor. Declaration of Dahlia S. Fetouh ("Fetouh Decl."), Exhibit 9, PPI000107-09, Termination Agreement ¶ 2(b). Like the fuel cell product targeted for development by GEFCS, the GenCore product was also a PEM fuel cell, but the GenCore product had been successfully developed for application as a back-up power source (as opposed to continuous power). SOF ¶ 35. Plug Power engaged in extensive negotiations with Soroof in an attempt to enter into a new distributor agreement with Soroof for the GenCore product. SOF ¶ 37. These negotiations included communications between Soroof, Plug Power, and third parties for Soroof's distribution of the GenCore product in Saudi Arabia, the identification of Soroof as Plug Power's distributor in Saudi Arabia, and protocol for Soroof's transmittal of proposals to potential customers for the sale of Plug Power's fuel cell products. SOF ¶ 38.

In connection with those negotiations, GE Microgen asked Plug Power to obtain a release from Soroof for any liability under the Agreement. SOF ¶ 39. GE Microgen's president, Frank Scovello, testified that GE Microgen sought that release because, following execution of the Termination Agreement, GE Microgen would have no role in any communications with Soroof. *Id.* In the Termination Agreement, GE Microgen asked Plug Power to agree to indemnify GEFCS and GE Microgen up to $1,000,000 if Plug Power did not obtain a release from Soroof releasing GEFCS from all liability relating to Soroof's payment of the $1,000,000 nonrefundable distributor fee under the Agreement. SOF ¶ 40. Plug Power agreed to the indemnification provision because it saw minimal risk, if any, to Plug Power by agreeing to it, as the Agreement had already expired on its own terms at the time of the dissolution of GEFCS, Soroof had made no claims against the LLC, and no viable claims existed under the Agreement. SOF ¶ 41. GE

Microgen requested the indemnification provision because it did not produce fuel cell products and therefore had no means of addressing any issue Soroof might have in the future. SOF ¶ 42. The dissolution of GEFCS was reported publicly by Plug Power. SOF ¶ 43.

By the spring of 2006, discussions between Plug Power and Soroof slowed and, ultimately, Soroof chose not to enter into a new distributor agreement for the GenCore product. SOF ¶ 44.

## II. PROCEDURAL BACKGROUND

On July 1, 2008, Soroof filed an arbitration demand against GEFCS seeking to recover damages under the theory that GEFCS had improperly failed to deliver products pursuant to the Agreement. SOF ¶ 45. On January 22, 2010, the parties entered into a Venue Agreement, whereby the parties agreed to suspend the arbitration and litigate Soroof's claims in this Court. SOF ¶ 46. On February 22, 2010, Soroof filed a complaint against GEFCS, GE Microgen, and Plug Power asserting claims originally stated in the arbitration, as well as various other claims allegedly arising out of the Agreement, including claims for breach of contract, misrepresentation, conversion, and unjust enrichment. SOF ¶ 47. Soroof admits that it never made a formal written claim to GEFCS or its former members before the filing of the arbitration demand or the current lawsuit. SOF ¶ 48.

The parties agreed to divide discovery in this case into two phases with the first phase limited to the threshold issue of the dissolution of GEFCS. SOF ¶ 49. The parties have completed "Phase I" discovery as to the dissolution issue. Soroof did not produce any documents in response to Defendants' requests for production of documents. SOF ¶ 50. Specifically, Soroof produced no document purporting to be a claim made to GEFCS prior to its dissolution. SOF ¶ 51. The only document that Soroof referenced in its responses to Defendants' document requests was a Declaration of James Jackson, Executive Director of the

Power Division at Soroof, that was generated for the arbitration proceeding. SOF ¶ 52. Indeed, in response to an Interrogatory asking Soroof to identify all documents in which it gave notice to GEFCS of the claims stated in the Complaint, Soroof merely objected to the request and did not provide any substantive answer. SOF ¶ 53.

All Phase I discovery is now complete. Additionally, a Motion for Judgment on the Pleadings has been fully briefed and is currently pending before this Court seeking to dismiss the complaint both as time-barred and barred by the unambiguous terms of the Agreement. SOF ¶ 54. This motion for summary judgment raises an additional basis for the dismissal of these claims with prejudice; namely, that applicable law prohibits suit against dissolved LLCs like GEFCS and their former members.

