UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOROOF TRADING DEVELOPMENT COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>GE FUEL CELL SYSTEMS, LLC, GE MICROGEN, INC., and PLUG POWER INC.,<br><br>Defendants. | Civil Action No. 10 CIV 1391 |

**DEFENDANTS PLUG POWER INC.'S AND GE MICROGEN, INC.'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

RESPONSE TO SOROOF'S STATEMENT OF FACTS..............................................2

ARGUMENT ..........................................................................................................2

I. DELAWARE LAW BARS SOROOF FROM BRINGING SUIT AGAINST GEFCS AS A DISSOLVED LLC..........................................3

II. DEFENDANTS DID NOT WRONGFULLY DISSOLVE GEFCS .......................4

A. GEFCS Was Not Obligated to Make Provision Under Section 18-804(b)(3) Because No Claim By Soroof Was Likely to Arise or Become Known Based on the Facts Known to GEFCS at the Time of Its Dissolution........................................................ 6

B. Section 18-804(b) Only Requires Provision If the LLC Has Assets for Distribution at the Time of Dissolution.......................................... 11

C. To the Extent GEFCS Was Required to Make Provision for a Potential Claim by Soroof, GEFCS Made Provision That Was Reasonably Likely to be Sufficient to Provide Compensation for a Claim by Soroof..................................................................... 12

III. SOROOF MAY NOT BRING SUIT AGAINST PLUG POWER AND GE MICROGEN BECAUSE GEFCS WAS NOT AN ALTER EGO OF ITS FORMER MEMBERS.........................................................................14

A. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because Soroof Cannot Show That GEFCS, GE Microgen, and Plug Power Operated As a Single Economic Entity. ............................... 16

B. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because Soroof Cannot Show GEFCS Was Used To Perpetuate Fraud Or Promote Injustice.................................................... 21

CONCLUSION.......................................................................................................24

## INTRODUCTION

Plaintiff Soroof Trading Development Company, Ltd. ("Soroof") and defendants Plug Power Inc. ("Plug Power") and GE Microgen, Inc. ("GE Microgen") collectively agree on one point – the question of whether Defendants are proper parties to this lawsuit is ripe for summary judgment. However, Soroof's convoluted and stretched reading of the law and the undisputed facts does not authorize summary judgment in Soroof's favor. Rather, the law and undisputed facts compel the grant of summary judgment *against* Soroof and *in favor of* Defendants. Under Delaware law, GE Fuel Cell Systems, LLC ("GEFCS") was properly dissolved and cannot be sued in these circumstances. The dissolution complied with Delaware law and Defendants had no obligation to make provision for Soroof under Section 18-804(b)(3) of the Delaware Code as alleged. Moreover, Soroof has not met its heavy burden of demonstrating that GEFCS was the alter ego of its former members Plug Power and GE Microgen, and they cannot be individually liable for Soroof's claims. Soroof's attempts to avoid the clear provisions of Delaware law in order to hold Defendants liable for claims that have no merit to begin with should not be entertained. Soroof's Motion for Partial Summary Judgment should be denied in all respects and instead, Defendants' Motion for Summary Judgment should be granted.[1]

---

[1] At the outset of this litigation, the parties agreed to conduct discovery in two phases. The first phase was confined to "limited discovery regarding the dissolution and/or winding up of GE Fuel Cell Systems and the role of Defendants (or other GE affiliate) in same" to be followed by dispositive motions on that issue. *See* Preliminary Pre-Trial Statement, Exhibit A (Docket No. 13). Defendants filed a Motion for Summary Judgment on the same day that Soroof filed its Motion for Partial Summary Judgment. (Docket Nos. 91-94.) Defendants' Motion shows that judgment should be entered in their favor on all counts on this threshold issue and that there is no need to reach the substance of Soroof's underlying claims. Defendants incorporate their Motion for Summary Judgment and accompanying materials as if fully set forth herein.

Further, as explained in the Special Appearance and Answer of GEFCS, a dissolved Delaware LLC in which defendants GE Microgen and Plug Power were formerly members, Plug Power and GE Microgen have not waived any immunity, privilege, or defense that GEFCS cannot be sued because it is a dissolved entity and has not been properly served with process.

**RESPONSE TO SOROOF'S STATEMENT OF FACTS**

The undisputed facts surrounding the parties' dispute are set forth in full in Defendants' Memorandum of Law in Support of their Motion for Summary Judgment ("Defendants' Memo.") and its supporting papers, including Defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment ("Defendants' SOF"), which are being considered by the Court concurrently with Soroof's motion. Rather than repeat that background here, Defendants incorporate those facts as if set forth fully herein.

In addition, Soroof's own "Statement of Facts" contains numerous conclusory statements that are directly contradicted by facts in the record. These items are highlighted in the discussion below and addressed in Defendants' Response to Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts ("Defendants' Response to Soroof's SOF") and Defendants' Statement of Additional Material Facts ("Defendants' Additional Facts"), submitted herewith.

**ARGUMENT**

Soroof's Motion for Partial Summary Judgment should be denied for multiple reasons described in detail below. Soroof cannot bring a claim against GEFCS as a dissolved LLC. Delaware law prohibits Soroof from bringing suit against GEFCS, and Soroof cannot show that Defendants wrongfully dissolved GEFCS by purportedly failing to make provision for claims allegedly made by Soroof in advance of dissolution.

Here, GEFCS was not obligated to make provision for Soroof's claim because no claim by Soroof was likely to arise or become known based on the facts known to GEFCS at the time

---

*See* Special Appearance and Answer of GE Fuel Cell Systems, LLC, dated June 9, 2010 (Docket No. 18). Assuming *arguendo*, however, that GEFCS is capable of being sued, the arguments raised in this Opposition apply to all defendants, and therefore Soroof's Motion for Partial Summary Judgment should also be denied as to GEFCS.

of dissolution. Further, GEFCS was not required to set aside money to provide for any alleged claim by Soroof in any event because the Delaware LLC Act only requires such provision to be set aside if an LLC has available assets for distribution at the time of dissolution. Here, GEFCS had no such assets, and thus was not obligated to set aside money as provision for a potential claim by Soroof. Moreover, to the extent GEFCS was obligated to make provision, and it was not, it complied with this requirement by offering Soroof the opportunity to enter into a new distributor agreement.

