**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOROOF TRADING DEVELOPMENT COMPANY, LTD., Plaintiff, v. GE FUEL CELL SYSTEMS, LLC GE MICROGEN, INC., and PLUG POWER INC. Defendants. | No. 10 Civ. 1391 (LTS) (JCF) **PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS** |

Pursuant to the Federal Rules of Civil Procedure and Local Rule 56.1, Plaintiff Soroof Trading Development Company, Ltd. ("Soroof"), submits this Counterstatement to Defendants' Local Rule 56.1 Statement of Material Facts.

## I. FACTUAL BACKGROUND

1. In February 1999, Plug Power and GE Microgen entered into an agreement to form a limited liability company, GE Fuel Cell Systems, LLC ("GEFCS" or “GE Fuel Cell”), organized under the laws of the State of Delaware.

   **Plaintiff's Response:** Admitted.

2. Plug Power and GE Microgen formed GEFCS to sell and market fuel cell products that Plug Power was developing.

**Plaintiff's Response:** The evidence demonstrates that, in or about February 1999, GE, acting through GE Microgen, and Plug Power established GE Fuel Cell. See Ex. 1, Plug Power 8-K at PP1000149. Plaintiff does not dispute that the purpose of GEFCS was to sell and market fuel cell products that Plug Power was developing. GE Fuel Cell was established to act as the worldwide distributor of Plug Power's Proton Exchange Membrane Fuel Cell (the "Product"). See Ex. 2, Scovello Dep. Tr. at 33:4-13.

3. The product that Plug Power was developing, and GEFCS was planning to distribute, was a Proton Exchange Membrane ("PEM") fuel cell (the "Product"). The Product was a "prime power fuel cell system... its intended application was to replace the generator, the power generator at a residence or small commercial facility."

**Plaintiff's Response:** The facts asserted in this Paragraph are admitted.

4. The Product – a complex interconnection of three components that included a fuel cell – was intended to be a continuous power product that would produce power twenty-four hours a day, seven days a week.

**Plaintiff's Response:** The facts asserted in this Paragraph are admitted. See Ex. 2, Scovello Dep. Tr. at 38:8-21.

5. The purpose of GEFCS was to market and sell the resulting PEM fuel cell product to various subdistributors around the world.

**Plaintiff's Response:** The facts asserted in this Paragraph are admitted.

6. Plug Power and GEFCS entered into a Master Distributor Agreement setting forth GEFCS's obligations to market, sell, and provide services for the Product.

**Plaintiff's Response:** The facts asserted in this Paragraph are admitted.

7. GEFCS was the vehicle for distributing the product. GE Microgen's role in GEFCS was to manage sales and marketing, and Plug Power's role was to develop and manufacture the product.

**Plaintiff's Response:** Defendants' statement of facts in Paragraph 7 of the Defendants' Statement of Undisputed Material Facts is not supported by the record they cite. That is, the exhibits Defendants' cited in support of Paragraph 7 of the Defendants' Statement of Undisputed Material Facts do not support a claim that "GE Microgen's role was to manage sales and marketing." Instead, the testimony cited by Defendants of Mr. Conway was that "*GE's* role" – not GE Microgen's – "was to manage sales and marketing" of the Product.

8. During the operation of GEFCS, employees of both GE Microgen and Plug Power supported the activities of GEFCS.

**Plaintiff's Response:** Defendants' statement of facts in Paragraph 8 of the Defendants' Statement of Undisputed Material Facts is not supported by the record they cite. That is, the exhibits Defendants' cited in support of Paragraph 8 of the Defendants' Statement of Undisputed Material Facts do not support a claim that "GE Microgen...supported the activities of GEFCS." Instead, the testimony of Mr. Scovello was that "*GE* provided people to support the joint venture...." <u>See</u> Ex. 3 to Defendants' Motion for Summary Judgment at 33:1-33:3.

9. Plug Power devoted over 300 employees toward the effort of developing the Product to specifications, while GE Microgen engaged in efforts to market the product nationwide and around the world through its network of subdistributors.

**Plaintiff's Response:** The facts asserted in Paragraph 9 of the Defendants' Statement of Undisputed Material Facts are irrelevant to the issue of the dissolution of GEFCS and the merits of Defendants' Motion for Summary Judgment. This fact notwithstanding, Defendants' statement of facts in Paragraph 9 of their Statement of Undisputed Material Facts is not supported by the record they cite. That is, there is no evidence cited in support of Paragraph 9 to support a claim that "GE Microgen engaged in efforts to market the product nationwide and around the world through its network of subdistributors." Instead, the evidence cited *only* supports a claim that "Plug Power devoted over 300 employees toward the effort...."

10. GE Microgen and Plug Power communicated regularly regarding Plug Power's efforts in developing the fuel cell product.

**Plaintiff's Response:** The facts asserted in Paragraph 10 of the Defendants' Statement of Undisputed Material Facts are irrelevant to the issue of the dissolution of GEFCS and the merits Defendants' Motion for Summary Judgment. This fact notwithstanding, Defendants' statement of facts in Paragraph 10 of their Statement of Undisputed Material Facts is not supported by the record they cite. That is, there is no evidence cited in support of Paragraph 10 to support a claim that "GE Microgen and Plug Power communicated regularly." Instead, the record cited provides that "there was daily conversation between *GE* and Plug Power...."

