UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOROOF TRADING DEVELOPMENT COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>GE FUEL CELL SYSTEMS, LLC, GE MICROGEN, INC., and PLUG POWER INC.,<br><br>Defendants. | Civil Action No. 10 CIV 1391 |

**DEFENDANTS PLUG POWER INC.'S AND GE MICROGEN, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**


I. DELAWARE LAW PROHIBITS SOROOF'S LAWSUIT AGAINST GEFCS, A DISSOLVED LLC ....................1

II. NULLIFICATION OF THE CERTIFICATE OF CANCELLATION WOULD BE IMPROPER IN ANY EVENT BECAUSE DEFENDANTS DID NOT VIOLATE § 18-804(b)(3). ....................3

A. Section 18-804(b) Only Requires Provision If the LLC Has Assets for Distribution at the Time of Dissolution.................... 3

B. GEFCS Was Not Obligated to Make Provision Under Section 18-804(b)(3) Because No Claim By Soroof Was Likely to Arise or Become Known Based on the Facts Known to GEFCS at the Time of Its Dissolution.................... 3

C. To the Extent GEFCS Was Required to Make Provision for a Potential Claim by Soroof, GEFCS Made Provision That Was Reasonably Likely to be Sufficient to Provide Compensation for a Claim by Soroof.................... 6

III. GEFCS WAS NOT THE ALTER EGO OF ITS PARENT COMPANIES AND SOROOF MAY NOT BRING SUIT AGAINST GEFCS'S FORMER MEMBERS....................8

A. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because Soroof Cannot Show That GEFCS, GE Microgen, and Plug Power Operated As a Single Economic Entity.................... 8

B. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because Soroof Cannot Show GEFCS Was Used To Perpetuate Fraud or Promote Injustice.................... 9

Plaintiff Soroof Development Trading Company, Ltd. ("Soroof") has failed to come forward with a genuine issue of material fact to defeat Defendants Plug Power Inc.'s ("Plug Power") and GE Microgen, Inc.'s ("GE Microgen") ("Defendants") Motion for Summary Judgment ("Motion") (Dkt. Nos. 91-94). The undisputed facts demonstrate that the dissolution of GE Fuel Cell Systems, LLC ("GEFCS") complied with Delaware law and that Defendants had no obligation to make provision for Soroof under Section 18-804(b)(3) of the Delaware Code as alleged. Dkt. No. 92, Defendants' Memorandum in Support of Their Motion for Summary Judgment ("Defs.' Memo.") at 11-21. The undisputed facts also demonstrate that Soroof cannot meet its heavy burden of demonstrating that GEFCS was the alter ego of its former members Plug Power and GE Microgen. *Id.* at 22-25. In its opposition, Soroof offers nothing more than a stretched reading of the law and fails to point to a genuine issue of material fact preventing summary judgment in Defendants' favor. Dkt. No. 99, Soroof's Opposition to Defendants' Motion for Summary Judgment ("Opp."). The Court should grant Defendants' Motion and enter summary judgment in Defendants' favor on all counts.[1]

## I. <u>DELAWARE LAW PROHIBITS SOROOF'S LAWSUIT AGAINST GEFCS, A DISSOLVED LLC</u>

As Defendants explained in detail in their Motion, Soroof cannot bring a suit against GEFCS, a dissolved LLC, because Soroof did not file any claim against GEFCS until it filed a Demand for Arbitration with the American Arbitration Association ("AAA") on July 1, 2008, long after the GEFCS certificate of cancellation was filed on December 29, 2006. Dkt. No. 92, Defs.' Memo. at 11-12. Defendants also explained that Soroof has not sought the threshold relief

---

[1] Soroof filed a Motion for Partial Summary Judgment on the same day that Defendants filed their Motion. (Dkt. No. 87.) On March 31, 2011, Defendants filed their Opposition to Soroof's Motion for Partial Summary Judgment. (Dkt. Nos. 96-98). Defendants incorporate their Opposition to Soroof's Motion for Partial Summary Judgment and accompanying materials as if fully set forth herein.

necessary to bring a claim against a dissolved LLC — namely, nullification of the certification of cancellation. *Id.* at 12.

