**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SOROOF TRADING DEVELOPMENT COMPANY, LTD., Plaintiff, | ) | No. 10 Civ. 1391 (LTS) (JCF) |
| v. | ) | |
| GE FUEL CELL SYSTEMS, LLC GE MICROGEN, INC., and PLUG POWER INC. Defendants. | ) | |

# SOROOF TRADING DEVELOPMENT COMPANY, LTD.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS


Table of Contents ii

Table of Authorities iii

Preliminary Statement 1

Argument 2

**I) DEFENDANTS DISSOLVED GE FUEL CELL IN CONTRAVENTION OF DELAWARE LAW** 2

A) Section 18-804(b)(3) does not require a formal notice of a claim. 2

B) Defendants had knowledge of possible claims by Soroof. 3

C) Defendants misconstrue Delaware law. 4

D) Delaware law permits a party to sue a dissolved LLC. 6

**II) THERE IS NO MATERIAL DISPUTE REGARDING PIERICING THE CORPORATE VEIL OF GE MICROGEN AND PLUG POWER** 6

Conclusion 9

Certificate of Service 11

## TABLE OF AUTHORITIES

### COURT CASES

Disabled in Action of Metropolitan New York v. Hammons, 202 F.3d 110 (2d. Cir. 2000) ... 2

Aslandis v. United States Lines, Inc., 7 F.3d 1067 (2d. Cir. 1993) ........................................ 2

Thor Merrit Square, LLC v. Bayview Malls LLC, No. 4480-VCP, 2010 WL 972776 (Del. Ch. Ct. Dec. 16, 2010) .................................................................................... 4, 8

Metro Commun. Corp. BVI. V. Adv. Mobilecomm Tech., Inc., 54 A.2d 121, 139 (Del. Ch. 2004) ..................................................................................................................... 6

People v. Hyland, No. 61-08, 2008 WL 918284, *2 (N.Y. Dist. Ct. April 2, 2008) ............. 6

NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 184 (2d. Cir. 2008).............. 8

Blair v. Infineon Technologies AG, 720 F. Supp. 2d 462, 473 (D.Del. 2010) ....................... 9

### STATE STATUTES

6 Del. Code § 18-1804 ........................................................................................... 2

## PRELIMINARY STATEMENT

Soroof Trading Development Company, Ltd. ("Soroof") submits this Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment and in reply to Defendants Plug Power Inc.'s and GE Microgen, Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendants' Opposition").

The arguments raised in Defendants' Opposition are nothing more than an effort to complicate and distract the Court from straightforward and uncontested facts. That is, despite their complete failure to adhere to their obligations to maintain the separate legal existence of GE Fuel Cell, Inc. ("GE Fuel Cell") or dissolve it properly in accordance with Delaware law, Defendants, GE Microgen, Inc. ("GE Microgen") and Plug Power, Inc. ("Plug Power"), now hope to rely on the very provisions of Delaware law they disregarded to shield them from liability.

However, no matter how Defendants would like to reimagine their past conduct the undisputed facts demonstrate that they abused the corporate form and improperly dissolved GE Fuel Cell. First, the undisputed evidence reveals that Soroof was more than just a dissatisfied customer and that Defendants were aware of possible legal claims by Soroof. Despite this knowledge, they deliberately dissolved GE Fuel Cell without making any provisions—much less reasonable provisions–to address possible claims by Soroof, in contravention of Delaware law. Second, the undisputed record establishes that GE Fuel Cell remained at all times a shell entity that was dominated by its controlling members and was left financially destitute at dissolution. As such, the corporate veil of GE Fuel Cell should be pierced to hold its two controlling members, GE Microgen and Plug Power, accountable for its actions.

## ARGUMENT

### I) DEFENDANTS DISSOLVED GE FUEL CELL IN CONTRAVENTION OF DELAWARE LAW

Defendants argue that they did not dissolve GE Fuel Cell improperly because they had no knowledge of possible claims by Soroof. And in the absence of a claim, Defendants argue they were not required to make any reasonable provision under Section 18-804(b)(3). However, Defendants own undisputed internal correspondence reveals both knowledge of possible claims by Soroof and their efforts to safegaurd against those very claims.[1]

A) Section 18-804(b)(3) does not require a formal notice of a claim.

