UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SOROOF TRADING DEVELOPMENT
COMPANY LTD.,

                          Plaintiff,

        -against-

GE FUEL CELL SYSTEMS LLC,
GE MICROGEN, INC. and
PLUG POWER, INC.,

                          Defendants.

-------------------------------------------------------x

No. 10 Civ. 1391 (LTS)(JCF)



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 2 4 2012

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Soroof Trading Development Company Ltd. ("Plaintiff" or "Soroof")

brings this action against GE Fuel Cell Systems, LLC ("GEFCS"), GE Microgen, Inc., and Plug

Power, Inc. (collectively, "Defendants"), for breach of contract, misrepresentation, conversion,

constructive trust, unjust enrichment and an accounting under New York state law.  The claims

arise from disputes regarding a contract that the parties entered into in 2000, under which Soroof

was to have exclusive distribution rights in Saudi Arabia for a fuel cell product (the "Contract").

Soroof commenced this action, seeking an estimated three million dollars in compensatory

damages, after GEFCS failed to produce the fuel cells.  The Court has diversity jurisdiction of

the action pursuant to 28 U.S.C. § 1332.

        Defendants have moved for judgment on the pleadings, pursuant to Federal Rule

of Civil Procedure 12(c).  The parties have cross-moved for summary judgment, and Soroof has

moved for sanctions.  The Court has considered carefully all of the parties' arguments and

submissions.  For the reasons that follow, Defendants' motion for judgment on the pleadings will

be granted and Plaintiff will be permitted to replead its claims for breach of contract and

misrepresentation.  Plaintiff's motion for sanctions and Defendants' application for attorneys'

fees and costs will both be denied.  Plaintiff's motion for partial summary judgment will be

granted as to the request to pierce the veil of GEFCS and denied in all other respects.

Defendants' summary judgment motion for dismissal of all claims will be granted with respect

to GEFCS and denied with respect to GE Microgen and Plug Power.

<u>BACKGROUND</u>

For the purposes of evaluating Defendants' motion for judgment on the pleadings,

all of the non-conclusory factual allegations of Plaintiff's Complaint are assumed to be true.

Soroof is a company organized under the laws of the Kingdom of Saudi Arabia.  (Compl. ¶ 4.)

Defendant GEFCS was a limited liability company made up of two members: GE Microgen and

Plug Power.  (<u>Id.</u> ¶¶ 5-8.)  GEFCS was dissolved in 2006.  (<u>Id.</u> ¶ 6.)  On June 6, 2000, Soroof

and GEFCS entered into a contract whereby Soroof was to distribute in Saudi Arabia GEFCS-

produced Proton Exchange Membrane Fuel Cells, which were to meet specific contractual

standards.  (Compl., Ex. 1("Contract") §§ 1-2.4.)  Under the terms of the Contract, Soroof was

required to pay GEFCS an up-front "non-refundable distributor fee" of one million U.S. dollars.

(<u>Id.</u> § 6.4.)  Soroof was also required to use its "best efforts to sell, advertise and promote" the

fuel cells in Saudi Arabia and to purchase a minimum number of fuel cells from GEFCS each

year, including 100 units in the first year that commercial units became available, 300 units the

second year and 500 units the third year.  (<u>Id.</u> §§ 6.1, 6.6.)  GEFCS was not, however, obligated

to fulfill every Soroof order.  Rather, the Contract obligated GEFCS to "use reasonable efforts to

supply" the fuel cells to Soroof and to satisfy any "firm purchase orders" that were "accepted by

GEFCS." (Id. §§ 5.1, 5.2.)  GEFCS was also obligated to "share promptly [with Soroof] relevant

information, including but not limited to product performance, failure and liability issues."  (Id.

§ 7.4.)  The Contract specified further that GEFCS was not liable for any "incidental . . . or

consequential damages" that Soroof incurred, even in the event of tortious conduct or breach of

contract and, also, that "[t]he total liability for GEFCS . . . whether in contract, warranty,

indemnity, tort (including negligence), strict liability, or otherwise, arising out of or related to

this Agreement . . . shall not exceed the amount that has been paid to GEFCS by [Soroof] under

this Agreement." (Id. §§ 12.1-12.2.)  In the Contract, both parties represented that they had the

"full authority and capacity to enter into and perform [their] obligations" under the Contract.

(Id. §§ 10.1.2.)

       The Contract includes a merger clause, providing that the written document

"contains the entire and only agreement between [Soroof] and GEFCS . . . .  Any representations

or terms and conditions relating to transactions within the scope of this Agreement which are not

incorporated or referenced herein shall not be binding upon either Party." (Id. § 22.1.)  On

December 31, 2005, the Contract expired on its own terms.  (Id. § 4.1.)

       During discussions prior to the execution of the Contract, GEFCS officials told

Soroof that they "stood ready to deliver the Product to Soroof within six months." (Compl. ¶ 9.)

However, no such delivery timetable was included in the Contract.  In November of 2000,

GEFCS informed Soroof that the fuel cells did not yet meet quality standards and thus were not

ready for distribution.  (Id. ¶ 16.)  Over the remaining years of the Contract, GEFCS continued to

tell Soroof that the product was not yet ready but would nevertheless be forthcoming.  (Id.

¶¶ 17-18.)  As a result, Soroof did not place any firm orders for the duration of the Contract (id.

¶ 17), but maintained offices and employees and engaged in third-party negotiations in

preparation for eventually distributing the fuel cells, spending an estimated two million U.S. dollars on these preparations (id. ¶¶ 20, 26). In 2005, GEFCS informed Soroof that it was unable to make fuel cells meeting the Contract's specifications and, in 2006, GE Microgen and Plug Power dissolved GEFCS. (Id. ¶¶ 6, 21, 27.)

