**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **SOROOF TRADING DEVELOPMENT COMPANY, LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**GENERAL ELECTRIC COMPANY, GE MICROGEN, INC. and PLUG POWER, INC.**<br><br>Defendant. | ) | No. 10 Civ. 1391 (LGS) (JCF) |

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE


I. PROCEDURAL HISTORY 3

II. FACTUAL BACKGROUND 5

A. The Parties' Relationship 5

B. GE Microgen Maintained No Separate Existence From, and Was Wholly Dependent On, GE ..... 8

III. ARGUMENT ..... 11

A. Rule 56 Standards ..... 11

B. The Corporate Veil of GE Microgen Should be Pierced to Hold GE Liable For the Actions of GE Microgen and GEFCS ..... 12

1. Delaware Law Applies ..... 12

2. Material, Undisputed Facts Warrant Piercing the Corporate Veil of GE Microgen ..... 13

3. GE Misused the Corporate Form ..... 15

IV. CONCLUSION ..... 17

Plaintiff Soroof Trading Development Company, Ltd. ("Soroof"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment. Partial summary judgment is warranted in this case against Defendant GE Microgen, Inc. ("GE Microgen") because the undisputed evidence proves that GE Microgen was the alter ego of its immediate parent company, Defendant General Electric Company ("GE").[1]

**PRELIMINARY STATEMENT**

Material, undisputed facts warrant summary judgment in Soroof's favor to pierce the corporate veil of Defendant GE Microgen and hold its parent, Defendant GE, liable for any eventual judgment entered against it in this case. That is, material facts adduced in the course of discovery reveal that <u>both</u> GE Fuel Cell Systems, LLC ("GEFCS") and one of its two members, GE Microgen, are identically situated for purposes of piercing the corporate veil. Both were grossly undercapitalized shell entities over whom GE maintained complete domination and control. Both lacked even the most basic elements of an independent existence from GE. Both were wholly reliant on GE for funding. Both had no employees of their own but were provided GE employees to the extent support was needed. Both were used by GE to make promises to Soroof that GE knew could not be met. GE Microgen conducted no business, and both generated no revenue. GE diverted funds from GEFCS, bypassed GEFCS's member GE Microgen, and utilized those funds to defray the salaries of GE employees. Despite knowing of Soroof's potential claims, GE, through GE Microgen, directed the dissolution of GEFCS, which was

[1] As will be discussed more fully below, Soroof has successfully litigated the issues presented in this brief twice. Soroof incorporates herein by reference and adopts each of the briefs it has filed on the issue of piercing the corporate veil. *See* (1) Motion for Leave to Amend and Reply in Support Thereof (Dkt. #56-58 and #77, respectively); (2) Motion for Partial Summary Judgment and Reply in Support Thereof (Dkt. #87-90 and #104, respectively); and (3) Renewed Motion for Leave to Amend and Reply Briefs in Support Thereof (Dkt. #123-125 and #136-139, respectively).

without any assets, without making provisions for those claims. Finally, GE Microgen is likely no longer a going concern, if it ever was.

The identity of material facts surrounding GEFCS's and GE Microgen's corporate status and GE's abuse of their corporate forms is significant. This very same undisputed evidence adduced in discovery served as the foundation for Soroof's motion seeking partial summary judgment to pierce the corporate veil of GEFCS to reach its members, Defendants GE Microgen and Plug Power, Inc. ("Plug Power"), which The Hon. Laura Swain Taylor granted on January 24, 2012.[2] *See Soroof Trading Development Company v. GE Microgen, Inc.*, 842 F.Supp.2d 502, 521-22 (S.D.N.Y. 2012) (Dkt. #110) ("*Soroof I*"). It also served as the evidentiary basis for the veil piercing allegations made by Soroof in its Second Amended Complaint against GE, by which GE was added as a party to this litigation. By his order of May 11, 2012 granting Soroof's Renewed Motion for Leave to Amend to add GE as a party, Magistrate Judge James C. Francis IV recognized this: "Indeed, the allegations presented here are similar in breadth and nature to the facts Soroof successfully used to argue that GEFCS was an alter ego of GE Microgen and Plug Power." *Soroof Trading Development Company v. GE Microgen, Inc.*, 283 F.R.D 142, 151 (S.D.N.Y. 2012) (Dkt. #140) ("*Soroof II*").

