**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SOROOF TRADING DEVELOPMENT COMPANY, LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**GE FUEL CELL SYSTEMS, LLC, GE MICROGEN, INC., and PLUG POWER, INC.,**<br><br>Defendants. | Civil Action No. 1:10-cv-01391-LGS-JCF |

# MEMORANDUM IN OPPOSITION OF DEFENDANTS GE MICROGEN, INC. AND GENERAL ELECTRIC COMPANY TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

STANDARD OF REVIEW ........ 1

1. Delaware and national public policy favors the concept of limited liability, which encourages corporate enterprise without risk of personal liability for the corporation's debts. ........ 2

2. To pierce a corporate veil under Delaware law, the plaintiff must show (1) that the entities in question operated as a single economic entity, *and* (2) that an overall element of injustice or unfairness is present. Without both prongs being satisfied, the attempted veil piercing must fail. ........ 4

3. Soroof's alter ego claim necessarily fails and should be dismissed as a matter of law, and Soroof's motion for summary judgment should accordingly be denied because Soroof has failed to establish either prong of the veil-piercing inquiry. ........ 7

(A) The evidence cited by Soroof to satisfy the first prong of the inquiry— namely, that GE and GE Microgen operated as a single economic unit— is insufficient as a matter of law to support veil piercing. ........ 7

(B) Soroof has failed to produce any evidence whatsoever showing the required elements of injustice or unfairness and instead merely relies upon its underlying cause of action against the defendants. ........ 11

(C) Soroof's Reliance on This Court's Earlier Rulings Is Misplaced. ........ 13

(1) The Earlier Ruling ........ 14

(2) The Earlier Ruling Involved Different Issues ........ 16

(3) The Earlier Ruling Was Incorrect ........ 16

CONCLUSION ........ 19

# Table of Authorities

**Cases** **Page**

Anderson v. Abbott,
321 U.S. 349, 361-62, 64 S.Ct. 531, 537-38, 88 L.Ed. 793 (1944) ....3

Blair v. Infineon Technologies AG,
720 F.Supp. 2d 462, 469 (D. Delaware 2010) ....17

Fletcher v. Atex, Inc.,
68 F.3d 1451, 1458, 1461 (2d Cir. 1995)....4, 6

Hambleton Brothers Lumber Co. v. Balkin Enterprises, Inc.,
397 F.3d 1217, 1227 (9th Cir. 2005) ....3

Harper v. Delaware Valley Broadcasters, Inc.,
743 F.Supp. 1076, 1086 (D.Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991) ....5, 6, 7, 11, 12

In re Foxmeyer Corporation,
290 B.R. 229, 236 (Bankr.D.Delaware 2003)....6

Irwin & Leighton, Inc. v. W.M. Anderson Company,
532 A.2d 983, 987 (Del.Ch. 1987)....2

Japan Petroleum Co. Nigeria v. Ashland Oil, Inc.,
456 F.Supp. 831, 841 (D.Del. 1940)....5

Mobil Oil Corporation v. Linear Films, Inc.,
718 F. Supp. 260, 268 (D.Del. 1989)....1, 6, 12

Netjets Aviation, Inc. v. LHC Communications, LLC,
537 F.3d 168, 178, 183 (2d Cir. 2008)....1, 2, 4, 6, 12, 13, 15

Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,
685 A.2d 724, 729 (Del.Sup. 1996) ....6, 12

Pauley Petroleum, Inc. v. Continental Oil Co.,
231 A.2d 450 (Del.Ch 1967), *aff'd* 239 A.2d 629 (Del.Sup.Ct. 1968)....5, 17

Scott-Douglas Corp. v. Greyhound Corp.,
304 A.2d 309, 314 (Del.Super.Ct.1973) ....2, 4, 5

Skouras v. Admiralty Enterprises, Inc.,
386 A. 2d 674, 681 (Del.Ch. 1974)....5

Sonne v. Sacks,
314 A.2d 194, 197 (Del.1973) ....................................................................................4

Trevino v. Merscorp, Inc.,
583 F.Supp.2d 521, 528 (D.Del. 2008)....................................................4, 5, 6, 11, 12

United Rentals, Inc. v. Ram Holdings, Inc.,
937 A.2d 810, 828-29 (Del. Ch. 2007) ......................................................................3

**Statutes and Rules**

Fed.R.Civ.P. 56..........................................................................................................1, 2

6 Del. C. §18-303(a) ......................................................................................................2

8 Del. C. §325(b) ........................................................................................................11

**Articles**

William O. Douglas and Carrol M. Shanks, *Insulation from Liability through Subsidiary Corporations,* 39 Yale L.J. 193 (Dec. 1929) ........................................................................3

**MAY IT PLEASE THE COURT:**

Defendants, GE Microgen, Inc. ("GE Microgen") and General Electric Company ("GE") file this Opposition to Soroof's Motion for Partial Summary Judgment (Rec. Doc. 185) showing as follows:

## INTRODUCTION

Soroof argues that "[m]aterial undisputed facts warrant summary judgment in Soroof's favor to pierce the corporate veil of Defendant GE Microgen and hold its parent (Defendant GE) liable for any eventual judgment entered against it in this case." (Rec. Doc. 185 at page 3 of 21). As explained more fully below, however, because Soroof has failed to establish that GE and GE Microgen operated as a single economic unit and that there was "fraud, or something like fraud" in the use of GE Microgen's corporate form, Soroof has not shown (and cannot show) that GE Microgen is the alter ego of GE. Mobil Oil Corporation v. Linear Films, Inc., 718 F.Supp. 260, 268 (D.Del. 1989). Accordingly, Soroof's Motion for Partial Summary Judgment must respectfully be denied; and Soroof's alleged alter ego claims should be dismissed.

