UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOROOF TRADING DEVELOPMENT COMPANY, LTD.,

Plaintiff,

v.

GE FUEL CELL SYSTEMS, LLC, GE MICROGEN, INC., and PLUG POWER, INC.,

Defendants.

Civil Action No. 1:10-cv-01391-LGS-JCF

**GE MICROGEN, INC. AND GENERAL ELECTRIC COMPANY'S RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Defendants, GE Microgen, Inc. ("GE Microgen") and the General Electric Company ("GE") respond to the following Statement of Material Facts filed herein by plaintiff (Rec. Doc. 186) (responses in bold type) as follows.

1. In or about May of 2000, Soroof commenced negotiations with GEFCS representatives to become a distributor for the Product, a proton exchange membrane residential fuel cell system that was to generate enough power to provide for the complete energy needs of a home continuously, 24 hours a day, seven days a week. *See* Declaration of Aaron W. Knights ("Knights Decl."), Ex. 1, Deposition of Frank Scovello ("Scovello Dep.") at 38:8-21.

**Denied. The materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made regarding description of "the Product" at issue. The cited deposition testimony does not reference Soroof's "commencing negotiations with GEFCS[1] representatives to become a distributor for the Product" as described in the statement. Rather, the cited testimony references the type of product that was of interest at the time GEFCS was originally formed. The statement is also denied because it references**

[1] **GEFCS is sometimes referred to herein as "GE Fuel Cell" and/or "GE Fuel Cell LLC."**

**inadmissible parol evidence in connection with the Soroof/GEFCS contract agreement, including description of the Product at issue; and said contract agreement defines the Product and the parties' relationship. *See,* GEFCS/Soroof Distributor Agreement at sections 2.1-2.4, 6.5-6.6, and Schedules A and B (Rec. Doc. 141-2 at pages 4-5, 7-8, and 20-29 of 37).**

2. GE was notified as early as the first half of 1999 by Dr. Dennis Witmer, who tested Plug Power's fuel cell product, that Plug Power could not develop a fuel cell to meet those specifications. Knights Decl., Ex. 3, Witmer Decl. at ¶¶ 3, 4, 14 and 19.

**Denied. The materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made regarding the descriptions of "the Product" at issue and the referenced transactions. The cited Declaration testimony does not reference the fuel cell product that is at issue in this litigation or establish that GE was "notified" of matters as alleged. Rather, the Declaration makes clear that the witness did <u>not</u> test the Plug Power fuel cell product specified in the GEFCS/Soroof contract, and addressed only a product of allegedly "the same technology" but with different parts and fuel sources than the Product specified in the GEFCS/Soroof contract. *See,* Witmer Declaration (Rec. Doc. 187-1 at page 37 of 46, Item 5). Further, the Declaration specifies <u>GEFCS</u> (not GE as alleged) as the recipient of the alleged notice. *See,* Witmer Declaration (Rec. Doc. 187-1 at page 40 of 46, Item 19).**

**The statement is also denied because it cites inadmissible parol evidence (and defendants object of such evidence) in connection with the Soroof/GE Fuel Cell contract agreement, including description of the Product at issue; and said contract agreement defines the Product and the parties' relationship. *See,* GE Fuel Cell/Soroof Distributor**

**Agreement at sections 2.1-2.4, 6.5-6.6, and Schedules A and B (Rec. Doc. 141-2 at pages 4-5, 7-8, and 20-29 of 37).**

**The statement is also denied because its conclusion that "Plug Power could not develop a fuel cell" is contradicted by evidence already made part of the record herein demonstrating Product development efforts and the substantial resources and expense that have been invested into these efforts. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 10-12 and 16-19 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

**The statement is also denied because the material cited in support is inadmissible (and irrelevant) opinion testimony (and defendants object to such evidence) of a retained "expert" demonstrated to have not examined the Product at issue during relevant time periods. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at page 21 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

3. GE understood by no later than April of 2000 that Dr. Witmer's conclusions regarding Plug Power's inability to develop the Product were correct. Knights Decl., Ex. 1, Scovello Dep. at 102:11-103:6.

**Denied. The materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made. The cited deposition testimony does not reference "Dr. Witmer's conclusions," nor does it establish that GE "understood by no later than April 2000" such conclusions. Rather, the cited testimony states only that there was a "gradual realization" that started "in the <u>2001</u> time frame" that product**

**specifications were not being met, and that this dialogue was shared with Soroof. (Rec. Doc. 187-1 at pages 14-15 of 46).**

**The statement is also denied because it cites inadmissible parol evidence in connection with the Soroof/GE Fuel Cell LLC contract agreement, including description of the Product at issue; and said contract agreement defines the Product and the parties' relationship. *See,* GE Fuel Cell LLC/Soroof Distributor Agreement at sections 2.1-2.4, 6.5-6.6, and Schedules A and B (Rec. Doc. 141-2 at pages 4-5, 7-8, and 20-29 of 37).**

