**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **SOROOF TRADING DEVELOPMENT COMPANY, LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**GENERAL ELECTRIC COMPANY, GE MICROGEN, INC. and PLUG POWER, INC.**<br><br>Defendant. | ) | No. 10 Civ. 1391 (LGS) (JCF) |

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE


TABLE OF AUTHORITIES ii

PRELIMINARY STATEMENT 1

I. Public Policy Supports Piercing the Corporate Veil Where, as Here, Substantial Material, Undisputed Facts Conclusively Show that GE Microgen was Completely Dominated by and Reliant Upon GE Such that GE Microgen Maintained No Separate Existence from its Parent 2

II. Substantial Material and Undisputed Evidence Demonstrates that GE Misused the Corporate Form 7

III. The GE Defendants' Untimely Request for Reconsideration of this Court's Prior, Correct Rulings Must be Rejected 8

CONCLUSION 10

## TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE**

*Bank of New York v. First Millennium, Inc.*,
598 F.Supp.2d 550 (S.D.N.Y. 2009) ........ 6

*Centronics Financial Corp. v. El Conquistador Hotel Corp.*,
573 F.2d 779 (2d Cir. 1978) ........ 7

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ........ 10

*David v. Mast*,
No. 1369-k, 1999 WL 135244, (Del. Ch. Mar. 2. 1999) ........ 3

*Ford v. Harris Moving and Storage, Inc.*,
No. 6359, 1981 WL 15151 (Del. Ch. Jun. 5, 1981) ........ 3

*Hobart v. Schuler*,
55 N.Y.2d 1023 (N.Y. 1982) ........ 7

*In re Am. Classic Voyages Co.*,
367 B.R. 500, 508 (Bankr. D. Del. 2007) ........ 5

*In re Digital Music Antitrust Litigation*,
812 F.Supp.2d 390 (S.D.N.Y. 2011) ........ 3

*In re PCH Assocs.*,
949 F.2d 585 (2d Cir. 1991) ........ 10

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*,
Nos. 01 CIV. 2946, 01 CIV. 7670, 2004 U.S. Dist. LEXIS 2777 (S.D.N.Y. Feb. 26, 2004) ........ 10

*Midland Interiors, Inc. v. Burleigh*,
No. Civ.A. 18544, 2006 WL 3783476 (Del. Ch. Sept. 14, 2006) ........ 3

*NetJets Aviation, Inc. v. LHC Communications, LLC*,
537 F.3d 168 (2d Cir. 2008) ........ 7, 9

*Soroof Trading Development Company v. GE Microgen, Inc., et al.*
283 F.R.D 142 (S.D.N.Y. 2012) ........ 2, 6, 7, 8, 9

*Soroof Trading Development Company v. GE Fuel Cell Systems, LLC, et al.*,
842 F.Supp.2d 502 (S.D.N.Y. 2012) ........ 1, 8, 9, 10

*Wechsler v. Hunt Health Sys., Ltd.*,
186 F. Supp. 2d 402 (S.D.N.Y. 2002) ........ 9

*Wellman v. Dow Chemical Co.*,
No. 05-280-SLR, 2007 WL 842084 (D. Del. Mar. 20, 2007) ........ 3

**RULES**

Fed. R. Civ. Pro. 60(c)(1) ........ 10

## PRELIMINARY STATEMENT

General Electric Company ("GE") and GE Microgen, Inc. ("GE Microgen") (collectively, "GE Defendants") cannot escape the overwhelming and undisputed evidence that GE abused the corporate form of its subsidiary, GE Microgen. This subsidiary served no other discernible purpose than ostensibly to add a layer of corporate protection between GE and GE Fuel Cell Systems, LLC ("GEFCS"), of which GE Microgen was the majority and managing member. It is plain that the GE Defendants were a single economic entity wherein GE Microgen was wholly dependent on and maintained no separate existence from GE, its parent. Further, GE, not GE Microgen, exercised control over GEFCS and abused its corporate form despite the fact that GE Microgen was the majority and managing member of GEFCS. The Court has already found that these undisputed material facts – now bolstered by additional discovery – warrant piercing the corporate veil of GEFCS as a matter of law. *See Soroof Trading Development Company Ltd. v. GE Fuel Cell Systems, LLC, et al.*, 842 F.Supp.2d 502, 522 (S.D.N.Y. 2012) (Dkt. #110) ("*Soroof I*").