**STANDARD OF REVIEW**

Summary judgment is appropriate where, as here, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Mere conclusory allegations, conjecture, and unsupported speculation are insufficient to create a genuine issue of material fact. *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) ("the mere existence of a scintilla of evidence supporting the non-movant's case is also insufficient to defeat summary judgment.") (internal quotation and citations omitted); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). The non-moving party cannot rely on its pleadings when opposing summary judgment; rather, it must present evidence in admissible form, by authenticated document, deposition, affidavit, or other means which creates a genuine factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). When a non-moving party has had the opportunity to pursue discovery and "ha[s] adduced nothing beyond conjecture or speculation," summary judgment must be granted. *Smallwood v. Lupoli*,

No. 07-4445-cv, 2009 WL 579419, at *2 (2d Cir. Mar. 4, 2009).

## ARGUMENT

Defendants are entitled to summary judgment in their favor for multiple reasons described in detail below. First, Soroof cannot bring a claim against GEFCS as a dissolved LLC. Delaware law prohibits Soroof from bringing suit against GEFCS, and Soroof cannot show that Defendants wrongfully dissolved GEFCS by failing to make provision for claims allegedly made by Soroof in advance of dissolution.

Here, GEFCS was not obligated to make provision for Soroof's claim because (1) Soroof never pursued a formal claim against GEFCS before dissolution and (2) no claim by Soroof was likely to arise or become known based on the facts known to GEFCS at the time of dissolution. Moreover, to the extent GEFCS was obligated to make provision, and it was not, it complied with this requirement by offering Soroof the opportunity to enter into a new distributor agreement.

Further, GEFCS was not required to set aside money to provide for any alleged Soroof claim in any event because the Delaware LLC Act only requires such provision to be set aside if an LLC has available assets for distribution at the time of dissolution. Here, GEFCS had no such assets, and thus was not obligated to set aside money as provision for a potential claim by Soroof.

Finally, Soroof cannot hold GE Microgen and Plug Power individually liable for the alleged conduct of GEFCS. Soroof cannot show that the Court should pierce the corporate veil of GEFCS. To the contrary, the evidence shows that GEFCS was not established or dissolved for fraudulent purposes or to avoid liabilities, and was not merely an "alter ego" of its former members.

## I. <u>DELAWARE LAW BARS SOROOF FROM BRINGING SUIT AGAINST GEFCS AS A DISSOLVED LLC</u>

Soroof purports to bring this action against GEFCS, a former Delaware LLC that filed its Certificate of Dissolution with the Delaware Secretary of State over four years ago on December 29, 2006. SOF ¶ 24. Delaware law explicitly prohibits such a suit.[2]

### A. <u>Delaware Law Prohibits Lawsuits Initiated After the Filing of a Certificate of Cancellation.</u>

Under Delaware law, a party may not bring suit against a dissolved LLC. *Metro Comm'cn Corp. BVI v. Advanced MobileComm Techs., Inc.*, 854 A.2d 121, 138 (Del. Ch. 2004). Delaware LLCs are governed by the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 *et seq*. (the "LLC Act"). Suits against dissolved LLCs are prohibited after the certificate of cancellation is filed. The LLC Act provides:

> Upon dissolution of a limited liability company ***and until the filing of a certificate of cancellation*** as provided in § 18-203 of this title, the persons winding up the limited liability company's affairs may, in the name of, and for and on the behalf of, the limited liability company, prosecute and defend suits . . . , gradually settle and close the limited liability company's business, dispose of and convey the limited liability company's property, discharge or make reasonable provision for the limited liability company's liabilities, and distribute to the members any remaining assets of the limited liability company, all without affecting the liability of members or managers and without imposing liability on a liquidating trustee.

LLC Act, § 18-803(b) (emphasis added); *see also Metro Communc'n Corp. BVI*, 854 A.2d at 138 ("[A]bsent statutory authority, no claim may be brought against a dissolved entity. Moreover, §

---

[2] Because GEFCS was a Delaware LLC, Delaware law governs issues surrounding its dissolution. *See* Fetouh Decl., Exhibit 2, Amended and Restated Limited Liability Company Agreement of GE Fuel Cell Systems, L.L.C. ("GEMG and PP agreed to join together to operate a limited liability company under the laws of the State of Delaware . . ."); Section § 18-1101(i) ("A limited liability company agreement that provides for the application of Delaware law shall be governed by and construed under the laws of the State of Delaware in accordance with its terms.").

18-803(b) of the LLC Act provides that suit generally may be brought by *or against* a limited liability company *only until* the certificate of cancellation is filed.") (citing *In re Citadel Indus., Inc.*, 423 A.2d 500, 503 (Del. Ch. 1980) ("At common law, the dissolution of a corporation abruptly ended its existence, thus abating all pending actions by and against it and terminating its capacity thereafter to sue or be sued.")). Thus, following the filing of a certificate of cancellation, no lawsuit may stand against a dissolved LLC.