Finally, Soroof cannot hold GE Microgen and Plug Power individually liable for the alleged conduct of GEFCS. Soroof has failed to meet its substantial burden of demonstrating that the Court should pierce the corporate veil of GEFCS. To the contrary, the evidence shows that GEFCS was not merely an "alter ego" of its former members.

## I. DELAWARE LAW BARS SOROOF FROM BRINGING SUIT AGAINST GEFCS AS A DISSOLVED LLC

Under Delaware law, a party may not bring suit against a dissolved LLC. *Metro Commc'n Corp. BVI v. Advanced MobileComm Techs., Inc.*, 854 A.2d 121, 138 (Del. Ch. 2004). Delaware LLCs are governed by the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 *et seq.* (the "LLC Act"). Suits against dissolved LLCs are prohibited after the certificate of cancellation is filed. The LLC Act provides:

> Upon dissolution of a limited liability company ***and until the filing of a certificate of cancellation*** as provided in § 18-203 of this title, the persons winding up the limited liability company's affairs may, in the name of, and for and on the behalf of, the limited liability company, prosecute and defend suits . . . , gradually settle and close the limited liability company's business, dispose of and convey the limited liability company's property, discharge or make reasonable provision for the limited liability company's liabilities, and distribute to the members any remaining assets of the limited liability company, all without affecting the liability of members or managers and without imposing liability on a liquidating trustee.

LLC Act, § 18-803(b) (emphasis added); *see also Metro Commc'n Corp. BVI*, 854 A.2d at 138 ("[A]bsent statutory authority, no claim may be brought against a dissolved entity. Moreover, § 18-803(b) of the LLC Act provides that suit generally may be brought by *or against* a limited liability company *only until* the certificate of cancellation is filed.") (citing *In re Citadel Indus., Inc.*, 423 A.2d 500, 503 (Del. Ch. 1980) ("At common law, the dissolution of a corporation abruptly ended its existence, thus abating all pending actions by and against it and terminating its capacity thereafter to sue or be sued.")). Thus, following the filing of a certificate of cancellation, no lawsuit may stand against a dissolved LLC.

Here, it is undisputed that the GEFCS certificate of cancellation was filed on December 29, 2006. Defendants' Response to Soroof's SOF ¶ 36. Accordingly, under the LLC Act, no claim could be brought against GEFCS after that date. Because Soroof did not file any claim against GEFCS until it filed a Demand for Arbitration with the American Arbitration Association ("AAA") on July 1, 2008 – over a year and a half after the filing of the certificate of cancellation – Defendants are entitled to summary judgment in their favor. *See* LLC Act, § 18-803(b).[2]

## II. <u>DEFENDANTS DID NOT WRONGFULLY DISSOLVE GEFCS</u>

To get around this clear prohibition, Soroof claims that GEFCS was wrongfully dissolved. Soroof's Memo., at 13. Delaware courts have only allowed claims to be brought

---

[2] Moreover, as explained in Defendants' Memo. at 12-13, Soroof has not even sought the relief necessary to bring a claim against a dissolved LLC. Because LLCs can only be sued "until the filing of a certificate of cancellation," Delaware law provides that a plaintiff alleging a claim against a dissolved LLC must not only allege that the LLC should not have been dissolved, but also seek nullification of the certificate of cancellation. *See* LLC Act § 18-803(b); *Thor Merritt Square, LLC v. Bayview Malls LLC*, No. 4480-VCP, 2010 WL 972776, at *5 (Del. Ch. Mar. 5, 2010) (claim against dissolved LLC not dismissed *because* plaintiffs made a claim for nullification); *Metro Commc'n Corp. BVI*, 854 A.2d at 138-39. Soroof has not sought nullification of GEFCS's certificate of cancellation.

against a dissolved LLC if the plaintiff can prove that the LLC failed to wind up in compliance with the Delaware LLC Act. *See, e.g.*, *Thor Merritt Square, LLC*, 2010 WL 972776, at *5 n.18. Soroof contends that Defendants dissolved GEFCS in violation of the LLC Act, 6 Del. C. § 18-804(b)(3), which requires that a dissolving LLC "make such provision as will be *reasonably likely* to be sufficient to provide compensation for claims that have not been made known to the limited liability company or that have not arisen but that, *based on facts known* to the limited liability company, *are likely to arise or to become known* to the limited liability company within 10 years after the date of dissolution." § 18-804(b)(3) (emphasis added); Soroof's Memo., at 13-17.[3]

As explained below, Soroof's argument fails for multiple reasons. First, because the Agreement between Soroof and GEFCS terminated one year prior to dissolution and Soroof had done nothing more than express "dissatisfaction" that no Product was available to distribute, there were no claims likely to arise. Soroof's "unhappiness" does not give rise to a potential claim with merit for which provision needed to be made. Second, even if a claim was arguably known or likely to be known, where, as here, the dissolving LLC had no assets available to set aside for any claims (much less meritless claims), no provision was necessary. Moreover, even if provision was necessary, and it was not, GEFCS made reasonable provision under the statute through Plug Power's offer to Soroof to enter into a new and valuable distributor agreement between Plug Power and Soroof.

---

[3] Soroof does not contend that GEFCS was obligated to make provision under Section 18-804(b) parts (1) and (2). *See* Soroof's Memo., at 13-17. Any such argument would fail in any event because Soroof did not make a "claim" to GEFCS, as more fully explained in Defendants' Motion for Summary Judgment. *See* Docket No. 92, Defendants' Memo., at 14-15.

**A. <u>GEFCS Was Not Obligated to Make Provision Under Section 18-804(b)(3) Because No Claim By Soroof Was Likely to Arise or Become Known Based on the Facts Known to GEFCS at the Time of Its Dissolution.</u>**

Soroof contends that GEFCS "knew of possible claims by Soroof," thus bringing its claims under the rubric of Section 18-804(b)(3). Soroof's Memo., at 16. But as demonstrated below, Soroof fails to present evidence showing this to be true. In fact, to the contrary, the undisputed facts demonstrate that there was no claim that was likely to arise or become known to GEFCS based on the facts then known.