11. GE Microgen leased office space at Plug Power's facility. GE Microgen had office space for more than twenty employees in Plug Power's facility, and each company's office was identified by a separate sign and each company was unable to access the other's space.

**Plaintiff's Response:** Admitted.

12. GE Microgen and Plug Power each had their own employees.

**Plaintiff's Response:** The statement that GE Microgen had its own employees is plainly contradicted by the record and is unsupported by the record Defendants cite in Paragraph 12 of their Statement of Undisputed Material Facts. GE Microgen maintained no employees of its own. Instead, all of the individuals tasked to the GE Fuel Cell project were actually employed by General Electric Company, Inc. ("GE") from GE's energy division. See Ex. 2, Scovello Dep. Tr. at 32:14-33:3; Ex. 12, Conway Dep. Tr. at 6:25-7:3 and 20:23-21:3.

13. On June 6, 2000, GEFCS and Soroof Trading Development Company, Ltd. ("Soroof") entered into a Distributor Agreement (the "Agreement") that would allow Soroof to be the exclusive distributor for the PEM Fuel Cell products within the Kingdom of Saudi Arabia.

**Plaintiff's Response:** Admitted.

14. At the time that Agreement was negotiated and executed, the PEM Fuel Cell products were still in development.

**Plaintiff's Response:** Admitted, although GE Fuel Cell warranted by the Agreement that it was fully capable of performing its obligations; i.e., that it had saleable Product for delivery to Soroof. Specifically, GE Fuel Cell warranted that "[i]t has full authority and capacity to enter into and perform its obligations under this Agreement." See Ex. 6, Agreement at ¶ 10.1.2. GE Fuel Cell further warranted that it had "full legal right, power and authority to enter into and perform this Agreement." Id. at ¶ 10.1.4.

15. In exchange for the right to be the sole and exclusive distributor of the PEM Fuel Cell products in Saudi Arabia, Soroof paid a $1,000,000 distributor fee that was specified as "non-refundable" under the terms of the Agreement.

**Plaintiff's Response:** The facts asserted in Paragraph 15 of the Defendants' Statement of Undisputed Material Facts are irrelevant to the issue of the dissolution of GEFCS and the merits Defendants' Motion for Summary Judgment. Moreover, Plaintiff notes that the issue of whether the money paid in exchange for the exclusive distributorship was not part of Phase I discovery. These facts notwithstanding, Soroof paid a "distributor fee" only because GE represented to Soroof that GE was able to deliver Product to Soroof. See Ex. 7, Jackson Decl. at ¶ 7. Although Soroof admits that the Agreement identifies this distributor fee as "non-refundable," this designation does not render said fee unrecoverable under applicable law.

16. The Agreement specifically prohibited consequential damages.

**Plaintiff's Response:** This is an issue of law that is not the proper subject of a statement of material facts not in dispute. To the extent that the Court may consider this an issue of fact, the issue of whether the Agreement permitted consequential damages was not part of Phase I discovery. As such, there is a lack of evidence to address the validity of this fact at this time and Plaintiff refers this Court to the Plaintiff's Rule 56(f) Affidavit.

17. The Distributor Agreement expired on its own terms on December 31, 2005.

**Plaintiff's Response:** This is an issue of law that is not the proper subject of a statement of material facts not in dispute. Moreover, the facts asserted in Paragraph 17 of the Defendants' Statement of Undisputed Material Facts are irrelevant to the issue of the dissolution of GEFCS and the merits Defendants' Motion for Summary Judgment. These facts notwithstanding, Plaintiff admits that the Distributor Agreement provides for its expiration on December 31, 2005.

18. At the time the Agreement expired, GEFCS had been unable to produce the PEM Fuel Cell products to commercial specifications and no products were available for distribution.

**Plaintiff's Response:** Admitted.

19. Ultimately, the GEFCS business venture was unsuccessful in developing the specified PEM fuel cell product for distribution. Despite the investment of substantial effort and expense, technological challenges in the development of the Product could not be overcome. Plug Power was unable to produce the product as originally envisioned by the two companies due to these technical challenges, and the LLC was subsequently dissolved for this reason.

**Plaintiff's Response:** Plaintiff admits the facts asserted in Paragraph 19.

20. Since Plug Power went public in 1999, it spent over a half a billion dollars trying to bring the PEM fuel cell products to the marketplace. This involved the efforts of over 300 employees in research and development of the fuel cell products.

**Plaintiff's Response:** The facts asserted in Paragraph 20 of the Defendants' Statement of Undisputed Material Facts are irrelevant to the issue of the dissolution of GEFCS and the merits Defendants' Motion for Summary Judgment. These facts notwithstanding, Plaintiff admits the facts asserted in Paragraph 20.

21. Further, GE Microgen and other General Electric Company affiliates contributed to this investment through the payment of $42.5 million for Plug Power stock during the existence of GEFCS.