Soroof now claims — for the first time in its Opposition to Defendants' Motion — that it is seeking to have GEFCS's certificate of cancellation nullified. Opp. at 13. Soroof contends that it has explicitly sought nullification in its Complaint through its mere allegation that "Defendants were aware that Soroof had incurred substantial costs in preparation to take delivery and distribute the Product, that it had conveyed its dissatisfaction to Defendants, and that Defendants were aware of possible claims." Opp. at 14. These allegations hardly amount to the explicit request for a nullification of the certificate of cancellation that Delaware law requires. *See Thor Merritt Square, LLC v. Bayview Malls LLC,* 2010 WL 972776, at *5 (Del. Ch. Mar. 5, 2010) (claim against dissolved LLC not dismissed *because* plaintiffs made a *claim* for nullification); *Metro Comm'cn Corp. BVI v. Advanced MobileComm Techs., Inc.*, 854 A.2d 121, 138-39 (Del. Ch. 2004) (claim against dissolved LLC not dismissed *because* plaintiff "explicitly sought" to have the certificate of cancellation nullified).[2] Soroof has never explicitly sought nullification of GEFCS's certificate of cancellation, and cannot do so now in its Opposition to Defendants' Motion.[3] For this reason alone, Defendants' Motion should be granted.

---

[2] *See also Rajesh Idnani v. Venus Capital Mgmt., Inc.*, 2011 WL 255303 (Mass. Super. Ct. Jan. 6, 2011) (prohibiting claims against dissolved Delaware LLC *because* plaintiff did not seek nullification of certificate of cancellation in Delaware court prior to filing complaint outside of Delaware).

[3] Soroof cites only to *Metro Comm'cn Corp. BVI v. Advanced MobileComm Techs., Inc.*, 854 A.2d 121 (Del. Ch. 2004) to support its contention that it has sought nullification of the certificate of cancellation in its Complaint. Opp. at 13-14. That case does not support Soroof's argument, however, because the plaintiff in that case "explicitly sought to have the certificate of cancellation nullified." *Metro Comm'cn Corp. BVI*, 854 A.2d at 138-39. Soroof has done no such thing in its Complaint.

## II. NULLIFICATION OF THE CERTIFICATE OF CANCELLATION WOULD BE IMPROPER IN ANY EVENT BECAUSE DEFENDANTS DID NOT VIOLATE § 18-804(b)(3).

### A. Section 18-804(b) Only Requires Provision If the LLC Has Assets for Distribution at the Time of Dissolution.

Significantly, Soroof offers no response whatsoever to Defendants' argument that GEFCS was under no obligation to set aside any provision for a potential claim by Soroof under Section 18-804(b) because there were no LLC assets available for distribution at the time of dissolution. Defs.' Memo. at 21. Soroof fails to address this argument, except to mention it in passing in arguing that the Court should pierce the corporate veil of GEFCS. Opp. at 22. Because Soroof does not and cannot dispute this plain language of the statute, Soroof implicitly concedes that GEFCS was under no obligation to set aside any provision for a potential claim and summary judgment should enter for Defendants for this reason alone.

### B. GEFCS Was Not Obligated to Make Provision Under Section 18-804(b)(3) Because No Claim By Soroof Was Likely to Arise or Become Known Based on the Facts Known to GEFCS at the Time of Its Dissolution.

Even if Soroof passed the hurdle set by 18-804(b), and it cannot, GEFCS was not obligated to make provision for any alleged claim by Soroof because no claim was likely to arise or become known based on the facts known to GEFCS at the time of dissolution. Defs.' Memo. at 15-18.[4] In response, Soroof contends that GEFCS was aware of likely claims by Soroof arising out of Soroof's distributor agreement with GEFCS (the "Agreement") prior to dissolving GEFCS. Opp. at 15. But Soroof's contentions do not raise any genuine issue of material fact to deny Defendants' Motion. First, Soroof states that Defendants were aware that Soroof had paid a $1 million distribution fee under the Agreement. *Id*. But Soroof does not establish how the

[4] Soroof apparently concedes, as it must, that it has no claim under Section 18-804(b)(1) or (b)(2). *See* Opp. at 14-15; *see also* Defs.' Memo. at 14-15 (explaining that GEFCS was not obligated to make provision under Section 18-804(b) parts (1) and (2) because Soroof did not make a "claim" to GEFCS).