The plain language of the statute refutes defendants' argument that Section 18-804(b)(3) requires formal notice of a claim. Defendants' Opp'n at 7. Section 18-1804(b)(3) simply states that a dissolving LLC must make "such provision as will be reasonably likely to be sufficient to provide compensation...based on facts known to the limited liability company." Thus, the plain language of Section 18-1804(b)(3) is crystal clear, and the burden of compliance falls solely on Defendants to make reasonable provision "based on facts known," not a formal notice. And where as here the language of a statute is unambiguous it must be given effect.[2]

---

[1] The exhibits cited in this brief are appended in support of Plaintiff's Motion for Summary Judgment and, unless otherwise indicated, are cited herein as they are cited in said Motion.

[2] See Disabled in Action of Metropolitan New York v. Hammons, 202 F.3d 110, 119 (2d. Cir. 2000) (the "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case") (citing Robinson v. Shell Oil Co., 519 U.S. 337 (1997)); see also Aslandis v. United States Lines, Inc., 7 F.3d 1067, 1072-1073 (2d. Cir. 1993) ("[A] court should presume that the statute says what it means. If the words of a statute are unambiguous, judicial inquiry should end, and the law interpreted according to the plain meaning of its words.").

B) Defendants had knowledge of potential claims by Soroof.

In light of overwhelming evidence to the contrary, Defendants' argument that there were no facts evidencing possible claims by Soroof is preposterous. Defendants' own internal correspondence reveals that they were not only aware of possible legal claims by Soroof, but also acted on that knowledge to safeguard their interests.

Defendants push this fiction on the Court by claiming that, at most, Soroof had expressed mere "displeasure" with their failure to honor their contractual commitments.[3] Defendants' Opp'n at 9. It is undisputed that Defendants were aware of possible legal claims by Soroof and that they were likely to be held responsible for those claims. Defendants' internal correspondence reveals that Defendants viewed legal action by Soroof as a very real threat. In fact, Defendants explicitly and unequivocally express concern with possible "legal problems" arising from their failure to honor their contractual commitments to Soroof.[4]

Likewise, Defendants argue that they only agreed to the indemnity because they saw minimal risk in the possibility of Soroof actually exerting a claim. Yet, Defendants do not

---

[3] Defendants' also argue that they could not have anticipated a possible claim by Soroof because they claim that the deposit paid by Soroof was non-refundable and the Agreement does not allow consequential damages. See Defendants' Opp'n at 8-9. Both contentions are without merit. See, e.g., Soroof's Opp'n to Defendants' Motion for Judgment, Dkt. #62 at 10-12.

[4] See Ex. I; January 5, 2006 E-mail from A. Bucknam, Plug Power's Vice President of Business Development, to Mark Sperry, Plug Power's former Chief Marketing Officer ("GE took a $1MM payment from [Soroof], and now is concerned about **legal problems** given that the distributors feel that they didn't get value for their $'s.") (emphasis added); see also Ex. J; January 26, 2006 E-mail from R. Menon, a Plug Power employee charged with sales and development, to Frank Scovello ("During our conversation this morning, [Soroof] did bring up the financial issues surrounding the expired GE agreement...[m]y fear is that...they may circle back to the investment they made to secure the [GE Fuel Cell] distributorship and somehow hold Plug Power accountable.")

dispute that the GE[5] entities asked for a large and open-ended indemnity and that Plug Power objected to such a proposal.[6] If Defendants actually believed that there was minimal risk from Soroof's claims then there would have been no need for the indemnity at all. It is precisely because they were aware of Soroof's legitimate grievances and the possibility of legal claims stemming from those grievances that they bargained over the extent of their exposure through the indemnity. As such, there is no basis for Defendants to argue lack of knowledge of any possible claims by Soroof, when the undisputed evidence reveals both their knowledge and actions in accordance with that knowledge to protect their interests.

C) Defendants misconstrue Delaware law.

In an effort to side-step their obligation to make reasonable provision prior to dissolution, Defendants claim that Delaware law offers little guidance on what constitutes a reasonable provision under Section 18-804(b)(3). This is incorrect and would require a deliberate effort to read ambiguity into the statute where there is none. Simply put, and as Delaware courts have held, Section 18-804(b)(3) requires a dissolving LLC to set aside *funds sufficient* to satisfy any and all claims to satisfy potential claims. See Thor Merrit Square, LLC v. Bayview Malls LLC, 2010 Del. Ch. LEXIS 52, *13-16 (Del. Ch. Mar. 5, 2010) ("The Delaware LLC Act requires that a dissolving LLC make reasonable provision for the payment of unmatured contractual claims before filing its certificate of cancellation," and placing funds in an escrow account not sufficient to satisfy such claims does not satisfy the statute).