On July 1, 2008, Soroof initiated arbitration proceedings against GEFCS, alleging that GEFCS had breached the Contract and misrepresented its ability to bring the fuel cells to market. (Pl.'s Mem. in Opp'n to Mot. for J. on the Pleadings 2.) Soroof moved to compel GE Microgen and Plug Power to join the arbitration. (Id.) GEFCS moved to dismiss Soroof's claims, arguing that suit could not be brought against a dissolved LLC or its former member companies, that the terms of the Contract barred Soroof from recovering the consequential damages and one million dollar non-refundable payment, that GEFCS never breached the terms of the Contract and that the claims were, in any event, barred by New York's six-year statute of limitations. (Baker Decl., Exh. A (Mot. to Dismiss Claims.)) On November 9, 2009, the American Arbitration Association Panel (the "Arbitration Panel") denied GEFCS's motion, stating: "Respondent's motion to dismiss the claims in this arbitration is denied without prejudice to the filing of a motion for summary disposition at the close of discovery on the issues raised in the motion to dismiss and the merits of the arbitration claims." (Baker Decl., Exh. B (Prehr'g Order No. 2.))

Shortly thereafter, Soroof, GE Microgen and Plug Power entered into a Venue Agreement, discontinuing the arbitration and agreeing to litigate the controversy in this Court. (Baker Decl., Exh. C ("Venue Agreement"), Recitals ¶ C.) In its sanctions motion, Soroof alleges that GEFCS, GE Microgen and Plug Power breached certain terms of the Venue Agreement, which included a provision limiting the statute of limitations-based arguments that

Defendants could assert in this Court and further alleges that Defendants misled the Court by failing to disclose the argument limitations and the existence of the Venue Agreement in their Rule 12(c) motion filings.

DISCUSSION

Defendants' Rule 12(c) Motion for Judgment on the Pleadings

In considering a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings, the Court applies the same standards used for the determination of a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Cortes v. City of New York, 700 F. Supp. 2d 474, 480-81 (S.D.N.Y. 2010); see also LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475-76 (2d Cir. 2009). Thus, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all inferences in the Plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under this standard, a pleader is obliged "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (internal quotation marks, citation and emphasis omitted). The Supreme Court has explained that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . . But where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' Fed. R. Civ. P.

8(a)(2)." Iqbal, 129 S. Ct. at 1950 (some internal citations omitted).

"The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." O'Shea v. Board of Educ. of Poughkeepsie City Sch. Dist., 521 F. Supp. 2d 284, 288 (S.D.N.Y. 2007); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). "Because the interpretation of contracts generally is a question of law to be determined by the Court, it may dismiss the complaint where contracts are unambiguous and do not support the plaintiff's claim." FlightSafety Int'l, Inc. v. Flight Options, LLC, 418 F. Supp. 2d 103, 107 (E.D.N.Y. 2005) (aff'd in part, vacated in part and remanded) (citing Furniture Consultants, Inc. v. Datatel Minicomputer Co., 1986 WL 7792, at *2 (S.D.N.Y. July 10, 1986)).

<u>Breach of Contract (First Cause of Action)</u>

New York has "long adhered to the 'sound rule in the construction of contracts that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language." R/S Assoc. v. New York Job Dev. Auth., 98 N.Y.2d 29, 32 (2002). "When parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." Id. Thus, "parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." Id. at 33 (quoting W.W.W. Assoc. v. Giancontieri, 77 N.Y.2d 157, 163 (1990)). An agreement is considered unambiguous on its face if its language "has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." FlightSafety Int'l, Inc., 418 F. Supp. 2d at 107-08. In contrast, a contract is said to contain ambiguous language, and thus to be subject in certain circumstances to clarification via parol or other extrinsic

evidence, if its language is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, usages and terminology as generally understood in the particular trade or business." Id. at 108 (quoting Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992)).

Soroof claims that GEFCS breached three provisions of the Contract: first, GEFCS failed to supply fuel cells that met the specified contractual standards; second, GEFCS failed to use "reasonable efforts to supply" the fuel cells to Soroof; and third, GEFCS did not promptly share relevant information regarding the fuel cells with Soroof. (Compl. ¶¶ 14, 22, 35.)[1]  The Court will address each of the three bases for Soroof's breach of contract claim in turn.

Soroof contends that, under the terms of the Contract, GEFCS was obligated to "make available for Soroof a sufficient quantity of Product to distribute throughout the Kingdom of Saudi Arabia." (Id. ¶ 14).  To support this contention, Soroof cites three provisions of the Contract: first, under the heading of "GEFCS Responsibilities," the statement that "GEFCS covenants and warrants that it shall . . . [u]se reasonable efforts to supply" the fuel cells (id., Contract § 5.2); second, under the heading "Representations and Warranties," the statement that GEFCS had the "full authority and capacity to enter into and perform its obligations under the Agreement" (id. § 10.1.2); and third, under the same heading, the statement that GEFCS had "full legal right, power, and authority to enter into and perform this Agreement" (id. § 10.1.4). Soroof concludes from these written terms that GEFCS was under an obligation to supply a

---

[1]     Soroof asserts that GE Microgen, Inc., and Plug Power, Inc., are also liable for these contractual breaches as alter egos of GEFCS. (Compl. ¶ 37.)

"sufficient quantity" of fuel cells to distribute throughout Saudi Arabia and that it had warranted

its capacity to do so.  However, the Contract's language does not support this conclusion.