In short, the undisputed evidence makes clear that the only discernible purpose for GE Microgen was to serve as an extra layer of corporate protection between GEFCS – the entity with whom Soroof contracted – and GE. Yet, despite its abuse of the corporate form and having never adhered to any corporate formalities, GE seeks to rely on those very same formalities to shield it from liability. This it cannot do. As this Court has recognized after having been

[2] When Soroof filed its Motion for Partial Summary Judgment on February 28, 2011, GE was not yet added as a party. Otherwise, by that Motion, Soroof would have sought to pierce GE Microgen's corporate veil as well. Instead, Soroof relied on the undisputed evidence adduced in Phase I discovery in seeking leave to amend to add GE as a party, which leave was granted.

presented with identical evidence with regard to GEFCS, the material, undisputed facts warrant piercing the corporate veil of GE Microgen.

## I. <u>Procedural History</u>

Soroof initiated this litigation on July 1, 2008, when it commenced an arbitration proceeding before the American Arbitration Association ("AAA") against GEFCS. GEFCS moved to dismiss the arbitration arguing, as it has in this litigation, *inter alia*, that GEFCS was a dissolved entity against whom no claim or cause of action could be maintained and Soroof's claims are barred by the contract at issue and by the statute of limitations. The AAA panel, chaired by the Hon. Kathleen Roberts, a retired federal magistrate judge from this Honorable Court, denied GEFCS's motion to dismiss, and Soroof notified GEFCS of its intention to move to compel GE Microgen and Plug Power to join the arbitration.

Subsequently, GE Microgen and Plug Power requested and Soroof agreed, *inter alia*, to enter into an Agreement on Venue ("Venue Agreement"), whereby the parties agreed to dismiss the arbitration proceedings and move the dispute to this Court. Consequently, on February 22, 2010, Soroof filed its complaint against GEFCS and its two members, GE Microgen and Plug Power. The parties disputed circumstances and propriety of the dissolution of GEFCS and therefore agreed to conduct discovery in two phases: Phase I discovery was limited to circumstances surrounding the dissolution and/or winding up of GEFCS. Phase II discovery then would address Soroof's substantive claims. The parties submitted their proposed case management plan with the Joint Preliminary Pretrial Statement to the Court. *See Dkt.* #13.

At the conclusion of Phase I discovery, Soroof filed a motion for partial summary judgment regarding, *inter alia*, whether the corporate veil of GEFCS should be pierced to hold its parent entities, GE Microgen and Plug Power, liable for all claims against GEFCS. *See*

Motion for Partial Summary Judgment and Reply In Support Thereof, Dkt. # 87-90 and 104, respectively. On January 24, 2012, the Court granted partial summary judgment in favor of Soroof and ruled, among other things, that the undisputed, material evidence warranted piercing the veil of GEFCS to hold GE Microgen and Plug Power liable for GEFCS's actions. *See Soroof I*, 842 F.Supp.2d at 521-22 (Dkt. #110) ("*Soroof I*"). The Court also granted, in part, Defendants' Motion for Judgment, but it permitted Soroof to replead its claims for breach of contract and misrepresentation against GE Microgen and Plug Power. On February 10, 2012, Soroof filed its First Amended Complaint ("FAC") against GE Microgen and Plug Power for breach of contract and misrepresentation.[3] *See* Dkt. #113.

On March 16, 2012, Soroof filed its Renewed Motion for Leave to File Amended Complaint, by which it sought to add GE as a party to the litigation based on the same facts adduced in the course of Phase I discovery supporting Soroof's motion for partial summary judgment.[4] *See* Dkt. #123-125. On May 11, 2012, the Court granted Soroof's Renewed Motion, noting that "the allegations presented here are similar in breadth and nature to the facts Soroof successfully used to argue that GEFCS was an alter ego of GE Microgen and Plug Power." *Soroof II*, 283 F.R.D at 151 (Dkt. #140).

---

3 In its January 24, 2012 Order, the Court directed Soroof to file its amendment by February 10, 2012. On February 10, 2012, Soroof hand-filed the FAC with the clerk, as is required by the Court's rules and procedures. For reasons unknown to Soroof, the clerk did not upload the pleading to ECF until February 14, 2012. Despite having been provided with a date-stamped copy reflecting that Soroof timely filed the FAC on February 10, 2012, Defendants have asserted that Soroof failed to timely file the pleading. It is not clear whether Defendants will continue to press this meritless position.