## STANDARD OF REVIEW

Under federal law, summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When deciding a motion for partial summary judgment, the Court "is required to view the record in the light most favorable to the party against which summary judgment is contemplated and to resolve all ambiguities and draw all factual inferences in favor of that party." Netjets Aviation, Inc. v. LHC Communications, LLC, 537 F.3d 168, 178 (2d Cir. 2008). Thus, in deciding Soroof's motion, the Court must view the record here in the light most favorable to the non-moving defendants— GE Microgen and GE— and resolve all

ambiguities and draw all factual inferences in their favor. Finally, "[s]ummary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict in favor of the party against which summary judgment is contemplated." Netjets Aviation, Inc., 537 F.3d at 178-79. Indeed, a court determining a summary judgment motion may grant summary judgment for a non-movant in appropriate circumstances. Fed.R.Civ.P. 56(f). Here, Soroof's alleged proof not only fails to warrant summary judgment in Soroof's favor, it is moreover insufficient to support the alleged alter ego claim as a matter of law; and dismissal of the claim is accordingly appropriate.

**1. Delaware and national public policy favors the concept of limited liability, which encourages corporate enterprise without risk of personal liability for the corporation's debts.**

It is not disputed that Delaware law applies to determine the status of a Delaware corporation (i.e. GE Microgen is the Delaware corporation against whom plaintiff's veil piercing/alter ego claims are advanced).[1] The policy of limited liability in the corporate setting is well established in Delaware. The stockholders and those in control of a corporation are not typically liable for corporate obligations by reason of that ownership or control. Irwin & Leighton, Inc. v. W.M. Anderson Company, 532 A.2d 983, 987 (Del.Ch. 1987); Scott-Douglas Corp. v. Greyhound Corp, 304 A.2d 309 (Del.Super. Ct.1973). *See also,* 6 Del. C. §18-303 (a) (members and managers of limited liability companies are not liable for the company's alleged debts).

Principles of limited liability have long been accepted and recognized throughout the United States as a catalyst that drives the engine of industry and promotes the growth of trade and commerce:

---

[1] GE Microgen, Inc. is a Delaware corporation and General Electric Company is a New York corporation. *See,* Declaration of Michael D. Fisse at Exhibits 1 and 2.

> [N]o one would claim that the availability of limited liability played an insignificant part in the expansion of industry and in the growth of trade and commerce. It has had a potent influence. Limited liability is now accepted in theory and in practice. It is ingrained in our economic and legal systems. The social and economic order is arranged accordingly. Our philosophy accepts it. It is legitimate for a man or a group of men to stake only a part of their fortune on an enterprise. Legislatures, courts and business usage have made it so.

William O. Douglas & Carrol M. Shanks, Insulation from Liability through Subsidiary Corporations, 39 Yale L.J. 193, 193-94 (Dec. 1929). The U.S. Supreme Court has also highlighted these commercial bases for limited liability and has explicitly recognized that the policy of limited liability is the rule rather than the exception:

> Normally the corporation is an insulator from liability on claims of creditors. The fact that incorporation was desired in order to obtain limited liability does not defeat that purpose. Limited liability is the rule not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted.

Anderson v. Abbott, 321 U.S. 349, 361-62, 64 S.Ct. 531, 537-38, 88 L.Ed. 793 (1944). The U.S. Ninth Circuit Court of Appeals, in similar fashion, states that "[t]he doctrine of limited liability is a basic and fundamental rule of corporate law, and it has served society well by encouraging corporate enterprise without risk of personal liability for the corporation's debts." Hambleton Brothers Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1227 (9th Cir. 2005).

The concept of limited liability is often referred to as the "corporate veil." According to the Delaware courts:

> The "corporate veil" is a legal term of art that stands for the proposition that the acts of a corporation are not the actions of its shareholders, so that the shareholders are exempt from liability for the corporation's actions. To "pierce" the corporate veil is to disregard that legal assumption and to go directly after a corporation's shareholders rather than the corporation itself.

United Rentals, Inc. v. Ram Holdings, Inc., 937 A.2d 810, 828-29 (Del. Ch. 2007).