**The statement is also denied because its conclusion of Plug Power's alleged "inability to develop the Product" is contradicted by evidence already made part of the record herein demonstrating Product development efforts and the substantial resources and expense that have been invested into these efforts. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 10-12 and 16-19 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

**The statement is also denied because the material cited in support is inadmissible (and irrelevant) opinion testimony of a retained "expert" demonstrated to have not examined the Product at issue during relevant time periods. *See*, Response to Statement of Fact 2 (above), Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at page 21 of 37), and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

4. An internal GE report dated April 11, 2000 titled "Fuel Cell Product Overview" shows that the Product failed to meet many GE specifications, including

efficiency, size, and quality, and was nowhere close to being developed. Knights Decl., Ex. 4, April 11, 2000 Fuel Cell Product Requirement Overview; Knights Decl., Ex. 5, Supplemental Report of Dennis Witmer at ¶ 5. An internal GE document dated April 7, 2000, reveals GE's frustration that "GEFCS is continuing to sell product "potential", with no hardware, field testing, etc. to back up the story." Knights Decl., Ex. 6, GE Marketing Update.

**Denied. The materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made. The materials do not reference the Product as "nowhere close to being developed." Rather the cited materials include technical data and summary statements regarding delays in product development and related matters, but do not support the statement's conclusions.**

**The statement is also denied because it cites Declaration testimony that is inadmissible speculation with regard to the meaning and intent of documents prepared by a third party and containing hearsay statements (and defendants object to such evidence).**

**The statement is also denied for the conclusions and opinions in the cited materials alleging that relevant information regarding the Product was not shared with Soroof. Those conclusions and opinions are contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

**The statement is also denied because the material cited in support includes inadmissible (and irrelevant) opinion testimony (and defendants object to such evidence) of**

**a retained "expert" demonstrated to have not examined the Product at issue during relevant time periods. *See*, Response to Statement of Fact 2 (above), Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at page 21 of 37), and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

5. On June 6, 2000, with GE's knowledge and at its direction, GEFCS executed the Distribution Agreement with Soroof ("Agreement"), pursuant to which Soroof paid a $1 million distribution fee, without informing Soroof of the true state of affairs. Knights Decl., Ex. 7, Agreement at ¶ 6.4. The details surrounding the Product's shortfalls and lack of "hardware, field testing, etc. to back up the story" were not shared with Soroof. Knights Decl., Ex. 6, GE Marketing Update.

**Denied. Except to admit that GEFCS and Soroof executed the referenced Distributor Agreement which provided for a non-refundable distributorship fee of $1 million and which otherwise speaks for itself, defendants would show that materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made. The materials do not reference or suggest that GEFCS executed the contract "without informing Soroof of the true state of affairs."**

**The statement is also denied because it cites inadmissible parol evidence (and defendants object to such evidence) in connection with the Soroof/GE Fuel Cell LLC contract agreement, including description of the Product at issue; and said contract agreement defines the Product and the parties' relationship. *See,* GE Fuel Cell LLC/Soroof Distributor Agreement at sections 2.1-2.4, 6.5-6.6, and Schedules A and B (Rec. Doc. 141-2 at pages 4-5, 7-8, and 20-29 of 37).**

**The statement is also denied because it is based on inadmissible speculation (and defendants object to such evidence) with regard to the meaning and intent of documents prepared by a third party and containing hearsay statements.**

**The statement is also denied for the conclusion that relevant information regarding the Product was not shared with Soroof. That conclusion is contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

6. Although the distribution fee was paid to GEFCS, GE siphoned off those funds to pay the salaries of GE employees who were "supporting" the activities of GEFCS. Knights Decl., Ex. 1, Scovello Dep. at 121:15-20.

**Denied. Except to admit that Soroof paid a $1 million nonrefundable distributor fee, defendants would show that the materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made. The cited deposition testimony does not mention any "siphon(ing) off (the distributor fee) to pay the salaries of GE employees." Rather, the cited testimony states that the fee "went to <u>offset</u>" not only the "cost" of the incident activities, but also the salaries of key personnel and "all of the other people that were involved in supporting the activities of GEFCS." The cited testimony does not establish the absence of a genuine dispute as to the statement that GE "siphoned" funds (which is denied).**

**The statement is also denied for its suggested conclusion that Soroof's $1 million nonrefundable distributor fee was the only or primary investment of the involved parties toward the proposed distribution of the fuel cell Product. That conclusion is contradicted by evidence already made part of the record herein demonstrating that hundreds of millions of dollars were invested into the fuel cell venture by parties other than Soroof, hundreds of employees and other resources were invested into these efforts and millions of dollars were lost by parties other than Soroof in the unsuccessful venture. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 10-12 and 17-18 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

7. From 2001 through 2005, Soroof expended at least $4.8 million to ready itself and sustain its ability to perform its obligations under the Agreement, which expenditures were contemplated and, in fact, required by GEFCS. *See* Knights Decl., Ex. 8, Expert Report of Clark Lee.