In a desperate effort to distract the Court from this evidence and its prior rulings on this issue, the GE Defendants devote pages upon pages of their opposition brief lauding the policy prescriptions behind the concept of corporate limited liability while ignoring the policy considerations underlying the body of law that permits parties to pierce the corporate veil when, as here, it is abused. Further, because they cannot counter the competent, admissible evidence Soroof put forward in support of its Motion for Partial Summary Judgment—much of which has already been established by this Court as not in dispute—the GE Defendants falsely assert that this evidence "consists solely of conclusory and unsupported allegations." Opp'n at 7. That the GE Defendants would take such liberty with the record is remarkable, because, as plainly

evidenced by Plaintiff's submissions and the Court's holding in *Soroof I,* the assertion is demonstrably false.

Lastly, the GE Defendants take issue with this Court's prior findings of fact and conclusions of law on the veil-piercing issue, which rulings are correct, binding on these proceedings, and are amply supported by the record. Their effort in this regard amounts to nothing more than an untimely and unfounded motion for reconsideration of rulings that are now law of the case.

**I. Public Policy Supports Piercing the Corporate Veil Where, as Here, Substantial Material, Undisputed Facts Conclusively Show that GE Microgen was Completely Dominated by and Reliant Upon GE Such that GE Microgen Maintained No Separate Existence from its Parent.**

The GE Defendants, without addressing the overwhelming evidence supporting the piercing of the corporate veil in this case, extol the societal and policy benefits of corporate limited liability. Opp'n at 2-4. However, this is a straw man argument, as Plaintiff has never questioned the legal or policy virtues of limited liability. What Soroof has argued and what the case law supports is that limited liability and the corporate form should be disregarded if, as here, it is abused. Where the corporate form is abused, piercing the corporate veil is not only appropriate but it is essential as a matter of equity. *See Soroof Trading Development Ltd. v. GE Microgen Inc., et al.*, 283 F.R.D. 142, 148-49 (S.D.N.Y. 2012) (Dkt. #140) ("*Soroof II*") ("To determine whether different corporate entities actually functioned as one, courts look to factors including 'disregarding corporate formalities, siphoning or intermingling of funds, inadequate capitalization, or that the [subsidiary]…is a mere sham acting for the [parent], among others.") (citing *In re Digital Music Antitrust Litigation*, 812 F.Supp.2d 390, 418 (S.D.N.Y. 2011)); see also *David v. Mast,* No. 1369-k, 1999 WL 135244, *3 (Del. Ch. Mar. 2. 1999) (finding that the "misuse of the corporate form to perpetuate an inducement by deception" warranted piercing the

corporate veil); *Midland Interiors, Inc. v. Burleigh*, No. Civ.A. 18544, 2006 WL 3783476 (Del. Ch. Sept. 14, 2006) (finding piercing the corporate form warranted where the company was undercapitalized, had no assets and could not meet financial obligations); *Ford v. Harris Moving and Storage, Inc*., No. 6359, 1981 WL 15151, *1 (Del. Ch. Jun. 5, 1981) (finding that manipulating the corporate form for personal benefit warranted piercing the corporate veil); *see also Wellman v. Dow Chemical Co*., No. 05-280-SLR, 2007 WL 842084, *2 (D. Del. Mar. 20, 2007) ("Under Delaware law, a limited liability company formed under the Delaware Limited Liability Company Act is treated for liability purposes like a corporation").

Here, substantial, material, undisputed facts demonstrate that GE, GE Microgen, and GEFCS functioned as a single entity completely dominated and controlled by GE.[1] *See, e.g.*, SOF[2] at ¶¶ 13-22. No reasonable juror could find otherwise. That GE, GE Microgen and GEFCS functioned as a single entity is abundantly supported by competent, admissible evidence, including, *inter alia*, the deposition testimony of the GE Defendants' and Plug Power's corporate designees and documents produced by the Defendants in discovery, including internal e-mails, PowerPoint presentations, and memoranda. Specifically, material, undisputed facts establish as follows: **(1)** GE provided GE Microgen and GEFCS with all necessary funding (SOF at ¶¶ 18-19); **(2)** GEFCS did not employ anyone, and GE seconded its own employees to support GEFCS, such that GE Microgen was wholly reliant on GE employees that GE selected, tasked, and paid to operate GEFCS (SOF at ¶¶16-17); **(3)** GE siphoned the $1 million distributor fee Soroof paid to GEFCS from GEFCS (and its member GE Microgen) for GE's own purposes, to wit, to assist

---

1 The GE Defendants' opposition underscores this fact. For example, the GE Defendants admit GE insisted that Plug Power indemnify GEFCS, GE Microgen <u>and</u> GE for any claims made against it by subdistributors such as Soroof. Opp'n at 9.