Here, it is undisputed that the GEFCS certificate of cancellation was filed on December 29, 2006. SOF ¶ 24. Accordingly, under the LLC Act, no claim could be brought against GEFCS after that date. Because Soroof did not file any claim against GEFCS until it filed a Demand for Arbitration with the American Arbitration Association ("AAA") on July 1, 2008 – well after the filing of the certificate of cancellation – Defendants are entitled to summary judgment in their favor. *See* LLC Act, § 18-803(b).

Moreover, Soroof has not even sought the relief necessary to bring a claim against a dissolved LLC. Because LLCs can only be sued "until the filing of a certificate of cancellation," Delaware law provides that a plaintiff alleging a claim against a dissolved LLC must not only allege that the LLC should not have been dissolved, but also seek nullification of the certificate of cancellation. *See* LLC Act § 18-803(b); *Thor Merritt Square, LLC v. Bayview Malls LLC*, No. 4480-VCP, 2010 WL 972776, at *5 (Del. Ch. Mar. 5, 2010) (claim against dissolved LLC not dismissed *because* plaintiffs made a claim for nullification); *Metro Comm'cn Corp. BVI*, 854 A.2d at 138-39. Soroof has not sought nullification of GEFCS's certificate of cancellation. Although Soroof alleges that GEFCS was terminated and dissolved "without providing for the obligations to Soroof in violation of Delaware law" (Complaint ¶ 29), this allegation does not amount to seeking the nullification of the certificate of cancellation and no action can be brought

against GEFCS.

**B. <u>Defendants Did Not Wrongfully Dissolve GEFCS.</u>**

Soroof attempts to avoid the inevitable conclusion that GEFCS cannot be sued under the clear terms of the Delaware LLC Act by alleging that GEFCS was not "properly dissolved" because it was dissolved "without providing for the obligations to Soroof in violation of Delaware law." Complaint ¶¶ 27-29. This allegation is incorrect on both the law and the facts.

Delaware courts have only allowed claims to be brought against a dissolved LLC if the plaintiff can prove that the LLC failed to wind up in compliance with the LLC Act. *See, e.g.*, *Thor Merritt Square, LLC*, 2010 WL 972776, at *5 n.18. Accordingly, Soroof appears to be claiming that GEFCS was not wound up in compliance with the LLC Act because GEFCS should have made a "provision" for Soroof's alleged claim. In the context of distributing any assets that might remain in a dissolving LLC, the LLC Act delineates certain circumstances in which a dissolved LLC may need to make a provision for a claim. Specifically, under the LLC Act, a dissolved LLC:

> (1) Shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional or unmatured contractual *claims, known* to the limited liability company;
>
> (2) Shall make such provision as will be reasonably likely to be sufficient to provide compensation for any *claim* against the limited liability company which is the *subject of a pending action*, suit or proceeding to which the limited liability is a party; and
>
> (3) Shall make such provision as will be *reasonably likely* to be sufficient to provide compensation for claims that have not been made known to the limited liability company or that have not arisen but that, *based on facts known* to the limited liability company, *are likely to arise or to become known* to the limited liability company within 10 years after the date of dissolution.

§ 18-804(b) (emphasis added).

None of the three provisions applies to GEFCS's obligations in this case. First, at the

time of dissolution, there were no known or pending claims by Soroof. Second, because the Agreement between Soroof and GEFCS terminated one year prior to dissolution and Soroof had done little more than express "dissatisfaction" that no Product was available to distribute, there were no claims likely to arise. Soroof's "unhappiness" does not give rise to a potential claim with merit for which provision needed to be made. Finally, even if a claim was arguably known or likely to be known, GEFCS made reasonable provision under the statute through Plug Power's negotiations with Soroof for a new distributor agreement between Plug Power and Soroof. Where, as here, the dissolving LLC had no assets available to set aside for any claims (much less meritless claims), GEFCS's provision for such claims by Soroof was objectively reasonable.

1. <u>GEFCS Was Not Obligated to Make Provision Under Section 18-804(b)(1) or (2) Because Soroof Did Not Make a Claim to GEFCS.</u>

Section 18-804(b) parts (1) and (2) simply do not apply here. It is undisputed that Soroof never made a formal claim to GEFCS at or prior to the time of dissolution. The first time Soroof made any formal claim against GEFCS was the July 2008 filing of its arbitration demand over a year and a half later. Indeed, Soroof's counsel admitted as much at the December 1, 2010 hearing before this Court. Fetouh Decl., Exhibit 19, Docket No. 78, Order, at 1 ("Plaintiff has represented . . . that it made no formal claim against defendants prior to commencement of the arbitration."); Fetouh Decl., Exhibit 20, December 1, 2010 Hearing Tr., at 14:12-25; *see also* Fetouh Decl., Exhibit 1, Conway Dep., at 48:11-48:15 ("If there was a formal claim that had been made by Soroof to Plug Power, it would have been brought to my attention. And that did not happen.").