First, it is undisputed that the Agreement between Soroof and GEFCS had expired on its own terms on December 31, 2005, one year prior to the filing of the certificate of cancellation of GEFCS. Defendants' Response to Soroof's SOF ¶ 30; Docket No. 94, Declaration of Dahlia S. Fetouh submitted in support of Defendants' Motion for Summary Judgment ("First Fetouh Decl."), Exhibit 5, Agreement ¶ 4.1. GEFCS had no ongoing obligations under the Agreement following the Agreement's termination in December 2005.[4] As both GE Microgen and Plug Power testified, and as the provisions of the Agreement specified, the expiration of the Agreement marked the end of the contractual relationship between GEFCS and Soroof. Defendants' Response to Soroof's SOF ¶ 31; First Fetouh Decl., Exhibit 3, Scovello Dep., at 89:15-89:16 ("We had felt it expired under its own term in December of 2005."); First Fetouh Decl., Exhibit 1, Conway Dep., at 49:13-49:19 ("To my knowledge, it was clear. The contract terminated on December 31, 2005.").

---

[4] This situation contrasts with situations where the dissolved LLC had continuing obligations following dissolution. *See, e.g.*, *Thor Merritt Square*, 2010 WL 972776, at *1-*2 (a provision in an agreement that made the dissolved defendants responsible for costs associated with completion of work regarding fire code compliance). Therefore, Soroof's reliance on this case (Soroof's Memo., 14-15) is misguided.

Second, there was no reason for GEFCS to believe at the time of dissolution that any claim was likely to arise by Soroof that would require compensation. As explained in Defendants' Motion for Summary Judgment, Soroof had pursued no formal claim against GEFCS prior to GEFCS's dissolution, despite the existence of the facts underscoring Soroof's current allegations for months, if not years, prior to GEFCS's dissolution. Docket No. 92, Defendants' Memo., at 14-15. Indeed, Soroof was well aware prior to GEFCS's dissolution that Plug Power was having difficulty producing the Product, as the parties were engaged in ongoing discussions concerning the Product. *See* Defendants' Response to Soroof's SOF ¶ 29. The sole affirmative evidence submitted by Soroof — a self-serving declaration of one of its representatives generated in connection with the arbitration proceeding — supports this fact and states that "GE[FCS] repeatedly contacted Soroof and claimed that the Product was not yet ready due to various problems it had developing the Product." First Fetouh Decl., Exhibit 11, Declaration of James Jackson ¶ 9.

Soroof's own pleadings and its Motion for Partial Summary Judgment underscore that prior to dissolution, at best, Soroof merely "communicated [its] dissatisfaction" to GEFCS for an alleged failure to perform. Soroof's Memo., at 16 ("Soroof had expressed its concerns about the failure to deliver Product as early as 2002, in late 2005 and again in early 2006."); Defendants' Response to Soroof's SOF ¶ 31; Defendants' SOF ¶ 30; Docket No. 1, Complaint, at ¶ 21; First Fetouh Decl., Exhibit 11, Declaration of James Jackson ¶ 13. To be sure, Soroof was not the only dissatisfied party involved in the GEFCS venture. All parties involved (including Plug Power and GE Microgen) were disappointed that technical challenges prevented the production and distribution of the Product, and both GE Microgen and Plug Power expended substantial amounts of time and money trying to create and market the Product for distribution. Defendants'

Additional Facts ¶ 19; First Fetouh Decl., Exhibit 1, Conway Dep., at 33:3-33:12 ("I think that obviously all of the subdistributors had anticipated a relationship that didn't materialize. We certainly weren't happy. The idea was that we would be able to commercialize these products earlier on than we ultimately did. So I think there was an awareness that these subdistributors were not necessarily pleased."); *id.* at 41:24-42:3 ("So I don't think anybody was happy with the progress that the fuel cell industry generally was making."); First Fetouh Decl., Exhibit 3, Scovello Dep., at 48:16-48:21. ("A. It was a technical challenge. It was a significant technical challenge. It was not for lack of trying. It had over 300 people working on the development. They did significant research and development. It was just a very difficult challenge at the time."). However, dissatisfaction with the outcome of a business relationship does not amount to a "claim" under Section 18-804(b).

Third, GEFCS had no reason to think that Soroof had any valid claim for any damages in connection with the termination of the relationship. The deposit paid under the Agreement was a "nonrefundable" distributor fee by the unambiguous terms of the Agreement. Defendants' Response to Soroof's SOF ¶ 16; Defendants' Additional Facts ¶ 12; First Fetouh Decl., Exhibit 5, Agreement ¶ 6.4. Soroof took an educated business risk when it entered into a contract with GEFCS to be the exclusive distributor of a product that was still in development.[5] As detailed in

[5] Soroof makes the unsupportable claim that it paid the deposit on the premise that GEFCS "actually had saleable Product to deliver." Soroof's Memo., at 8. What Soroof does not point out is that the Agreement made no such statement. Rather, Soroof makes this claim based on a statement contained in an unsworn and unverified declaration of its representative that "GE represented to it that GE was able to deliver product to Soroof" six months *after* the payment of the deposit. Defendants' Response to Soroof's SOF ¶ 19; First Fetouh Decl., Exhibit 11, Jackson Decl. ¶ 7. Defendants have shown in earlier filings herein that this declaration, which purports to alter the terms of the parties' contract, is incompetent summary judgment proof in the first instance. Docket No. 46, Memorandum of Law in Support of Defendant GE Microgen, Inc.'s Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) ("12(c) Memo."), at 14-17; Docket No. 70, Defendant GE Microgen Inc.'s Reply Memorandum of Law in Support of Its

the pending Motion for Judgment on the Pleadings, Soroof is not entitled to return of that deposit where, as here, GEFCS ultimately was unable to produce the product. 12(c) Memo., at 7, 10-11. Accordingly there was no reason for GEFCS to believe that any stated dissatisfaction with the relationship amounted to a valid claim for the return of the nonrefundable deposit. Similarly, there was no reason for GEFCS to believe that Soroof's dissatisfaction amounted to a claim for millions of dollars in consequential damages, which are specifically prohibited under the Agreement. Defendants' Additional Facts ¶ 13; First Fetouh Decl., Exhibit 5, Agreement ¶¶ 12.2, 15.4; 12(c) Memo., at 8-10. There was simply no basis for GEFCS to believe that a claim was likely to arise from a terminated relationship and clear contractual terms barring the types of claims that Soroof brings today.