**Plaintiff's Response:** The facts asserted in Paragraph 21 of the Defendants' Statement of Undisputed Material Facts are irrelevant to the issue of the dissolution of GEFCS and the merits Defendants' Motion for Summary Judgment. Moreover, the support for these facts is the Declaration of Frank Scovello, which was prepared to provide information that Mr. Scovello was unprepared to give in response to questions posed to him at deposition. As such, Plaintiff has been deprived of any ability to conduct additional discovery on this newly disclosed information. Plaintiff anticipates that, if given the opportunity to conduct additional discovery, it will be clear that the original source of the referenced "investment" will be GE. Notwithstanding these facts, Plaintiff admits the facts asserted in Paragraph 21, which are immaterial to Defendants' Motion for Summary Judgment, *solely for the purposes of the Court's addressing Defendants' instant Motion for Summary Judgment* and for no other purpose in this litigation.

22. All parties involved were disappointed that technical challenges prevented the production and distribution of Plug Power's product, as both GE Microgen and Plug Power expended substantial amounts of time and money trying to create and market the product for distribution.

**Plaintiff's Response:** The facts asserted in Paragraph 22 of the Defendants' Statement of Undisputed Material Facts are irrelevant to the issue of the dissolution of GEFCS and the merits Defendants' Motion for Summary Judgment. This fact notwithstanding, Defendants' statement of facts in Paragraph 22 of their Statement of Undisputed Material Facts is not supported by the record they cite. That is, there is no evidence cited in support of Paragraph 22 to support a claim that "GE Microgen...expended substantial amounts of time and money trying to create and market the product for distribution." Instead, the evidence cited *only* supports a claim that Plug Power "had over 300 people working on the development. They did significant research and development."

23. The members of GEFCS entered into a Termination Agreement on March 24, 2006 in which they approved the dissolution, termination, and winding up of GEFCS.

**Plaintiff's Response:** Defendants' statement of facts in Paragraph 23 of their Statement of Undisputed Material Facts is not supported by the record they cite. To wit, the Termination Agreement referenced was entered by GE Microgen, Inc., General Electric Company, GE Fuel Cell Systems, LLC, and Plug Power Inc. See Ex. 9 in Support of Defendants' Motion for Summary Judgment. It was these parties and not solely "the members of GEFCS," which is limited to Defendants GE Microgen and Plug Power, that "approved the dissolution, termination, and winding up of GEFCS."

24. A certificate of cancellation for GEFCS was filed on December 29, 2006 and took effect on December 31, 2006.

**Plaintiff's Response:** Admitted.

25. At the time of dissolution, GEFCS did not have any cash assets.

**Plaintiff's Response:** Admitted.

26. GEFCS's only assets at the time of dissolution were a computer server, a phone switch, a small amount of furniture, and distribution rights for Plug Power's technology.

**Plaintiff's Response:** Admitted.

27. In connection with the termination and dissolution, GEFCS terminated existing distribution agreements with subdistributors who had agreements that were still in operation by their terms.

**Plaintiff's Response:** Admitted.

28. At the time the decision to terminate the GEFCS LLC Agreement and dissolve GEFCS was made, the Distributor Agreement had already expired.

**Plaintiff's Response:** This is an issue of law that is not the proper subject of a statement of material facts not in dispute. Moreover, the facts asserted in Paragraph 28 of the Defendants' Statement of Undisputed Material Facts are irrelevant to the issue of the dissolution of GEFCS and the merits Defendants' Motion for Summary Judgment. These facts notwithstanding, Plaintiff admits that the Distributor Agreement expired on its own terms on December 31, 2005, but submits that the record does not establish the precise date that the decision to dissolve GEFCS was made.

29. GEFCS had no ongoing obligations to Soroof under that expired contract.

**Plaintiff's Response:** This is an issue of law that is not the proper subject of a statement of material facts not in dispute. To the extent any response is required, Plaintiff denies this alleged fact. Defendants did have obligations to Plaintiff after the termination of the Agreement under Delaware Law, specifically under 6 Del. Code § 18-1804(b)(3).

30. Soroof had only expressed dissatisfaction "with GE's total lack of performance of the Agreement."

**Plaintiff's Response:** Denied as Soroof's expressed dissatisfaction went far beyond that which Defendants claim in Paragraph 30. To wit, Plaintiff had expressed concerns before the termination of the Agreement as early as 2002 and after in early 2006. See Exhibit 2, Scovello Dep. Tr. at 90:19-91:13 (Q: What concern did Soroof express to you about termination of the agreement, as you called it? A: I told you, in the discussion that I had with Jim Jackson that we discussed the termination agreement...Q: The conversation you had with Jim Jackson was in early 2006 correct? A: Yes.), Id. at 101:1-11 ("Yes. [Soroof] did express concern well before the termination, well before my discussion with Jim Jackson, when we first told them that Plug was not able to deliver product, yes. They had expressed concern as early as, I don't know the exact year, but I want to say 2002, '3"); see also Exhibit 7, Jackson Decl. at ¶ 13

31. Because the Agreement with Soroof had expired by its terms, and because Soroof had articulated no viable claim against GEFCS under the Agreement in any event, GE Microgen and Plug Power viewed the expiration of the Agreement as the end of the contractual relationship between GEFCS and Soroof; and did not believe there was any possible or viable claim by Soroof.