payment of the nonrefundable distributor fee pursuant to a contractual arrangement provides evidence of a possible "claim" by Soroof. If Soroof were correct, the moment any LLC entered into any contract in which the contracting partner paid a sum to the LLC, the obligations of 18-804(b)(3) would be triggered. That cannot be the law. GEFCS had no reason to think that Soroof had any valid "claim" arising out of this payment. The distributor fee was nonrefundable and made pursuant to an expired contract with explicit terms that bar the types of claims Soroof brings today. Defs.' Memo. at 15-18.[5]

Soroof also claims that it "expressed its concerns" about the failure to deliver product. Opp. at 15. As discussed in Defendants' Motion, Soroof's "concerns" were nothing more than a communication of its dissatisfaction to GEFCS for an alleged failure to perform. Defs.' Memo. at 16-17. Expressing concern and disappointment regarding a business venture that did not go as

[5] Moreover, Soroof's purported efforts to "ready itself to take delivery and distribute Product" (Opp. at 15) are irrelevant to the issue of whether Defendants were aware of likely "claims" by Soroof. As Soroof's own representative stated, Soroof knew that GEFCS did not have saleable product to deliver at the time of the Agreement and that in later years, GEFCS was having difficulty producing the Product. *See* Dkt. No. 100, Plaintiff's Counterstatement of Material Facts ("Soroof's Response") at ¶ 14; Dkt. No. 94, Fetouh Decl., Exhibit 11, Jackson Decl. at ¶¶ 5, 7 (Agreement between GEFCS and Soroof was entered into on or about June 6, 2000, and product was not expected until end of the year 2000); ¶ 9 ("Over the course of several years . . . GE repeatedly contacted Soroof and claimed that the Product was not yet ready due to various problems it had developing the Product . . ."); Exhibit 3, Scovello Dep., at 94:5-12 ("A. There was dialogue that went on between various entities at Soroof and there was a lot of different people. They had a lot of change of personnel. But, there was a lot of e-mail exchanged about not having product. So just in general, they were aware. Whether Prince Bander himself was aware, it is possible he wasn't, but his people certainly were."). Whatever steps Soroof may have taken despite that knowledge are Soroof's responsibility. In any event, Soroof has produced no admissible evidence in support of its Complaint allegations that it incurred additional costs and expenses to ready itself to distribute the Product and those facts are not properly before the Court. Finally, there were no "deadlines" nor any obligation under the Agreement that a Product be delivered absent an accepted purchase order. *See* First Fetouh Decl., Exhibit 5, Agreement at ¶ 5.1; p. 25 at § 7.3; 12(c) Memo. at 10-11.

hoped, however, does not amount to a claim likely to arise under Section 18-804(b)(3). *Id.*[6] Contracting partners frequently express concerns to one another – these expressions cannot as a rule give rise to obligations under 18-804(b)(3).

Soroof also argues that the indemnification provision in the Termination Agreement shows knowledge of the likelihood of Soroof's claims. Opp. at 16. To the contrary, and as explained in Defendants' Motion, the agreement to include the indemnification provision actually shows that Defendants believed that there was no likely claim on the part of Soroof. Plug Power agreed to the indemnification only because it saw *minimal to no* risk to agreeing. Defs.' Memo. at 20-21 n.7. GE Microgen requested the indemnification provision not because it thought Soroof was likely to assert a claim, but because it did not produce fuel cell products and therefore had no means of addressing any issue Soroof might have arising out of *future* events related to the alternative arrangement that Plug Power and Soroof were exploring. *Id.* Soroof's reliance on alleged "negotiation" between Plug Power and GE Microgen over the provision is misplaced. There is no record evidence to support Soroof's claim that the negotiation shows that "they were aware that Soroof had claims and that these claims were likely to survive termination of the Agreement." Opp. at 16. Plug Power and GE Microgen negotiated over the indemnity provisions because Plug Power had not been a party to GEFCS's distributor agreements and needed time to obtain, review, and assess each agreement. Defendants' Response to Soroof's Additional Material Facts in Soroof's Counterstatement of Material Facts ¶ 77. Ultimately, Plug

[6] Soroof points to certain email correspondence produced by Plug Power as "evidence" that GEFCS purportedly knew that Soroof was likely to have a claim requiring provision under 18-804(b)(3). Opp. at 16. As explained in Defendants' Motion, this email correspondence does no such thing. The correspondence illustrates that, at best, Soroof was unhappy with the outcome of the agreement with GEFCS and expressed its dissatisfaction to Defendants in the context of the business negotiations regarding Plug Power and Soroof's new distributor agreement. Soroof's