---

[5] "GE" shall refer to the General Electric Company.

[6] See Ex. K; February 28, 2006 G. Silvestri E-mail, former Chief Operating Officer of Plug Power, to Sergey Polikarpov ("Essentially, GE is looking for Plug Power to broadly and fully indemnify GE for any possible actions taken at any future date by the distributors...Plug Power's position is that we will not sign such a broad and open ended agreement....").

As addressed in Soroof's Motion for Partial Summary Judgment, the Delaware Chancery Court has held that where a party failed to set aside sufficient funds to cover the full amount of a known claim, it would not meet the reasonable provision standard of Section 18-804(b)(3). Here, Defendants did not make any provision – let alone a partial one as in Thor Merrit. Rather, seeking to explain their complete failure to meet this requirement, Defendants now recast their attempt for Plug Power to negotiate a new distributorship agreement with Soroof whereby Soroof would distribute a wholly different product as their proposed reasonable provision.

Defendants' argument that a proposed alternative agreement for a back-up generator satisfied the standards of Section 18-804(b)(3) is intentionally misleading. In fact, Defendants admit that: "Because Plug Power had an interest in continuing to develop its business relationship with Soroof, Plug Power entered into discussions with Soroof about a potential new distributor agreement between Plug Power and Soroof."[7] Thus, by Defendants' own admission, the proposed alternative agreement was nothing more than a business development effort and not an effort to satisfy Section 18-804(b)(3).

However, even assuming *arguendo*, that the proposed alternative agreement was an effort to make a reasonable provision under Section 18-804(b)(3), it would still fail. First, the proposed deal was never effectuated. Second, as noted, Defendants' proposed alternative agreement was for a back-up generator – a completely different fuel cell than the one for which the parties originally contracted.[8] That is, Defendants offered to replace an agreement for a fuel cell that

---

[7] See Defendants Plug Power Inc. and GE Microgen, Inc.'s Statement of Additional Undisputed Material Facts (Defendants' "Statement of Additional Facts") at ¶ 20.

[8] See Defendants' Opposition at 12 ("the GenCore product was also a PEM fuel cell, but the GenCore product had been successfully developed for application as a back-up power source").

generated power continuously twenty-four hours, seven days a week for a back-up generator.[9] In short, an unsuccessful effort to enter into a contract for a generator that did not come close to meeting the specifications of the original, contracted for Product cannot be regarded as a "reasonable provision" or "compensation"[10] under the standards of Section 18-804(b)(3).

D) Delaware law permits a party to sue a dissolved LLC.

Defendants' argument that Delaware law bars claims against a dissolved LLC is a red herring. First, it is worth noting that Soroof has stated claims against GE Fuel Cell's parents, GE MicroGen and Plug Power. Whether claims against a dissolved LLC are permitted under Delaware law do not impact claims against its parents—here GE MicroGen and Plug Power.

In any event, Delaware law does not bar claims against a dissolved LLC if the party asserting the claims is seeking to have the certificate of cancellation nullified on the grounds that the LLC dissolved in contravention of the 6 Del. C. § 18-101 *et seq.* (the "LLC Act"). Soroof is seeking that here. See Metro Commun. Corp. BVI. v. Adv. Mobilecomm Tech., Inc., 854 A.2d 121, 138-139 (Del. Ch. 2004). Further, Delaware law does not require Soroof to specifically allege or seek nullification of the certificate of cancellation in its Complaint. Rather, where, as here, a complaint pleads facts that support the inference GE Fuel Cell was wound up in contravention of the LLC Act, it also "pleads facts that support an application to nullify the certificate of cancellation." Id. at 139.

---

[9] See Ex. C, Scovello Dep. Tr. at 74:22-75:6 (emphasis added) (As Mr. Scovello admitted under oath the new generator developed by Plug Power "was **totally different** than what GE had totally envisioned when we entered into the agreement with Plug" and that "[i]t was a backup power rather than a 24/7 continuous power") (emphasis added).

[10] See People v. Hyland, No. 61-08, 2008 WL 918284, *2 (N.Y. Dist. Ct. April 2, 2008) ("compensation is the giving back in value of an equivalent in either money… or in actual value otherwise conferred") (citing Black's Law Dictionary (4th ed. 1968)).