By the plain language of the terms Soroof cites in its pleadings, GEFCS was to

make "reasonable efforts" to supply Soroof with fuel cells matching the specifications of the

Contract.  When interpreting the meaning of a "reasonable efforts" clause, "New York courts use

the term 'reasonable efforts' interchangeably with 'best efforts' . . . [and] a 'best efforts' clause

imposes an obligation to act with good faith in light of one's own capabilities." <u>Monex Fin.

Serv. Ltd. v. Nova Info. Sys., Inc.</u>, 657 F. Supp. 2d 447, 454 (S.D.N.Y. 2009).  GEFCS'

contractual obligation to use "reasonable efforts" thus required it to work in good faith and to the

extent of its capabilities to produce the fuel cells.  The provision did not, as Soroof would have

it, obligate GEFCS to successfully supply the fuel cells.  So long as GEFCS used reasonable

efforts in its attempt to manufacture the fuel cells, the best efforts clause imposed no obligation

to provide <u>any</u> cells, much less a quantity sufficient to distribute throughout Saudi Arabia.  Put

differently, reasonable efforts to supply a product are not necessarily the same as actual success

in supplying a product.  The authority and capacity provisions that Plaintiff cites do not impose

production or supply obligations.

The Court has, independently, reviewed the Contract – which was attached to the

Complaint and is therefore properly considered a part of the pleadings – and found no additional

written terms or conditions to support Soroof's interpretation of GEFCS' obligations.  The only

language that obliges GEFCS to provide any quantity of fuel cells is the provision that "GEFCS

covenants and warrants that it shall . . . [s]ell to [Soroof] a sufficient quantity of Product <u>to

satisfy [Soroof]'s firm purchase orders accepted by GEFCS</u>."  (Contract § 5.1) (emphasis added).

As Soroof avers in its pleadings, it never placed any such order.  (<u>Id.</u> ¶¶ 17, 24.)  Soroof alleges

that it was never given the opportunity to place an order because, for the duration of the

Contract, GEFCS failed to bring the fuel cells to market. (Id. ¶ 24.) But, as already explained,

GEFCS was under no obligation to succeed in bringing the fuel cells to market. Further, even if

Soroof had placed an order, a breach would only have occurred had GEFCS accepted the order

and then failed to deliver, neither of which occurred.

       Soroof provides additional proffers, in the form of parol evidence, to support its

contention that GEFCS had an obligation to supply a sufficient quantity of fuel cells to distribute

throughout Saudi Arabia. Specifically, Soroof alleges that, prior to entering into the written

agreement, unnamed GEFCS officials told Soroof that the fuel cells would be ready for

distribution within six months. New York law is clear, however, that such parol evidence is

inadmissible to vary the terms of a fully integrated, clear and unambiguous contract. Morgan

Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp., 269 F. Supp. 2d 206, 214 (S.D.N.Y.

2003); R/S Assoc. v. New York Job Dev. Auth., 98 N.Y.2d 29, 33 (2002). Explaining the

rationale for this rule, the New York Court of Appeals has stated that "[t]he best evidence of

what parties to a written agreement intend is what they say in their writing." Slamow v. Del Col,

79 N.Y.2d 1016, 1018 (1992).

       In the case at hand, the language of the Contract obligates GEFCS to make

reasonable efforts to supply the fuel cells but makes no mention of a time period, whether six

months or otherwise, in which such reasonable efforts were to result in success. Had the parties

intended to include such a time frame in their agreement, they could have incorporated it into the

written document. Moreover, the Contract contains an explicit integration clause, providing that

"any terms and conditions relating to transactions within the scope of this Agreement which are

not incorporated or referenced herein shall not be binding upon either Party" and "this

Agreement wholly cancels, terminates and supersedes any agreement heretofore entered into between [Soroof] and GEFCS with respect to the distribution and servicing of the Product." (Contract §§ 22.1-.2.)  Parol evidence is properly excluded where, as here, a contract is clear, unambiguous, complete on its face and, moreover, contains an explicit integration clause.  See Morgan Stanley High Yield Sec., Inc., 269 F. Supp. 2d at 214-15.  Accordingly, Soroof's breach of contract claim that is premised on a contractual obligation to supply fuel cells to Soroof in sufficient quantity for distribution is unavailing, as the Complaint fails to allege facts sufficient to support such a claim.

Soroof's second basis for its breach of contract claim, that GEFCS failed to make reasonable efforts to supply fuel cells, is similarly unavailing.  As previously noted, when a party agrees to use "reasonable efforts," it agrees to act "'in good faith and to the extent of its own capabilities."  Monex Fin. Serv. Ltd., 657 F. Supp. 2d at 454.  Soroof asserts that "GE Fuel Cell breached its obligations under the Agreement by failing to . . . use "reasonable efforts to supply" this Product" (Compl. ¶¶ 14, 22, 35), and that "GE MicroGen [sic] and Plug Power wrongfully delayed performance [of the Contract by] waiting for the term of the Agreement to run" (id. ¶ 28).  Soroof provides no facts – such as specific instances of delay, facts regarding what efforts were lacking, or even allegations concerning GEFCS's capabilities and its failure to live up to them – to support these conclusory statements.  Soroof relies instead on GEFCS's lack of success in manufacturing the fuel cells.  GEFCS's failure to manufacture and supply the cells, however, does not, in and of itself, provide a plausible basis for inferring that GEFCS acted in bad faith or at a level below its capacities, as would be required to state a plausible claim for breach of a reasonable efforts covenant.  Soroof has failed to allege facts sufficient to "permit the court to infer more than a mere possibility of misconduct," Iqbal, 129 S. Ct. at 1950, and thus

has failed to state a breach of contract claim premised on GEFCS's failure to use reasonable efforts to produce fuel cells.