4 Soroof initially sought leave to amend to add GE as a party to the litigation by a motion filed on October 29, 2010. *See* Dkt. #56-58. At a hearing held on December 1, 2010, Judge Francis asked whether Soroof would defer ruling on that motion until after a decision was made on the Defendants' motion for judgment, which was filed on October 20, 2010. Soroof agreed, provided it would not be prejudiced by any delay in renewing its motion for leave to amend. Consequently, Soroof's motion for leave to amend was denied "without prejudice to renewal…." *See* Dkt. #78.

## II. <u>Factual Background</u>

### A. The Parties' Relationship.

In or about May of 2000, Soroof commenced negotiations with GEFCS representatives to become a distributor for the Product, a proton exchange membrane residential fuel cell system that was to generate enough power to provide for the complete energy needs of a home continuously, 24 hours a day, seven days a week. Statement of Material Facts ("SOF") at ¶ 1.[5] However, GE was notified as early as the first half of 1999 by Dr. Dennis Witmer, who tested Plug Power's fuel cell product, that Plug Power could not develop a fuel cell to meet those specifications. SOF at ¶ 2. By no later than April of 2000—prior to executing any agreement with Soroof—it became apparent to GE that Dr. Witmer's conclusions regarding Plug Power's inability to develop the Product were correct. SOF at ¶ 3. For example, an internal GE report dated April 11, 2000 titled "Fuel Cell Product Overview" shows that the Product failed to meet many GE specifications, including efficiency, size, and quality, and was nowhere close to being developed. SOF at ¶ 4. Indeed, an internal GE document dated April 7, 2000, reveals GE's frustration that "GEFCS is continuing to sell product 'potential', with no hardware, field testing, etc. to back up the story." *Id.*

Still, on June 6, 2000, with GE's knowledge and at its direction, GEFCS executed the Distribution Agreement with Soroof ("Agreement"), pursuant to which Soroof paid a $1 million distribution fee, without informing Soroof of the true state of affairs. SOF at ¶ 5. The details

[5] Frank Scovello has given his testimony on three occasions. On September 2, 2010, Mr. Scovello testified as the corporate representative of GEFCS and GE Microgen. On December 10, 2012, Mr. Scovello testified as the corporate representative of GE and GE Microgen. On April 16, 2013, in accordance with an order of Magistrate Judge Francis, Mr. Scovello testified on behalf of GE and GE Microgen regarding knowledge GE obtained as a result of its membership on Plug Power's Board of Directors. Relevant excerpts of Mr. Scovello's testimony from each date are attached hereto. Mr. Scovello's September 2, 2010, Phase I testimony is Exhibit 1. Mr. Scovello's December 10, 2012 and April 16, 2013, Phase II testimony is attached as Exhibits 2.a and 2.b, respectively.

surrounding the Product's shortfalls and lack of "hardware, field testing, etc. to back up the story" were not shared with Soroof. *Id.* Although the distribution fee was paid to GEFCS, GE siphoned off those funds to pay the salaries of GE employees who were "supporting" the activities of GEFCS. SOF at ¶ 6.

From 2001 through 2005, Soroof expended at least $4.8 million to ready itself and sustain its ability to perform its obligations under the Agreement, which expenditures were contemplated and, in fact, required by GEFCS. SOF at ¶ 7. Soroof undertook these additional expenditures under the reasonable belief that GEFCS was fully capable of providing saleable Product for delivery to Soroof, as warranted in the Agreement. SOF at ¶ 8. Specifically, by the Agreement, GEFCS warranted that "[i]t has full authority and capacity to enter into **and perform its obligations** under this Agreement." *Id.* GEFCS further warranted that it had "full legal right, power and authority to enter into **and perform** this Agreement." *Id.* As it turned out, GEFC's warranties were false when made. *Id.*