2. **To pierce a corporate veil under Delaware law, the plaintiff must show (1) that the entities in question operated as a single economic entity, *and* (2) that an overall element of injustice or unfairness is present. Without both prongs being satisfied, the attempted veil piercing must fail.**

Under Delaware law, a plaintiff who seeks to pierce the corporate veil "faces a difficult task." NetJets Aviation, Inc., 537 F.3d at 176. In order to "prevail on an alter ego theory of liability, a plaintiff must show [not only] that the two corporations operated as a single economic entity such that it would be inequitable to uphold a legal distinction between them," Fletcher v. Atex, Inc., 68 F.3d 1451, 1458 (2d Cir. 1995), but also "that an overall element of injustice or unfairness is present," Trevino v. Merscorp, Inc., 583 F.Supp.2d 521, 528 (D.Del. 2008).

The factors that are examined to determine whether the two companies operated as a single economic unit include:

> [W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

Fletcher, 68 F.3d at 1458. In undertaking this analysis, courts have found that "[w]hile no single factor justifies a decision to disregard the corporate entity, some combination of the above is required." Trevino, 583 F.Supp.2d at 529 (citations and quotation marks omitted).

Under Delaware law, piercing the corporate veil is an equitable remedy. Sonne v. Sacks, 314 A.2d 194, 197 (Del.1973). And the remedy goes against the general rule that a corporation is an entity distinct from its shareholders, even if its stock is wholly owned by another corporation (as is the case here). Scott–Douglas Corp. v. Greyhound Corp., 304 A.2d 309, 314 (Del.Super.Ct.1973). Significantly, sole ownership of stock and common directors and officers between parent and subsidiary corporations are only some of the factors to be considered by the

courts in determining whether or not the corporate fiction should be disregarded and whether the parent shareholder can be held liable for the subsidiary corporation's alleged liability. Scott–Douglas, 304 A.2d at 314. It requires a "strong case" to induce a court to consider two corporations as one on account of one owning all the capital stock of the other. *Id.*

Further, mere control and even total ownership of one corporation by another is not sufficient to establish economic unity and to warrant the disregard of a separate corporate entity. Skouras v. Admiralty Enterprises, Inc., 386 A. 2d 674, 681 (Del.Ch. 1974). Rather, absent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence. Pauley Petroleum, Inc. v. Continental Oil Co, 231 A..2d 450 (Del.Ch 1967), *aff'd,*, 239 A..2d 629 (Del. Super. Ct. 1968).

The parent will be liable for its subsidiary's activities only if the parent dominates those activities; and the control exercised by the parent must be actual, participatory and total. Japan Petroleum Co. Nigeria v. Ashland Oil, Inc, 456 F.Supp. 831, 841 (D. Del. 1940). Factors to consider in determining such "domination" include "stock ownership, officers and directors, financing, responsibility for day-to-day operations, arrangements for payment of salaries and expenses and origin of the subsidiary's business and assets." *Id.* at 841.

This second prong of an alter ego showing under Delaware law is that an "overall element of injustice or unfairness must always be present as well." Trevino, 583 F.Supp.2d at 529. In other words, "under the alter ego theory, the Delaware courts will not disregard separate legal entities absent a showing that equitable considerations require such action." Harper v. Delaware Valley Broadcasters, Inc., 743 F.Supp. 1076, 1086 (D.Del. 1990), aff'd, 932 F.2d 959 (3d Cir. 1991).

The second prong of the required alter ego evidence under Delaware law contemplates a showing of "fraud or something like it." In re Foxmeyer Corporation, 290 B.R. 229, 236 (Bankr.D.Delaware 2003). In this respect, "the fraud or similar injustice that must be demonstrated in order to pierce a corporate veil under Delaware law must, in particular, be found in the defendants' use of the corporate form." In re Foxmeyer Corporation, 290 B.R. at 236 (emphasis added).

Moreover, "[t]he 'injustice' must be more than the breach of contract alleged in the complaint." Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc., 685 A.2d 724, 729 (Del.Sup. 1996). In other words, "[t]he underlying cause of action does not supply the necessary fraud or injustice." Mobil Oil Corporation v. Linear Films, Inc., 718 F.Supp. 260, 268 (D.Del. 1989); *see,* Netjets Aviation, Inc., 537 F.3d at 183 ("[T]he claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit.").

Also, the mere fact that a litigant may not be able to enforce a judgment at the end of the litigation or otherwise get paid is not a sufficient "injustice" or "unfairness" that would justify piercing the corporate veil. *See,* Trevino, 583 F.Supp.2d at 530 ("Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil."); Harper, 743 F.Supp. at 1086 ("Other than the fact that he has not been paid, (plaintiff) has alleged no unfairness or inequity sufficient to persuade this court that the Delaware state courts would disregard the separate legal existences of [the parties]").

Finally, the failure of a plaintiff "to present evidence of an overall element of injustice or unfairness that would result from respecting the two companies' corporate separateness" defeats an attempt to pierce the corporate veil. *See*, Fletcher, 68 F.3d at 1451, 1461 ("[E]ven if plaintiffs

did raise a factual question about (one party's) domination of (the other), summary judgment would still be appropriate because the plaintiffs offer no evidence on the second prong of the alter ego analysis."); and Harper, 743 F.Supp. at 1086 ("In the absence of a showing of the kind of unfairness or injustice necessary to persuade a Delaware court to disregard separate entities, the court will not disregard the separate legal existences of [the parties]").