**Denied. The materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made. The cited report of Clark Lee does not reference the GEFCS/Soroof contract at all, much less any conclusion that the referenced expenditures were related to the contract or "were contemplated and, in fact, required by GEFCS" as alleged. Rather, the cited report is simply a paid consultant's exercise of adding together unsupported and unverified expense figures provided by plaintiff and which are cited by plaintiff as so-called "proof" (but without any supporting evidence) that the alleged expenditures were related exclusively to the contract at issue, were incurred by**

**the Soroof business entity that contracted with GE Fuel Cell LLC, and were caused by GE Fuel Cell alleged fault (all of which defendants deny).**

**The statement is also denied because it cites an inadmissible hearsay report as support (and defendants object to such evidence), and because it proffers parol evidence (and defendants object to such evidence) in connection with the contract agreement at issue. Said contract agreement defines the Product and the parties' relationship; and the contract imposed no such "requirement" on plaintiff to incur expenditures as alleged. *See generally,* GE Fuel Cell/Soroof Distributor Agreement (Rec. Doc. 141-2).**

**The statement is also denied because it is disputed by evidence that Soroof's alleged expenditures were incurred after Soroof had knowledge and notice of delays in Product development (including notice and knowledge in April 2011 that the Product's delivery schedule had "slipped indefinitely") such that the alleged expenditures could not have been caused by Soroof's alleged actions "to ready itself" for contract performance as alleged and cannot be the legal liability of any defendant herein. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 29-31 of 37 and note 15 at page 34 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

8. Soroof undertook these additional expenditures under the reasonable belief that GEFCS was fully capable of providing saleable Product for delivery to Soroof, as warranted in the Agreement. Specifically, by the Agreement, GEFCS warranted that "[i]t has full authority and capacity to enter into **and perform its obligations** under this Agreement."Knights Decl., Ex. 7, Agreement at ¶ 10.1.2 (emphasis added). GEFCS further

warranted that it had "full legal right, power and authority to enter into **and perform** this Agreement."*Id.* At ¶ 10.1.4 (emphasis added). GEFC's warranties were false when made.

**Denied. Except to admit that the referenced Distributor Agreement included the quoted language (which reference GEFCS's legal capacity and authority to contract and not any warranty of Product delivery), defendants would show that the materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made. The referenced contract agreement contained no language that would support Soroof's alleged "reasonable belief that GEFCS was fully capable of providing saleable Product for delivery to Soroof." Rather, the contract is clear (and this Court has already ruled) that the contract did not require GEFCS to deliver any product to Soroof at all but only required GEFCS to use reasonable efforts to develop the Product. *See*, Memorandum Opinion and Order (Rec. Doc. 110 at pages 7-10 of 29).**

**The statement is also denied because its conclusion that GE Fuel Cell warranties were "false" is contradicted by evidence already made part of the record herein demonstrating Product development efforts and the substantial resources and expense that have been invested into these efforts. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 10-12 and 16-19 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

**The statement is also denied because its conclusion that GE Fuel Cell warranties were "false" is contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages**

**5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

**The statement is also denied because it is disputed by evidence that Soroof's alleged expenditures were incurred after Soroof had knowledge and notice of delays in Product development (including notice and knowledge in April 2011 that the Product's delivery schedule had "slipped indefinitely") such that the alleged expenditures could not have been caused by Soroof's alleged actions "to ready itself" for contract performance as alleged and cannot be the legal liability of any defendant herein. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 29-31 of 37 and note 15 at page 34 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

9. Under the Agreement, GEFCS had a continuing obligation "to share promptly relevant information, including but not limited to product performance, failure and liability issues...." Knights Decl., Ex. 7, Agreement at ¶ 7.4. This it failed to do.

**Denied. Except to admit that the referenced Distributor Agreement included the quoted language, defendants would show that the materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made. In fact, there is no support whatsoever cited by plaintiff for the statement that GEFCS "failed" to comply with the referenced contract terms.**

**The statement is also denied because its conclusion that GE Fuel Cell "failed" to share Product information is contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of**

**information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

10. Throughout the duration of the Agreement, although GEFCS periodically informed Soroof of delays and generic technical issues, it failed to reveal how dire and fatal the development shortfalls actually were. In fact, rather than honestly convey the true state of affairs to Soroof, GE decided it would manage its relationship with Soroof by "running out the clock" on the Agreement.

**Denied. In violation of Local Rule 56.1(d), Plaintiff has made no citation to evidence in support of this statement.**

**The statement is also denied because its conclusion that GE Fuel Cell failed to share Product information with Soroof is contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181). In fact, Soroof admits in this statement that GEFCS "informed Soroof of delays" and "technical issues" regarding the Product.**

11. For example, GE became gravely concerned with potential brand and reputational damage in light of its association with Plug Power. Knights Decl., Ex. 9, GE "Back Up"

Presentation. As a result, rather than provide Soroof and other distributors with an honest assessment of development shortfalls, it adopted a strategy of "Manag[ing] Existing GEFCS Distributor Relationships **to Avoid Issues."** *Id.* (emphasis added). It also decided it should "Avoid Sales of [Plug Power] Products Through GEFCS" due to "High Risk Associated with Plug." *Id.* GE's conclusions in this regard were never conveyed to Soroof.