2 References to "SOF" are to Soroof's Local Rule 56.1 Statement of Material Facts (Dkt. #186) in support of its Motion for Summary Judgment.

it with payment of the salaries of GE employees assigned to the GEFCS venture (SOF at ¶¶ 6 and 22); **(4)** At all relevant times, GE, not GE Microgen, occupied a seat on Plug Power's Board of Directors (SOF at ¶ 15); **(5)** Internal GE documents reveal that critical, material information to which GE was privy about the Product and its development was never revealed to Soroof (SOF at ¶ 11-14; *see, e.g.*, SSOF[3] at ¶¶ 6, 20 and 21); **(6)** Although a sign at Plug Power's facilities identified "GE Microgen," GE actually leased the space and staffed it with its own employees (SOF at ¶ 17); (**7)** GEFCS was to use GE's famous logo (SSOF at ¶ 5); **(8)** GE, not GE Microgen, directed the dissolution of GEFCS without notice to Soroof (SOF at ¶ 20; SSOF at ¶ 37); and **(9)** Although GE had provided GEFCS with significant cash resources, at the time GE directed GEFCS' dissolution, GE left it penniless despite its awareness of Soroof's potential claims, as evidenced by GE requiring that Plug Power indemnify it for potential claims by Soroof (SOF at ¶¶ 20-22).

The only conclusion a reasonable juror could reach when viewing this evidence is that GE dominated GE Microgen so completely that the two acted as a single economic entity. Consequently, the GE Defendants resort to a smoke and mirrors approach. For example, Soroof notes in its Motion that, based on the testimony of Frank Scovello, GE and GE Microgen's Rule 30(b)(6) corporate designee, GE Microgen is likely not a "going concern" if it ever was. In a fruitless effort to rebut this fact, the GE Defendants cite to a declaration put forward by Mr. Scovello asserting that GE Microgen "continues to exist as a Delaware corporation in good standing." Opp'n at 8-9. That GE Microgen may, in a technical legal sense, continue to exist is immaterial to the fact that the overwhelming, undisputed evidence demonstrates that it exists in name only and is wholly dependent on its parent, GE. Indeed, it was Mr. Scovello who testified

---

[3] "SSOF" refers to Soroof's Statement of Opposing Facts Pursuant to Local Rule 56.1 (Dkt. #200) in support of its Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

as to what he understood "going concern" to mean in relation to GEFC: "The company – since we had nothing to sell, I mean, it really was not a going concern. [W]e had a server that we used for our computer connections, and a telephone switch, a small amount of furniture. And that was it." SOF at ¶ 22. Mr. Scovello's understanding comports with Delaware law. *See In re Am. Classic Voyages Co.*, 367 B.R. 500, 508 (Bankr. D. Del. 2007) (an entity is not a going concern where the amount it realizes from converting its assets to cash in the ordinary course of business is less than its liabilities or the expenses of conducting business).

The GE Defendants also ascribe undue weight to Plaintiff's lack of citation to the deposition of former GE employee, Barry Glickman. Mr. Glickman testified individually and not as GE or GE Microgen's designee. Consequently, Plaintiff relied more prominently on the testimony of Frank Scovello. This point notwithstanding, Mr. Glickman's testimony supports Plaintiff's Motion. For example, as noted above, GE Microgen was wholly reliant upon GE to support it, including by providing it with GE personnel. Mr. Glickman confirmed this fact. That is, although he executed the Soroof-GEFCS Distribution Agreement ("Agreement") as GEFCS's president and was also general manager of GE Microgen and GEFCS, he was at all times actually employed by GE – not the subsidiaries. *See* Ex. 6 to Opp'n (Dkt. #195-2), Glickman Dep. at 8:25-9:12 (testifying that, while employed by GE, he held the position of general manager of GE Microgen).