The only "evidence" of a claim put forward by Soroof is the single declaration of James Jackson, Executive Director of the Power Division at Soroof, who stated that "[i]n or around late 2005, I spoke with Frank Scovello of GE and informed him that Soroof was dissatisfied with

GE's total lack of performance of the Agreement." Fetouh Decl., Exhibit 11, Declaration of James Jackson ¶ 13. Nowhere in the Jackson Declaration does Soroof offer any evidence that Soroof had made a claim in conformity with § 18-804(b)(1) or (2). Without having received any formal pending claim at the time of dissolution, GEFCS could not have been required to make any provision for Soroof under the Delaware statute.

2. <u>GEFCS Was Not Obligated to Make Provision Under Section 18-804(b)(3) Because No Claim By Soroof Was Likely to Arise or Become Known Based on the Facts Known to GEFCS at the Time of Its Dissolution.</u>

In the face of the inapplicability of Section 18-804(b)(1) and (2), Soroof appears to contend that GEFCS was wrongfully dissolved under Section 18-804(b)(3), which requires that a dissolving LLC "make such provision as will be *reasonably likely* to be sufficient to provide compensation for claims that have not been made known to the limited liability company or that have not arisen but that, *based on facts known* to the limited liability company, *are likely to arise or to become known* to the limited liability company within 10 years after the date of dissolution." § 18-804(b)(3) (emphasis added). The undisputed facts show, however, that there was no claim that was likely to arise or become known to GEFCS based on the facts then known.

First, it is undisputed that the Agreement between Soroof and GEFCS had expired on its own terms on December 31, 2005, one year prior to the filing of certificate of cancellation of GEFCS. Fetouh Decl., Exhibit 5, Agreement ¶ 4.1. GEFCS had no ongoing obligations under the Agreement following the Agreement's termination in December 2005.[3] As both GE Microgen and Plug Power testified, and as the provisions of the Agreement specified, the

[3] This situation contrasts with situations where the dissolved LLC had continuing obligations following dissolution. *See, e.g.*, *Thor Merritt Square*, 2010 WL 972776, at *1-2 (concerning a provision in an agreement that made the dissolved defendants responsible for fire code compliance following dissolution, the distribution of assets, and the filing of the certificate of cancellation).

expiration of the Agreement marked the end of the contractual relationship between GEFCS and Soroof. Fetouh Decl., Exhibit 3, Scovello Dep., at 89:15-89:16 ("We had felt it expired under its own term in December of 2005."); Fetouh Decl., Exhibit 1, Conway Dep., at 49:13-49:19 ("To my knowledge, it was clear. The contract terminated on December 31, 2005.").

Second, there was no reason for GEFCS to believe at the time of dissolution that any claim was likely to arise by Soroof that would require compensation. As explained above, Soroof had pursued no formal claim against GEFCS prior to GEFCS's dissolution, despite the fact that the facts underscoring Soroof's current claims existed for months if not years prior to GEFCS's dissolution.[4] Soroof's own pleadings underscore that prior to dissolution, at best, Soroof merely "communicated [its] dissatisfaction" to GEFCS for an alleged failure to perform. Docket No. 1, Complaint, at ¶ 21; Fetouh Decl., Exhibit 11, Declaration of James Jackson ¶ 13. To be sure, Soroof was not the only dissatisfied party involved in the GEFCS venture. All parties involved (including Plug Power and GE Microgen) were disappointed that technical challenges prevented the production and distribution of the Product, and both GE Microgen and Plug Power expended substantial amounts of time and money trying to create and market the Product for distribution. Fetouh Decl., Exhibit 1, Conway Dep., at 33:3-33:12 ("I think that obviously all of the subdistributors had anticipated a relationship that didn't materialize. We certainly weren't happy. The idea was that we would be able to commercialize these products earlier on than we ultimately did. So I think there was an awareness that these subdistributors were not necessarily pleased."); *id.* at 41:24-42:3 ("So I don't think anybody was happy with the

[4] The Agreement specified a formal claim notice process that required attempts to resolve claims first by mutual negotiation and thereafter through arbitration under the Arbitration Rules of the American Arbitration Association. Fetouh Decl., Exhibit 5, Agreement at p. 17, Article 19.

progress that the fuel cell industry generally was making."); Fetouh Decl., Exhibit 3, Scovello Dep., at 48:16-48:21. ("A. It was a technical challenge. It was a significant technical challenge. It was not for lack of trying. It had over 300 people working on the development. They did significant research and development. It was just a very difficult challenge at the time."). However, dissatisfaction with the outcome of a business relationship does not amount to a "claim" under Section 18-804(b).