Soroof points to email correspondence produced by Plug Power as evidence that GEFCS purportedly knew that Soroof was likely to have a claim. Soroof's Memo., at 16 n.13. This email correspondence does no such thing. As explained in GE Microgen's and Plug Power's depositions, the correspondence illustrates that, at best, Soroof was unhappy with the outcome of the agreement with GEFCS and expressed its dissatisfaction to Defendants in the context of the business negotiations regarding Plug Power and Soroof's potential new distributor agreement. Soroof's unhappiness never amounted to more than "customer dissatisfaction" and Defendants had no reason to construe Soroof's unhappiness as a "claim." *See, e.g.*, Defendants' Response to Soroof's SOF ¶ 31; First Fetouh Decl., Exhibit 1, Conway Dep., at 48:5-48:15 ("A. They, as you said, appeared to be unhappy. So perhaps that is what he is referring to. I would also say that none of these people are lawyers. So when they are referring to contractual standpoint, I think

Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) ("12(c) Reply Memo."), at 9-10. But even by Soroof's own statement in said declaration, it was clear to Soroof at the time it paid the deposit that the Product was still in development.

that's their opinion. If there was a formal claim that had been made by Soroof to Plug Power, it would have been brought to my attention. And that did not happen."); *id.* at 49:13-50:4 ("A. To my knowledge, it was clear. The contract terminated on December 31, 2005. In that contract, which we did not have at the time but which we subsequently were provided by GE, it also is clear that there was a nonrefundable distribution fee. As I said before, we were looking to engage with and develop an ongoing relationship with Soroof. So trying to understand were they happy, what were their issues would have been part of Ravi's job, with the goal of coming to an agreement with Soroof to do a go-forward business relationship related to Plug Power."); First Fetouh Decl., Exhibit 3, Scovello Dep., at 113:19-113:24 ("We did not have a concern at the time we were terminating that Soroof was asking for the return of their million dollar distribution fee. We wanted to support both Soroof and Flint in setting up an alternative to what they originally started with GE. That was our biggest concern.").

Soroof also argues that the indemnification provision in the Termination Agreement shows knowledge of the likelihood of Soroof's claims. Soroof's Memo., at 17. To the contrary, the agreement to include the indemnification provision actually shows a belief that there was no likely claim on the part of Soroof. Plug Power agreed to the indemnification only because it saw *minimal to no* risk to agreeing. Neither Plug Power nor GE Microgen believed that Soroof had any basis for asserting a claim at the time of dissolution because the Agreement had already expired on its own terms by that time and the terms of the Agreement barred any claim. Defendants' Response to Soroof's SOF ¶¶ 31-33; First Fetouh Decl., Exhibit 1, Conway Dep., at 85:8-85:12 ("I felt that there was no claim, that the risk was minimal, and that because GE had asked for it and I saw no risk to Plug Power that we could agree to that request."). GE Microgen requested the indemnification provision not because it thought Soroof was likely to assert a

claim, but because it did not produce fuel cell products and therefore had no means of addressing any issue Soroof might have arising out of *future* events related to the alternative arrangement that Plug Power and Soroof were exploring. Defendants' Response to Soroof's SOF ¶ 32; First Fetouh Decl., Exhibit 3, Scovello Dep., 123:18-123:21 ("[O]nce we had dissolved our agreement with Plug Power, we had no way of resolving any kind of issues with any distributors that could come up after that time."); *id.* at 123:25-124:2 ("A. There were no claims that were made at the time, but we just had no means to address them going forward.").

### B. Section 18-804(b) Only Requires Provision If the LLC Has Assets for Distribution at the Time of Dissolution.

Further, Soroof is not entitled to summary judgment because Section 18-804(b) of the LLC Act does not require that funds be set aside as provision when there are *no* available LLC assets for distribution at the time of dissolution. Section 18-804(b) provides that "***If there are sufficient assets***, such claims and obligations shall be paid in full and any such provision for payment made shall be made in full. ***If there are insufficient assets***, such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ***ratably to the extent of assets available therefore***." At the time of dissolution, it is undisputed that GEFCS had no assets available for distribution or payment of any claims. Defendants' Response to Soroof's SOF ¶ 12; First Fetouh Decl., Exhibit 3, Scovello Dep., at 75:11-75:18 ("GEFCS really had no cash assets. The only items that existed within the physical plant were the server that was used to connect our computers to the GE server . . . and a phone switch which was a connection to a GE communication network."). Therefore, GEFCS was under no obligation to set aside any provision for a potential claim by Soroof.

### C. To the Extent GEFCS Was Required to Make Provision for a Potential Claim by Soroof, GEFCS Made Provision That Was Reasonably Likely to be Sufficient to Provide Compensation for a Claim by Soroof.

Even if the "dissatisfaction" of Soroof with the GEFCS business venture somehow rose to the level of a possible "claim" requiring provision under Section 18-804(b)(3), Soroof still is not entitled to summary judgment. To the contrary, the undisputed facts demonstrate that Defendants are entitled to summary judgment on these issues. The statute only requires that a dissolving LLC "make such provision as will be *reasonably likely to be sufficient to provide compensation*" for a possible claim. Section 18-804(b)(3) (emphasis added). To the extent any provision was necessary – and none was necessary – GEFCS made such provision in the Termination Agreement through Plug Power's agreement to make "commercially reasonable efforts" to enter in a separate distributor agreement with Soroof for the exclusive distribution of a fuel cell product produced by Plug Power called "GenCore." Defendants' Additional Facts ¶ 22; First Fetouh Decl., Exhibit 9, PPI000107-09, Termination Agreement ¶ 2(b). Like the fuel cell product targeted for development by GEFCS, the GenCore product was also a PEM fuel cell, but the GenCore product had already been successfully developed for application as a back-up power source. Defendants' Response to Soroof's SOF ¶ 27. Plug Power offered to make Soroof the exclusive distributor of GenCore, an existing product, in Saudi Arabia without payment of any distributor fee. Defendants' Additional Facts ¶ 23.

It is also undisputed that Plug Power and Soroof engaged in extensive negotiations in an attempt to enter into a new distributor agreement for the GenCore product, including Soroof's dealings with third parties for the sale of the Plug Power product in Saudi Arabia. Defendants' Additional Facts ¶¶ 24-25; First Fetouh Decl., Exhibit 1, Conway Dep., at 92:13-94:10 ("Q. And still talking about the negotiations that had been happening up to the point of the signing of the termination agreement, how long had they been going on up to that date, which is March 2006?