**Plaintiff's Response:** The "facts" alleged present issues of law that are not the proper subject of a statement of material facts not in dispute. To the extent any response is required, Plaintiff denies the facts alleged. Under Delaware law, Plaintiff was not required to make a formal claim under the Agreement regarding Defendants' failure to perform. Further, Defendants were aware of potential claims by Plaintiff, which Defendants themselves judged as viable. See Ex. 8, January 5, 2006 E-mail from A. Bucknam ("GE took a $1MM payment from [Soroof], and now is concerned about legal problems given that the distributors feel that they didn't get value for their $'s."); see also Ex. 9, January 26, 2006 E-mail from R. Menon ("During our conversation this morning, [Soroof] did bring up the financial issues surrounding the expired GE agreement...[m]y fear is that...they may circle back to the investment they made to secure the [GE Fuel Cell] distributorship and somehow hold Plug Power accountable."). In light of their belief that Soroof maintained possible "viable" claims, Defendants agreed that Plug Power would indemnify GE, GE Microgen and GEFCS for potential claims by Soroof as a result of GEFCS's failure to perform under the Agreement. See Ex. 5, Termination Agreement at ¶ 2(b).

32. Because Plug Power had an interest in continuing to develop its business relationship with Soroof, Plug Power entered into discussions with Soroof about a potential new distributor agreement between Plug Power and Soroof.

**Plaintiff's Response:** Plug Power entered into discussions with Soroof about a potential new distributor agreement in an attempt to forestall Soroof from exercising its rights to pursue claims resulting from GEFCS's total lack of performance of the Agreement. See Ex. 8, January 5, 2006 Bucknam E-mail (Plug Power would seek to enter a distributorship agreement with Soroof "not because [Soroof is] the first choice distributor for our products, but because GE took a $1 MM payment from [Soroof], and now is concerned about legal problems given that [Soroof] feel they didn't get value for their $'s.").

33. Likewise, GE Microgen encouraged these discussions.

**Plaintiff's Response:** Defendants' statement of facts in Paragraph 33 of their Statement of Undisputed Material Facts is not supported by the record they cite. Specifically, Mr. Scovello, in his testimony cited by Defendants, only reflects *GE's* preference in this regard and not GE Microgen's.

34. In the Termination Agreement, Plug Power agreed to "make commercially reasonable efforts to enter into separate nonexclusive distributor agreements for Plug Power's GenCore product with Soroof" and one other subdistributor.

**Plaintiff's Response:** This is an issue of law that is not the proper subject of a statement of material facts not in dispute. Moreover, the Termination Agreement speaks for itself. To the extent a response is required, Soroof admits that the agreement provides that Plug Power "shall make commercially reasonable efforts toenter into separate nonexclusive distributor agreements for Plug Power's GenCore product with Soroof...."

35. Like the fuel cell product targeted for development by GEFCS, the GenCore product was also a PEM fuel cell, but the GenCore product had been successfully developed for application as a back-up power source (as opposed to continuous power).

**Plaintiff's Response:** Admitted.

36. Plug Power was offering to make Soroof the exclusive distributor of GenCore, an existing product, in Saudi Arabia without payment of any distributor fee.

**Plaintiff's Response:** Admitted.

37. Plug Power and Soroof engaged in extensive negotiations in an attempt to enter into a new distributor agreement for the GenCore product.

**Plaintiff's Response:** Plaintiff admits that Plug Power and Soroof entered into discussions about entering a new distributorship agreement for the GenCore product. However, Plaintiff declined to enter, and was not obligated to enter, into an agreement with Plug Power, which offered for distribution a product far different from that which it agreed to distributed with GEFCS. See Ex. 2, Scovello Dep. at 38:8-25.

38. These negotiations included communications between Soroof, Plug Power, and third parties for Soroof's distribution of Plug Power's GenCore product in Saudi Arabia, the identification of Soroof as Plug Power's distributor in Saudi Arabia, and protocol for Soroof's transmittal of proposals to potential customers for the sale of Plug Power's fuel cell products.

**Plaintiff's Response:** Plaintiff admits that Plug Power and Soroof entered into discussions about entering a new distributorship agreement for the GenCore product. However, Plaintiff declined to enter, and was not obligated to enter, into an agreement with Plug Power, which offered for distribution a product far different from that which it agreed to distributed with GEFCS. See Ex. 2, Scovello Dep. Tr. at 38:8-25.

39. In connection with these negotiations, GE Microgen asked Plug Power to obtain a release from Soroof for any liability under the Agreement. GE Microgen's president, Frank Scovello, testified that GE Microgen sought that release because, following execution of the Termination Agreement, GE Microgen would have no role in any communications with Soroof.