Power agreed to the provision because it saw minimal to no risk to Plug Power by agreeing to it, as the Agreement had already expired on its own terms at the time of the dissolution of GEFCS and no viable claims existed under the Agreement. *Id.*

**C. To the Extent GEFCS Was Required to Make Provision for a Potential Claim by Soroof, GEFCS Made Provision That Was Reasonably Likely to be Sufficient to Provide Compensation for a Claim by Soroof.**

Finally, although GEFCS had no obligation to make any provision for Soroof, GEFCS's requirement that Plug Power enter into negotiations with Soroof for a new distribution agreement for the GenCore product at no cost suffices as provision under 18-804(b)(3). Defs.' Memo. at 18-20. Soroof makes the remarkable claim that the only provision that will satisfy 18-804(b)(3) is one that "make[s] full recompense" and that Plug Power's efforts do not constitute "reasonable provision" because the new distribution agreement was not for the original Product provided for in the Distributor Agreement. Opp. at 17-18. This simply is not the law.

Under § 18-804(b)(3), Delaware law only requires that a dissolving LLC "make such provision as will be *reasonably likely to be sufficient to provide compensation*" for a possible claim. Section 18-804(b)(3) (emphasis added).[7] Here, the Delaware statute cannot reasonably

---

unhappiness never amounted to more than "customer dissatisfaction" and Defendants had no reason to construe Soroof's unhappiness as a "claim." Defs.' Memo. at 18-19 n.5.

[7] Soroof also misstates the ruling in *Thor Merritt Square, LLC*, 2010 WL 972776. Opp. at 17. That court did <u>not</u> rule as to the sufficiency of provisions set aside by the defendants. The court only denied defendant's motion to dismiss because the plaintiffs pled sufficient facts to state a claim for nullification. *Id.* at *5. In fact, the court specifically stated that "[w]hether that claim has any merit must await further development of the factual record." *Id.* Further, the facts of *Thor Merritt Square, LLC* are distinguishable here. In that case, the defendants were responsible for all costs incurred in connection with work required to bring a store into compliance with the fire code. *Id.* at *1. At the time of dissolution, the defendants set aside money in an escrow account to cover the costs, but the work was still incomplete. *Id*. Therefore, the plaintiffs had pled sufficient facts regarding whether the money that the defendants set aside satisfied their liability under the ongoing contract. *Id.* at *5. By contrast, here, GEFCS and Soroof did not have an ongoing relationship at the time of dissolution of GEFCS. It is undisputed that at the time the decision to terminate the GEFCS LLC Agreement and dissolve GEFCS was made, the Agreement had already expired by its very terms. Defs.' Memo. at 15-16.

be interpreted as requiring a dissolving LLC to satisfy the demands of a potential claimant by offering the exact same product contemplated by the parties' contract (especially where, as here, the product was not developed for supply). Nor does Delaware law require a dissolving LLC to satisfy demands without regard to the merits or likelihood of a possible claim. Even if Soroof's claims were to be considered "likely to arise" under §18-804(b)(3) based on the facts then known, those potential claims were still without merit since they were based on an expired contract and a non-refundable distribution fee. Defs.' Memo. at 15-18. Moreover, there was no reason for GEFCS to anticipate the consequential damages that Soroof now seeks since Soroof never sought those damages until the filing of the arbitration demand and consequential damages are specifically prohibited under the Agreement. *Id.* Although Delaware case law offers little guidance on what constitutes "provision as will be reasonably likely to be sufficient to provide compensation," offering a new distribution agreement at no cost surely constitutes reasonable provision for a meritless claim; and Soroof has come forward with no competent summary judgment evidence suggesting otherwise.[8]

[8] Soroof also claims — without support — that Plug Power's negotiations to enter into a new distributor agreement with Soroof for the GenCore product "was nothing more than a business development effort and not as they now claim, an effort to satisfy the 'reasonable provision' requirement of Section 18-804(b)(3)." Opp. at 19. Soroof cites to no authority for the nonsensical proposition that a party's satisfaction of the "reasonable provision" requirement of Section 18-804(b)(3) cannot also be beneficial to that party from a business perspective.

## III. GEFCS WAS NOT THE ALTER EGO OF ITS PARENT COMPANIES AND SOROOF MAY NOT BRING SUIT AGAINST GEFCS'S FORMER MEMBERS

### A. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because Soroof Cannot Show That GEFCS, GE Microgen, and Plug Power Operated As a Single Economic Entity.