## II) THERE IS NO MATERIAL DISPUTE REGARDING PIERICING THE CORPORATE VEIL OF GE MICROGEN AND PLUG POWER

Defendants' claim that piercing the corporate veil is not warranted because GE Fuel Cell, GE Microgen, and Plug Power did not act as a single entity. Yet, in an odd attempt to support this argument, Defendants cite to the very facts that comprise overwhelming evidence that the three companies were acting as single entity.[11]

Defendants first try to distract the court with a long narrative describing their efforts to develop the Product. Defendants' Opp'n at 7-8, 17, 20, 22-23. Under Defendants' view, their failure to develop the Product somehow evidences GE Fuel Cell's separate existence and justifies its dissolution without notice or provision to Soroof. It does not as the Defendants' efforts to develop the Product and their failure to do so are wholly unrelated to whether GE Fuel Cell was a shell entity. What is relevant are the undisputed facts that demonstrate that (a) GE Fuel Cell was managed and controlled by its parent entities and (b) it had no independent existence.

Defendants do not refute the vast majority of the evidence demonstrating GE Fuel Cell's hollow existence.[12] In fact, Defendants concede as much. For example, Defendants admit that

---

[11] As noted in Soroof's Motion for Partial Summary Judgment, evidence obtained through Phase I discovery revealed that General Electric Company, Inc. ("GE") at all times maintained complete dominion and control over the GEFCS venture, including the actions of GEFCS's two members, GE Microgen and GE Fuel Cell. Soroof filed a motion to amend the Complaint to add GE as a party to this action, which motion has been fully briefed. See Plaintiff's Motion and Memorandum of Law for Leave to Amend the Complaint and Modify the Scheduling Order filed on October 29, 2010 ("Motion for Leave") at Dkt. # 56-58. In light of GE MicroGen's Motion for Judgment, which is *sub judice* before Your Honor, Magistrate Judge Francis declined to rule on the Motion for Leave at this stage of the proceedings. Instead, he denied the Motion for Leave *without prejudice* to Soroof re-filing it after this Court rules on the pending Motion for Judgment.

[12] For example, Defendants do not refute that GE Fuel Cell had no employees; that all of the personnel assigned to "support" GE Fuel Cell were actually employees of Plug Power and GE;

Plug Power contributed employees to support GE Fuel Cell and that it regularly communicated with GE Microgen regarding the Product. What is glaringly absent from the evidence cited by Defendants is any role played by GE Fuel Cell. That is, if GE Fuel Cell was actually a separate entity with its own existence, presumably, it should have had its own employees, its own office or at the very least performed some function independent of its two parent entities. However, as demonstrated by the undisputed facts and Defendants' own admissions, GE Fuel Cell remained tethered to its parent entities at all times.

Likewise, Defendants' arguments regarding GE Fuel Cell's capitalization merely reinforce its status as a shell entity. Defendants admit that the GE entities provided financing for GE Fuel Cell in the amount of $18,250,000 and further that it also received another $1,600,000 from the sale of distribution rights.[13] Defendants' Opp'n at 19. Thus according to Defendants, GE Fuel Cell had over $19 million dollars in capital for a company that by Defendants' own admissions actually performed no functions. Thus, whatever money came into the company should simply have remained with it until dissolution. Because if GE Fuel Cell performed no functions, it could not possibly have incurred any expenditures. Yet, it dissolved with nothing more than a computer server, a telephone switch and some furniture.[14]

The only way to reconcile these inconsistent facts is to recognize the obvious—as evidenced by Defendants' own admissions—that all the money that came into GE Fuel Cell was

---

or that the whole Management Committee of GE Fuel Cell was composed entirely of Plug Power and GE representatives. See Ex C; Scovello Dep. Tr. at 32:25-33:1, 33:1-2; see also Ex. E; Action by Written Consent of Members of GE Fuel Cell Systems, LLC.

[13] See Ex.B in Support of Defendants' Opposition to Soroof's Motion for Partial Summary Judgment (Dkt. # 98-2).

[14] See Ex. C; Scovello Dep. Tr. at 49:5-7.

siphoned off to support the activities of its two members. Defendants' Opp'n at 19-20. Mr. Scovello's testimony confirms this fact: "That $1 million [distribution fee paid to GE Fuel Cell by Soroof] went to offset the cost, my salary, the salaries of Barry Glickman and all the other people that were involved in supporting the activities of [GE Fuel Cell], yes." Ex. C, Scovello Dep. Tr. at 121:15-20. Thus, GE Fuel Cell acted as nothing more than a conduit to move money between the various GE entities leaving it undercapitalized and bereft of any independent financial existence.[15] And it is precisely in these situations that courts have deemed it appropriate to pierce the corporate veil. See NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 184 (2d. Cir. 2008) (finding sufficient evidence to pierce the corporate veil where financial assets of LLC were diverted to other companies owned by sole owner of LLC such that the LLC did not have sufficient funds to pay creditors).[16]