As its third basis for the breach of contract claim, Soroof asserts that "GE Fuel Cell breached its obligations under the Agreement by failing to . . . share promptly relevant information, including but not limited to product performance, failure and liability issues." (Compl. ¶¶ 14, 22, 35.)  In its Complaint, Soroof fails to amplify this conclusory allegation with any specific facts to render the claim plausible.  While Soroof identifies instances in which GEFCS notified Soroof of delays in producing the fuel cells, the Complaint provides no basis for the inference that GEFCS withheld material information about the ultimate viability of the cells on any of these occasions, or that the notifications were not made on a timely basis.  As the Supreme Court made clear in Iqbal, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  129 S. Ct. at 1949 (internal citations and quotations omitted).  Because Soroof's pleading does no more than make naked assertions without any factual enhancements to support them, this aspect of the breach of contract claim is not viable as currently pleaded.

Although the Complaint is insufficient to support a claim that GEFCS breached the Contract by failing to use reasonable efforts to produce fuel cells or by failing to share promptly relevant information, Soroof has proffered evidence in connection with the instant motion practice that suggests those claims might be meritorious.  Courts "should freely give leave to amend when justice so requires," Fed. R. Civ. P. 15(a)(2), and the United States Court of Appeals for the Second Circuit has stated that courts should be "hesitant to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings."  Ross v. A.H.

Robins Co., 607 F.2d 545, 547 (2d Cir. 1979). In its moving papers, Soroof proffers the deposition of one Frank Scovello, the former President of GEFCS, during which he testified that Defendants began to realize as early as "the 2001 time frame" that "they could not build a product even close to what [they] had originally contemplated." (Dep. of Frank Scovello 12-13, 102.) Soroof, however, did not learn until 2005 that the product could not be built according to the contractual specifications. These facts suggest that Soroof may have a meritorious claim that Defendants breached the provision of the contract that required them to "share promptly relevant information, including but not limited to product performance" and breached the best efforts covenant by failing to work in good faith to bring the fuel cells to market during the life of the Contract. These aspects of the breach of contract claim will be dismissed without prejudice to repleading them in a manner that incorporates relevant facts that support the claim. In all other respects, Soroof's first cause of action for breach of contract will be dismissed with prejudice.

Misrepresentation (Second Cause of Action)

Claims for fraud must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "all averments of fraud" be "stated with particularity." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard when asserting a claim of fraudulent misrepresentation, a plaintiff must identify: (1) specific statements that plaintiff contends were fraudulent; (2) the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent. Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000); see also Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.P.A., 244 F.R.D. 204, 213 (S.D.N.Y. 2007). "In the case of fraudulent concealment or omission, where the plaintiff is unable to specify the time and place because no act occurred, 'the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of

the omissions and the manner in which they misled the plaintiff; and (4) what the defendant

obtained through fraud.'" Manhattan Motorcars, Inc., 244 F.R.D. at 213 (quoting Odyssey Re

(London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y.

2000)).

       Soroof identifies two specific instances in which GEFCS made allegedly

fraudulent statements: GEFCS's pre-contractual assurance that the fuel cells would be ready

within six months and its assurance in November 2000 that the fuel cells would be ready in

2001.  (Compl. ¶¶ 9, 17.)  Plaintiff's proffers merely paraphrase these alleged statements and

provide no direct quotes.  Moreover, Soroof attributes the alleged statements to unnamed "GE

officials" and gives no specific dates for the comments, failing to provide even a specific month

for the alleged pre-contractual statement that the fuel cells would be ready within six months.

Plaintiff thus fails to adequately plead at least three of the four elements necessary to state a

claim of fraudulent misrepresentation.

       Plaintiff further alleges that GEFCS made "repeated representations" about the

viability of the fuel cells that were fraudulent, as well as multiple omissions of material facts,

upon which Plaintiff relied when spending an estimated total of three million dollars.  (Id. ¶¶ 13,

18, 20, 41, 45.)  These allegations – lacking proffers as to who, when, how or even what was

misstated or omitted – similarly fail to satisfy the heightened pleading standard of 9(b).

       However, as noted in the discussion of the claim for breach of contract, Soroof

has proffered evidence in connection with the instant motion that suggests Soroof may have a

meritorious claim.  Therefore, Soroof's misrepresentation claim will be dismissed for failure to

satisfy the requirements of Federal Rule of Civil Procedure 9(b) without prejudice to repleading

in a manner consistent with the requirements of Rule 9(b).

Conversion (Third Cause of Action)

Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44 (1995)). "To state a claim of conversion, the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." Lefkowitz v. Bank of New York, 676 F. Supp. 2d 229, 251 (S.D.N.Y. 2009) (internal quotations omitted). Soroof contends that GEFCS "wrongfully and without authority" exercised dominion over the one million dollars it paid upon signing the Contract, thereby committing conversion. (Compl. ¶ 48.) The Contract, however, expressly characterizes the payment as a non-refundable fee, and Soroof knowingly authorized GEFCS to receive it by both signing the Contract and paying the one million dollars. (Id. ¶ 11.) Under these circumstances, the Court finds no factual basis for a determination that GEFCS acted without authorization or that the property in question belonged to Soroof. Judgment on the pleadings will therefore be granted as to Plaintiff's conversion claim.