Under the Agreement, GEFCS had a continuing obligation "to share promptly relevant information, including but not limited to product performance, failure and liability issues...." SOF at ¶ 9. This it failed to do. *Id.* Throughout the duration of the Agreement, although GEFCS periodically informed Soroof of delays and generic technical issues, it failed to reveal how dire and fatal the development shortfalls actually were. SOF at ¶ 10. In fact, it appears that, rather than honestly convey the true state of affairs to Soroof, GE decided it would manage its relationship with Soroof by "running out the clock" on the Agreement. *Id.* For example, GE became gravely concerned with potential brand and reputational damage in light of its association with Plug Power. SOF at ¶ 11. As a result, rather than provide Soroof and other distributors with an honest assessment of development shortfalls, it adopted a strategy of

"Manag[ing] Existing GEFCS Distributor Relationships **to Avoid Issues.**" *Id.* It also decided it should "Avoid Sales of [Plug Power] Products Through GEFCS" due to "High Risk Associated with Plug." *Id.* GE's conclusions in this regard were never conveyed to Soroof. *Id.*

Another internal GE document reveals that by August 19, 2003, GE concluded that it had "Little Confidence in Residential Fuel Segment Development," that "Plug R&D Resources Should be More Focused on Commercially Viable Products," and that fuel cell technology's development would be driven not by residential fuel cells but by the "Automotive Industry." SOF at ¶ 12. Consequently, despite its earlier investments, GE demonstrated its lack of confidence by declining to make any further equity investment in Plug Power. *Id.* Again, GE's conclusions regarding Plug Power and its decision to decline making a further investment were <u>never</u> shared with Soroof. *Id.*

GE's decision not to make an equity investment is especially telling because it reveals GE's true assessment of Plug Power's likelihood of success in developing the Product. GE had originally made its investment in Plug Power because it believed that Plug Power could actually deliver a commercial residential fuel cell. SOF at ¶ 12. The fact that GE now chose to forgo a further investment demonstrates that it did not believe that Plug Power was capable of achieving this goal. GE's true assessment, evidenced most starkly by its decision to forego further investment, was never shared with Soroof.

Despite knowing of Soroof's potential claims against GEFCS, GE successfully executed its "run out the clock" strategy. That is, GE waited until GEFCS's relationship with Soroof formally expired to direct GEFCS's formal dissolution. Instead, unbeknownst to Soroof, as revealed by an internal GE document, GE *de facto* shut down GEFCS "several years" prior to the expiration of GEFCS's relationship with Soroof. SOF at ¶ 13. According to a GE document

titled "Business Condition Summary dated March 24, 2006, the same day GEFCS's Certificate of Cancellation was filed with Delaware, GEFCS "been inactive for several years" due to "Supplier [Plug Power] Inability to deliver product." *Id.* Upon the expiration of the Agreement, GE directed GE Microgen (and Plug Power) to formally dissolve GEFCS, which had conducted no business for several years. Defendants failed to inform Soroof of GEFCS's dissolution or make any provisions for Soroof's claims. SOF at ¶ 14.

**B. GE Microgen Maintained No Separate Existence From, and Was Wholly Dependent On, GE.**

Discovery has confirmed that the real party in interest or the entity that was orchestrating all of the actions of GEFCS (and its member, GE Microgen) was GE. In fact, GE, not GE Microgen, provided all necessary support to GEFCS. Indeed, unknown to Soroof at the time it signed the Agreement, GE was a major shareholder of Plug Power and occupied a seat on the Plug Power Board of Directors. SOF at ¶ 15. For example, Richard Stewart, a GE employee, served as director of GE Microgen, on the Management Committee of GEFCS, and on the Board of Plug Power. *Id.*

Undisputed evidence demonstrates Defendant GE Microgen's sole purpose in the GEFCS venture was to add the appearance of a layer of corporate protection between GEFCS and GE. SOF at ¶ 16. Mr. Scovello's testimony evidences that neither GE Microgen nor GEFCS had any separate existence from GE. For example, Mr. Scovello admitted that, although he was President of GEFCS, he "was never employed by" GEFCS *or* GE Microgen but instead was employed by "*GE Energy, GE Company*."[6] *Id.* In fact, GEFCS never employed anyone, and GE the parent – not GE Microgen – provided people to support the venture. SOF at ¶ 17.