3. **Soroof's alter ego claim necessarily fails and should be dismissed as a matter of law, and Soroof's motion for summary judgment should accordingly be denied because Soroof has failed to establish either prong of the veil-piercing inquiry.**

(A). **The evidence cited by Soroof to satisfy the first prong of the inquiry—namely, that GE and GE Microgen operated as a single economic unit— is insufficient as a matter of law to support veil piercing.**

As described below, the "evidence" cited by Soroof in support of the first prong of this inquiry – that GE and GE Microgen operated as a single entity – consists solely of conclusory and unsupported allegations. To the contrary, GE and GE Microgen operated separately and independently. Each basis cited by Soroof fails to support Soroof's alleged claims.

First, Soroof attempts to satisfy the first prong of the inquiry, by arguing that "GE Microgen was undercapitalized and had no assets of its own." (Rec. Doc. 185 at 16 of 21). To support this assertion, Soroof cites its Statement of Material Facts at ¶¶ 18-19 (Rec. Doc. 186) and states that GE, and not GE Microgen, provided the initial funds to finance GE Fuel Cell Systems, LLC (hereinafter referred to as "GEFCS" or "GE Fuel Cell LLC"). Soroof, however, fails to clarify that the source of the funds that GE Microgen used to invest was actually a loan from GE. Scovello Deposition at p. 13 (Rec. Doc. 187-1, page 22 of 46).

Next, Soroof cites its Statement of Material Facts at ¶ 20 (Rec. Doc. 186), and asserts that "the undisputed facts show that it was GE who decided to dissolve GEFCS and directed GE Microgen and Plug Power to make it happen (and that) Plug Power has also acknowledged that

GE was the real party in interest in papers (Form 8-K) that it filed with the SEC." (Rec. Doc. 185 at page 16 of 21). But that is not what the document cited by Soroof says. The Form 8-K filed by Plug Power actually states that "[o]n March 24, 2006, the Company [Plug Power], GE MicroGen, GE and GEFCS mutually agreed to terminate each of the agreements described above and to dissolve GEFCS;" and that these entities "mutually determined that it would be beneficial to terminate these agreements… ." Form 8-K (Rec. Doc. 187-4, page 6 of 20) (emphasis added).

Moreover, the Form 8-K cited by Soroof also states that "Plug Power, Inc. (the "Company") has restructured its relationship with GE MicroGen, Inc. ("GE MicroGen") … by entering into a development collaboration agreement and terminating its existing joint venture." *Id.* And although the Form 8-K does state that "the Company [Plug Power] and GE are terminating their joint venture, GE Fuel Cell Systems," *id*; the sentence cited by Soroof is taken out of context and actually reads, in full, "Concurrent with the execution of the development collaboration agreement [between Plug Power and GE MicroGen] the Company [Plug Power] and GE are terminating their joint venture, GE Fuel Cell Systems ("GEFCS"), and the associated distributor and other agreements." *Id.*

Soroof also cites its Statement of Material Facts at ¶ 16 (Rec. Doc. 186) and argues that "GE Microgen is likely not a going concern and in all likelihood has not been since the dissolution of GEFCS or before." (Rec. Doc. 185, page 19 of 21) And although Soroof does not explain what it means by the term "going concern," the cited evidence does not establish without material dispute any factor that is dispositive of the required alter ego showing under Delaware law in any event. Rather, the cited materials consist only of the deposition testimony of Mr. Scovello where he reported that that he did not know the then-current status of GE Microgen. (Rec. Doc. 187-1, page 4 of 46). Further, Soroof overlooks that the discovery record in this case

includes a Declaration from Mr. Scovello in which he supplemented the referenced testimony and confirmed that GE Microgen is still identified in the Delaware Secretary of State records as an active corporation. *See*, Declaration of Frank Scovello (Rec. Doc. 61-3 at page 5 of 11) attached as Exhibit 5 to the Declaration of Michael D. Fisse filed concurrently herewith. *See also,* Delaware Secretary of State Public Records attached as Exhibits 2-4 to the Declaration of Michael D. Fisse filed concurrently herewith. Further, the Delaware Secretary of State's records confirm that GE Microgen has filed regular reporting with the Delaware Secretary of State since 1999 and has been (and continues to be) identified as an active corporation and in good standing since 1999. *Id.*

Additionally, Soroof cites to its Statement of Material Facts at ¶ 20 (Rec. Doc. 186), that "upon dissolution, GE insisted that Plug Power indemnify it, which GE— not its joint venture partner, GE Microgen— negotiated with Plug Power." (Rec. Doc. 185, page 19 of 21) Once again, however, Soroof overlooks the complete record and fails to note that the referenced indemnification ran not only in favor of GE but also in favor of GEFCS and GE Microgen. *See,* Termination Agreement at (Rec. Doc. 187-4 at page 18 of 20).