**Denied. The materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made. The cited materials includes an undated record that (1) is not shown to have any relevance to the time period in question; that (2) does not reference any "grave concern" or any "reputational damage;" and that (3) does not establish that relevant information about the Product was not provided or conveyed to Soroof or any other distributor as alleged.**

**The statement is also denied because it is inadmissible speculation (and defendants object to such evidence) with regard to the meaning and intent of documents prepared by a third party and containing hearsay statements.**

**The statement is also denied because its conclusion that GE Fuel Cell did not convey information to Soroof is contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181). In fact, Soroof admits that GE Fuel Cell "informed Soroof of delays" and "technical issues" regarding the Product (*see* Statement No. 10 above).**

12. GE had originally made its investment in Plug Power because it believed that Plug Power could actually deliver a commercial residential fuel cell. Knights Decl., Ex. 2.a, Scovello Dep. at 18:20-19:13, 54:18-55:7 (Mr. Scovello explaining that GE invested in Plug Power because it believed that Plug Power could commercialize the residential fuel cell.) Another internal GE document reveals that by August 19, 2003, GE concluded that it had "Little Confidence in Residential Fuel Segment Development," that "Plug R&D Resources Should be More Focused on Commercially Viable Products," and that fuel cell technology's development would be driven not by residential fuel cells but by the "Automotive Industry." Knights Decl., Ex. 10, Sept. 12, 2003 Memo Regarding "Due Diligence" and Appended Aug. 19, 2003 Plug Power Update. Consequently, despite its earlier investments, GE demonstrated its lack of confidence by declining to make any further equity investment in Plug Power. *Id.* at 1. Again, GE's conclusions regarding Plug Power and its decision to decline making a further investment were never shared with Soroof.

**Denied. Except to admit that in August 1999, GE "believe(d) that Plug Power could successfully commercialize their residential fuel cell" as referenced in the cited materials; and except to admit that by September 2003 GE had made the decision to make no further equity investments in Plug Power at that time as referenced in the cited materials; GE would show that materials cited by plaintiff do not establish the absence of a genuine dispute as to the remaining portions of the statement.**

**The statement is also denied because it is inadmissible speculation with regard to the meaning and intent of documents prepared by a third party and containing hearsay statements (and defendants object to such evidence).**

**The statement is also denied because its conclusion that GE Fuel Cell did share information regarding the Product with Soroof is contradicted by evidence already**

**made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181). In fact, Soroof admits that GE Fuel Cell "informed Soroof of delays" and "technical issues" regarding the Product (*see* Statement No. 10 above).**

13. Despite knowing of Soroof's potential claims against GEFCS, GE successfully executed its "run out the clock" strategy. That is, GE waited until GEFCS's relationship with Soroof formally expired to direct GEFCS's formal dissolution. Instead, unbeknownst to Soroof, as revealed by an internal GE document, GE *de facto* shut down GEFCS "several years" prior to the expiration of GEFCS's relationship with Soroof. Knights Decl., Ex. 11, Business Condition Summary Dated March 24, 2006 (revealing that as of March 24, 2006, the same day GEFCS's Certificate of Cancellation was filed with Delaware (Knights Decl., Ex. 12, Certificate of Cancellation), GEFCS " been inactive for several years" due to "Supplier [Plug Power] Inability to deliver product.").

**Denied. Except to admit that the referenced report of 2006 stated that GEFCS "has been inactive for several years," and except to admit that the GE Fuel Cell/Soroof contract had expired in 2005, and except to admit that GE Fuel Cell's Certificate of Cancellation was filed with the State of Delaware on or about March 2006; defendants would show that materials cited by plaintiff do not establish the absence of a genuine dispute as to the remaining portions of the statement. The cited materials make no reference to any so-called "run out the clock" strategy as described in the statement; and**

**the cited materials do not establish the absence of a genuine dispute as to those portions of the statement and its conclusory allegations.**

**The statement is also denied because it is inadmissible speculation with regard to the meaning and intent of documents prepared by a third party and containing hearsay statements (and defendants object to such evidence).**

**The statement is also denied because its conclusion that GE Fuel Cell did not share information regarding the Product with Soroof is contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181). In fact, Soroof admits that GE Fuel Cell "informed Soroof of delays" and "technical issues" regarding the Product (*see* Statement No. 10 above).**

14. Upon the expiration of the Agreement (Knights Decl., Ex. 7, Agreement at ¶4.1), GE directed GE Microgen (and Plug Power) to formally dissolve GEFCS, which had conducted no business for several years. Defendants failed to inform Soroof of GEFCS's dissolution or make any provisions for Soroof's claims. Knights Decl., Ex. 13, January 5, 2006 E-mail from A. Bucknam, Plug Power's Vice President of Business Development, to Mark Sperry, Plug Power's former Chief Marketing Officer ("GE took a $1MM payment from [Soroof], and now is concerned about legal problems given that the distributors feel that they didn't get value for their $'s."') (emphasis added), and January 26, 2006 E-mail from R. Menon, a Plug Power employee charged with sales and development, to Frank Scovello