The GE Defendants further attempt to obscure the undisputed fact that GE Microgen and GEFCS did no revenue-generating business and were wholly dependent on GE for funding by asserting that certain funds GE provided were "loans." However, their effort in this regard is futile, as the so-called loans were illusory and uncollectable. That is, as Soroof acknowledged in its Motion, the so-called loans were "secured" by ***non-recourse*** promissory notes. *See* SOF at

¶ 19. In other words, should the funds not be able to be repaid, GE agreed in advance that it would have no recourse for recovering on the notes.[4]

It is not disputed that GE siphoned the $1 million distributor fee Soroof paid GEFCS and used it to assist with the payment of the salaries of GE employees. That GE siphoned these funds satisfies both prongs of the veil piercing test. *Soroof II*, 283 F.R.D. at 152 (GE's siphoning of funds from its subsidiary indicates not only that GE and its subsidiary were operating as a unified economic entity, but also that the corporate form had been erected for a fraudulent purpose). The GE Defendants do not and cannot dispute this fact, so they take issue with language Soroof uses when describing what GE did with these funds after siphoning them. Specifically, the GE Defendants complain in their opposition that Soroof asserts that the funds were used to "pay" GE employees instead of "offset" the costs of those salaries. Opp'n at 9. This is a distinction without difference, as it is not disputed that GE diverted the distributor fee for its own purposes and used those funds to assist with the costs of its employees' salaries.

In a further effort at misdirection, the GE Defendants also cite to the deposition testimony of Barry Glickman and assert that he testified that the funds "were earmarked for other purposes including marketing support." Opp'n at 10-11. This, too, is an irrelevant red herring. How the funds ***<u>were</u>*** at one time earmarked has no relevance to how they were ***<u>actually utilized</u>***. On the latter point, the testimony is not contradicted: Frank Scovello – the corporate designee of GE,

[4] The Amended and Restated Limited Liability Agreement of GEFCS calls for, among other things, GE to provide an $8 million non-recourse loan to GEFCS "pursuant to the terms of a non-recourse promissory note" appended as Exhibit 6 to that Agreement. SOF ¶ 19. GE has never produced Exhibit 6. Even if they had, this loan would appear to be illusory given that a non-recourse note, by definition, is not collectible as against other assets of the debtor. *See Bank of New York v. First Millennium, Inc.*, 598 F.Supp.2d 550, 559 (S.D.N.Y. 2009) (defining "nonrecourse notes" as "note[s] that may be satisfied upon default only by means of the collateral securing the note[s], not by the debtor's other assets") (citing *Black's Law Dictionary* 1086 7th ed. 1999).

GE Microgen, and GEFCS – testified that the funds were actually diverted by GE to assist payment of its employees' salaries.[5] SOF at ¶¶ 6, 22.

**II. Substantial Material and Undisputed Evidence Demonstrates that GE Misused the Corporate Form.**

The GE Defendants continue to maintain that a showing of fraud or something akin is required to prove "injustice or unfairness." Opp'n at 11. It is worth noting that the Court has rejected this reading of the law. *See Soroof I*, 842 F.Supp.2d at 521 ("Delaware law permits a court to pierce the corporate veil where there is fraud *or* where [the corporation] is in fact a mere instrumentality or alter ego of its owner.") (emphasis added) (citing *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 177 (2d Cir. 2008)); *see also Soroof II*, 283 F.R.D. at 151 ("fraud *or* inequity 'must be found in the defendants' use of the corporate form'" and "the same facts used to show that the business entities operated as a single enterprise can lend the requisite fraud or inequality.") (emphasis added) (internal citations omitted).

Here, abundant, undisputed evidence demonstrates that the GE Defendants' abused the corporate form. Most significantly, as the GE Defendants do not dispute, GE siphoned the $1 million distributor fee from GEFCS, bypassed GEFCS's managing member, GE Microgen, and utilized it for its own purposes. As the Court noted, this fact alone indicates both unified economic interest among the defendant entities but also that the corporate form had been created for a fraudulent purpose. *Soroof II*, 283 F.R.D. at 152.