Third, GEFCS had no reason to think that Soroof had any valid claim for any damages in connection with the termination of the relationship. The deposit paid under the Agreement was a "nonrefundable" distributor fee by the unambiguous terms of the Agreement. Fetouh Decl., Exhibit 5, Agreement ¶ 6.4. Soroof took an educated business risk when it entered into a contract with GEFCS to be the exclusive distributor of a product that was still in development. As detailed in the pending Motion for Judgment on the Pleadings, Soroof is not entitled to return of that deposit where, as here, GEFCS ultimately was unable to produce the product. Docket No. 46, Memorandum in Support of Motion for Judgment on the Pleadings, at 7, 10-11. Accordingly there was no reason for GEFCS to believe that any stated dissatisfaction with the relationship amounted to a valid claim for the return of the nonrefundable deposit. Similarly, there was no reason for GEFCS to believe that Soroof's dissatisfaction amounted to a claim for millions of dollars in consequential damages, which are specifically prohibited under the Agreement. Fetouh Decl., Exhibit 5, Agreement ¶¶ 12.2, 15.4; Docket No. 46, Memorandum in Support of Motion for Judgment on the Pleadings, at 8-10. There was simply no basis for GEFCS to believe that a claim was likely to arise from a terminated relationship and clear contractual terms barring

the types of claims that Soroof brings today.[5]

3. To the Extent GEFCS Was Required to Make Provision for a Potential Claim by Soroof, GEFCS Made Provision That Was Reasonably Likely to be Sufficient to Provide Compensation for a Claim by Soroof.

Even if the "dissatisfaction" of Soroof with the GEFCS business venture somehow rose to the level of a possible "claim" requiring provision under Section 18-804(b)(3), Defendants are entitled to summary judgment because GEFCS made provision for any possible "claim" by Soroof as required under Section 18-804(b)(3). That provision only requires that a dissolving LLC "make such provision as will be *reasonably likely to be sufficient to provide compensation*" for a possible claim. Section 18-804(b)(3) (emphasis added). It is undisputed that GEFCS made such provision in the Termination Agreement, through Plug Power's agreement to make "commercially reasonable efforts" to enter in a separate distributor agreement with Soroof for the exclusive distribution of a different fuel cell product produced by Plug Power called

---

[5] Soroof will likely point to certain email correspondence produced by Plug Power as evidence that GEFCS purportedly knew that Soroof was likely to have a claim. *See, e.g.*, Fetouh Decl., Exhibit 23, PPI000537-39; Exhibit 24, PPI000179-80; Exhibit 25, PPI000174-78. This email correspondence does no such thing. As explained in GE Microgen and Plug Power's depositions, the correspondence illustrates that, at best, Soroof was unhappy with the outcome of the agreement with GEFCS and expressed its dissatisfaction to Defendants in the context of the business negotiations regarding Plug Power and Soroof's new distributor agreement. Soroof's unhappiness never amounted to more than "customer dissatisfaction" and Defendants had no reason to construe Soroof's unhappiness as a "claim." *See, e.g.*, Fetouh Decl., Exhibit 1, Conway Dep., at 48:5-48:15 ("A. They, as you said, appeared to be unhappy. So perhaps that is what he is referring to. I would also say that none of these people are lawyers. So when they are referring to contractual standpoint, I think that's their opinion. If there was a formal claim that had been made by Soroof to Plug Power, it would have been brought to my attention. And that did not happen."); *id.* at 49:13-50:4 ("A. To my knowledge, it was clear. The contract terminated on December 31, 2005. In that contract, which we did not have at the time but which we subsequently were provided by GE, it also is clear that there was a nonrefundable distribution fee. As I said before, we were looking to engage with and develop an ongoing relationship with Soroof. So trying to understand were they happy, what were their issues would have been part of Ravi's job, with the goal of coming to an agreement with Soroof to do a go-forward business relationship related to Plug Power."); Fetouh Decl., Exhibit 3, Scovello Dep., at 113:19-24 ("We did not have a concern at the time we were terminating that Soroof was asking for the return of

"GenCore." Fetouh Decl., Exhibit 9, PPI000107-09, Termination Agreement ¶ 2(b). Like the fuel cell product targeted for development by GEFCS, the GenCore product was also a PEM fuel cell, but the GenCore product had already been successfully developed for application as a back-up power source. SOF ¶ 35. Plug Power was offering to make Soroof the exclusive distributor of GenCore, an existing product, in Saudi Arabia without payment of any distributor fee. SOF ¶ 36.