A. I believe they had been going on for some time, for a number of months at least. . . . They involved a discussion of the product and its capabilities. They involved a discussion with Soroof related to the third-party fueling provider . . . So there were discussions, visits, meetings with the hydrogen provider. And there were a lot of discussions around different concepts for how the hydrogen would – the best method to have the hydrogen available for the GenCore products."). These negotiations included communications between Soroof, Plug Power, and third parties for Soroof's distribution of Plug Power's GenCore product in Saudi Arabia, the identification of Soroof as Plug Power's distributor in Saudi Arabia, and protocol for Soroof's transmittal of proposals to potential customers for the sale of Plug Power's fuel cell products.[6]

The Termination Agreement's provision requiring Plug Power to make commercially reasonable efforts to enter into a new distribution agreement with Soroof was sufficient provision under the Delaware statute. Soroof claims – without support – that Plug Power's efforts to enter into a new distribution agreement with Soroof does not constitute "reasonable provision" because the new distribution agreement was not for the original Product provided for in the Distributor Agreement. Soroof's Memo., at 15-16. But the Delaware statute does not require a

---

[6] *See, e.g.*, First Fetouh Decl., Exhibit 12, PPI000383, March 10, 2006 email from Plug Power to Soroof (attaching proposed Plug Power/Soroof International Distributor Agreement); First Fetouh Decl., Exhibit 13, PPI000403, Proposed Plug Power/Soroof International Distributor Agreement; First Fetouh Decl., Exhibit 14, PPI000379, March 8, 2006 through March 14, 2006 email correspondence between Plug Power and a third party (identifying Soroof as "our distributor"), at PPI000379; First Fetouh Decl., Exhibit 15, PPI000456-465, December 25, 2005 through February 27, 2006 email exchange between Soroof and Plug Power (concerning protocol for transmittal of product proposals to customers); First Fetouh Decl., Exhibit 16, PPI000372-375, March 9, 2006 through March 15, 2006 email exchange between Plug Power and Soroof (regarding proposals to third parties for product sales); First Fetouh Decl., Exhibit 17, PPI000356, March 29, 2006 through March 31, 2006 internal Plug Power email (reporting that Plug Power was "presently in the process of formalizing the Distributor Agreement with Soroof…"), at PPI000356; First Fetouh Decl., Exhibit 18, PPI000370, March 9, 2009 through April 3, 2006 email exchange between Plug Power and a third party (characterizing Soroof as company which "represents Plug Power in Saudi Arabia"), at PPI000371.

dissolving LLC to satisfy the demands of a potential claimant by offering the exact same product. Nor does Delaware law require a dissolving LLC to satisfy demands without regard to the merits or likelihood of a possible claim. Just as an existing LLC need not satisfy meritless demands, a dissolving LLC need not do so either. Even if Soroof's claims were to be considered "likely to arise" under §18-804(b)(3) based on the facts then known, those potential claims were still without merit since they were based on an expired contract and a non-refundable distribution fee. Moreover, there was no reason for GEFCS to anticipate the consequential damages that Soroof never sought until the filing of the arbitration demand. Although Delaware case law offers little guidance on what constitutes "provision as will be reasonably likely to be sufficient to provide compensation," offering a new distribution agreement at no cost surely constitutes reasonable provision for a meritless claim. In fact, offering nothing for a meritless claim should be a reasonable provision. Because GEFCS, which had no assets, made provision that was reasonably likely to provide compensation for a potential "claim" by Soroof, Defendants complied with Section 18-804(b)(3). Soroof is therefore not entitled to summary judgment as a matter of law on the basis that GEFCS was improperly dissolved under the LLC Act. To the contrary, the evidence mandates the opposite result of summary judgment in favor of Defendants.[7]

## III. SOROOF MAY NOT BRING SUIT AGAINST PLUG POWER AND GE MICROGEN BECAUSE GEFCS WAS NOT AN ALTER EGO OF ITS FORMER MEMBERS.

Soroof also asks this Court to take the remarkable step of piercing the corporate veil of GEFCS to hold GE Microgen and Plug Power liable for the actions of GEFCS. As shown in

[7] It is not clear what "judgment" Soroof is requesting through its Motion. Soroof's Motion, even if granted, is not dispositive of its claims. Soroof would still bear the burden of proving the elements of its underlying claims. The Court need never reach those underlying

Defendants' Memo. at 22-25 and below, there is no ground to do so. GE Microgen and Plug Power, as the former members of GEFCS, cannot be liable for the alleged debts of the dissolved LLC. Under the LLC Act:

> [T]he debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be *solely* the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

§ 18-303(a) (emphasis added). Faced with this clear limitation of liability to the members of an LLC, Soroof asks this Court to disregard corporate structure and "pierce the veil" of GEFCS. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) ("The shareholders of a corporation and the members of an LLC generally are not liable for the debts of the entity, and a plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces '*a difficult task*.'") (emphasis added) (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. Civ. A. 1331, 1989 WL 110537 (Del. Ch. Sept. 19, 1989)). A court may only "pierce the veil" of an LLC "where there is fraud or where [the corporation] is in fact a mere instrumentality or alter ego of its owner." *NetJets Aviation, Inc.*, 537 F.3d at 176 (quoting *Geyer v. Ingersoll Pubs. Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)). "Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation *must be a sham and exist for no other purpose than as a vehicle for fraud*." *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494(DLC), 2007 WL 2044656, at *5 (S.D.N.Y. July 17, 2007) (emphasis added) (internal quotation omitted) (citing

---

claims, however, since it can and should deny Soroof's Motion and grant Defendants' Motion for Summary Judgment on all counts.

*Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch.1999)).[8]

Soroof has not met and cannot meet this high standard. There can be no genuine dispute that GEFCS was formed for anything other than legitimate purposes by two separate entities. Both members of GEFCS had different roles and responsibilities with regard to GEFCS and expended a significant amount of time and resources in the GEFCS venture. When the goals of GEFCS did not materialize, GEFCS was dissolved. There is no genuine issue of material fact that GEFCS was valid throughout its formation, existence, and dissolution. Soroof's Motion for Partial Summary Judgment should be denied.

### A. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because Soroof Cannot Show That GEFCS, GE Microgen, and Plug Power Operated As a Single Economic Entity.

Soroof claims that the Court should pierce the veil of GEFCS because GEFCS was the "alter ego of Plug Power and the GE entities." Soroof's Memo., at 17. To prevail under this theory, Soroof must show that "the entities in question operated as a single economic entity." *NetJets Aviation, Inc.*, 537 F.3d at 177. It has not done so. "In the alter-ego analysis of an LLC, somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required." *Id.* at 178 (noting only that "if two entities with common ownership failed to follow legal formalities *when contracting with each other* it would be tantamount to declaring that they are indeed one in the same") (emphasis in original) (internal quotation and citation omitted).