**Plaintiff's Response:** Denied. GE Microgen did have a role in communications with Soroof. See Exhibit 2, Scovello Dep. Tr. at 90:19-91:13 (Q: What concern did Soroof express to you about termination of the agreement, as you called it? A: I told you, in the discussion that I had with Jim Jackson that we discussed the termination agreement...Q: The conversation you had with Jim Jackson was in early 2006 correct? A: Yes.). Moreover, the Defendants' statement of facts in Paragraph 39 of their Statement of Undisputed Material Facts is not supported by the record they cite. Mr. Scovello testified that he was at all relevant times employed by the parent company GE, not GE Microgen or GEFCS. See Ex. 2, Scovello Dep. Tr. at 32:14-33:3; Ex. 12, Conway Dep. Tr. at 6:25-7:3 and 20:23-21:3. According to Mr. Scovello, "I was never employed by GE Microgen. My employer was GE Energy at the time I was involved with this activity with Soroof." Ex. 2, Scovello Dep. Tr. at 12:9-20.

40. In the Termination Agreement, GE Microgen asked Plug Power to agree to indemnify GEFCS and GE Microgen up to $1,000,000 if Plug Power did not obtain a release from Soroof releasing GEFCS from all liability relating to Soroof's payment of the $1,000,000 non-refundable distributor fee under the Agreement.

**Plaintiff's Response:** Defendants' statement of facts in Paragraph 40 of their Statement of Undisputed Material Facts is not supported by the record they cite. According to the Termination Agreement, in the event that Plug Power did not obtain a release, "PPI [Plug Power] shall indemnify each of GEFCS [GE Fuel Cell], GE and GEMG [GE Microgen] from any losses, liabilities, damages, causes of action, claims, costs and expenses (including reasonable attorneys fees), related to or associated with the failure of PPI to obtain adequate releases from Soroof...." See Ex. 5, Termination Agreement at ¶ 2(b).

41. Plug Power agreed to the indemnification provision because it saw minimal to no risk to Plug Power by agreeing to it, as the Agreement had already expired on its own terms at the time of the dissolution of GEFCS and no viable claims existed under the Agreement.

**Plaintiff's Response:** Denied. Plug Power saw substantial risk in the indemnity and, consequently, negotiated over its breadth. See Ex. 10, February 28, 2006 G. Silvestri E-mail ("Essentially, GE is looking for Plug Power to broadly and fully indemnify GE for any possible actions taken at any future date by the distributors...Plug Power's position is that we will not sign such a broad and open ended agreement...."); see also Exhibit 12, Conway Dep. Tr. at 66:16-20 ("I think that their legal team and this was typical in how GE addressed these things, certainly the legal folks at GE, if there was an opportunity to protect GE, they were interested in doing that.")

42. GE Microgen requested the indemnification provision because it did not produce fuel cell products and therefore had no means of addressing any issue Soroof might have in the future.

**Plaintiff's Response:** Defendants' statement of facts in Paragraph 42 of their Statement of Undisputed Material Facts is not supported by the record they cite. Specifically, the testimony cited does not indicate that "GE Microgen requested the indemnification provision." In fact, according to Mr. Scovello, "I was never employed by GE Microgen. My employer was GE Energy at the time I was involved with this activity with Soroof." Ex. 2, Scovello Dep. Tr. at 12:9-20.

43. The dissolution of GEFCS was reported publicly by Plug Power.

**Plaintiff's Response:** Plaintiff admits that Plug Power disclosed the dissolution of GEFCS in an SEC Form 8-K filed on March 27, 2006. At no time did Defendants ever disclose the fact of the dissolution to Soroof. See Ex. 2, Scovello Dep. Tr. at 92:22-93:4; Ex. 12, Conway Dep. Tr. at 63:13-22. Instead, it was only on a chance reading of a partial SEC filing that Soroof learned of the dissolution of GEFCS. See Ex. 7, Jackson Decl. at ¶ 14.

44. By the spring of 2006, discussions between Plug Power and Soroof slowed and, ultimately, Soroof chose not to enter into a new distributor agreement for the GenCore product.

**Plaintiff's Response:** Plaintiff admits that Plug Power and Soroof did not reach an accord to distribute the GenCore product. However, Plaintiff declined to enter, and was not obligated to enter, into an agreement with Plug Power, which offered for distribution a product far different from that which it agreed to distributed with GEFCS. See Ex. 2, Scovello Dep. Tr. at 38:8-25.

## II. PROCEDURAL BACKGROUND

45. On July 1, 2008, Soroof filed an arbitration demand against GEFCS seeking to recover damages under the theory that GEFCS had improperly failed to deliver products pursuant to the Agreement.

**Plaintiff's Response:** Plaintiff admits that it filed an arbitration on July 1, 2008. However, Plaintiff brought claims for breach of contract and misrepresentation. See Dkt. #13, Preliminary Pretrial Statement at 3.

46. On January 22, 2010, the parties entered into a Venue Agreement, whereby the parties agreed to suspend the arbitration and litigate Soroof's claims in this Court.

**Plaintiff's Response:** Admitted.

47. On February 22, 2010, Soroof filed a complaint against GEFCS, GE Microgen, and Plug Power asserting claims originally stated in the arbitration as well as various claims allegedly arising out of the Agreement, including claims for breach of contract, misrepresentation, conversion, and unjust enrichment.

**Plaintiff's Response:** Admitted.

48. Soroof admits that it never made a formal written claim to GEFCS or its former members before the filing of the arbitration demand or the current lawsuit.