Soroof has not met and cannot meet the high standard required by Delaware law to show that GEFCS was the alter ego of both of its former members. Defs.' Memo. at 22-25.[9] Soroof relies in its opposition on *Ritchie Capital Management, LLC* for its claim that "to prevail on an alter ego theory of liability, a plaintiff must show that the two corporations operated as a single economic entity such that it would be inequitable . . . to uphold a legal distinction between them." Opp. at 20. Because in this instance Soroof claims that GEFCS was the "shell" of its *two* members, Soroof must show that all three entities—GEFCS and its former members, GE Microgen ***and*** Plug Power—operated as a single economic entity, such that there was no legal distinction between them. *See In re Heritage Org., LLC*, 413 B.R. 438, 514 (Bankr. N.D. Tex. 2009) (applying Delaware law and noting that "*the Delaware two-pronged test must be applied to, and satisfied at, each level or layer of ownership*") (emphasis added). Soroof cannot plausibly argue that GE Microgen and Plug Power are anything but two legally distinct separate entities. The evidence is undisputed that the two entities formed GEFCS for the purpose of selling and marketing the fuel cell products that Plug Power was developing. Defs.' Memo. at 23-25. GEFCS was established for a legitimate purpose, and Soroof does not and cannot point to any evidence – as there is none – that GEFCS and its former members failed to follow legal formalities when contracting with each other. *See* Opp. at 21-24.

---

[9] Soroof contends that fraud is not required to pierce the corporate veil. Opp. at 20-21. Soroof misunderstands Defendants' argument. Because Soroof did not articulate the basis upon which it claimed that the Court should pierce GEFCS's veil, Defendants made alternative arguments — that Soroof could not show that the Court should pierce GEFCS's veil on the basis of either fraud *or* the alter ego theory (Defs.' Memo. at 22-25).

Soroof's claim that the undisputed facts establish that GEFCS was "grossly undercapitalized," Opp. at 22, is incorrect. In its attempt to establish undercapitalization, Soroof confuses capitalization *during the formation* of an entity with available funding *following* a failed enterprise. GEFCS was not undercapitalized, as explained more fully in Defendants' Opposition to Soroof's Motion for Partial Summary Judgment. *See* Dkt. No. 96 at 18-20. The fact that GEFCS ultimately did not generate revenue or have cash assets at the time of its dissolution because the business venture was not successful is irrelevant to whether GEFCS was an alter ego of its former members. *Id.* at 20.[10]

**B. Soroof May Not Bring Suit Against Plug Power and GE Microgen Because Soroof Cannot Show GEFCS Was Used To Perpetuate Fraud or Promote Injustice.**

Soroof claims that the "requisite level of injustice and unfairness needed to pierce the corporate veil of" GEFCS is present here. Opp. at 23. But Soroof admits that it is undisputed that (1) GEFCS was established for the legitimate purpose of selling and marketing fuel cell products (Soroof's Response ¶¶ 1-2); (2) despite the investment of substantial effort and expenses, the LLC was dissolved when technological challenges could not be overcome (*id.* ¶¶ 19-21); and (3) the dissolution was reported publicly by Plug Power (*id.* ¶ 43). *See also* Defs.' Memo. at 23-25. In light of these undisputed facts, Soroof cannot show that GEFCS was "used as a shield for fraudulent or other illegal acts" or "to perpetuate a fraud or to promote injustice." *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008).[11]

---

[10] Soroof also contends that GEFCS "siphoned off" generated revenue "to pay the expenses of other GE employees." Opp. at 22. Contrary to Soroof's contention, GEFCS did not "siphon" any funds. As shown in Defendants' Opposition, GEFCS legitimately used the nonrefundable distributor fee to support the activities of GEFCS. Dkt. No. 96 at 20 n.12.