Finally, Defendants argue that there was no injustice to warrant piercing the corporate veil because GE Fuel Cell was created and dissolved for legitimate reasons. Even accepting, *arguendo*, that GE Fuel was dissolved because the Product could never be successfully

---

[15] These facts render Defendants' argument that no provision was required under Section 18-804(b)(3) because GE Fuel Cell had no assets at the time of dissolution meritless. See Defendants' Opp'n at 11. As stated above, GE Fuel Cell did have assets and would have had nearly $19 million at the time of dissolution had funds not been siphoned off to cover the expenses of its two member entities. Thus, Defendants cannot be said to claim insufficiency of assets to cover possible claims when GE Fuel Cell's financial condition was purely of their own making. In addition, as stated by the Court in Thor Merritt, a dissolved LLC's lack of assets supports an action to pierce the corporate veil. Thor Merrit, 2010 Del. Ch. LEXIS 52 at n. 23.

[16] Defendants' reliance on NetJets is misplaced as this case actually supports Soroof's position. In NetJets, the Second Circuit found that there was sufficient evidence, just as here, demonstrating that the LLC was the alter ego of its parent because the LLC shared employees and office space with other companies owned by its parent as well as its complete financial dependence on its parent. See NetJets, 537 F.3d at 179.

commercialized, this does not diminish the unjustness or unfairness of Defendants' actions. Here, Defendants' control and domination of GE Fuel Cell as a shell entity, utilization of the funds GE Fuel Cell obtained from Soroof, and dissolution of GE Fuel Cell after extracting all assets leaving Soroof without recourse is patently unjust and unfair. See Blair v. Infineon Technologies AG, 720 F. Supp. 2d 462, 473 (D.Del. 2010) (finding the requisite injustice and unfairness demonstrated where defendants' exercised crippling control, misdirected funds and siphoned off of any profits).

**CONCLUSION**

Despite all the evidence to the contrary, Defendants brazenly argue that they did in fact comply with Delaware law in dissolving and maintaining the separate legal existence of GE Fuel Cell. However, Defendants' positions are wholly unsupported by the facts and the applicable law. The undisputed evidence, including Defendants own admissions, establishes that GE Fuel Cell was dissolved without making a reasonable provision and that it was never anything more than a shell entity. For these reasons, Soroof's Motion for Partial Summary Judgment should be granted and this Court should find: (1) that GE Fuel Cell was dissolved contrary to Delaware law; and (2) that the corporate veil of GE Fuel Cell should be pierced to hold GE Microgen and Plug Power responsible.

Respectfully submitted,

KALBIAN HAGERTY LLP

By: /s/ Haig V. Kalbian

Haig V. Kalbian (*pro hac vice*)
Mary M. Baker (*pro hac vice*)
Aaron W. Knights (*pro hac vice*)
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
T: (202) 223-5600
F. (202) 223-6625
hkalbian@kalbianhagerty.com

mmb@kalbianhagerty.com
aknights@kalbianhagerty.com

James R. Lynch (JL-2778)
Jason Kaufman
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York, New York 10018
T: (212) 302-2400
F: (212) 302-2210
lynch@lawlynch.com
kaufman@lawlynch.com

*Counsel for Plaintiff Soroof Trading Development Company, Ltd.*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment was served this 15th day of April , 2011, via Notice of Electronic Filing, on the following:

Abigail K. Hemani, Esq.
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
E-mail: ahemani@goodwinprocter.com

Dahlia S. Fetouh, Esq.
Natalie Langlois, Esq.
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
E-mail: dfetouh@goodwinprocter.com
E-mail: nlanglois@goodwinprocter.com

*Counsel for PLUG POWER, INC.*

Thomas Edward Healy
Pino & Associates, LLP
50 Main Street
White Plains, NY 10606
E-mail: thealy@pinolaw.com

Michael D. Fisse
Jon A. Van Steenis
DAIGLE FISSE & KESSENICH
PO Box 5350
Covington, LA 70434-5350
E-mail: mfiss@daiglefisse.com
E-mail: lvansteenis@daiglefisse.com

*Counsel for GE Microgen, Inc. and GE FUEL SYSTEMS, LLC*

/s/ Haig V. Kalbian
Haig V. Kalbian