Constructive Trust and Unjust Enrichment (Fourth and Fifth Causes of Action)

A finding of unjust enrichment is required for a finding of a constructive trust. In re First Central Fin. Corp., 377 F.3d 209, 212 (2d Cir. 2004). "[U]njust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable contract governing the same subject matter exists." Mina Inv. Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998); see also In re First Central Fin. Corp., 377 F.3d at 212;

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987).  Indeed, the Second

Circuit has held that the "existence of a written agreement precludes a finding of unjust

enrichment . . . [and] constructive trust."  In re First Central Fin. Corp., 377 F.3d at 213

(emphasis added).  In the case at hand, Soroof and GEFCS's relationship was, at all relevant

times, governed by a contract.  It is under this very contract that Soroof seeks relief on its other

claims.  As such, Plaintiff has no basis for relief under quasi-contractual remedies such as

constructive trust and unjust enrichment.  Accordingly, judgment on the pleadings in

Defendants' favor will be granted as to Plaintiff's fourth and fifth causes of action.

Demand for an Accounting (Sixth Cause of Action)

"A party seeking an accounting must first establish four conditions: (1) relations

of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing

upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some

cases, a demand for an accounting and a refusal."  IMG Fragrance Brands LLC v. Houbigant,

Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting Pressman v. Estate of Steinvorth, 860

F. Supp. 171, 179 (S.D.N.Y. 1994)).  Though the pleadings are not specific, Plaintiff presumably

bases its demand for accounting on the one million dollar non-refundable fee, on the theory that

this money was entrusted to GEFCS.  As already explained, the fee was clearly labeled in the

Contract as a non-refundable payment and Soroof had no right to reclaim it once it was paid.

Soroof cannot demand an accounting for monies that it gave, via contract, to GEFCS under the

explicit understanding that they were non-refundable.  Nor does Soroof allege that it entrusted

any other monies or property to GEFCS upon which the demand for accounting could be based.

Defendants will be granted judgment on the pleadings as to Plaintiff's sixth cause

of action.

Contractual Limitation on Liability

Defendants assert that Soroof's claims must be dismissed because the claims are barred by the Contract's express limitations on liability and because the claims are untimely, having been asserted after the applicable statutes of limitations had run.  The Court addresses Defendants' limitation on liability argument and statute of limitations argument only insofar as they relate to the two claims that Soroof will be permitted to replead and only to determine whether these arguments provide clear bases for denying leave to replead on the grounds that amendment of the pleadings would be futile.  For the following reasons, the Court finds that Defendants' arguments do not provide a proper basis for denying Plaintiff an opportunity to replead some of its claims.

With regard to Defendants' limitation on liability argument, the Contract provides, in pertinent part, as follows:

> In no event, whether as a result of breach of contract, indemnity, warranty, tort (including negligence), strict liability or otherwise, shall GEFCS or its officers, directors or employees be liable to [Soroof] . . . for loss of profit or revenues, downtime costs, cost of capital, cost of facilities or services, or any other costs or damages which may be categorized as indirect, incidental, exemplary or consequential damages.

(Contract § 12.2.)  The Contract provides further that:

> Neither GEFCS nor [Soroof] shall be liable to the other by reason of termination, expiration, or non-renewal of this Agreement for compensation, reimbursement or damages on account of loss of present or prospective profits on sales or anticipated sales or on account of expenditures, investments, leases or commitments in connection with  the business or good will of GEFCS or [Soroof] or on account of any other cause or thing whatsoever . . . .

(Contract § 15.4.)

"An entrepreneur may provide protection against its own fault," and contract provisions that limit liability are "perfectly common and acceptable."  Kalisch-Jarcho v. City of

New York, 58 N.Y.2d 377, 384-85 (1983).  However, "an exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts."  Id. at 384.

Based on the evidentiary proffers that Soroof has made in connection with the instant motion practice, Soroof might have a good faith basis for alleging in its amended pleadings that GEFCS willfully and/or with gross negligence breached the contract and/or misrepresented material facts.  The evidence proffered in connection with the instant motion practice suggests that GEFCS knew as early as 2001 that it could not build a product that would meet the contractual specifications and that GEFCS withheld this information from Soroof until 2005 and that GEFCS affirmatively deceived Plaintiff by indicating repeatedly that a contractually adequate product would soon be ready for distribution.  As Soroof may have a good faith basis for asserting willful misconduct or gross negligence on the part of GEFCS, Defendants' argument that the contract provisions limiting liability preclude Plaintiff's claims is, at this stage of the proceeding, unavailing.

The foregoing analysis applies as well to Soroof's request for an award of the one million dollar distribution fee insofar as it is premised on a claim that Soroof's inability to reap the benefit of the distribution arrangement was the product of willful misconduct or gross negligence on the part of GEFCS.  Defendants assert that the fee's characterization as non-refundable limits Defendants' liability by precluding a particular category of damages, just as section 12.2 of the Contract limits liability by precluding damages "for loss of profit or revenues, downtime costs, cost of capital," and section 15.4 precludes damages for "loss of present or prospective profits on sales or anticipated sales."  Because the fee's non-refundable status

functions in the same manner as the other contractual limitations on liability, the fee's non-refundable status is subject to the same public policy considerations that justify disregarding limitations on liability in the event of willful misconduct or gross negligence. Furthermore, the non-refundable fee was paid by Soroof not as a gift but as one element in a bargained for exchange and, in that context, "the word non-refundable cannot be construed as a license to provide little or no consideration and to still retain an advance payment." <u>Iwon, Inc. v. Ourhouse, Inc.</u>, 744 N.Y.S.2d 791, 794 (N.Y. Sup. Ct. 2001). Accordingly, Plaintiff will be permitted to replead its breach of contract and misrepresentation claims, including the claims' prayer for recovery of the one million dollar distribution fee, notwithstanding the contract's characterization of the fee as non-refundable.

The Court notes that the parties have not briefed, and the Court does not address here, whether loss of the distribution fee was the result of the particular misconduct that Plaintiff has been given leave to replead in its amended complaint such that the fee should be included in an award of damages. The Court has addressed only Defendants' argument that the non-refundable characterization of the fee provides a complete bar to recovery of the fee.