---

6 Mr. Scovello testified that GE Energy is the energy division of General Electric Company. SOF at ¶ 16.

Q. So, this GE Fuel Cell, LLC, when it was established did it have a physical office?
A. Its address was the same as our address at the Plug Power facility.
Q. Okay.
A. Yes, We were a number of people and grew. I think we grew to over 20 people that were responsible for supporting the activities of GEFCS.
Q. When you say, you were 20 people, were these Plug Power employees, were they GE employees, was it both?
A. **These were GE Energy Employees**. GEFCS had no employees. It's a joint venture. **And GE provided people to support the joint venture as did Plug Power.**

SOF at ¶ 17. Moreover, GEFCS had no physical presence of its own. *Id.* And although space was leased from Plug Power identified as belonging to GE Microgen, it was GE and not GE Microgen that actually leased space, which housed GE employees assigned to GEFCS venture. *Id.*

Further, although GE Microgen was ostensibly the parent company of GEFCS, it provided no funding to support its own subsidiary. Any funds GE Microgen received came not from revenue-generating business of its own but instead from its parent, GE. SOF at ¶ 18. Further all of the financing for GEFCS came from GE, and it is clear that the entire GEFCS venture was reliant on GE's financial support, not GE Microgen's. For example, Mr. Scovello, at deposition, confirmed that "**GE** agreed to fund the expenses of [GEFCS] initially." *Id.*

GE financed Plug Power's research and development of the Product through an infusion of $35 million of capital paid to Plug Power. SOF at ¶ 19. GE also provided Plug Power with access to substantial funds through the use of "non-recourse promissory notes." *Id.* According to the Amended and Restated Limited Liability Company Agreement between Defendants GE Microgen and Plug Power dated August 21, 2001 ("LLC Agreement"), GE Microgen was to arrange for its "Affiliate, GE" to provide capital as required to fund GEFCS's operations in an

amount "not to exceed $8,000,000." *Id.* This funding was to be a "loan" pursuant to a "non-recourse promissory note." *Id.*

As discussed above, GE – not Plug Power or GE Microgen – made the decision and directed the dissolution of GEFCS, further underscoring GE's complete control and domination of GE Microgen. Specifically, despite the joint venture agreement being between GE Microgen and Plug Power, it was GE's "senior management" that made the decision to terminate GEFCS. SOF at ¶ 20. Further, GE's legal team sought to convince Plug Power to "broadly and fully indemnify GE for any possible actions taken at any future date by the distributors," which would include Soroof. *Id.* Ultimately, GE settled on a $1 million dollar indemnification with regard to potential legal claims by Soroof. SOF at ¶ 21.

Finally, while it was at all times reliant upon GE's financial support, GE permitted GEFCS to be dramatically undercapitalized, including at the time of dissolution. SOF at ¶ 22. In fact, any funds that GEFCS came to possess were diverted for GE's use. *Id.* As noted above, GE utilized the $1 million distributor fee Soroof paid GEFCS to fund the salaries of GE employees working in support of GEFCS. *Id.* Mr. Scovello testified that GEFCS had "very few" assets at the time of its dissolution. *Id.* In fact, according to Mr. Scovello, GEFCS had "[n]o cash on hand" and "was not really a going concern. The only thing we had were things related to our physical presence within the Plug Power building. We had a server that we used for our computer connections, and a telephone switch, a small amount of furniture. And that was it." *Id.*

## III. Argument

### A. Rule 56 Standards

Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. Pro. 56(a). Not every "dispute" requires the denial of summary judgment, however, as "[a] factual dispute does not present a genuine issue precluding summary judgment unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Woodford v. Community Action of Greene County, Inc.*, 268 F.3d 51, 54 (2d Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "[t]he mere existence of *some* alleged factual dispute...will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Fax Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479, 485 (2d Cir. 1998) (emphasis in original) (internal citation omitted). Moreover, "[i]f the undisputed facts reveal that there is an absence of sufficient proof as to any essential element on which the opponent of summary judgment has the burden of proof, any factual dispute with respect to other elements becomes immaterial and cannot defeat the motion." *Gottlieb v. County of Orange*, 84 F.3d 511, 519 (2d Cir. 1996).