Finally, Soroof argues that "GE used the $1 million Soroof paid GEFCS to pay the salaries of its own employees." (Rec. Doc. 185, page 16 of 21). Once again, Soroof misstates the cited materials. The deposition testimony cited by Soroof to support this assertion actually states the "$1 million went to <u>offset</u> the cost … [of] the salaries of … all the other people that were involved in supporting the activities of GEFCS." Scovello Deposition. (Rec. Doc. 187-1, page 18 of 46).[2]

[2] Soroof has repeatedly misquoted this testimony regarding use of the nonrefundable distributor fee. There is no testimony that the fee was used to "pay" GE employee salaries. Rather, the testimony was that the fee was used to "<u>offset</u>" those salaries and other costs (just as every business venture investment is used to offset any of the venture's costs and expenses, including employee and related support costs).

Remarkably, Soroof omits from its proffered proof the deposition testimony of a key witness regarding GE Microgen and its activities; namely, GE Microgen's general manager at the time of the events in question, Barry Glickman. *See,* Deposition Transcript of Barry Glickman (attached as Exhibit 6 to Declaration of Michael D. Fisse filed concurrently herewith). Responding to questions from Soroof's attorney, Glickman highlighted the separate status of GE Microgen as a corporation distinct from GE and his separate management of the GE Microgen business as distinct from the GE parent, including descriptions of GE Microgen's two lines of business (namely, the venture with Plug Power and a venture with a company that manufactured a product known as micro-turbines). *Id.* at page 10. And Glickman also explained his general managerial responsibilities separated from GE as "managing the profit/loss center of GE Microgen" to include defining strategy and operating actions, preparing budgets, establishing staff (including employees) and managing customer relationships concerning the development products with which GE Microgen was involved (i.e. fuel cells and micro-turbines). *Id.* at 9-11, 17.

Relatedly, Glickman contradicts "facts" that Soroof claims to be undisputed in its motion. For example, the notion advanced by Soroof that GE provided funding necessary to make the Product commercially available was rejected by Glickman as "factually untrue." *Id.* at 103-104.[3] And likewise contradicting Soroof's claim that its nonrefundable distributor was only used to "pay" GE employee salaries,[4] Glickman made clear that those monies were earmarked for other purposes

[3] Similarly, Soroof overlooks the evidence developed in discovery concerning the financing of the GEFCS venture and the GE Microgen investment in Plug Power stock. That evidence included the Declaration of Frank Scovello (former president of GEFCS) which described the multiple separate and distinct transactions of financing undertaken by both GE, GE Microgen and GEFCS; and these transactions included GEFCS's issuance of a promissory note to GE for a loan reimbursement and GE Microgen's purchase of Plug Power stock as part of these separate transactions. *See,* Declaration of Frank Scovello (Rec. Doc. 61-3 at pages 7, 9 of 11) (attached as Exhibit 5 to the Declaration of Michael D. Fisse filed concurrently herewith).

[4] *See,* Footnote 1, *supra.*

including the funding of marketing support for the Product. *Id.* at 61-62.

Given the foregoing evidence contradicting the first prong of the Delaware alter ego inquiry, and viewing such evidence in the light most favorable to the non-moving parties, Soroof has not established (and cannot establish) that GE and GE Microgen functioned as a single economic unit. To the contrary, the evidence cited above reveals separate management of the parent and subsidiary along with separate contractual and financial transactions. Further, the above cited evidence confirms that GE Microgen continues to exist as an active Delaware corporation as identified in Delaware Secretary of State records. The evidence produced by Soroof falls far short of establishing without genuine dispute that GE and GE Microgen operated as a single economic unit; and the evidence overlooked by Soroof contradicts that claim. For this reason alone, Soroof's motion should be denied.

**(B) Soroof has failed to produce any evidence whatsoever showing the required elements of injustice or unfairness and instead merely relies upon its underlying cause of action against the defendants.**

The second prong of the inquiry— a showing of fraud or something like it to support the required finding of injustice and unfairness— is not supported by any evidence whatsoever. First, as noted above, the mere fact that a company may or may not have any assets, in and of itself, is not dispositive of the inquiry, and is simply one of the factors examined. *See,* Trevino, 583 F.Supp.2d at 530; Harper, 743 F.Supp. at 1086. Thus, Soroof's reliance upon its belief that GE Microgen was allegedly undercapitalized does not carry the day.[5]

[5] And contrary to Soroof's apparent belief, there is no evidence establishing that GE Microgen has ever been insolvent or otherwise unable to satisfy any enforceable claim against it. And although GE and GE Microgen maintain that no enforceable judgment is available against GE Microgen in this litigation in any event, Soroof's suspicion that it may not be able to satisfy any judgment against GE Microgen is unsupported factually in addition to being legally insufficient to support Soroof's veil piercing claim against GE Microgen *See, e.g.,* 8 Del. C. §325 (b) (in Delaware, "[n]o suit shall be brought against any … stockholder for any debt of a corporation of which such person is (a) stockholder, until judgment be obtained therefor against corporation and execution thereon returned unsatisfied").