"During our conversation this morning, [Soroof] did bring up the financial issues surrounding the expired GE agreement...[m]y fear is that...they may circle back to the investment they made to secure the [GEFCS] distributorship and somehow hold Plug Power accountable."). Knights Decl., Ex. 14, Conway Dep. at 13:23-25; 27:7-10; 34:14-19 and 45:11-13; Knights Decl., Ex. 1, Scovello Dep. at 115:12-116:1.

**Denied. The materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement's allegation that "GE directed GE Microgen (and Plug Power) to formally dissolve GEFCS;" that GEFCS "had conducted no business for several years;" or that defendants had "failed to inform Soroof of GEFCS's dissolution or make any provision for Soroof's claims." Rather, the cited materials are (1) January 2006 internal Plug Power communications and related correspondence with Mr. Scovello concerning (a) the December 2005 expiration of the GEFCS/Soroof Distributor Agreement, (b) November 2005 and later discussions between Plug Power and Soroof regarding separate agreement between those two companies, and (c) Plug Power's January 2006 discussions with Soroof regarding financial issues incident to the expired GEFCS/Soroof Distributor Agreement; and (2) deposition testimony concerning the termination of the GE Microgen and Plug Power contract agreement.**

**The statement is also denied because it is inadmissible speculation with regard to the meaning and intent of documents prepared by a third party and containing hearsay statements (and defendants object to such evidence).**

**The statement is also denied because its conclusion that GE Fuel Cell did not share information regarding the Product with Soroof is contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks.**

***See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181). In fact, Soroof admits that GE Fuel Cell "informed Soroof of delays" and "technical issues" regarding the Product (*see* Statement No. 10 above).**

**The statement is also denied because it is contradicted by evidence of public filings (of which Soroof is charged with knowledge) reporting that the GE Fuel Cell was cancelled as of March 2006. *See,* Certificate of Cancellation (Rec. Doc. 187-3, page 10 of 25).**

**The statement is also denied because its allegation of GE Fuel Cell having not made "provision" for Soroof's alleged claims has already been rejected by this Court. Specifically, this Court has already ruled on the propriety of the GE Fuel Cell dissolution and has already dismissed plaintiff's claims on the grounds that the alleged failure to make "adequate provision" for Soroof's alleged claims was not in contravention of Delaware's LLC laws. *See*, Memorandum Opinion and Order (Rec. Doc. 110 at pages 25-26 of 29).**

15. Unknown to Soroof at the time it signed the Agreement, GE was a major shareholder of Plug Power and occupied a seat on the Plug Power Board of Directors. GE employees occupied a seat on Plug Power's board from 1999 through 2005 or 2006. Knights Decl., Ex. 2.b, Scovello Dep. at 275:16-277:3. For example, Richard Stewart, a GE employee, served as director of GE Microgen, on the Management Committee of GEFCS, and on the Board of Plug Power. Knights Decl., Ex. 15, Action by Written Consent at GE 000099; Knights Decl. Ex. 16, Plug Power 8-K at PPI000151.

**Denied. Except to admit that GE was a shareholder of Plug Power and that a GE employee was a member of Plug Power's Board of Directors from 2000 through 2005 or 2006, defendants would show that materials cited by plaintiff do not establish the absence of a genuine dispute as to the remaining portions of the statement. The cited materials make no reference to such matters being "unknown to Soroof at the time it signed the Agreement." To the contrary, public filings of Plug Power (of which Soroof is charged with knowledge) that have already been made part of the record evidence herein establish the opposite. *See,* Plug Power Form 10-K (Rec. Doc. 181-4 at page 34 of 55, 9th paragraph)(reporting that the distribution partners for Plug Power's fuel cell systems, including GEFCS, "control three seats on our Board of Directors").**

**The statement is also denied because its conclusion that GE Fuel Cell did not share information regarding the Product with Soroof is contradicted by evidence already made part of the record herein demonstrating that Soroof had notice and knowledge at all relevant times of information regarding Product development, delays and associated risks. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 5, 12-13, 19-22, and 29-31 of 37 and page 35 of 37 at note 15) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181). In fact, Soroof admits that GE Fuel Cell "informed Soroof of delays" and "technical issues" regarding the Product (*see* Statement No. 10 above).**

16. GE Microgen is likely no longer a going concern, as, at his deposition on September of 2010, Mr. Scovello testified that he did not "believe it's in existence" and believed "it was folded," although admitting he was not sure as to this fact. Knights Decl., Ex. 1, Scovello Dep. at 12:9-15. Mr. Scovello still did not know whether GE Microgen was

still in existence in December of 2012. Knights Decl., Ex 2.a, Scovello Dep. at 12:14-19. Mr. Scovello admitted that, although he was President of GEFCS, he "was never employed by" GEFCS *or* GE Microgen but instead was employed by *"GE Energy, GE Company."*[2] Knights Decl., Ex. 1, Scovello Dep. at 12:9-20; 24:4-10 (emphasis added).