Further, GE used its subsidiaries to make promises they could not meet and withhold material information, all the while accepting and using Soroof's funds to offset the salaries of GE

[5] The GE Defendants continue to erroneously assert that facts supporting Soroof's misrepresentation claim are barred by the parol evidence rule. *See Centronics Financial Corp. v. El Conquistador Hotel Corp.*, 573 F.2d 779, 782 (2d Cir. 1978) ("New York quite clearly rejects any strict application of the parol evidence rule when fraud is claimed); *Hobart v. Schuler*, 55 N.Y.2d 1023, 1024 (N.Y. 1982) ("a general merger clause is generally insufficient to bar parol evidence of a fraudulent misrepresentation.").

employees devoted to the failed GEFCS venture. For example, GE knew prior to its employee, Barry Glickman, executing the Agreement that the Product was not close to being commercially developed. SOF at ¶¶ 2-4. Still, no GE employee (whether tasked to GEFCS or not) informed Soroof of this critical information. SSOF at ¶¶ 6, 21 and 30. To the contrary, Soroof was informed that the Product was in its *final stages* of commercialization. *Id.* In 2003, GE lost confidence in Plug Power's ability to commercialize the Product, declined to make a further investment in Plug Power, and effectively mothballed GEFCS. SOF at ¶¶ 10-13; SSOF at ¶¶ 6, 21, 31, 38 and 77. Again, no GE employee tasked to GEFCS (or anyone else) informed Soroof of this critical information. *Id.* Finally, at GE's direction, GEFCS was formally dissolved without notice to Soroof and despite GE's knowledge of Soroof's potential claims, which knowledge is plainly evidenced by GE's insistence that Plug Power indemnify it and its subsidiaries up to $1 million for claims by Soroof. SOF at ¶¶ 20, 21; SSOF at ¶ 37. As this Court has already held, "GE's actions indicate that it used the GEFCS business form to avoid liability for [Soroof's] claims." *Soroof II*, 283 F.R.D. at 152.

## III. The GE Defendants' Untimely Request for Reconsideration of this Court's Prior, Correct Rulings Must be Rejected.

Although reinforced by additional discovery, Soroof's present Motion for Partial Summary Judgment is supported by the same material undisputed facts on which Judge Swain relied (and which the Defendants failed to counter) when granting summary judgment to pierce the corporate veil of GEFCS to reach its members, GE Microgen and Plug Power. *Soroof I*, 842 F.Supp.2d at 522. As Magistrate Judge Francis aptly observed when granting Soroof's request for leave to amend and add GE as a party: "Indeed, the allegations presented here are similar in breadth and nature to the facts Soroof successfully used to argue that GEFCS was an alter ego of GE Microgen and Plug Power." *Soroof II*, 283 F.R.D. at 151. The GE Defendants maintain that

the issues presented here and addressed in *Soroof I* are different because GEFCS was an LLC and GE Microgen (and GE) are corporations. Opp'n at 16. However, black letter law rejects this notion: "[Veil piercing] principles are generally applicable as well where one of the entities in question is an LLC rather than a corporation." *NetJets*, 537 F.3d at 178.

Therefore, it is not surprising that the GE Defendants invite this Court to reconsider its prior rulings. However, these rulings, which reflect the Court's careful analysis of the law and application of that law to the facts, are correct and do not warrant reconsideration.[6] Still, the GE Defendants' claim that the Court's decisions were erroneous rests on their assertion that, because GEFCS was dismissed from the case, GE Microgen and Plug Power should have been dismissed, too. Of course, Defendants can point to no authority to support this bald assertion. In fact, the Court has already asserted that GEFCS's dismissal from this case *supports* piercing the veil. *See Soroof II*, 283 F.R.D. at 152 (GE's act of directing the dissolution of GEFCS so that it could not be sued "indicate that it used the GEFCS' business form to avoid liability for such claims.").[7]

Had the Defendants wished for the Court to reconsider its decision on this ground, they should have filed a motion for reconsideration long before they filed their opposition brief on

---

[6] Indeed, even if a timely motion for reconsideration had been filed, GE Defendants' have pointed to no new evidence or any intervening change in the law – nor can they – justifying reconsideration. *See Wechsler v. Hunt Health Sys., Ltd.*, 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002) (A party seeking reconsideration "is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings," and therefore "a motion for reconsideration "is not a substitute for appeal and may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision.") (internal citations omitted).