It is also undisputed that Plug Power and Soroof did engage in extensive negotiations in an attempt to enter into a new distributor agreement for the GenCore product. Fetouh Decl., Exhibit 1, Conway Dep., at 92:13-94:10 ("Q. And still talking about the negotiations that had been happening up to the point of the signing of the termination agreement, how long had they been going on up to that date, which is March 2006? A. I believe they had been going on for some time, for a number of months at least. . . . They involved a discussion of the product and its capabilities. They involved a discussion with Soroof related to the third-party fueling provider . . . So there were discussions, visits, meetings with the hydrogen provider. And there were a lot of discussions around different concepts for how the hydrogen would – the best method to have the hydrogen available for the GenCore products."). These negotiations included communications between Soroof, Plug Power, and third parties for Soroof's distribution of Plug Power's GenCore product in Saudi Arabia, the identification of Soroof as Plug Power's distributor in Saudi Arabia, and protocol for Soroof's transmittal of proposals to potential customers for the sale of Plug Power's fuel cell products.[6]

---

their million dollar distribution fee. We wanted to support both Soroof and Flint in setting up an alternative to what they originally started with GE. That was our biggest concern.").

[6] *See, e.g.*, Fetouh Decl., Exhibit 12, PPI000383, March 10, 2006 email from Plug Power to Soroof (attaching proposed Plug Power/Soroof International Distributor Agreement); Fetouh Decl., Exhibit 13, PPI000403, Proposed Plug Power/Soroof International Distributor Agreement;

The Termination Agreement's provision requiring Plug Power to make commercially reasonable efforts to enter into a new distribution agreement with Soroof was sufficient provision under the Delaware statute. The Delaware statute does not require a dissolving LLC to satisfy the demands of a potential claimant without regard to the merits or likelihood of a possible claim. Even if Soroof's claims were to be considered "likely to arise" under §18-804(b)(3) based on the facts then known, those potential claims were still without merit since they were based on an expired contract and a non-refundable distribution fee. Although Delaware case law offers little guidance on what constitutes "provision as will be reasonably likely to be sufficient to provide compensation," offering a new distribution agreement at no cost surely constitutes reasonable provision for a meritless claim. In fact, offering nothing for a meritless claim should be a reasonable provision. Because Defendants made provision that was reasonably likely to provide compensation for a potential "claim" by Soroof, Defendants complied with Section 18-804(b)(3).[7]

---

Fetouh Decl., Exhibit 14, PPI000379, March 8, 2006 through March 14, 2006 email correspondence between Plug Power and a third party (identifying Soroof as "our distributor"), at PPI000379; Fetouh Decl., Exhibit 15, PPI000456-465, December 25, 2005 through February 27, 2006 email exchange between Soroof and Plug Power (concerning protocol for transmittal of product proposals to customers); Fetouh Decl., Exhibit 16, PPI000372-375, March 9, 2006 through March 15, 2006 email exchange between Plug Power and Soroof (regarding proposals to third parties for product sales); Fetouh Decl., Exhibit 17, PPI000356, March 29, 2006 through March 31, 2006 internal Plug Power email (reporting that Plug Power was "presently in the process of formalizing the Distributor Agreement with Soroof…"), at PPI000356; Fetouh Decl., Exhibit 18, PPI000370, March 9, 2009 through April 3, 2006 email exchange between Plug Power and a third party (characterizing Soroof as company which "represents Plug Power in Saudi Arabia"), at PPI000371.

[7] Indeed, the GEFCS Termination Agreement went even further than the Delaware LLC Act's requirements by including Plug Power's agreement to indemnify GEFCS, GE Microgen, and GE Company up to $1,000,000 if Plug Power did not obtain a release from Soroof releasing GEFCS from all liability relating to Soroof's payment of the $1,000,000 distributor fee under the Agreement. Fetouh Decl., Exhibit 9, PPI000107-09, Termination Agreement ¶ 2(b). To be clear, the indemnification provision was not an acknowledgement of the existence of any likely

4. Section 18-804(b) Only Requires Provision If the LLC Has Assets for Distribution at the Time of Dissolution.

Further, Section 18-804(b) does not require that funds be set aside as provision for any claim when there are *no* available LLC assets for distribution at the time of dissolution. Section 18-804(b) provides that "***If there are sufficient assets***, such claims and obligations shall be paid in full and any such provision for payment made shall be made in full. ***If there are insufficient assets***, such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ***ratably to the extent of assets available therefore***." At the time of dissolution, it is undisputed that GEFCS had no assets available for distribution or payment of any claims. Fetouh Decl., Exhibit 3, Scovello Dep., at 75:11-75:18 ("GEFCS really had no cash assets. The only items that existed within the physical plant were the server that was used to connect our computers to the GE server . . . and a phone switch which was a connection to a GE communication network."); SOF ¶ 26. Therefore, GEFCS was under no obligation to set aside any provision for a potential claim by Soroof.