---

[8] Soroof cites this case, *Richie Capital Management, L.L.C.*, in its Memorandum (at 17), but that case in fact supports Defendants' arguments and explains the high hurdle Soroof faces in prevailing on its theory that the Court should pierce GEFCS's veil. *See Ritchie Capital Mgmt., L.L.C.*, 2007 WL 2044656, at *5 ("Persuading a Delaware court to disregard the corporate entity is a difficult task.") (internal quotation and citation omitted).

Soroof's only argument in support of piercing the veil of GEFCS is its conclusory contention that GEFCS lacked an independent existence because it "was nothing more than a shell within a shell of the ultimate controlling entity, GE." Soroof's Memo., at 18-19. But to pierce the veil of GEFCS under the "alter ego" theory, Soroof must show that all three entities—GEFCS and its former members, GE Microgen ***and*** Plug Power—operated as a single economic entity, such that there was no legal distinction between them. *See In re Heritage Org., L.L.C.*, 413 B.R. 438, 514 (Bankr. N.D. Tex. 2009) (applying Delaware law and noting that "*the Delaware two-pronged test must be applied to, and satisfied at, each level or layer of ownership*") (emphasis added). Soroof has not and cannot do so here. In fact, Soroof entirely ignores Plug Power's involvement in GEFCS, which is fatal to Soroof's argument. Soroof's Memo., at 18-19. It is undisputed that Plug Power initially had a 25% ownership interest in GEFCS, which later increased to 40%. Defendants' Response to Soroof's SOF ¶ 4; Defendants' Additional Facts ¶¶ 1-2; First Fetouh Decl., Exhibit 2, Amended LLC Agreement; First Fetouh Decl., Exhibit 1, Conway Dep., at 17:11-17:17; First Fetouh Decl., Exhibit 3, Scovello Dep., at 28:12-28:18. Plug Power's role in GEFCS was to develop and manufacture the Product, and Plug Power devoted substantial resources in attempting to do so. Defendants' Additional Facts ¶¶ 8, 17. GE Microgen and Plug Power had regular communication regarding Plug Power's efforts to develop the Product. Defendants' Additional Facts ¶ 9. Plug Power also contributed its own employees to support the activities of GEFCS. Defendants' Response to Soroof's SOF ¶¶ 7, 10. And Soroof does not and cannot point to any evidence – as there is none – that GEFCS and its former members failed to follow legal formalities when contracting with each other. *See* Soroof's Memo., at 18-19.[9] Soroof's argument that GEFCS was merely an alter ego of its

---

[9] Soroof cites to *UBS Securities, Inc. v. Tsoukanelis*, 852 F. Supp. 244 (S.D.N.Y. 1994) to

former members therefore fails as a matter of law, and GEFCS's corporate veil cannot be pierced on this basis.[10]

Soroof also claims that GEFCS was "grossly undercapitalized." Soroof's Memo., at 18. This is simply incorrect and contradicted by the summary judgment evidence. Article V of the Amended and Restated LLC Agreement, entitled "Capital Contributions," provides that GE Microgen previously contributed $10,000 to the capital of GEFCS. Defendants' Response to Soroof's SOF ¶ 6; First Fetouh Decl., Exhibit 2, GEFCS LLC Agreement, ¶ 5.1. The LLC Agreement also provides that GE Microgen would arrange for "its Affiliate, GE" to provide capital to GEFCS in the form of up to $8,000,000 in loans, and that GEFCS could borrow additional capital "from any Person, including any Member of any Affiliate of a Member" if

---

support its contention that the Court should pierce GEFCS's veil because of a purported lack of corporate formalities. Soroof's Memo., at 19. As an initial matter, *UBS Securities, Inc.* is inapplicable because it involved a corporation and, as discussed above, less emphasis is placed on whether an LLC observes internal formalities than a corporation in a veil piercing analysis. *NetJets Aviation, Inc.*, 537 F.3d at 178. *UBS Securities, Inc.* is also factually distinguishable from the undisputed facts here. In that case, the court found that an entity and an individual defendant were a single economic unit. 852 F. Supp. at 248. The entity not only lacked corporate formalities, but it "***never did anything at all apart from participating in the ownership***" of another corporation and that "***there was little, if any, distinction between the business of [the entity] and [the individual defendant's business]***. [The individual defendant] testified that he considered [the entity] ***to be a 'passive' entity***." *Id.* (emphasis added). Here, as discussed in Section III, part A, Soroof cannot show that all three entities—GEFCS and its former members, GE Microgen ***and*** Plug Power—operated as a single economic entity, such that there was no legal distinction between them. GEFCS was the vehicle for distributing the product, and both members of GEFCS had different roles and responsibilities with regard to GEFCS and expended a significant amount of time and resources in the GEFCS venture. Defendants' Additional Facts ¶¶ 8, 16-18. And, as discussed above, there is no evidence that GEFCS and its former members failed to follow legal formalities when contracting with each other.

[10] Soroof devotes nearly three pages of its memorandum to an argument that the Court should pierce the corporate veil of GE Microgen to hold GE Company liable as the parent company of GE Microgen. Soroof's Memo., at 20-22. As Soroof concedes, "this issue is not yet pending before the Court." *Id.* at 20. As such, Soroof's argument is irrelevant to its Motion and should be disregarded. In any event, just as there is no basis to support claims against GEFCS's

needed. Defendants' Response to Soroof's SOF ¶ 6; First Fetouh Decl., Exhibit 2, GEFCS LLC Agreement, ¶ 5.5. Further, on February 3, 1999, General Electric Company loaned GEFCS $18,250,000. Defendants' Response to Soroof's SOF ¶ 6; First Fetouh Decl., Exhibit 8, Declaration of Frank Scovello, at 7. Also, GEFCS also utilized Soroof's nonrefundable distributor fee to support the activities of GEFCS. Defendants' Response to Soroof's SOF ¶ 6; Declaration of Dahlia S. Fetouh submitted in support of Defendants' Opposition to Soroof's Motion for Partial Summary Judgment ("Second Fetouh Decl."), Exhibit A, Scovello Dep., at 121:15-121:20 ("Q. And that $1 million had gone to GE Fuel Cell? A. That $1 million went to offset the cost, my salary, the salaries of Barry Glickman and all the other people that were involved in supporting the activities of GEFCS, yes."). Additionally, other companies with which GEFCS established Distributor Agreements in addition to Soroof paid distributor fees. Defendants' Response ¶ 6; Second Fetouh Decl., Exhibit B, GE Fuel Cell Systems LLC Summary, GE000198; Second Fetouh Decl., Exhibit A, Scovello Dep., at 60:2-60:7 ("And there is a summary of all of the third party agreements that were entered into with distributors for GEFCS. In addition to that, over on the right, far right, you will see the fees that were paid over to GEFCS, and those were the distribution fees.").[11]

---

former members, there is likewise no basis to support Soroof's claims that GE Company is the alter ego of GE Microgen.