**Plaintiff's Response:** Plaintiff admits that no "formal written" notice was given to GEFCS or its former members, although it is not disputed that Plaintiff expressed its dissatisfaction to GEFCS prior to its dissolution and that the Defendants were concerned about potential claims by Soroof. Under Delaware law, Plaintiff was not required to make a formal claim under the Agreement regarding Defendants' failure to perform. Further, Defendants were aware of potential claims by Plaintiff, which Defendants themselves judged as viable. See Ex. 8, January 5, 2006 E-mail from A. Bucknam ("GE took a $1MM payment from [Soroof], and now is concerned about legal problems given that the distributors feel that they didn't get value for their $'s."); see also Ex. 9, January 26, 2006 E-mail from R. Menon ("During our conversation this morning, [Soroof] did bring up the financial issues surrounding the expired GE agreement...[m]y fear is that...they may circle back to the investment they made to secure the [GE Fuel Cell] distributorship and somehow hold Plug Power accountable."). In light of their belief that Soroof maintained possible "viable" claims, Defendants agreed that Plug Power would indemnify GE, GE Microgen and GEFCS for potential claims by Soroof as a result of GEFCS's failure to perform under the Agreement. See Ex. 5, Termination Agreement at ¶ 2(b); see also Ex. 7, Jackson Decl. at ¶ 13.

49. The parties agreed to divide discovery in this case into two phases with the first phase limited to the threshold issue of the dissolution of GEFCS.

**Plaintiff's Response:** Admitted.

50. Soroof did not produce any documents in response to Defendants' requests for production of documents.

**Plaintiff's Response:** Plaintiff had already produced documents responsive to Defendants' request for production prior to their issuance. Defendants' claim that "Soroof did not produce any documents" was the subject of a Motion to Compel filed by GE Microgen (Dkt. # 26) and addressed by Magistrate Judge Francis, who denied the Motion (Dkt. # 78). At the hearing conducted on GE Microgen's Motion to Compel, Magistrate Judge Francis noted "there does not appear to be any additional information relevant to dissolution that Microgen has requested that has not been produced." See Ex. 13, Transcript of Civil Cause for Conference Before the Honorable James C. Francis, IV, at 19:17-19.

51. Soroof produced no document purporting to be a claim made to GEFCS prior to its dissolution.

**Plaintiff's Response:** Plaintiff admits that it produced no document that constituted a "formal claim." Plaintiff incorporates its response articulated in Paragraph 48, above.

52. The only document that Soroof referenced in its responses to Defendants' document requests was a Declaration of James Jackson, Executive Director of the Power Division at Soroof, that was generated for the arbitration proceeding.

**Plaintiff's Response:** Plaintiff admits that it referenced the Declaration of James Jackson in its responses to Defendants' document requests. Plaintiff denies that this was the "only document" it referenced. The Plaintiff also referenced the Agreement, Plug Power Inc. Form 10-K, Certificate of Formation for GE Fuel Cell Systems, LLC, and Certificate of Cancellation of Certificate of Formation of GE Fuel Cell Systems, LLC, dated December 29, 2006 and effective December 31, 2006. See Plaintiff's Response to Defendants' Request for Production of Documents No. 1 Regarding the Dissolution Issue, attached as Ex. 15 at 3.

53. In response to an Interrogatory asking Soroof to identify all documents in which it gave notice to GEFCS of the claims stated in the Complaint, Soroof merely objected to the request and did not provide any substantive answer.

**Plaintiff's Response:** Soroof admits that it lodged a sound objection in response to Interrogatory No. 7.

54. A Motion for Judgment on the Pleadings has been fully briefed and is currently pending before this Court seeking to dismiss the complaint as both time-barred and barred by the unambiguous terms of the Soroof Distributor Agreement.

**Plaintiff's Response:** Plaintiff admits that a Motion for Judgment has been fully briefed, although it denies that said Motion has merit.

## III. Additional Material Facts of Plaintiff

55. This litigation originally commenced on July 1, 2008, when Soroof initiated AAA arbitration proceedings against GE Fuel Cell. GE Fuel Cell filed a Motion to Dismiss and asserted, among other things, that GE Fuel Cell was a dissolved entity, and, consequently, it claimed that Soroof could maintain no actions against it.

56. Soroof opposed GE Fuel Cell's Motion to dismiss, arguing, *inter alia*, that GE Fuel Cell, as a Delaware limited liability company, was required by the Delaware Code to "make such provision as will be reasonably likely to be sufficient to provide compensation" for claims that are either known or reasonably should have been known to GE Fuel Cell. See DEL. CODE ANN. Tit. 6, § 18-804(b)(3). GEFCS made no such provisions and failed to notify Soroof of its dissolution. See Complaint at ¶ ¶ 27-29.

57. The Arbitration Panel, chaired by the Hon. Kathleen Roberts, a retired federal judge from this Honorable Court, addressing the same arguments now before this Court,

denied GE Fuel Cell's Motion to Dismiss without prejudice to GE Fuel Cell filing a motion for summary judgment after discovery. See Ex. 14, Prehearing Order No. 2.