[11] Even the test stated in the case cited by Soroof (Opp. at 24), *Directors Guild of America, Inc. v. Garrison Productions, Inc.*, states that "[t]he essential inquiry on a claim to pierce the

Soroof points to several purported "facts" in a failed attempt to show the "requisite level of injustice and unfairness needed to pierce the corporate veil of [GEFCS]." Opp. at 23-24. Soroof's "facts," however, are nothing more than reiterations of its breach of contact and misrepresentation allegations. *Id.* Delaware law is clear that this is not enough. "[T]he claimed injustice ***must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit***." *NetJets Aviation, Inc.*, 537 F.3d at 183 (emphasis added); *see also In re BH S&B Holdings LLC*, 420 B.R. 112 (S.D.N.Y. 2009) ("The fraud or similar injustice [must] be found in the defendants' use of the corporate form. In other words, the underlying cause of action, at least by itself, does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.") (applying Delaware law) (internal citations and quotations omitted). Soroof's contentions are therefore insufficient as a matter of law to prevent summary judgment in Defendants' favor.[12]

---

corporate veil is whether the corporate form has been abused; i.e., whether the shareholder used his control of the corporation to further his own, rather than the corporation's, business or whether the shareholder used the corporate vehicle to achieve a fraud." 733 F. Supp. 755, 760 (S.D.N.Y. 1990).

[12] Soroof's "facts" are without support in any event. Soroof contends that Defendants "took a $1 million distributor fee in exchange for distribution rights to a Product that did not even exist." Opp. at 23. However, in its Response to Defendants' Statement of Facts, "Soroof admits that the Agreement identifies this distributor fee as 'non-refundable.'" Soroof's Response ¶ 15. Further, Soroof admittedly knew at the time that it entered the Agreement and paid the non-refundable fee that GEFCS did not have saleable product to deliver at the time of the Agreement, as discussed above in n.6. Moreover, there were no "deadlines" nor any obligation under the Agreement that a Product be delivered absent an accepted purchase order. *See supra* n.6. Soroof also contends that Defendants' failure to inform Soroof of the product's non-existence was contrary to the obligations under the Agreement and aggravated Soroof's expenses. Opp. at 23. But it is undisputed that Soroof was well aware at the time it contracted with GEFCS that there was no product developed for supply; and Soroof was well aware prior to GEFCS's dissolution that Plug Power was having difficulty producing the Product, as discussed above in n.5. Finally, Soroof contends that "Defendants dissolved [GEFCS] as a shield from any liability" arising from a potential "claim" by Soroof. This is in contradiction to Soroof's admission that GEFCS dissolved because the business venture was unsuccessful in developing the specified PEM fuel cell product for distribution due to technical challenges. *See* Soroof's Response ¶ 19.

Dated: April 15, 2011

Respectfully submitted,

/s/ Dahlia S. Fetouh
Dahlia S. Fetouh (*pro hac vice*)
Natalie F. Langlois (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
E-Mail: dfetouh@goodwinprocter.com
E-Mail: nlanglois@goodwinprocter.com

Abigail K. Hemani (AH 2071)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 813-8800
ahemani@goodwinprocter.com

Attorneys for Defendant PLUG POWER INC.

/s/ Michael D. Fisse
Michael D. Fisse, Esq.
Jan Van Steenis, Esq.
DAIGLE FISSE & KESSENICH, PLC
P.O. Box 5350
Covington, LA 70434-5350
(985) 871-0800
Fax: (985) 871-0899
Email: mfisse@daiglefisse.com
Email: jbradford@daiglefisse.com

Thomas Edward Healy, Esq.
PINO & ASSOCIATES, LLP
50 Main Street
White Plains, NY 10606
(914) 946-0600
Fax: (914) 946-0650
Email: thealy@pinolaw.com

Attorneys for Defendant GE MICROGEN, INC.

**CERTIFICATE OF SERVICE**

I, Dahlia S. Fetouh, hereby certify that true copies of the foregoing DEFENDANTS PLUG POWER INC. AND GE MICROGEN, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT were caused to be served by ECF and electronic mail this 15th day of April, 2011 on the following counsel:

James R. Lynch, Esq.
Jason Kaufman, Esq.
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York , NY 10018
(212) 302-2400
Fax: (212) 302-2210
Email: lynch@lawlynch.com
Attorneys for Plaintiff SOROOF TRADING DEVELOPMENT COMPANY, LTD.

Haig V. Kalbian, Esq.
Mary M. Baker, Esq.
Aaron W. Knights, Esq.
KALBIAN HAGERTY LLP
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Email: hkalbian@kalbianhagerty.com
Attorneys for Plaintiff SOROOF TRADING DEVELOPMENT COMPANY, LTD.

Dated: April 15, 2011 /s/ Dahlia S. Fetouh