<u>Statute of Limitations for Plaintiff's Breach of Contract and Misrepresentation</u>

Defendants assert that Plaintiff's claims for breach of contract and misrepresentation are barred by the applicable statutes of limitations. Specifically, Defendants assert that (i) Plaintiff's claims accrued as early as <u>November 2000</u> when, according to Soroof, GEFCS was required, but failed, to deliver fuel cells to Soroof; (ii) a <u>four-year</u> statute of limitations applies to the breach of contract claim pursuant to New York's Uniform Commercial Code because the Contract provided expressly that the relationship of GEFCS and Soroof was that of buyer and seller and a <u>two-year</u> statute of limitations applies to the misrepresentation

claim pursuant to New York's Civil Practice Law and Rules; and (iii) Soroof's claims are

untimely because Soroof did not initiate arbitration until <u>July of 2008</u>.[2]  Soroof responds that its

claims are timely, as the claims did not accrue until 2005 or, alternatively, the statute of

limitations was tolled until 2005 or later.  Soroof also asserts that a six-year statute of limitations

applies pursuant to § 213 of New York's Civil Practice Law and Rules because Soroof's

relationship to GEFCS was primarily that of a distributor and not a buyer.

   "Generally, any Statute of Limitations begins to run when a cause of action

accrues.  In New York, a breach of contract cause of action accrues at the time of breach."  <u>Ely-</u>

<u>Cruikshank v. Bank of Montreal</u>, 81 N.Y.2d 399, 402 (1993).  For a misrepresentation cause of

action, the statute of limitations runs "from the date the cause of action accrued" for six years or

"from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have

discovered it," for two years.  N.Y. C.P.L.R. 213(8) (McKinney Supp. 2011).  "[U]nder the

equitable tolling doctrine, a statute of limitations does not run against a plaintiff who was

justifiably ignorant of his cause of action," and "the doctrine of equitable estoppel may toll a

statute of limitations where defendant's misconduct caused him to delay bringing suit."  <u>Access</u>

<u>Northern Sec. Corp. v. Linear Corp.</u>, 97 Civ. 2937, 1998 WL 566815, *5 (S.D.N.Y. Sept. 4,

1998) (citations and some internal punctuation omitted).

   Based on the evidence proffered in connection with the instant motion practice,

Soroof might have a good faith basis for alleging that Soroof was justifiably ignorant of its

---

[2] "Defendants' position is that the filing of the arbitration did not toll the statute of limitations [but] for the purposes of this motion, Defendants assume that the July 2008 arbitration filing did toll the statute."  (Defs.' Reply Mem. of L. in Support of Mot. for J. on the Pleadings 2.)

claims or was caused by Defendants' misconduct to delay bringing its claims until 2005 or some

time thereafter, on account of Defendants' repeated representations that a viable product would

be available imminently and Defendants' failure to disclose that GEFCS knew it would be

unable produce a viable product. The statute of limitations thus might have begun to run in 2005

or later so that the commencement of arbitration in July of 2008 would have been within the

limitations period, whether a 4-year or 6-year limitations period applies. Even if a 2-year

limitations period applies to the misrepresentation claim, the claim could be timely depending on

when Soroof discovered or could have discovered that Defendants' representations were

fraudulent. Accordingly, Defendant has not show that giving Soroof the opportunity to replead

would be futile, and Plaintiff will be given the opportunity to amend its breach of contract and

misrepresentation claims.

<u>Plaintiff's Motions for Sanctions</u>

"Rule 11(c) of the Federal Rules of Civil Procedure[ ] allows the court to sanction

a party, if the court determines that the party has violated Rule 11(b) by making false,

misleading, improper, or frivolous representations to the court." <u>Williamson v. Recovery Ltd.</u>

<u>Partnership</u>, 542 F.3d 43, 51 (2d Cir. 2008); Fed. R. Civ. P. 11. Plaintiff contends that

Defendants' Rule 12(c) motion filings are misleading and, as such, warrant sanctions.

Specifically, Plaintiff contends that Defendants failed to disclose three key facts in their Rule

12(c) motion filings, that the omissions misled the Court, and that Defendants' Rule 12(c)

motion should thus be denied and Defendants should be sanctioned. Plaintiff's contentions are

unavailing for the reasons discussed below.

First, according to Plaintiff, the Arbitration Panel's denial of Defendants' motion

to dismiss the arbitration conclusively resolved the issues that Defendants raise in their present

Rule 12(c) motion, establishing law of the case precluding relitigation of those issues.  Plaintiff

argues that Defendants misled the Court by allegedly failing to disclose the prior proceedings

and their allegedly preclusive effect on the present motion.  However, contrary to Plaintiff's

assertion, Defendants did not hide either the existence of the prior arbitration or the Arbitration

Panel's decision denying Defendants's motion to dismiss the arbitration proceeding.  See Docket

Nos. 31-32.  Furthermore, there is no basis for Plaintiff's contention that the Panel's action on

the motion precludes Defendants' arguments here.  The Arbitration Panel denied Defendants'

motion to dismiss without prejudice, with an explicit allowance for Defendants to re-assert the

same arguments after discovery, and without any discussion of or conclusions regarding the

merits of the legal arguments advanced by Defendants.

        Second, Plaintiff alleges that Defendants raised only a six-year statute of

limitations in the context of the arbitration proceeding and thus are judicially estopped from

relying on a four-year statute of limitations in their Rule 12(c) motion filings.  This assertion is

baseless.  Defendants were under no obligation, by reason of judicial estoppel or otherwise, to

limit themselves to the six-year statute of limitations in the present action.  Judicial estoppel is

inapposite where, as here, no final judgment was reached in the prior proceeding, the disputed

representation was one of law rather than fact, and the court (or arbitration panel) never adopted

the disputed representation in its decision-making process.  See, e.g., Republic of Ecuador v.