Although the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought, the opposing party must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact to be tried; a party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb*, 84 F.3d at 518; *see also Quarles v. General Motors Corp.*,

758 F.2d 839, 840 (2d Cir. 1985) ("mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion.").

### B. The Corporate Veil of GE Microgen Should Be Pierced to Hold GE Liable for the Actions of GE Microgen and GEFCS.

#### 1. Delaware Law Applies.

As this Court has held, GE Microgen is a Delaware corporation, and, consequently, Delaware law governs this Court's veil piercing analysis. *See Soroof I*, 842 F.Supp.2d at 520; *Soroof II*, 283 F.R.D. at 150 ("As Soroof correctly points out, because GE Microgen is a Delaware corporation…Delaware law governs the question of whether GE Microgen is an alter ego of GE."). *See also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. N.Y. 1995) ("under New York choice of law principles, 'the law of the state of incorporation determines when the corporate form will be disregarded'").

#### 2. Material, Undisputed Facts Warrant Piercing the Corporate Veil of GE Microgen.

Under Delaware law, "to prevail on an alter ego theory of liability, a plaintiff must show that the two corporations operated as a single economic entity such that it would be inequitable...to uphold a legal distinction between them." *See Ritchie Capital Management, LLC*, 2007 U.S. Dist. LEXIS 51081, *14 (S.D.N.Y. July 17, 2007) (internal citation omitted) (applying Delaware law on veil piercing). Further, an "alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation." *NetJets Aviation Inc. v. LHC Commc'ns LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (internal citation omitted) (applying Delaware law). "A corporate parent is the alter ego of a subsidiary when 'it exercises complete dominion and control over its subsidiary.'"

*Soroof II*, 283 F.R.D. at 148 (quoting *Blaire v. Infineon Technologies AG*, 720 F.Supp.2d 462, 470 (D.Del. 2010)).

To determine if a company is acting as the alter ego of another, the courts consider such factors as: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation; (5) siphoning off of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) whether the corporation is merely a facade. *See Blair v. Infineon Technologies AG*, 720 F. Supp. 2d 462, 470-471 (D.Del. 2010); *see also Soroof II*, 283 F.R.D. at 149 (citing *Blair* factors). While no single factor would justify a decision to disregard the corporate entity, some combination is required as well as an overall element of injustice or unfairness. *See United States v. Golden Acres, Inc.*, 702 F. Supp. 1097 1104 (D.Del. 1988).[7]

The undisputed facts in this case exhibit all of the relevant factors and demonstrate that both GE Microgen and GEFCS were nothing more than shell corporations controlled and financed by GE. In fact, the same evidence supporting this Motion has been presented to this Court twice and, on both occasions, the Court granted relief to Soroof. The Court granted Soroof's Motion for Partial Summary Judgment seeking to pierce GEFCS's corporate veil. *Soroof I*, 842 F.Supp.2d at 521-22. The Court also granted Soroof's Motion for Leave to Amend to Add GE as a party on veil-piercing allegations noting that the allegations – founded upon the

---

[7] New York courts consider similar factors when assessing whether to pierce the veil to impose liability on a parent company for acts of its subsidiary, including, *inter alia*, whether: (1) the parent company has complete ownership of the subsidiary by the parent; (2) there is parent-controlled financing of the subsidiary; (3) the parent pays the salaries and other expenses of the subsidiary; (4) parent and subsidiary corporations have common directors or officers; (5) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest (*see Conan Properties v. Mattel, Inc.*, 619 F. Supp. 1167, 1170 (S.D.N.Y. 1985)); and (6) whether the parent and subsidiary disregard corporate formalities and whether the subsidiary is inadequately capitalized (*see The Phoenix Cos., Inc. v. Abrahamsen*, 2005 U.S. Dist. LEXIS 43615, at *17-18 (S.D.N.Y. 2006)). "Therefore, New York law can be considered as a supplement to the law of Delaware." *Soroof II*, 283 F.R.D. at 150 n.8.

evidence in support of Soroof's successful Motion for Partial Summary Judgment – "are similar in breadth and nature to the facts Soroof successfully used to argue that GEFCS was an alter ego of GE Microgen and Plug Power." *Soroof II*, 283 F.R.D. at 151. Consequently, this Motion, which has been bolstered by additional documentary and testimonial evidence, must be granted.