In fact, Delaware law is clear that a company's alleged inability to satisfy a judgment is not a sufficient injustice or unfairness that warrants piercing the corporate veil. *See,* Trevino, 583 F.Supp.2d at 530; Harper, 743 F.Supp. at 1086. Delaware law is also clear that a litigant may not simply rely upon its underlying cause of action to satisfy the second prong of the veil-piercing inquiry. *See,* Netjets Aviation, Inc., 537 F.3d at 183; Mobil Oil Corporation, 718 F.Supp. at 268; Outokumpu Engineering Enterprises, Inc., 685 A.2d at 729.

Attempting to meet this second prong of the inquiry, Soroof relies primarily upon the same equivocal facts it used in attempting to show that GE and GE Microgen operated as a single economic unit. For the reasons set forth in the section above, and incorporated herein, those facts do not support Soroof's assertions.

Soroof also cites to ¶¶ 5, 6, and 22 of its Statement of Material Facts (Rec. Doc. 186) in further arguing that GE "permitted its subsidiaries to make unsupported promises on which GE knew they could not deliver and failed to set the record straight while reaping the financial benefits of these false promises (such as by procuring a $1 million distribution fee)." But the evidence set forth in ¶¶ 5, 6, and 22 of Soroof's Statement of Material Facts (Rec. Doc. 186) does not establish Soroof's premise. Rather, like almost all of Soroof's Statements of Material "Facts," Soroof merely states a conclusory point and cites record materials that do not support (and that often have nothing to do with) the stated conclusion.[6] In other words, the evidence referenced in Soroof's motion does not in any way show that GE "permitted its subsidiaries to make unsupported promises."

[6] *See,* Defendants' Response to Plaintiff's Local Rule 56.1 Statement of Material Facts at Items 5, 6 and 22. For example, Soroof states as "fact" that GEFCS signed its contract with Soroof in 2000 "without informing Soroof of the true state of affairs;" and cites in support of that statement only the contract itself and a document commenting on delays in Product development (which the evidence shows Soroof to have had knowledge of at all relevant times). *Id.* at Item 5. Similarly, Items 6 and 22 of Soroof's Statement of Material Facts continue to misquote deposition testimony and evidence regarding the use of Soroof's $1 million non-refundable distributor fee and the funding of the GE Fuel Cell LLC.

Moreover, Soroof has not produced any evidence establishing that GE Microgen's corporate form was used by GE to somehow work an injustice on Soroof. In this respect, Soroof incorrectly argues (without supporting proof) that GE "instead of informing Soroof of the true state of affairs, … deployed a 'run-out-the-clock' strategy whereby [GE] de facto mothballed GEFCS 'several years' prior to the expiration of the Agreement." (Rec. Doc. 185, page 18 of 41). But this is only an allegation and a rehash of Soroof's asserted claims against defendants, which is insufficient to establish the injustice or unfairness element of the inquiry. *See,* Netjets Aviation, Inc., 537 F.3d at 183 ("[T]he claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit.").

Soroof has not alleged any supposed injustice based on the corporate form. To the contrary, the only alleged injustice is tied solely to the underlying allegations – an approach that the Delaware courts have explicitly held is insufficient. Without more, Soroof simply cannot meet its burden of proof to be entitled to judgment on its alter-ego theory. Accordingly, Soroof's motion for partial summary judgment must be denied; and Soroof's alter ego claim should be dismissed.

**(C) Soroof's Reliance on This Court's Earlier Rulings Is Misplaced**

Throughout its summary judgment briefing, Soroof makes multiple references to this Court's earlier summary judgment ruling (Rec. Doc. 110 at pages 25-28 of 29) which allowed the former members of the dissolved limited liability company (GE Fuel Cell) to be sued as its "alter ego." Soroof incorrectly reasons that if that ruling was correct, then its current motion must likewise be granted. This argument should be rejected for two reasons as explained below.

**(1) The Earlier Ruling**

The relevant procedural background for this Court's earlier ruling is undisputed. This litigation concerns a dispute over a distribution agreement made more than 13 years ago (in 2000) and that expired by its own terms in 2005.The agreement gave Soroof the exclusive right to distribute a fuel cell Product in Saudi Arabia that was to be manufactured by the GE Fuel Cell L.L.C. Soroof paid the LLC a $1 million non-refundable distributor fee, and the LLC was obligated to use its reasonable efforts to supply the fuel cell Product to Soroof. The LLC was unable to complete development of the fuel cells, however, and it never delivered any Product. In 2006 the LLC was dissolved and a certificate of cancellation was filed with the Delaware Secretary of State.

Soroof sued the LLC and its two former members (Plug Power and GE Microgen) for breach of the distribution agreement, misrepresentation, conversion, imposition of a constructive trust, unjust enrichment, and an accounting. Soroof sought reimbursement of its $1 million nonrefundable distributor fee and alleged consequential damages. The defendants moved for judgment on the pleadings, with the result that the court dismissed all of Soroof's causes of action but allowed Soroof to re-plead its claims for breach of contract and misrepresentation.