**Denied. Except to admit that Mr. Scovello testified as described, defendants would show that the materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement made regarding description of the current status of GE Microgen. GE Microgen, Inc. has been registered as an active corporation with the State of Delaware (its State of incorporation) from 1999 to the present date. *See*, GE Microgen Public Filings (Declaration of Michael D. Fisse at Exhibits 2-4 filed concurrently herewith).**

**This statement is denied for the additional reason that the cited material is an incomplete portion of Mr. Scovello's deposition testimony which was later supplemented by his Declaration confirming that GE Microgen is still identified in the Delaware Secretary of State records as an active corporation. *See*, Declaration Frank Scovello (Rec. Doc. 61-3 at page 5 of 11) (Declaration of Michael D. Fisse at Exhibit 5 filed concurrently herewith).**

17. GEFCS never employed anyone, and GE the parent – not GE Microgen – provided people to support the venture. Knights Decl., Ex. 1, Scovello Dep. at 32:14-33:3. Moreover, GEFCS had no physical presence of its own. *Id.* And although space was leased from Plug Power identified as belonging to GE Microgen, it was GE and not GE Microgen that actually leased space, which housed GE employees assigned to GEFCS venture. *Id.;* Knights Decl., Ex. 14, Deposition of Gerard Conway ("Conway Dep.") at 18:24-19:4 and 22:13-22.

---

[2] Mr. Scovello testified that GE Energy is the energy division of General Electric Company. *See* **Ex. 1,** Scovello Dep. at 10:3-13. (This Footnote appears as Footnote 1 in Plaintiff's Statement of Material Facts).

**Denied. Except to admit that GEFCS had no employees itself, defendants would show that materials cited by plaintiff do not establish the absence of a genuine dispute as to the remaining portions of the statement. The cited materials make no reference to GE being the only entity that provided people to support the venture. To the contrary, the evidence that has already been made part of the record herein establishes that Plug Power spent hundreds of millions of dollars to develop the fuel cell Product, employed hundreds of persons at various times to support the GEFCS venture and received millions of dollars of funding from other third parties and government sources. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 10-12 and 16-19 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181).**

**Further, the materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement that GEFCS had no "physical presence" or that "it was GE and not GE Microgen that actually leased space." To the contrary, the cited materials confirm that "the space that GE had was identified as GE Microgen" and that there was a "big sign on the front lawn, if you will, one of which was Plug Power, the other of which was GE Microgen." (Rec. Doc. 187-3 at page 21 of 25)**

**The statement is also denied because the cited material in support is the deposition testimony of a Plug Power representative who was not shown to have knowledge of the source of lease payments and whose testimony is accordingly unsupported in that regard (and defendants object to such evidence).**

18. GE Microgen, ostensibly the parent company of GEFCS, provided no funding to support its own subsidiary. Any funds GE Microgen received came not from revenue-

generating business of its own but instead from its parent, GE. Knights Decl., Ex. 2.a, Scovello Dep. at 13:7-17 and 16:25-17:5. Additionally, Mr. Scovello, at deposition, confirmed that "**GE** agreed to fund the expenses of [GEFCS] initially." Knights Decl., Ex. 1, Scovello Dep. at 44:24-25 (emphasis added).

**Denied. There is no "ostensible" claim made in this litigation that GE Microgen was "the parent company of GEFCS" as alleged in this statement. Rather, GE Microgen and Plug Power were both members of the now dissolved limited liability company, GEFCS.**

**Further, while admitting that Frank Scovello testified that GE initially agreed to fund the expenses of GEFCS, defendants would show that the materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement that "[a]ny funds GE Microgen received came not from revenue generating business of its own but instead from its parent, GE." To the contrary, the complete sentence of Scovello's testimony (only partially quoted in plaintiff's statement) regarding initial funding of GEFCS expenses was that GE "would recover those funds from future sales."**

**In addition, plaintiff's statement is disputed by the evidence that has already been made part of the record herein which establishes the various transactions through which the GEFCS fuel cell activities were funded, including a loan secured from GE and purchases of Plug Power stock by GE Microgen. *See*, Declaration of Frank Scovello (Rec. Doc. 61-3 at page 9 of 11)(Declaration of Michael D. Fisse at Exhibit 5 filed concurrently herewith).**

19. GE financed Plug Power's research and development of the Product through an infusion of $35 million of capital paid to Plug Power. Knights Decl., Ex. 1, Scovello Dep. at 45:23-46:12. GE also provided Plug Power with access to substantial funds through the use

of "non-recourse promissory notes." According to the Amended and Restated Limited Liability Company Agreement between Defendants GE Microgen and Plug Power dated August 21, 2001 ("LLC Agreement"), GE Microgen was to arrange for its "Affiliate, GE" to provide capital as required to fund GEFCS's operations in an amount " not to exceed $8,000,000." Knights Decl., Ex. 17, Amended and Restated Limited Liability Company Agreement at ¶5.5(a). This funding was to be a "loan" pursuant to a "non-recourse promissory note." *Id.*