[7] The GE Defendants' other complaints regarding the Court's prior rulings barely warrant mention here except to note that none of their positions are supported by any evidence or case law, and all of them could have and should have been argued in opposition to Soroof's original Motion for Partial Summary Judgment. *See* Dkt. # 87-90 and 104 (Soroof's original Motion for Partial Summary Judgment and supporting materials), Dkt. # 96-98 (Defendants' Opposition to Soroof's original Motion). For example, the GE Defendants argue – without citation – that "[v]entures like GE Fuel Cell are typically staffed with employees of a parent company" and that "such entities commonly have no address of their own." The GE Defendants further claim that the Court "did not cite any Delaware cases," although *Soroof I* cited *NetJets*, *supra*, a Second Circuit case applying Delaware law, and *Soroof II* cited many Delaware cases while also noting that "the law of Delaware on [veil piercing] is substantially similar to the law of New York." *Soroof II*, 283 F.R.D. at 150 n.8.

June 25, 2013. *See, e.g.*, Fed. R. Civ. Pro. 60(c)(1) (motions for relief from a final judgment, order or proceeding "must be made within a reasonable time…and no more than a year after the entry of the judgment or order or the date of the proceeding."). Therefore, the Court's prior rulings on veil piercing bind these proceedings pursuant to the law of the case doctrine. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816 (1988) (the law of the case doctrine provides that once a court has decided upon a rule of law, the decision governs the same issues through subsequent stages of the same case); *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) ("[A] decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation."); and *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, Nos. 01 CIV. 2946, 01 CIV. 7670, 2004 U.S. Dist. LEXIS 2777, *19 (S.D.N.Y. Feb. 26, 2004) (The doctrine applies so long as the party against whom it is asserted had a "full and fair" opportunity to litigate the initial determination).

## CONCLUSION

Peeling away the GE Defendants' efforts to distract from and obfuscate the undisputed material evidence, a reasonable juror could reach only one conclusion: GE, GE Microgen and GEFCS operated as a single economic entity dominated by GE, which abused the corporate form of GE Microgen *and* GEFCS. This Court has already granted summary judgment piercing the veil of GEFCS. Identical evidence, bolstered by facts adduced during Phase II discovery, warrant that this Court follow its earlier decision in *Soroof I*, grant partial summary judgment in favor of Soroof, and pierce the corporate veil of GE Microgen.

Dated: July 23, 2013

Respectfully submitted,

KALBIAN HAGERTY LLP

/s/ Aaron W. Knights

Haig V. Kalbian (admitted *pro hac vice*)
Aaron W. Knights (admitted *pro hac vice*)
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
(202) 223-5600 (t)
(202) 223-6625 (f)
hkalbian@kalbianhagerty.com
aknights@kalbianhagerty.com

LYNCH DASKAL EMERY LLP
James R. Lynch (JL-2778)
264 West 40th Street
New York, New York 10018
(212) 302-2400 (t)
(212) 302-2210 (f)
lynch@lawlynch.com

*Counsel for Plaintiff Soroof Trading Development Company, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Reply Memorandum of Law in Support of Motion for Partial Summary Judgment was served this 23rd day of July 2013, via notice of electronic filing on the following:

Dahlia S. Fetouh, Esq.
Abigail K. Hemani, Esq.
Lisa M. LoGerfo, Esq.
Lauren S. Kupersmith, Esq.
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
E-mail: dfetouh@goodwinprocter.com
E-mail: ahemani@goodwinprocter.com
E-mail: llogerfo@ goodwinprocter.com
E-mail: lkupersmith@ goodwinprocter.com

*Counsel for PLUG POWER, INC.*

Michael D. Fisse, Esq.
John Dubreuil, Esq.
Jon A. Van Steenis, Esq.
DAIGLE FISSE & KESSENICH
PO Box 5350
Covington, LA 70434-5350
E-mail: mfisse@daiglefisse.com
E-mail: jdubreuil@daiglefisse.com
E-mail: jvansteenis@daiglefisse.com

*Counsel for Defendants GENERAL ELECTRIC COMPANY and GE MICROGEN, INC.*

/s/ Aaron W. Knights
Aaron W. Knights