GEFCS was not wrongfully dissolved under any of the provisions of Section 18-804(b) and Defendants are entitled to summary judgment on all counts under these provisions.

---

claim by Soroof or any liability for any such claim. To the contrary, Plug Power agreed to the indemnification only because it saw *minimal to no* risk to agreeing. Neither Plug Power nor GE Microgen believed that Soroof had any basis for asserting a claim at the time of dissolution because the Agreement had already expired on its own terms by that time and the terms of the Agreement barred any claim. Fetouh Decl., Exhibit 1, Conway Dep., at 85:8-85:12 ("I felt that there was no claim, that the risk was minimal, and that because GE had asked for it and I saw no risk to Plug Power that we could agree to that request."). GE Microgen requested the indemnification provision not because it thought Soroof was likely to assert a claim, but because it did not produce fuel cell products and therefore had no means of addressing any issue Soroof might have arising out of *future* events. Fetouh Decl., Exhibit 3, Scovello Dep., 123:18-123:21 ("[O]nce we had dissolved our agreement with Plug Power, we had no way of resolving any kind of issues with any distributors that could come up after that time."); *id.* at 123:25-124:2 ("A. There were no claims that were made at the time, but we just had no means to address them going forward.").

## II. SOROOF MAY NOT BRING SUIT AGAINST THE FORMER MEMBERS OF GEFCS

GE Microgen and Plug Power, as the former members of GEFCS, cannot be liable for the alleged debts of the dissolved LLC. Specifically, under the LLC Act:

> [T]he debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be *solely* the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

§ 18-303(a) (emphasis added). Faced with this clear limitation of liability to the members of an LLC, Soroof seeks to impose individual liability on GE Microgen and Plug Power for the alleged liability of GEFCS by asking this Court to disregard corporate structure and "pierce the veil" of GEFCS. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) ("The shareholders of a corporation and the members of an LLC generally are not liable for the debts of the entity, and a plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces 'a difficult task.'") (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. Civ. A. 1331, 1989 WL 110537 (Del. Ch. Sept. 19, 1989)). A court may only "pierce the veil" of an LLC "where there is fraud or where [the corporation] is in fact a mere instrumentality or alter ego of its owner." *NetJets Aviation, Inc.*, 537 F.3d at 176 (quoting *Geyer v. Ingersoll Pubs. Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)). Soroof has not met and cannot meet this high standard. There can be no genuine dispute that GEFCS was formed for anything other than legitimate purposes by two separate entities. Both members of GEFCS had different roles and responsibilities with regard to GEFCS and expended a significant amount of time and resources in the GEFCS venture. When the goals of GEFCS did not materialize, GEFCS was dissolved. There is no genuine issue of material fact that GEFCS was valid throughout its formation,

existence, and dissolution.

### A. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because There Was No Fraud in GEFCS' Formation or Dissolution.

GEFCS was not established or dissolved for fraudulent purposes or to avoid liabilities. In order to establish fraud for the purposes of "piercing the corporate veil," the Court will look at specific facts examining fraud, misuse, "or some other general term of reproach in mind, such as whether the corporation was used to engage in conduct that was inequitable or prohibited, or an unfair trade practice or illegal." *NetJets Aviation, Inc.*, 537 F.3d at 177 (internal quotations omitted).

While Soroof *alleges* that GEFCS was dissolved to avoid an alleged liability to Soroof, there is no evidence supporting these allegations. Complaint ¶ 28. The testimony of GE Microgen and Plug Power shows that GEFCS was dissolved for legitimate commercial reasons. The purpose of GEFCS was to sell and market the fuel cell products that Plug Power would produce. SOF ¶¶ 2, 5. Despite the investment of substantial effort and expense, technological challenges in the development of the specified PEM fuel cell product could not be overcome. Plug Power was unable to produce the product as originally envisioned by the two companies due to these technical challenges, and the LLC was subsequently dissolved for this reason. Fetouh Decl., Exhibit 3, Scovello Dep., at 47:21-48:1 ("GE's original intention was to distribute a certain kind of product that became very clear to us after an amount of time that Plug could not produce that product. When that became evident, that's when we started talking about terminating that agreement because basically we had nothing to sell."); Fetouh Decl., Exhibit 6, Action by Written Consent of the Members of GE Fuel Cell Systems, L.L.C., at PPI000104 ("WHEREAS, the Company has experienced little financial activity over the past several years and is not likely to experience an increase in financial activity before the term of the Agreement

expires."); Fetouh Decl., Exhibit 7, PPI000147, Plug Power Inc. Form 8-K filed March 27, 2006, at PPI000149 (explaining the decision to dissolve GEFCS).