[11] Soroof cites to *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988) for the proposition that capitalization is a significant factor in the veil piercing analysis. Soroof's Memo., at 18. *Golden Acres, Inc.* is factually inapposite here. In that case, the individual defendants did not deny that the entity was undercapitalized. 702 F. Supp. at 1104. Further, the entity had defaulted on its mortgage and failed to meet its obligations for six years. *Id.* at 1105. The circumstances at issue here could not be more distinct. As explained above, GEFCS was not undercapitalized. Further, GEFCS never failed to meet any of its obligations under the Agreement to Soroof. *See* Defendants' Response to Soroof's SOF ¶¶ 20-25; 12(c) Memo.; 12(c) Reply Memo.

Moreover, GEFCS's capitalization and the fact that GEFCS ultimately did not generate revenue or have cash assets at the time of its dissolution is irrelevant to whether GEFCS was an alter ego of its former members. "[T]he inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business." *Trevino v. MERSCORP, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (holding that because plaintiffs conceded that the corporation "was created for a legitimate purpose," plaintiffs failed to allege facts sufficient to support a finding that corporation was undercapitalized and shareholder defendants and corporation operated as a single economic entity) (internal quotation and citation omitted); *see also Walkovszky v. Carlton*, 276 N.Y.S.2d 585, 595-96 (N.Y. 1966) ("[W]here initially adequate finances dwindle under the pressure of competition, bad times or extraordinary and unexpected liability, obviously the shareholder will not be held liable."). As discussed below in Section II, part B, GEFCS was formed and dissolved for legitimate commercial reasons. GEFCS ultimately did not generate revenue because technological challenges in the development of the specified PEM fuel cell product could not be overcome, notwithstanding the investment of a substantial amount of resources and expense by GEFCS and its former members. Defendants' Additional Facts ¶¶ 16-18. Soroof cannot show otherwise.[12]

---

[12] Soroof also contends that GEFCS "siphoned off" the nonrefundable distributor fee paid by Soroof "to pay the expenses of other GE employees." Soroof's Memo., at 18. As shown by the very deposition testimony quoted by Soroof in its Memorandum, GEFCS used the nonrefundable distributor fee to support the activities of GEFCS. Soroof's Memo., at 18 (quoting Scovello Dep., at 121:15-20 ("Q. And that $1 million had gone to GE Fuel Cell? A. That $1 million went to offset the cost, my salary, the salaries of Barry Glickman and all the other people that were involved in supporting the activities of GEFCS, yes.")). To characterize the legitimate use of these funds to pay legitimate business expenses as "siphoning" is disingenuous. *See Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 329 (C.D. Cal. 2004) (granting summary judgment for the defendant on plaintiff's claim that individual defendant was alter ego of corporation and holding that "the evidence shows that *on one*

### B. <u>Soroof May Not Bring Suit Against Plug Power and GE Microgen Because Soroof Cannot Show GEFCS Was Used To Perpetuate Fraud Or Promote Injustice.</u>

Moreover, Soroof points to no evidence showing that GEFCS was used to promote injustice or unfairness and instead merely alleges undercapitalization and a lack of corporate formalities as purported evidence of injustice or unfairness. Soroof's Memo., at 19. But Soroof also must show an element of injustice or unfairness *in addition to* purported undercapitalization and a lack of corporate formalities. *See NetJets Aviation, Inc.*, 537 F.3d at 177 ("*an overall element of injustice or unfairness must always be present, as well*") (emphasis in original) (internal quotations and citations omitted). That element may be present when the corporate form is "used as a shield for fraudulent or other illegal acts" or "to perpetuate a fraud or to promote injustice." *Id.* (internal quotations and citations omitted). Further, "the claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit." *Id.* at 183; *see also In re BH S&B Holdings LLC*, 420 B.R. 112 (S.D.N.Y. 2009) ("The fraud or similar injustice [must] be found in the defendants' use of the corporate

---

*occasion*, [the individual defendant] may have taken money from the corporation for personal use. Without evidence that [the individual defendant] was not entitled to the money – e.g., that it was not part of his compensation or a legitimate dividend – his use of the money does not raise triable issues of fact warranting a trial") (emphasis in original); *Teamsters Health & Welfare Fund of Phila. & Vicinity v. World Transp., Inc.*, 241 F.Supp.2d 499, 504 (E.D. Pa. 2003) (holding that company's charitable donations were not siphoned for personal benefit [of individual defendant] but rather, they were legitimate business expenses"). Further, as noted above, other companies with which GEFCS established Distributor Agreements paid distributor fees.

Soroof also cites to *Golden Acres, Inc.* when arguing that GEFCS "siphoned off" the nonrefundable distributor fee paid by Soroof. Soroof's Memo., at 18. Again, *Golden Acres, Inc.* is factually irrelevant on this point. 702 F. Supp. at 1106. That court found that the individual defendants "were siphoning funds out of the corporation at regular intervals. Despite a mounting mortgage debt and an insolvent corporate shell, after paying bills and payroll each month, [an individual defendant] would write a check to himself, to his brother, or to companies they controlled for whatever balance remained in the corporate checking account." *Id.* As discussed above, GEFCS used Soroof's nonrefundable distributor fees to pay legitimate business expenses to support the activities of GEFCS.

form. In other words, the underlying cause of action, at least by itself, does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.") (applying Delaware law) (internal citations and quotations omitted).