58. Both GE Fuel Cell and its immediate parent GE Microgen were undercapitalized. The funding for GE Fuel Cell came directly from GE itself. See Ex. 2, Scovello Dep. Tr. at 44:23-25. In fact, GE Fuel Cell was never capitalized or owned anything other than nominally-valued assets. Id. at 48:22-49:9. All of its operational funds came from its parent entities. Id. at 44:15-25. At the time of GE Fuel Cell's dissolution, it had "no cash on hand," "was not really a going concern," and its only assets were "a server," "a telephone switch," and a "small amount of furniture." Id. at 48:22-49:9. In a March 24, 2006 e-mail, in conjunction with GE Fuel Cell's dissolution, Sabrena Ponds, a GE Energy employee wrote: "the LLC was not generating revenue. The GE owner (Microgen) funded expenses incurred by [GE Fuel Cell]." See Ex. 3, March 24, 2006 S. Ponds E-mail.

59. Likewise, GE Fuel Cell did not have any employees. See Ex. 2, Scovello Dep. Tr. at 32:14-33:3; see Ex. 12, Conway Dep. Tr. at 20:23-21:3. Instead, all of the individuals tasked to the GE Fuel Cell project were actually employed by GE. Ex. 2, Scovello Dep. Tr. at 32:22-25; Ex. 12, Conway Dep. Tr. at 6:25-7:3 and 20:23-21:3.

60. The Management Committee of GE Fuel Cell was composed entirely of GE and Plug Power representatives. See Ex. 4, Action by Written Consent of Members of GE Fuel Cell Systems, LLC; see also Ex. 2, Scovello Dep. Tr. at 33:1-2.

61. On June 6, 2000 GE Fuel Cell entered into the "Distributor Agreement Between GE Fuel Cell Systems, LLC, and Soroof Trading Development Company Ltd." on or about June 6, 2000. See Ex. 6, Agreement. The Agreement established Soroof as the exclusive distributor for Product in the Kingdom of Saudi Arabia. Id. at ¶ 3.1.

62. Pursuant to the Agreement, Soroof paid GE a "distributor fee" of $1 million. See Ex. 6, Agreement at ¶ 6.4. Soroof paid this fee on the premise that GE Fuel Cell actually had saleable Product to deliver. See Ex. 7, Jackson Decl. at ¶ 7.

63. The $1 million paid by Soroof was used to pay the salaries of GE Energy employees working at GE Fuel Cell. See Ex. 2, Scovello Dep. Tr. at 121:15-20.

64. In conjunction with the Agreement, Defendants required Soroof to ready itself for distributing the Product, including, *inter alia*, by hiring staff and outfitting offices. See Ex. 7, Jackson Decl. at ¶ 6. Specifically, to undertake its obligations under the Agreement, Soroof expended in excess of $1 million, which expenditures were contemplated and, in fact, required by GE Fuel Cell. Id. Soroof undertook all of these expenses under the belief that GE Fuel Cell actually had saleable Product to deliver. See Ex. H, Jackson Decl. at ¶ 7.

65. Specifically, GE warranted in the Agreement that "[i]t has full authority and capability to enter into and perform its obligations under this Agreement." See Ex. 6, Agreement at ¶ 10.1.2. GE further warranted that it had "full legal right, power and authority to enter into and perform this Agreement." See Ex. G, Agreement at ¶ 10.1.4.

66. In the event that there was any change in the ability to deliver Product, GE Fuel Cell had a continuing obligation "to share promptly relevant information, including but not limited to product performance, failure and liability issues...." See Ex. G, Agreement at ¶ 7.4.

67. In or around November of 2000, Defendants notified Soroof that the Product would not be ready for distribution as promised. See Jackson Decl. at ¶ 8. According to Defendants, the Product was functional, but it did not yet meet quality standards. Id. Although, Defendants claimed quality standards prevented delivery of the product, in actuality there was no product to be delivered at all.

68. Frank Scovello admitted in his deposition: "Basically, that Plug was unable to produce the product to our specifications. They were producing technology, but it was considered pre-commercial by GE. So there was no commercial product that we could provide Soroof." See Ex. 2, Scovello Dep. Tr. at 101:21-25.

69. The fuel cell contracted for was supposed to produce power continuously, twenty-four hours a day, seven days a week. See Ex. 2, Scovello Dep. Tr. at 38:8-21. Throughout the term of the Agreement, Plug Power, which was overseeing the development of the Product could never produce a fuel cell to meet the specifications or the design functions required. Id. at 101:21-25. The best Plug Power could develop was a back-up generator. Id. at 74:22-75:6.

70. Defendants knew as early as 2001 that Plug Power was unlikely to ever successfully develop commercially marketable Product. See Exhibit C, Scovello Dep. Tr. at 102:11-19. Mr. Scovello explained that “it became clearer and clearer to us the challenge that was involved and that the product would never be developed.” Id. at 103:1-3

71. Despite Soroof having raised concerns regarding the failure to deliver Product from as early as 2002, Defendants never honestly conveyed to Soroof relevant information regarding the Product, including their inability to develop the Product, as required under section 7.4 of the Agreement. See Ex. 2, Scovello Dep. Tr. at 101:1-11.