Chevron Corp., 638 F.3d 384, 397 (2d Cir. 2011); In re Adelphia Recovery Trust, 634 F.3d 678,

695-97 (2d Cir. 2011).

        Third, Plaintiff alleges that Defendants misled the Court by failing to disclose the

existence of and details of the Venue Agreement that the parties reached at the close of the

arbitration.  Plaintiff also asserts that Defendants breached the Venue Agreement by making

statute of limitations arguments premised on the filing date of this action.  Defendants'

limitations arguments cite the 2010 filing date of this action but also assert that the action is

untimely in relation to any assertions of the claims by Plaintiffs, so the argument that defendants

misled the Court in violation of Rule 11 is unavailing.  Furthermore, Defendants acknowledged

those aspects of the Venue Agreement that were, conceivably, material to their Rule 12(c)

motion – namely, the argument that the statute of limitations should be tolled from the date that

arbitration was initiated – within the motion itself.  (Mem. of Law in Supp. of Defs.' Mot. for J.

on the Pleadings, 12 n.3.)  The other details of the agreement were inapplicable to the Rule 12(c)

motion and Defendants had no obligation to disclose them in their papers.

        For these reasons, Plaintiff's motion for sanctions against Defendants and their

counsel is denied.

<u>Defendants' Application for Attorneys' Fees and Costs</u>

        Defendants seek an award of attorneys' fees and costs in connection with

Plaintiff's sanctions motion, arguing that Plaintiff's sanctions motion is frivolous and vexatious.

Financial sanctions, such as an order to pay an award of attorneys' fees and costs to the opposing

party, may be imposed pursuant to Federal Rule of Civil Procedure 11 when a party makes

"false, misleading, improper, or frivolous representations to the court."  <u>Williamson</u>, 542 F.3d at

51.  A claim is considered frivolous when "the legal position has no chance of success."  <u>Fishoff

v. Coty Inc.</u>, 634 F.3d 647, 655 (2d Cir. 2011) (internal quotations omitted).  However, "[t]he

fact that a legal theory is a long-shot does not necessarily mean it is sanctionable."  <u>Id.</u>  Also, 28

U.S.C. § 1927 authorizes a court to impose financial sanctions on an attorney "who . . .

multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C.A § 1927 (West

2006).  However, "[t]he Second Circuit has made clear that such sanctions are only 'proper when

the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" <u>Fagan v. Republic of Austria</u>, No. 08 Civ 6715, 2011 WL 1197677, at *20 (S.D.N.Y. Mar. 25, 2011) (quoting <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1272 (2d Cir. 1986)).  The Second Circuit has further explained that there must be "<u>clear evidence</u> that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes." <u>Revson v. Cinque & Cinque, P.C.</u>, 221 F.3d 71, 78 (2d Cir. 2000) (emphasis added).

Plaintiff's motion for sanctions, though not meritorious, was not patently frivolous, as would be required to support the imposition of sanctions pursuant to Rule 11.  The motion did not cross the line from being a "long shot" to having "no chance of success."  Nor does the Court agree that Plaintiff's motion for sanctions was so un-meritorious as to compel the conclusion that it was filed for an improper purpose, as is necessary to impose sanctions pursuant to Section 1927.  Defendants allege that Plaintiff filed the motion for sanctions to improperly delay and interfere with the case, but their only evidence is that the motion was filed during a particularly busy time in the proceedings.  Their circumstantial argument falls far short of the "clear evidence" necessary to justify sanctions under Section 1927.

Defendants' application for an award of attorneys' fees will be denied.

<u>Parties' Cross-motions for Summary Judgment</u>

Plaintiff has moved for partial summary judgment, seeking nullification of GEFCS's certificate of cancellation and the piercing of the veil of GEFCS.  Defendants have cross-moved for summary judgment, arguing that GEFCS's certificate of cancellation should not be nullified and, thus, all claims against GEFCS must be dismissed, and that all claims against GEFCS's members should be dismissed because Plaintiff has not proffered facts adequate to

warrant the piercing of GEFCS's corporate veil.

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact). A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Similarly, "mere conclusory allegations, speculation or conjecture" will not suffice to defeat summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996); see also Fed. R. Civ. P. 56(e). When cross-motions for summary judgment are filed, "the standard is the same as that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

Plaintiff's Motion for Partial Summary Judgment Nullifying GEFCS's Certificate
of Cancellation and Defendants' Motion for Summary Judgment Dismissing Claims
<u>Against GEFCS</u>

A limited liability company cannot be sued under Delaware law once the
company's certificate of cancellation has been filed unless the plaintiff successfully seeks to
have the company's certificate of cancellation nullified on the ground that the company was not
"wound up" in compliance with Delaware law. <u>Metro Commc'n Corp. BVI v. Advanced
Mobilecomm Tech.</u>, 854 A.2d 121, 138-39 (Del. Ch. 2004) (citing <u>In re CC&F Fox Hill Assoc.
Ltd. P'ship</u>, 1997 WL 349236, at *4 (Del. Ch. June 13, 1997)).  Plaintiff moves for partial
summary judgment nullifying GEFCS's certificate of cancellation, asserting that GEFCS was
wound up in contravention of Delaware law when GEFCS failed to make provision sufficient to
provide compensation to Soroof for claims likely to arise at the time of dissolution.  Defendants
cross-move for summary judgment dismissing all claims against GEFCS, asserting that GEFCS
had no obligation to make provision for Plaintiff's claims because GEFCS had no available
assets at the time of dissolution.  The applicable section of the Delaware LLC Act provides that:

> If there are sufficient assets, such claims and obligations [against an LLC] shall
> be paid in full and any such provision for payment made shall be made in full. If
> there are insufficient assets, such claims and obligations shall be paid or provided
> for according to their priority and, among claims of equal priority, ratably <u>to the
> extent of assets available therefor</u> (emphasis added).