Specifically, just as with GEFCS, GE Microgen was undercapitalized and had no assets of its own. **First**, the initial funds provided to finance GEFCS were not provided by GE Microgen but by GE itself. SOF at ¶¶ 18-19 **Second**, if additional financing were required, this money again would not be provided by GE Microgen but would be obtained from GE itself. *Id.* at ¶ 18. **Third**, in addition to lacking any funding to finance its own operations or the operations of GEFCS, GE Microgen also did not have any employees. SOF at ¶¶ 16 and 17. Frank Scovello, the President of GEFCS and GE Microgen, was actually an employee of GE Energy, a division of GE. SOF at ¶ 16. In addition, all of the other employees assigned to assist with GE Microgen and GEFCS were also GE employees. SOF at ¶ 16. **Fourth**, GEFCS had no discernible presence. Instead, GE leased space identified as belonging to GE Microgen that actually housed *GE employees* assigned to GEFCS venture. SOF at ¶ 17. **Fifth,** GE used the $1 million Soroof paid GEFCS to pay the salaries of its own employees. SOF at ¶¶ 6 and 22. **Sixth**, Richard Stewart, a GE employee, served as (i) director of GE Microgen, (ii) on the Management Committee of GEFCS and (iii) on the Board of Plug Power. SOF at ¶ 15. **Seventh**, the undisputed facts show that it was GE who decided to dissolve GEFCS and directed GE Microgen and Plug Power to make it happen. SOF at ¶ 20. Plug Power has also acknowledged that GE was the real party in interest in papers that it filed with the SEC. *Id.* Although its joint venture agreement was with ostensibly with GE Microgen, Plug Power stated in its 8-K that: "[Plug Power] and ***GE*** are terminating their joint venture GE Fuel Cell Systems." *Id.*

According to Magistrate Judge Francis, these same facts were "sufficient to allow the Court to draw the reasonable inference that GE dominated and controlled GE Microgen and, consequently, GEFCS." *Soroof II*, 283 F.R.D. at 150-51. Judge Francis further noted that, "[i]ndeed, the allegations presented here are similar in breadth and nature to the facts Soroof successfully used to argue that GEFCS was an alter ego of GE Microgen and Plug Power." *Id.* *See Soroof I*, 842 F.Supp.2d at 521-22 (granting partial summary judgment to pierce the corporate veil of GEFCS because Soroof's "proffers demonstrate an extensive 'mingling of operations' of GEFCS and its owners, such that GEFCS was a mere instrumentality or alter ego of GE Microgen and Plug Power, as well as an overall element of unfairness to Soroof.").

This Court should also note that additional, undisputed facts warrant piercing the corporate veil. Specifically, GE Microgen is likely not a going concern and in all likelihood has not been since the dissolution of GEFCS or before. SOF at ¶ 16. Second, upon dissolution, GE insisted Plug Power indemnify it, which GE – not its joint venture partner, GE Microgen – negotiated with Plug Power. SOF at ¶ 20. As Gerard Conway, Plug Power's general counsel, explained in his deposition, GE's legal team insisted in those discussions on an unlimited indemnification to cover all claims by any distributors for GEFCS. *Id.* This also demonstrates that GE Microgen was undercapitalized as it could not cover any claims for its purported subsidiary. As such, the undisputed evidence demonstrates that GE and GE Microgen perceived themselves as and at all times acted as a single economic entity.

**3. GE Misused the Corporate Form.**

"Delaware law permits a court to pierce the corporate veil where there is fraud *or* where [the corporation] is in fact a mere instrumentality or alter ego of its owner." *Soroof I*, 842 F.Supp.2d at 521 (emphasis added) (quoting *NetJets*, 537 F.3d at 177 (2d Cir. 2008)). "To

prevail under the alter-ego theory of piercing the veil, a plaintiff need not prove that there was an actual fraud but must show a mingling of the operations and its owner plus an overall element of injustice or unfairness." *Id.* Here, "the same facts used to show that the business entities operated as a single enterprise can lend the requisite fraud or inequality." *Soroof II*, 283 F.R.D. at 151 (citing *Netjets*, 537 F.3d at 183)). "[A]lthough '[l]imiting…liability is a traditional reason for a corporation,' if that limitation is 'done deliberately, with specific intent to escape liability for a specific tort or a class of torts,' it can merit disregarding the corporate form." *Id.* (citing *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967)).