Soroof had also asserted a claim to pierce the LLC's veil in order to assert its claims against the LLC's former members (which were not parties to the distribution agreement). Soroof made a two-part motion for partial summary judgment: (a) to nullify the LLC's certificate of cancellation, and (b) to pierce the LLC's veil. The defendants filed an opposing motion for dismissal of all claims against the LLC.

In seeking to nullify the LLC's certificate of cancellation, Soroof alleged that the LLC had not been properly wound up because no provision had been made for Soroof's claims. But

this Court correctly concluded that a dissolved LLC is only required to pay or make provision for claims to the extent of its assets (which in this case were nominal). (Rec. Doc. 110 at pages 25-26 of 29) The Court correctly dismissed all of Soroof's claims against the LLC based on Delaware law that an LLC cannot be sued after a certificate of cancellation is filed. *Id.*

This Court then turned to Soroof's claim that the LLC's veil should be pierced, (which would enable Soroof to pursue its claims against the LLC's two members). The Court stated the rule as follows:

> Delaware law permits a court to pierce the corporate veil where there is fraud or where [the corporation] is in fact a mere instrumentality or alter ego of its owner.... To prevail under the alter-ego theory of piercing the veil, a plaintiff need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an overall element of injustice or unfairness.

(Rec. Doc. 110 at page 27 of 29) (brackets in original) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns LLC,* 537 F.3d 168, 177 (2d Cir. 2008)).

This Court first identified the alter ego factors to be considered (capitalization, solvency, payment of dividends, adequate records, functioning officers and directors, other corporate formalities, siphoning funds off, and the entity functioning as a "façade" for the owner). The Court then recited the following factors as support for a finding that GE Fuel Cell was the "alter ego" of its two members: (1) the LLC had no cash assets at the time of dissolution, (2) the LLC had no employees but instead was staffed by employees of the members, (3) the LLC did not lease its own office space but used the premises of its members, and (4) there was no sign on the LLC's premises indicating its presence. (Rec. Doc. 110 at pages 27-28 of 29)

After describing these factors, the Court concluded that "Plaintiff's uncontroverted proffers demonstrate an extensive 'mingling of the operations' of [the LLC] and its owners, such that [the LLC] was a mere instrumentality or alter ego of GE Microgen and Plug Power, as well

as an overall element of unfairness to Soroof." And the Court granted Soroof's motion for summary judgment piercing the LLC's veil. (Rec. Doc. at 110 at page 28 of 29)

**(2) The Earlier Ruling Involved Different Issues**

The first reason why Soroof's reliance on this Court's earlier ruling is misplaced is because the factual and legal issues earlier addressed by this Court are different than those raised by Soroof's current motion; and that earlier ruling is accordingly not controlling here. Whether the former members of a dissolved LLC can be held liable for the LLC's alleged fault (i.e. the matters addressed in the Court's earlier ruling) raises different legal and factual issues than those raised by the current motion where a parent corporation is alleged to be the alter ego of its existing subsidiary corporation.

Specifically, this Court's earlier ruling examined the activities of two former LLC members (each with different roles in the LLC venture) against the backdrop of Delaware's statutory laws regarding limited liability companies, their formation, their cancellation, and the legal effects of the LLC's filing a Certificate of Dissolution. Here, separate and existing corporations (neither GE nor GE Microgen are LLCs) are alleged to be alter egos under Delaware corporation law based on the fact that one corporation is a wholly owned subsidiary of the other. The different facts and laws at play here as compared to what this Court addressed in its earlier ruling are such that the analysis applied in the earlier ruling cannot be dispositive of the issues currently raised here.

**(3) The Earlier Ruling Was Incorrect**

Secondly, defendants respectfully submit that this Court's earlier ruling was in error; and that there is no basis for the members of the dissolved LLC to be held liable for the alleged debt of the LLC. To the contrary, as explained below, defendants would respectfully show that an examination of this Court's earlier ruling and the stated bases for that ruling do not support a

judgment that the former members of the dissolved GE Fuel Cell LLC can be responsible for that LLC's alleged liabilities.

Here, the Court properly refused to nullify the GE Fuel Cell LLC's certificate of cancellation; and that ruling correctly resulted in the dismissal of all of Soroof's claims against the LLC. But that dismissal should have also led to dismissal of the veil piercing claims against the LLC's members. That is because piercing the veil is not an independent cause of action, but merely a method of imposing liability on an underlying claim. Blair v. Infineon Technologies AG, 720 F.Supp. 2d 462, 469 (D. Delaware 2010). In other words, piercing the veil is an equitable remedy, and it is not a cause of action unto itself. *Id.*

In short, when the claims against the GE Fuel Cell LLC were appropriately dismissed, there was no underlying LLC liability for which the members could be made liable by piercing the LLC's veil. Stated otherwise, the Court overlooked the fact that because the dissolution of the LLC was valid, there was no remaining "veil" to be pierced.