**Denied. While admitting that GE made investment into the development of the Plug Power fuel cell Product, the materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement that "GE financed Plug Power's research and development of the Product." To the contrary, plaintiff's statement is disputed by evidence that has already been made part of the record herein which establishes that (1) Plug Power itself spent hundreds of millions of dollars and had hundreds of its employees invested into the Product development, (2) Plug received millions of dollars of funding from other parties and government sources, (3) GEFCS issued a promissory note to GE in February 1999 for a loan reimbursement of $18.250 million, and (4) GE Microgen purchased Plug Power stock at a price of $37.5 million in November 1999. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 10-12 and 16-19 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh (Rec. Docs. 180 and 181); and Declaration of Frank Scovello (Rec. Doc. 61-3 at pages 7 and 9 of 11)(Declaration of Michael D. Fisse at Exhibit 5 filed concurrently herewith).**

20. GE's "senior management" that made the decision to terminate GEFCS. Knights Decl., Ex. 1, Scovello Dep. at 115:12-116:1; *see* Ex. 14, Conway Dep. at 27:7-10. GE's

legal team sought to convince Plug Power to "broadly and fully indemnify GE for any possible actions taken at any future date by the distributors," which would include Soroof. Knights Decl., Ex. 18, February 26, 2006, E-mail from Greg Silvestri to Sergay Polikarpov; Ex. 14, Conway Dep. at 27:7-10 and 66:16-20. Plug Power has also acknowledged that GE was the real party in interest in papers that it filed with the SEC. Although its joint venture agreement was with ostensibly with GE Microgen, Plug Power stated in its 8-K that: "[Plug Power] and GE are terminating their joint venture GE Fuel Cell Systems." Knights Decl., Ex. 16, Plug Power 8-K at PPI000149 (emphasis added).

**Denied. Except to admit that Mr. Scovello's testified in part that the decision to terminate the GE Microgen and Plug Power agreement was "a decision primarily taken by Rick Stuart and our senior management of GE;" and except to admit that Gerard Conway testified that he thinks that it is "a fair statement" to say that it was GE's decision to dissolve GE Fuel Cell; and except to admit that the 26 February 2006 e-mail referenced in the statement partially includes the quoted language; and except to admit that the Plug Power Form 8-K document referenced in the statement partially includes the quoted language; defendants would show that the materials cited by plaintiff do not establish the absence of a genuine dispute as to the statement that "GE's senior management ...made the decision to terminate GEFCS." Rather, the statement is contradicted by the same materials that Soroof cites. Specifically, The Form 8-K filed by Plug Power actually states that "[o]n March 24, 2006, the Company [Plug Power], GE MicroGen, GE and GEFCS <u>mutually</u> agreed to terminate each of the agreements described above and to dissolve GEFCS;" and that these entities "<u>mutually</u> determined that it would be beneficial to terminate these agreements... ." Form 8-K (Rec. Doc. 187-4, page 6 of 20) (emphasis added).**

**Moreover, the Form 8-K cited by Soroof also states that "Plug Power, Inc. (the "Company") has restructured its relationship with GE MicroGen, Inc. ("GE MicroGen") … by entering into a development collaboration agreement and terminating its existing joint venture."** ***Id.*** **And although the Form 8-K does state that "the Company [Plug Power] and GE are terminating their joint venture, GE Fuel Cell Systems,"** ***Id*****; the sentence cited by Soroof is taken out of context and actually reads, in full, "Concurrent with the execution of the development collaboration agreement [between Plug Power and GE MicroGen] the Company [Plug Power] and GE are terminating their joint venture, GE Fuel Cell Systems ("GEFCS"), and the associated distributor and other agreements."** ***Id.***

**The statement is also denied because it is inadmissible speculation with regard to the meaning and intent of documents prepared by a third party and containing hearsay statements (and defendants object to such evidence).**

21. GE settled on a $1 million dollar indemnification with regard to potential legal claims by Soroof. Knights Decl., Ex. 19, GE Fuel Cell Systems, L.L.C. Termination Agreement at 12(b).