In the face of these legitimate business judgments, Soroof has been unable to show that GEFCS "was used to engage in conduct that was inequitable or prohibited, or an unfair trade practice or illegal," and thus the corporate veil cannot be pierced on this basis. *NetJets Aviation, Inc.*, 537 F.3d at 177 (internal quotations omitted). Moreover, for Soroof to suggest that the avoidance of liability to Soroof was the basis for the dissolution of a multi-million dollar venture between GE Microgen and Plug Power, is to overestimate Soroof's role and importance. Soroof was but one of many distributors with which GEFCS contracted and only a small part of the overall business venture. The decision to terminate and dissolve the LLC was based on the inability of the LLC to accomplish its stated goals; no facts prove otherwise.

### B. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because GEFCS Was Not an Alter Ego of Its Former Members.

Separate legal entities should be regarded as alter egos only if "the two entities operated as a single economic entity such that it would be inequitable for the Court to uphold a legal distinction between them." *NetJets Aviation, Inc.*, 537 F.3d at 177 (internal quotations omitted). To pierce the veil of GEFCS under the "alter ego" theory, Soroof must show that the three entities—GEFCS and its former members, GE Microgen ***and*** Plug Power—operated as a single economic entity, such that there was no legal distinction between all three. It cannot do so.

GEFCS and its former members, GE Microgen and Plug Power, each had separate roles in the function of GEFCS. GEFCS's role was to act as a vehicle for distributing the Product; GE Microgen handled sales and marketing; Plug Power tried to develop and manufacture the Product. SOF ¶ 7. GE Microgen and Plug Power had regular communication regarding Plug Power's to efforts to develop the Product. SOF ¶ 10. GE Microgen leased some office space

from Plug Power, and each company's offices were identified with a separate sign. SOF ¶ 11. Plug Power could not access GE Microgen's office space, and vice versa. *Id.*; Fetouh Decl., Exhibit 1, Conway Dep., at 23:8-23:11 ("There were keycards that they could – we had to be invited, if you will, into their space. It wasn't as if we could just walk into their space."). GE Microgen and Plug Power each had their own employees. SOF ¶ 12. In the face of these clear distinctions between the legal entities, there can be no genuine issue of material fact that GEFCS was not the "alter ego" of its former members and that its corporate veil cannot be pierced on this basis.

**CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court grant this Motion and enter judgment in favor of Defendants on all counts.

Dated: February 28, 2011

Respectfully submitted,

/s/ Dahlia S. Fetouh
Dahlia S. Fetouh (*pro hac vice*)
Natalie F. Langlois (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
E-Mail: dfetouh@goodwinprocter.com
E-Mail: nlanglois@goodwinprocter.com

Abigail K. Hemani (AH 2071)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 813-8800
ahemani@goodwinprocter.com

Attorneys for Defendant PLUG POWER INC.

/s/ Michael D. Fisse
Michael D. Fisse, Esq.
Jan Van Steenis, Esq.
DAIGLE FISSE & KESSENICH, PLC
P.O. Box 5350
Covington, LA 70434-5350
(985) 871-0800
Fax: (985) 871-0899
Email: mfisse@daiglefisse.com
Email: jbradford@daiglefisse.com

Thomas Edward Healy, Esq.
PINO & ASSOCIATES, LLP
50 Main Street
White Plains, NY 10606
(914) 946-0600
Fax: (914) 946-0650
Email: thealy@pinolaw.com

Attorneys for Defendant GE MICROGEN, INC.

**CERTIFICATE OF SERVICE**

I, Dahlia S. Fetouh, hereby certify that true copies of the foregoing DEFENDANTS PLUG POWER INC. AND GE MICROGEN, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT were caused to be served by ECF and electronic mail this 28th day of February, 2011 on the following counsel:

James R. Lynch, Esq.
Jason Kaufman, Esq.
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York , NY 10018
(212) 302-2400
Fax: (212) 302-2210
Email: lynch@lawlynch.com
Attorneys for Plaintiff SOROOF TRADING DEVELOPMENT COMPANY, LTD.

Haig V. Kalbian, Esq.
Mary M. Baker, Esq.
Aaron W. Knights, Esq.
KALBIAN HAGERTY LLP
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Email: hkalbian@kalbianhagerty.com
Attorneys for Plaintiff SOROOF TRADING DEVELOPMENT COMPANY, LTD.

Dated: February 28, 2011 /s/__Dahlia S. Fetouh_________________