Soroof has not and cannot make this necessary required showing to justify piercing GEFCS's veil. GEFCS was formed and dissolved for legitimate commercial reasons. The purpose of GEFCS was to sell and market the fuel cell products that Plug Power would produce. Defendants' Additional Facts ¶¶ 3, 6. Since Plug Power went public in 1999, it spent over a half a billion dollars trying to bring the PEM fuel cell products to the marketplace. Defendants' Additional Facts ¶ 17; First Fetouh Decl., Exhibit 1, Conway Dep. , at 101:12-102:3 ("Q. Did it ultimately come about that Plug Power would up losing money in connection with the efforts to produce the product that was specified in the GE Fuel Cell contracts? A. Yes. That's why we turned our focus to the GenCore product. Q. Is it something that you know, that you are able to tell us even in a ballpark sense as to how much money Plug Power itself would up losing on these transactions? A. Well, I can tell you that since we have gone public in 1999, we have spent north of half a billion dollars trying to bring these products to the marketplace."). This involved the efforts of over 300 employees in research and development of the fuel cell products. Defendants' Additional Facts ¶ 17; First Fetouh Decl., Exhibit 3, Scovello Dep., at 48:17-48:21 ("It was not for lack of trying. It had over 300 people working on the development. They did significant research and development. It was just a very difficult challenge at the time."). Further, GE Microgen and other General Electric Company affiliates contributed to this investment through the payment of $42.5 million for Plug Power stock during the existence of

GEFCS. Defendants' Additional Facts ¶ 18; First Fetouh Decl., Exhibit 8, Declaration of Frank Scovello, at p. 9.

Despite the investment of substantial effort and expense, technological challenges in the development of the specified PEM fuel cell product could not be overcome. Plug Power was unable to produce the product as originally envisioned by the two companies due to these technical challenges, and the LLC was subsequently dissolved for this reason. Defendants' Additional Facts ¶¶ 16-17; First Fetouh Decl., Exhibit 3, Scovello Dep., at 47:21-48:1 ("GE's original intention was to distribute a certain kind of product that became very clear to us after an amount of time that Plug could not produce that product. When that became evident, that's when we started talking about terminating that agreement because basically we had nothing to sell."); First Fetouh Decl., Exhibit 6, Action by Written Consent of the Members of GE Fuel Cell Systems, L.L.C., at PPI000104 ("WHEREAS, the Company has experienced little financial activity over the past several years and is not likely to experience an increase in financial activity before the term of the Agreement expires."); First Fetouh Decl., Exhibit 7, PPI000147, Plug Power Inc. Form 8-K filed March 27, 2006, at PPI000149 (explaining the decision to dissolve GEFCS).

As explained in Defendants' Memo., for Soroof to suggest that the avoidance of liability to Soroof was the basis for the dissolution of a multi-million dollar venture between GE Microgen and Plug Power, flies in the face of the undisputed facts and reality. Soroof was but one of many subdistributors with which GEFCS contracted and only a small part of the overall business venture. The decision to terminate and dissolve the LLC was based on the inability of the LLC to accomplish its stated goals; no facts prove otherwise. Because GEFCS was not "used as a shield for fraudulent or other illegal acts" or "to perpetrate a fraud or to promote injustice,"

Soroof cannot show that the Court should pierce the veil of GEFCS to hold GE Microgen and Plug Power liable for the alleged conduct of GEFCS.

**CONCLUSION**

Soroof warns that accepting Defendants' position would mean that "any limited liability company, to avoid litigation, could simply dissolve and then hide its members behind the corporate veil." Soroof's Memo., at 13. That is simply not the case. First, that characterization does not describe the undisputed facts here. GEFCS did not dissolve to "avoid litigation." There was no threatened or prospective litigation or claim, and GEFCS properly dissolved because its business mission had been unsuccessful. Second, accepting Defendants' position works no injustice. Delaware law addresses situations where LLCs dissolve solely to avoid potential liability. That provision of the law simply does not apply here.

The implications of accepting Soroof's position, on the other hand, are significant and would work a substantial hardship on Delaware LLCs that simply does not exist under the law. Under Soroof's theory, a business partner of an LLC merely needs to express "dissatisfaction" with an LLC, and the LLC would be barred from dissolving (even if dissolving was in the best business judgment of the LLC) without setting aside potentially millions of dollars for a period of ten years in anticipation of a potential "claim" arising out of that dissatisfaction. The LLC would be required to set aside provision even if the LLC did not believe any claim existed based on the facts known at the time and did not believe that the expressed dissatisfaction could result in a claim that was worth that dollar amount. That simply cannot be the law.

For the reasons set forth herein and in Defendants' Memorandum in Support of their Motion for Summary Judgment, Defendants respectfully request that the Court deny Soroof's Motion for Partial Summary Judgment and grant Defendants' Motion for Summary Judgment.

Dated: March 31, 2011

Respectfully submitted,

/s/ Dahlia S. Fetouh
Dahlia S. Fetouh (*pro hac vice*)
Natalie F. Langlois (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
E-Mail: dfetouh@goodwinprocter.com
E-Mail: nlanglois@goodwinprocter.com

Abigail K. Hemani (AH 2071)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 813-8800
ahemani@goodwinprocter.com

Attorneys for Defendant PLUG POWER INC.

/s/ Michael D. Fisse
Michael D. Fisse, Esq.
Jan Van Steenis, Esq.
DAIGLE FISSE & KESSENICH, PLC
P.O. Box 5350
Covington, LA 70434-5350
(985) 871-0800
Fax: (985) 871-0899
Email: mfisse@daiglefisse.com
Email: jbradford@daiglefisse.com

Thomas Edward Healy, Esq.
PINO & ASSOCIATES, LLP
50 Main Street
White Plains, NY 10606
(914) 946-0600
Fax: (914) 946-0650
Email: thealy@pinolaw.com

Attorneys for Defendant GE MICROGEN, INC.

**CERTIFICATE OF SERVICE**

I, Dahlia S. Fetouh, hereby certify that true copies of the foregoing DEFENDANTS PLUG POWER INC. AND GE MICROGEN, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT were caused to be served by ECF and electronic mail this 31st day of March, 2011 on the following counsel:

James R. Lynch, Esq.
Jason Kaufman, Esq.
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York , NY 10018
(212) 302-2400
Fax: (212) 302-2210
Email: lynch@lawlynch.com
Attorneys for Plaintiff SOROOF TRADING DEVELOPMENT COMPANY, LTD.

Haig V. Kalbian, Esq.
Mary M. Baker, Esq.
Aaron W. Knights, Esq.
KALBIAN HAGERTY LLP
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Email: hkalbian@kalbianhagerty.com
Attorneys for Plaintiff SOROOF TRADING DEVELOPMENT COMPANY, LTD.

Dated: March 31, 2011 /s/__Dahlia S. Fetouh_________________