72. Defendants never informed Soroof about the dissolution of GE Fuel Cell. See Ex. 2, Scovello Dep. Tr. at 92:22-25; Ex. 12, Conway Dep. Tr. at 27:7-10.

73. Defendants continued to falsely assure Soroof that the Product would eventually be delivered. See Ex. 7, Jackson Decl. at ¶ 9. During this time, Defendants encouraged Soroof to expand its infrastructure in preparation to distribute the Product. See Id. at ¶ 8. The Defendants fell into a pattern whereby they repeatedly contacted Soroof and

claimed that the Product was not yet ready due to various problems, while at the same time assuring Soroof that Product was forthcoming. Id. at ¶ 9.

74. To placate Soroof for its patience, GE agreed to expand Soroof's territory to encompass Lebanon. Id. In light of Defendants' repeated assurances, Soroof entered negotiations with various third-parties whereby Soroof would deliver potentially thousands of units of Product throughout Saudi Arabia and Lebanon. Id. at ¶ 11. Defendants' false assurances also had the added consequence of causing Soroof to maintain its offices and workforce at great expense. Id. It was not until the early months of 2005 that Defendants finally informed Soroof that they could not overcome the apparent problems in bringing the Product to market (and to Soroof). Id. at ¶ 12.

75. In late 2005, Soroof expressed its dissatisfaction with Defendants complete lack of performance under the Agreement. See Ex. 7, Jackson Decl. at ¶ 13.

76. Based on the concerns raised by Soroof, Defendants were aware that they could face potential legal liability for their failure to perform under the Agreement. See Ex. 8, January 5, 2006 E-mail from A. Bucknam ("GE took a $1MM payment from [Soroof], and now is concerned about **legal problems** given that the distributors feel that they didn't get value for their $'s.") (emphasis added); see also Ex. 9, January 26, 2006 E-mail from R. Menon (During our conversation this morning, [Soroof] did bring up the financial issues surrounding the expired GE agreement...[m]y fear is that...they may circle back to the investment they made to secure the [GE Fuel Cell] distributorship and somehow hold Plug Power accountable.)

77. As such, when the decision was made to dissolve GE Fuel Cell, GE Microgen sought a very broad indemnity from Plug Power to cover any possible claims raised by Soroof. See Ex. 2, Scovello Dep. Tr. at 125:21-126:9. However, in light of Plug Power's unwillingness to grant such a broad indemnity, the Defendants capped it at $1 million. See Ex. 10, February 28, 2006 G. Silvestri E-mail ("Essentially, GE is looking for Plug Power to broadly and fully indemnify GE for any possible actions

taken at any future date by the distributors...Plug Power's position is that we will not sign such a broad and open ended agreement...."); see also Ex. 2, Scovello Dep. Tr. at 125:21-126:9.

78. In 2006, Soroof again raised the issue of the Agreement's termination and possible financial implications resulting therefrom. See Ex. 2, Scovello Tr. at 90:19-91:21; see also Ex. 9, January 26, 2006 E-mail from R. Menon

79. However, neither during these conversations nor after did Defendants ever tell Soroof of the impending dissolution of GE Fuel Cell. See Ex. 2, Scovello Tr. at 92:22-93:4; see also Jackson Decl. at ¶ 14.

80. GE Fuel Cell's dissolution became effective on December 31, 2006, although a decision was reached to dissolve GE Fuel Cell early in 2006. See Ex. 11, Executed Certificate of Cancellation of GE Fuel Cell.

81. Soroof had expressed its concerns about the failure to deliver Product as early as 2002, in late 2005 and again in early 2006. See Ex. 2, Scovello Dep. Tr. at 90:19-91:13, 101:1-11; see also Ex. 7, Jackson Decl. at ¶ 13.

82. Mr. Scovello admitted under oath that the new generator developed by Plug Power "was **totally different** than what GE had totally envisioned when we entered into the agreement with Plug" and that "[i]t was a backup power rather than a 24/7 continuous power." See Ex. 2, Scovello Dep. Tr. at 74:22-75:6 (emphasis added). In fact, that Plug Power failed to develop the Product is, according to Mr. Scovello, precisely why the decision to dissolve GE Fuel Cell was made. See Ex. 2, Scovello Dep. Tr. at 47:17-48:1. That is, Defendants were offering to replace an agreement for a fuel cell that generated power continuously twenty-four hours, seven days a week for a back-up generator akin to a battery pack.

Dated: March 31, 2011

Respectfully submitted,

KALBIAN HAGERTY LLP

By: /s/ Haig V. Kalbian

Haig V. Kalbian (*pro hac vice*)
Mary M. Baker (*pro hac vice*)
Aaron W. Knights (*pro hac vice*)
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
T: (202) 223-5600
F. (202) 223-6625
hkalbian@kalbianhagerty.com
mmb@kalbianhagerty.com
aknights@kalbianhagerty.com

James R. Lynch (JL-2778)
Jason Kaufman
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York, New York 10018
T: (212) 302-2400
F: (212) 302-2210
lynch@lawlynch.com
kaufman@lawlynch.com

*Counsel for Plaintiff Soroof Trading Development Company, Ltd.*