LLC Act § 18-804(b).  It is undisputed that GEFCS had no assets available to pay potential
claims at the time of dissolution.  (<u>See</u> Scovello Dep. ("GEFCS really had no cash assets. The
only items that existed within the physical plant were the [computer] server . . . and a phone
switch."))  Because an LLC is obligated to make provision for claims only "to the extent of
assets available therefor," GEFCS was not wound up in contravention of Delaware law when,
lacking any real assets, it did not make adequate provision for Soroof's claims.  Therefore,

Plaintiff's motion for partial summary judgment nullifying GEFCS's certificate of cancellation will be denied, and Defendants' motion for summary judgment dismissing all claims against GEFCS will be granted.

Plaintiff argues that GEFCS's lack of assets was the result of Defendants' intentional and improper undercapitalization of GEFCS as the mere alter ego of the Defendants, and that GEFCS should not be permitted to avoid liability on that basis.  Although the question of whether GEFCS was the Defendants' alter ego is clearly relevant to a determination of whether claims may proceed against GE Microgen and Plug Power, Soroof has cited no legal authority for the proposition that an LLC's certificate of cancellation should be nullified because the LLC was the alter ego of its owners.  Furthermore, as a practical matter, permitting Soroof to proceed with its claims against GEFCS will not augment Soroof's prospects of actual recovery should it successfully litigate this suit, as all parties agree that GEFCS no longer exists, lacks any assets, and lacked any significant assets at the time of dissolution.  Plaintiff has failed to raise a genuine issue of material fact as to the propriety of GEFCS's dissolution and has not shown that it is entitled as a matter of law to nullification of the certificate of cancellation.  Plaintiff's motion for partial summary judgment nullifying GEFCS's certificate of cancellation will be denied, and Defendants' motion for summary judgment dismissing all claims against GEFCS will be granted.

### Plaintiff's Motion to Pierce the Veil of GEFCS

Plaintiff moves for partial summary judgment to pierce the veil of GEFCS, thereby enabling Plaintiff to pursue its claims against GE Microgen and Plug Power.  Defendants argue in their cross-motion that Plaintiff has not proffered facts adequate to pierce the veil of GEFCS and that, therefore, all claims should be dismissed as against GE Microgen and Plug

Power. "Delaware law permits a court to pierce the corporate veil where there is fraud or where [the corporation] is in fact a mere instrumentality or alter ego of its owner." NetJets Aviation, Inc. v. LHC Commc'ns LLC, 537 F.3d 168, 177 (2d Cir. 2008) (citations and internal quotation marks omitted). "To prevail under the alter-ego theory of piercing the veil, a plaintiff need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an overall element of injustice or unfairness." Id. (citation and internal quotation marks omitted). The factors that a court must consider when evaluating an alter-ego argument for veil piercing include:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

Id. at 176-77. "These principles are generally applicable as well where one of the entities in question is an LLC rather than a corporation," except that "somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required." Id. at 178. Overall, "no single factor can justify a decision to disregard the corporate entity, but . . . some combination of them is required, and . . . an overall element of injustice or unfairness must always be present, as well." Id. at 177.

Plaintiff has proffered evidence that GEFCS had no cash assets at the time of dissolution; that GEFCS had no employees and that the individuals working at GEFCS were actually employees of Plug Power, Microgen or GE; and that GEFCS did not lease its office space but, instead, GE Microgen leased the office space from Plug Power. The office space did not have a plaque or other sign indicating the presence of GEFCS; instead, the space "was

identified as GE Microgen." (Conway Dep. 22:13-22.) Plaintiff's uncontroverted proffers demonstrate an extensive "mingling of the operations" of GEFCS and its owners, such that GEFCS was a mere instrumentality or alter ego of GE Microgen and Plug Power, as well as an overall element of unfairness to Soroof. Defendants's proffers have not created a genuine issue of material fact such that a rational jury could find that piercing GEFCS's corporate veil is not warranted.

Plaintiff's motion for partial summary judgment piercing the veil of GEFCS will be granted so that Soroof may proceed with its claims against GE Microgen and Plug Power. Defendants' motion for summary judgment dismissing all claims against GE Microgen and Plug Power will be denied.

CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted as to Plaintiff's third, fourth, fifth and sixth causes of action. Plaintiff's first and second causes of action are dismissed without prejudice to repleading. Plaintiff's motion for sanctions and Defendants' application for attorneys' fees and costs are both denied. Plaintiff's motion for partial summary judgment is granted with regard to the piercing of the veil of GEFCS and is denied in all other respects. Defendants' motion for summary judgment dismissing all claims against GEFCS is granted. Defendants' motion for summary judgment dismissing all claims against GE Microgen and Plug Power is denied.

Any amended complaint repleading the first and second causes of action must be filed by February 10, 2012. Failure to file a timely amended pleading will result in the dismissal of Plaintiff's Complaint in its entirety, with prejudice and without further advance notice.

If an amended complaint is timely filed, the parties must meet with Magistrate

Judge Francis to discuss the possibility of settlement and any outstanding pretrial matters.

This Memorandum Opinion and Order resolves docket entry numbers 45, 74, 87 and 91.

SO ORDERED.

Dated: New York, New York
       January 24, 2011

LAURA TAYLOR SWAIN
United States District Judge