GE's complete control of GE Microgen and GEFCS exhibits the requisite level of injustice and unfairness needed to pierce the corporate veil of GE Microgen. First, GE siphoned off the $1 million distributor fee from GEFCS and GEFCS's parent, GE Microgen, leaving both penniless, yet is seeking to hide behind these entities' corporate forms. SOF at ¶¶ 6 and 22. Second, GE failed to reveal the truth of the Product's unavailability, the fact that it most likely would never be produced, and GE's complete lack of faith in Plug Power. SOF at ¶¶ 2-5 and 11-13. Instead, it permitted its subsidiaries to make unsupported promises on which GE knew they could not deliver and failed to set the record straight while reaping the financial benefits of these false promises (such as by procuring a $1 million distribution fee). SOF at ¶¶ 5, 6 and 22. Third, instead of informing Soroof of the true state of affairs, it deployed a "run-out-the-clock" strategy whereby it *de facto* mothballed GEFCS "several years" prior to the expiration of the Agreement. SOF at ¶¶ 10-14. GE's conduct directly caused GEFCS to violate its obligations under the Agreement and aggravated Soroof's expenses in maintaining its office and employees over a five-year period.

In light of these material, undisputed facts, piercing the corporate veil GE Microgen is warranted, because maintaining the legal distinction between and among GE and GE Microgen would not only be inequitable but also validate their abuse of the corporate form. *See Soroof II*, 283 F.R.D. at 152 (holding that, in particular, "GE's alleged siphoning of funds from GEFCS 'indicates not only that [GEFCS and GE] were operating as a unified economic entity, but also that the corporate form ha[d] been erected for a fraudulent purpose -- i.e., to solicit funds . . . on behalf of [GEFCS] when, in fact, such funds [were] to be used for [GE's] . . . benefit.") (citing *PSG Poker, LLC v. DeRosa-Grund*, No. 06 Civ. 1104, 2008 U.S. Dist. LEXIS 4225, 2008 WL 190055, at *11 & n.21 (S.D.N.Y. Jan. 22, 2008)). *See also Directors Guild of America, Inc. v. Garrison Productions, Inc.*, 733 F. Supp. 755, 762 (S.D.N.Y. 1990) (applying New York law to pierce the corporate veil where defendant "controlled every asset, made all major decisions with respect to funding of the corporation, and treated the corporation as his own instrumentality, while at the same time hiding behind the corporate form when creditors...demanded their rightful payments pursuant to the contract.").

## IV. Conclusion

In summary, this Court has properly granted summary judgment to pierce the corporate veil of GEFCS. In support of its instant Motion, Soroof has put forward identical, material and undisputed evidence only bolstered by facts adduced in the course of Phase II discovery. That evidence overwhelmingly supports a finding that GE abused the corporate from of GE Microgen. Accordingly, Soroof's Motion for Partial Summary Judgment should be granted.

Dated: May 10, 2013

Respectfully submitted,

KALBIAN HAGERTY LLP

/s/ Aaron W. Knights
Haig V. Kalbian (admitted *pro hac vice*)
Aaron W. Knights (admitted *pro hac vice*)
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
(202) 223-5600 (t)
(202) 223-6625 (f)
hkalbian@kalbianhagerty.com
aknights@kalbianhagerty.com

LYNCH DASKAL EMERY LLP
James R. Lynch (JL-2778)
264 West 40th Street
New York, New York 10018
(212) 302-2400 (t)
(212) 302-2210 (f)
lynch@lawlynch.com

*Counsel for Plaintiff Soroof Trading Development Company, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum of Law in Support of Motion for Partial Summary Judgment was served this 10th day of May 2013, via notice of electronic filing on the following:

Dahlia S. Fetouh, Esq.
Abigail K. Hemani, Esq.
Lisa M. LoGerfo, Esq.
Lauren S. Kupersmith, Esq.
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
E-mail: dfetouh@goodwinprocter.com
E-mail: ahemani@goodwinprocter.com
E-mail: llogerfo@ goodwinprocter.com
E-mail: lkupersmith@ goodwinprocter.com

*Counsel for PLUG POWER, INC.*

Michael D. Fisse, Esq.
John Dubreuil, Esq.
Jon A. Van Steenis, Esq.
DAIGLE FISSE & KESSENICH
PO Box 5350
Covington, LA 70434-5350
E-mail: mfisse@daiglefisse.com
E-mail: jdubreuil@daiglefisse.com
E-mail: jvansteenis@daiglefisse.com

*Counsel for Defendants GENERAL ELECTRIC COMPANY and GE MICROGEN, INC.*

/s/ Aaron W. Knights
Aaron W. Knights