But even irrespective of this factor, defendants maintain that Delaware law does not permit the imposition of alter ego liability on the facts recited by this Court in piercing GEFCS's veil. The threshold in Delaware to pierce the veil of a corporation or LLC is high. Generally fraud, illegality, or other egregious facts must be present. And the Delaware courts have been persuaded to pierce the corporate veil "only in the interest of justice, when such matters such as fraud, contravention of law or contract [or] public wrong … are involved." Pauley Petroleum, Inc. v. Continental Oil Co., 239 A. 2d 629, 633 (Del. 1968).

Here, the four factors on which the Court based its alter ego judgment could not, as a matter of law, support an "alter ego" finding against the former members of the GE Fuel Cell LLC. Ventures like GE Fuel Cell are typically staffed with employees of a parent company or

venture partners, and not with their own employees. Similarly, such entities commonly have no address of their own; and they typically use the office address of an operating company, usually a parent or other shareholder or member. Moreover, many companies have no assets when they dissolve. Finally, there is no precedent uncovered to support the proposition that the absence of signage is a factor in piercing the corporate veil.

Defendants would also respectfully note that this Court did not cite any Delaware cases to support its decision. Indeed, there are only a few Delaware cases that have allowed veil piercing; and those cases all involved a finding of fraud, illegality, or other egregious conduct resulting in an injustice in the corporate form divorced from the merits of the underlying action. The factors usually mentioned by courts when they make an alter ego finding are those suggesting that the owner or owners of a legal entity consistently ignored the entity's separate legal existence. These factors include co-mingling of funds, failure to maintain separate financial records, failure to pay the owner for services or resources provided by the owner (e.g., employee time and office space), failure to execute relevant contracts in a way that identifies the legal entity as the contracting party, and failure to maintain corporate formalities to show that management of the legal entity was controlling its own affairs.

Here, the Court did not recite any of the above factors typically referenced in a veil piercing analysis. Rather, after finding that Soroof had alleged sufficient facts to establish that GEFCS was a mere instrumentality or alter ego of GE Microgen and Plug Power (and defendants respectfully maintain that this conclusion was in error), the Court found that there was an overall element of unfairness to Soroof, but without specifying what that element was. The Court was silent as to how the four above-listed factors showed "unfairness to Soroof" other than implicitly

recognizing that without piercing the veil, Soroof's claim would be unsatisfied. But that factor cannot support the veil piercing claim advanced by Soroof.[7]

Accordingly, Soroof's reliance on this Court's earlier alter ego ruling in support of its pending motion is misplaced. That ruling involved different factual and legal issues; and, more importantly, defendants would respectfully show that the ruling was in error.

**CONCLUSION**

Based upon the foregoing reasons, because Soroof has failed to satisfy either prong of the veil-piercing inquiry, Soroof's motion for partial summary judgment must respectfully be denied; and Soroof's alter ego claim against GE and GE Microgen should be dismissed.

Dated: 25 June 2013
Covington, LA

Respectfully submitted,

*/s/ Michael D. Fisse*

Michael D. Fisse (New York Attorney Registration Number 5023346 and Admitted *Pro Hac Vice)*
Jon A. Van Steenis (Admitted *Pro Hac Vice*)
John M. Dubreuil (Admitted *Pro Hac Vice)*
P. O. Box 5350
Covington, LA 70434-5350
Telephone: 985.871.0800
Facsimile: 985.871.0899
E-mail: mfisse@daiglefisse.com
jvansteenis@daiglefisse.com
jdubreuil@daiglefisse.com

Counsel for Defendants GE MICROGEN, INC. and GENERAL ELECTRIC COMPANY

---

[7] Of course, this factor is presented in virtually every alter ego or veil piercing claim. A plaintiff does not pursue such a claim in the first place unless there is a concern that the business entity involved with the incident transactions may not be able to satisfy the claim.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **MEMORANDUM IN OPPOSITION OF DEFENDANTS GE MICROGEN INC. AND GENERAL ELECTRIC COMPANY TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** has been served on all parties by electronically uploading the same to this Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established by this Court on this 25th day of June 2013 to the following counsel:

James R. Lunch, Esq.
LYNCH DASKAL EMERY, LLP
264 West 40th Street
New York, NY 10018
E-mail: lynch@lawlynch.com

Dahlia S. Fetouh, Esq.
Lauren S. Kupersmith, Esq.
GOODWIN PROCTER, LLP
53 State Street
Boston, MA 02109
E-mail: dfetouh@goodwinprocter.com
lkupersmith@goodwinprocter.com

Haig V. Kalbian, Esq.
Mary M. Baker, Esq.
Aaron W. Knights, Esq.
KALBIAN HAGERTY, LLP
888 17th Street, NW, Suite 1000
Washington, DC 20006
E-mail: hkalbian@kalbianhagerty.com
mmb@kalbianhagerty.com
aknights@kalbianhagerty.com

Abigail K. Hermani, Esq.
GOODWIN PROCTER, LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
E-mail: ahermani@goodwinprocter.com

*/s/ Michael D. Fisse*