**Denied. Except to admit that the referenced Termination Agreement (which speaks for itself and is the best evidence of its content) provided for Plug Power to indemnify GE, GE Microgen, and GE Fuel Cell on the bases stated in the Agreement, defendants deny plaintiff's characterization of that agreement that "GE settled on a $1 million dollar indemnification with regard to potential legal claims by Soroof." Further, while the statement suggests that the indemnity provided in the agreement ran in favor of GE only, the terms of the agreement are clear that indemnity ran likewise in favor of the separate GE Microgen corporation.**

22. GE permitted GEFCS to be dramatically undercapitalized, including at the time of dissolution. In fact, any funds that GEFCS came to possess were diverted for GE's use. As noted above, GE utilized the $1 million distributor fee Soroof paid GEFCS to fund the salaries of GE employees working in support of GEFCS. Knights Decl., Ex. 1, Scovello Dep. at 121:12-20. Mr. Scovello testified that GEFCS had "very few" assets at the time of its dissolution. *Id.* at 48:22-24. In fact, according to Mr. Scovello, GEFCS had "[n]o cash on hand" and "was not really a going concern. The only thing we had were things related to our physical presence within the Plug Power building. We had a server that we used for our computer connections, and a telephone switch, a small amount of furniture. And that was it." *Id.* at 48:22-49:1-9.

**Denied. While admitting that Mr. Scovello's deposition testimony included in part the quoted language, the materials cited by plaintiff do not establish the absence of a genuine dispute as to the conclusions that "GE permitted GEFCS to be dramatically undercapitalized" at any time and that "any funds that GEFCS came to possess were diverted for GE's use." To the contrary, these conclusions are disputed by evidence that has already been made part of the record herein which establishes that (1) Plug Power itself spent hundreds of millions of dollars and had hundreds of its employees invested into the Product development, (2) Plug received millions of dollars of funding from other parties and government sources, (3) GE Fuel Cell issued a promissory note to GE in February 1999 for a loan reimbursement of $18.250 million, and (4) GE Microgen purchased Plug Power stock at a price of $37.5 million in November 1999. *See*, Defendants' Memorandum in Support of Their Motion for Summary Judgment (Rec. Doc. 179 at pages 10-12 and 16-19 of 37) and corresponding record evidence cited in and attached to Defendants' Statement of Undisputed Material Facts and Declaration of Dahlia S. Fetouh**

**(Rec. Docs. 180 and 181); and Declaration of Frank Scovello (Rec. Doc. 61-3 at pages 7 and 9 of 11)(Declaration of Michael D. Fisse at Exhibit 5 filed concurrently herewith).**

**The statement is also denied because it misquotes the cited deposition testimony of Mr. Scovello. Mr. Scovello has never testified that "GE utilized the $1 million distributor fee Soroof paid GEFCS to fund the salaries of GE employees working in support of GEFCS." Rather, the testimony states that the fee "went to <u>offset</u>" not only the "cost" of the incident activities, but also the salaries of key personnel and "all of the other people that were involved in supporting the activities of GEFCS." The cited testimony does not establish the absence of a genuine dispute as to the plaintiff's statement.**

**The statement is also denied because this Court has already rejected plaintiff's allegation that any defendant's liability can be based on the fact that GE Fuel Cell had minimal assets at the time of its dissolution. Specifically, this Court has already ruled on the propriety of the GE Fuel Cell dissolution and has already dismissed plaintiff's claims against GE Fuel Cell notwithstanding the fact that the LLC had minimal assets at the time of dissolution and notwithstanding plaintiff's allegation that the LLC did not make "adequate provision" for Soroof's alleged claims. *See*, Memorandum Opinion and Order (Rec. Doc. 110 at pages 25-26 of 29).**

Dated: 25 June 2013
Covington, LA

Respectfully submitted,

*/s/ Michael D. Fisse*

Michael D. Fisse (New York Attorney Registration Number 5023346 and Admitted *Pro Hac Vice)*
Jon A. Van Steenis (Admitted *Pro Hac Vice*)
John M. Dubreuil (Admitted *Pro Hac Vice)*
P. O. Box 5350
Covington, LA 70434-5350
Telephone: 985.871.0800
Facsimile: 985.871.0899
E-mail: mfisse@daiglefisse.com
jvansteenis@daiglefisse.com
jdubreuil@daiglefisse.com

Counsel for Defendants GE MICROGEN, INC. and GENERAL ELECTRIC COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **GE MICROGEN INC. AND GENERAL ELECTRIC COMPANY'S RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS** has been served on all parties by electronically uploading the same to this Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established by this Court on this 25th day of June 2013 to the following counsel:

James R. Lunch, Esq.
LYNCH DASKAL EMERY, LLP
264 West 40th Street
New York, NY 10018
E-mail: lynch@lawlynch.com

Dahlia S. Fetouh, Esq.
Lauren S. Kupersmith, Esq.
GOODWIN PROCTER, LLP
53 State Street
Boston, MA 02109
E-mail: dfetouh@goodwinprocter.com
lkupersmith@goodwinprocter.com

Haig V. Kalbian, Esq.
Mary M. Baker, Esq.
Aaron W. Knights, Esq.
KALBIAN HAGERTY, LLP
888 17th Street, NW, Suite 1000
Washington, DC 20006
E-mail: hkalbian@kalbianhagerty.com
mmb@kalbianhagerty.com
aknights@kalbianhagerty.com

Abigail K. Hermani, Esq.
GOODWIN PROCTER, LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
E-mail: ahermani@goodwinprocter.com

*/s/ Michael D. Fisse*