UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SOROOF TRADING DEVELOPMENT COMPANY, LTD.,

Plaintiff,

v.

GE MICROGEN, INC.,
PLUG POWER INC., and
GENERAL ELECTRIC COMPANY,

Defendants.

Civil Action No. 1:10-cv-01391-LGS-JCF

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I. SOROOF CANNOT ESTABLISH A BREACH OF CONTRACT CLAIM......................1

A. Defendants Used Reasonable Efforts ........................................................ 1

B. Defendants Shared Relevant Information Under the Contract................................ 3

II. SOROOF CANNOT ESTABLISH A MISREPRESENTATION CLAIM.........................4

III. SOROOF'S CLAIMS ARE UNTIMELY ...........................................................6

A. The Parties Are Clearly Identified As Buyer And Seller ....................................... 6

B. Soroof's Claims Accrued as Early as April 2001 but No Later than June 2004..... 7

C. Soroof's Argument That the Statute of Limitations was Tolled is Unavailing....... 8

IV. DEFENDANTS' LIABILITY (IF ANY) IS LIMITED BY THE AGREEMENT ...........10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Int'l Ltd.*,
888 F. Supp. 2d 431 (S.D.N.Y. 2012)....................6

*Aeronautical Indus. Dist. Lodge 91 v. United Tech. Corp.*,
230 F.3d 569 (2d Cir. 2000)....................2

*Banque Arabe et Internationale d'Investissement v. Md. Nat'l Bank*,
850 F. Supp. 1199 (S.D.N.Y. 1994)....................3

*Bloor v. Falstaff Brewing Corp.*,
601 F.2d 609 (2d Cir. 1979)....................2

*Busch v. Mastropierro*,
684 N.Y.S.2d 632 (N.Y. App. Div. 1999)....................4

*Charter Oak Fire Ins. Co. v. Trio Realty Co.*,
No. 99 Civ. 10827 (LAP), 2002 WL 123506 (S.D.N.Y. Jan. 31, 2002)....................10

*Gizzi v. Hall*,
754 N.Y.S.2d 373 (N.Y. App. Div. 2002)....................5

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
748 F.2d 729 (2d Cir. 1984)....................5

*Hernandez, Kroone & Assocs., Inc. v. United States*,
No. 07-165-C, 2008 WL 4725433 (Fed. Cl. June 16, 2008)....................4

*In re Chateaugay Corp.*,
186 B.R. 561 (S.D.N.Y. 1995)....................2

*In re Chateaugay Corp.*,
198 B.R. 848 (S.D.N.Y. 1996)....................2

*In re Eugenia VI Venture Holdings, Ltd. Litig.*,
649 F. Supp. 2d 105 (S.D.N.Y. 2008)....................6

*In re Executive Telecard, Ltd. Sec. Litig.*,
913 F. Supp. 280 (S.D.N.Y. 1996)....................10

*Milman v. Box Hill Sys. Corp.*,
72 F. Supp. 2d 220 (S.D.N.Y. 1999)....................10

*Scott-Macon Sec., Inc. v. Zoltek Cos.*,
No. 04-civ-2124, 2005 WL 1138476 (S.D.N.Y. May 12, 2005) .......... 2

*Soroof Trading Development Co. v. GE Microgen, Inc.*,
842 F. Supp. 2d 502 (S.D.N.Y. 2012) .......... 3

*Strauss Paper Co., Inc. v. RSA Exec. Search, Inc.*,
688 N.Y.S.2d 641 (N.Y. App. Div. 1999) .......... 2

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) .......... 3

**STATUTES**

N.Y. U.C.C. § 2-725(1) .......... 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c)(2) .......... 1

This case is about a negotiated contract involving an emerging technology that did not pay off for anyone involved. Soroof would have this Court believe that Defendants created a "sham" organization in order to deprive Soroof of its contractual fee. The suggestion defies both logic and undisputed material facts. The evidence establishes that Defendants worked toward a positive outcome for all involved parties (including Soroof and other contractors). Defendants do not dispute that delays and problems affected this emerging technology's commercialization, or that that there was simultaneous effort to develop other products. But these circumstances do not amount to Defendants "abandoning" the Product or having "grave doubts." Further, it is undisputed that Defendants disclosed to Soroof these development delays and problems both before and during the contract term, and also made public disclosures of these matters. Soroof raises no genuine issue to dispute Defendants' showing that no contract breach or actionable misrepresentation occurred, and that Soroof had knowledge or notice of its alleged claims long before it ever filed this lawsuit such that the claims are time barred.[1,2]

## I. <u>SOROOF CANNOT ESTABLISH A BREACH OF CONTRACT CLAIM</u>

### A. Defendants Used Reasonable Efforts

Soroof argues that by summer 2003, Defendants "effectively abandoned" their efforts to commercialize the Product and shifted their emphasis to other products. Plaintiff's Opposition (Dkt. 199) ("Opp.") at 13.[3] Soroof claims that this shift equates to a violation of the provision

---

[1] Soroof's Statement of Opposing Facts (Dkt. 200) ("SSOF") includes objectionable responses to Defendants' Statement of Undisputed Facts (Dkt. 180) ("SUF"), including legal argument, conclusions, and unsupported and/or inadmissible "facts," which should be disregarded. *See* Defendants' Rule 56(c)(2) Objections, filed herewith.

[2] References to exhibit numbers herein are to exhibits to Decl. of Dahlia S. Fetouh (Dkt. 181), filed with Defendants' Motion. References to exhibit letters herein are to exhibits to Decl. of Dahlia S. Fetouh filed herewith.

[3] Preliminarily, there is no evidentiary basis for Soroof's conclusory allegation that Product development was "abandoned" in 2003. Soroof bases this conclusion exclusively on out of context, partial quotations from a hearsay document. Moreover, that document does not establish abandonment of the Product in any event. Rather, the document states only that Plug Power was "currently focusing on" the GenSys product, which was a "[c]ombined heat and power fuel cell *for remote residential*." Plaintiff Ex. 5(3). Further, the undisputed testimony regarding this document confirms that this GenSys product was similar to the Product specified by the Agreement. Ex. A, Dep. of

that states that GEFCS will "[u]se reasonable efforts to supply" the Product. Soroof is incorrect.

First, Soroof's argument that New York courts interpret "reasonable efforts" and "best efforts" clauses interchangeably is misleading. Rather, a "'reasonable efforts' clause . . . is indisputably less stringent than [the standard] imposed by [a] 'best efforts' clause[]." *In re Chateaugay Corp.*, 198 B.R. 848, 854 (S.D.N.Y. 1996); *see also In re Chateaugay Corp.*, 186 B.R. 561, 594 (S.D.N.Y. 1995) (the term "reasonable efforts" is "necessarily intended to impose a lesser obligation than . . . the term 'best efforts.'"). Here, the parties could have used the term "best efforts" had they intended that more stringent meaning.

Second, even under a "best efforts" standard, Defendants satisfied their contractual responsibilities. That standard allows parties to "rely on their good faith business judgment as to the best way to achieve the desired result." *In re Chateaugay Corp.*, 186 B.R. at 594. A company need not spend itself into bankruptcy, accept significantly lower profits, or even accept losses to satisfy a best efforts clause. *Aeronautical Indus. Dist. Lodge 91 v. United Tech. Corp*, 230 F.3d 569, 578 (2d Cir. 2000); *Bloor v. Falstaff Brewing Corp.*, 601 F.2d 609, 613-14 (2d Cir. 1979).[4] It is undisputed that by 2003, Defendants attempted to commercialize other products (which did not present as many technical difficulties as the Product and could be brought to market faster) to bring in revenue to remain viable while they continued development of the Product.[5] Ex. B, Dep. of Gerard L. Conway, Jr., on Oct. 26, 2012 ("Conway Dep."), at

---

Frank Scovello, on Apr. 16, 2013, at 306:20-24. The testimony also confirms that Plug Power did not (as Soroof alleges) stop all Product development by shifting to different opportunities. *Id.* at 305:19-22, 304:7-21.

[4] *See also Scott-Macon Sec., Inc. v. Zoltek Cos.*, No. 04-civ-2124, 2005 WL 1138476, at *14 (S.D.N.Y. May 12, 2005) ("best efforts requires a party to make such efforts as are reasonable in the light of that party's ability and the means at its disposal and of the other party's justifiable expectations.") (internal quotations omitted); *Strauss Paper Co., Inc. v. RSA Exec. Search, Inc.*, 688 N.Y.S.2d 641, 642-43 (N.Y. App. Div. 1999) (best efforts clauses unenforceable when agreement does not define the term or have clear guidelines to measure such efforts).

[5] Moreover, the undisputed facts establish that Plug Power continued to advance and invest in its development of PEM fuel cell systems beyond 2003. *See, e.g.*, SUF at ¶¶ 38, 65; Exs. 17, 29. The fact that these technological advancements applied to other products in addition to the Product is irrelevant as the core technology was the same.

122:9-124:15. Even assuming as true Soroof's argument that Plug Power shifted focus to marketing alternatives, Soroof has not shown any breach.[6]

### B. Defendants Shared Relevant Information Under the Contract

Soroof admits that it was given relevant information throughout the contract term. But Soroof complains now that it was not given "all" information, and lists information that it claims was relevant but not provided. Opp. at 15. But the January Order makes clear that the contract did not require GEFCS to share every piece of information; only "material" information about the "ultimate viability" of the Product.[7] GEFCS did just that by notifying Soroof of overall development and ongoing delays, including notice in July 2003 that an "economically viable, prime power fuel cell product" was "not in the schedule." SUF at ¶¶ 108, 82-118; Motion at 15-16. Soroof admits that there were communications and meetings between Soroof and GEFCS between 2000 and 2004. *See* SSOF ¶¶ 82-83, 85. And Soroof admits there was no instance when GEFCS did not answer a question posed by Soroof (SSOF ¶ 88) or when Plug Power did not provide requested information (SSOF ¶ 87). GEFCS was not obligated to provide *any and all* information possibly related to the Product over the course of a six-year period, especially when the lines of communication were open and when problems in development were freely and publicly shared.[8] Indeed, of the "material information" that Soroof claims GEFCS did not share,

---

*See* Ex. C, Dep. of Frank Scovello, on Dec. 10, 2012 ("Scovello 2"), at 221:23-223:15; Ex. B, Conway Dep., at 89:14-18; *see also* Def. Memo. in Support of Their Mot. For Summ. J. (Dkt. 179) ("Motion"), at 5-6.

[6] And as explained *infra* at Parts I.B and III.B, Defendants made these decisions known to Soroof.

[7] *Soroof Trading Development Co. v. GE Microgen, Inc.*, 842 F. Supp. 2d 502, 512 (S.D.N.Y. 2012). Moreover, Soroof miscites the January Order. The Court never states, as Soroof claims, that "a failure to disclose 'material information about the ultimate viability' of the Product *would support a claim*," Opp. at 14 (emphasis added), but instead found that Soroof had identified no fact "to render the claim plausible" and only that Soroof "may" have a claim if it could offer actual facts as opposed to conclusory allegations. *Soroof*, 842 F. Supp. 2d at 512-13.

[8] The cases cited by Soroof for its definition of "material" are inapposite. Opp. at 14-15. None concerns a similar contract provision or a comparable context. In *Banque Arabe*, the materiality standard concerned a lending contract and information available *before* funding a loan, not information available *after* an investment. *See also, TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 & n.8 (1976) (materiality standards in securities fraud cases involve misrepresentations that occurred *prior* to an investment, rather than information after the fact). In

almost all was shared with Soroof directly and/or disclosed publicly. SUF at ¶ 86; *see also* Exs. 8, at pp. 3-4; 18, at p. 13; 19, at pp. 3, 8; 30, at pp. 1-2, 8; 29, at p. 2; Ex. 22, Press Release, at 2.

## II. SOROOF CANNOT ESTABLISH A MISREPRESENTATION CLAIM

Soroof cites several alleged misrepresentations and omissions that occurred prior to the signing of the Agreement; but these statements are inadmissible parol evidence under the contract's merger clause. "[A] specific disclaimer defeats any allegation that the contract was executed in reliance upon contrary oral representations." *Busch v. Mastropierro*, 684 N.Y.S.2d 632, 633 (N.Y. App. Div. 1999). The contract's merger clause here was specific, stating that any representations not incorporated in the contract were not binding if they related "to transactions within the scope of the agreement." Ex. 13, Agreement ¶ 22.1; Motion at 22-23. Also, Soroof has not established that any statement was made with knowledge of its falsity and an intent to defraud. Soroof points to a conversation in May 2000 in which Mr. Glickman testified he informed Soroof of certain product specifications and that the Product was "nearly ready for availability for production." Opp. at 17. But being "nearly ready for availability for production" does not mean that it was ready to be commercialized, and GEFCS provided Soroof with its projections for commercialization. And prior to signing the Agreement (one month after this conversation) GEFCS told Soroof that the Product's delivery had been delayed for a year. SUF at ¶ 89. With that knowledge, Soroof decided to sign the contract anyway.

In an attempt to show that GEFCS made statements knowing them to be false, Soroof points to two irrelevant pieces of information. First, Soroof points to statements from Dennis Witmer concerning his alleged opinions in early 1999. But there has been no showing that Defendants did not properly consider the results of Dr. Witmer's single test, which involved a

*Hernandez*, the other case on which Soroof relies, the materiality inquiry pertains to whether parties have a duty to update responses to interrogatories with material changes, a far cry from the situation here.

laboratory unit that was different than the Product. SUF at ¶¶ 55-60. To the contrary, Dr. William Acker (Plug Power's former Vice President of Technology and Product Development), confirms in his verified Expert Report that there was no reason to give more weight to Dr. Witmer's single opinion than to the hundreds of other competent engineers and scientists in the industry supporting the projections for the technology. Ex. 24, Expert Rep. of William Acker, at ¶ 33.[9] Second, Soroof points to a hearsay document unsupported by sworn testimony—an April 7, 2000 "GE Marketing Update" which states that "GEFCS is continuing to sell product 'potential.'" Opp. at 18. Notwithstanding its inadmissiablity, there is no dispute that Soroof was contracting for "product potential." There is no dispute that at the time the Agreement was negotiated and signed, Soroof knew the Product was in development. SUF ¶¶ 20-22. And there is no dispute that after the Agreement was signed, GEFCS informed Soroof of schedule delays; indeed Defendants provided Soroof with the same dates they relied upon internally. *See* Ex. G, Dep. of Gary Mittleman, at 92:19-93:4; Ex. C, Scovello 2, at 157:19-158:17, 220:10-25.

Even if Soroof were able to demonstrate a material misrepresentation or omission (which is denied), Soroof cannot establish reasonable reliance.[10] *See Gizzi v. Hall*, 754 N.Y.S.2d 373, 376 (N.Y. App. Div. 2002). Summary judgment on reasonable reliance is particularly appropriate where, as here, the party asserting reliance is a sophisticated business entity. *See Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984) ("[W]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain

[9] *See also* Ex. D, Expert Rep. of Matthew Fronk, at ¶¶ 21-23; Ex. E, Dep. of William Acker, at 164:14-167:12, 179:14-180:1; Ex. F, Dep. of Matthew Fronk, at 80:5-17, 184:25-185:8; Ex. 6, Dep. of John Cerveny, at 62:17-64:22, 81:10-19. Soroof also cites a declaration of David Edlund. Besides being irrelevant since it relates to experiences in 1996-1998, for the reasons set forth in Defendants' letter to the Court of July 19, 2013, that declaration should be stricken and disregarded.

[10] Indeed, Soroof's only response on this point is to call Defendants' argument "frivolous" and to claim that it did due diligence even though it has admitted under oath that it did not. Opp. at 19; SUF ¶¶ 23-24.

claims of justifiable reliance" and summary judgment is appropriate); *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 119-20 (S.D.N.Y. 2008) (same). This is a classic example of a sophisticated entity failing to take advantage of available resources.

Certainly, Soroof—an entity with multiple businesses and a CEO with two masters' degrees and experience managing at least one billion dollar project—does not dispute that it was a sophisticated business entity. Ex. H, Dep. of Bander Abdullah Al-Saud, at 9:4-8, 12:8-13:2, 19:18-20:15; *see generally* www.soroof.com. Soroof's claim today that "GE's representatives were Soroof's best and only means for verifying the information represented about the Product's development" (Opp. at 19) is false. The status of the Product's development was knowable at all times through publicly available SEC filings. SUF ¶ 81. In addition to failing to look at Plug Power's public filings, which clearly laid out the Product's risks and progress each year (including disclosure of the "Risk Factor" that a commercially viable product may never be completed), Soroof did not even consult any GE entity's public filings or endeavor to speak to any third party in the industry. Ex. 11, Dep. of Jim Jackson, Soroof's 30(b)(6) Corp. Representative ("Soroof 30(b)(6) Dep."), at 81:24-82:4, 83:14-17. Summary judgment is appropriate on the issue of reliance.[11]

## III. SOROOF'S CLAIMS ARE UNTIMELY

### A. The Parties Are Clearly Identified As Buyer And Seller

Soroof's attempt to diminish its role as a buyer conspicuously ignores the plain language of the Agreement, including the clause under the heading "Relationship Between STDC [Soroof] and GEFCS and Controlling Laws," that identifies the parties as "that of buyer and seller." Ex.

[11] Soroof incorrectly states that this issue is inappropriate for summary judgment. As explained above, courts have granted summary judgment on this element. The case cited by Soroof, *Abu Dhabi Commercial Bank,* is inapposite as it was discussing cases where there was "no independent means of ascertaining the truth," unlike this case where the means existed but Soroof chose not to employ them. *Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, 888 F. Supp. 2d 431, 445, 462-63 & n.188 (S.D.N.Y. 2012).

13, Agreement, §13.2. In not one of the cases relied upon by Soroof did such a clear, stated intent of the parties exist. *See* Opp. at 22-23. Moreover, the essence of the Agreement was the sale of goods. *See* Motion at 24 n.8; *see also*, *e.g.*, Ex. 13, Agreement § 5.1 (identifying the first responsibility of GEFCS to "Sell to [Soroof] a sufficient quantity of Product"); *id.* at Sch. D (titled "Terms and Conditions of Sale" and stating "[Soroof] (hereinafter 'Buyer') and GEFCS (hereinafter 'Seller')"); *id.* at § 23.5 (referring to parties as "Buyer" and "Seller").[12] Thus, the four year statute of limitations applies. N.Y. U.C.C. § 2-725(1); *see also* Motion at pp. 23-24.

**B. Soroof's Claims Accrued as Early as April 2001 but No Later than June 2004**

There is no genuine dispute that the statute of limitations commenced by either accrual date in the Motion (if not earlier). In April 2001, Soroof was told (and acknowledged) that there would be no Product at any definable date in the future. Where, as here, Soroof's claims are based on allegations that Defendants did not make reasonable efforts to deliver the Product and failed to provide accurate information, this date is not only relevant to the accrual of Soroof's claim, but determinative of it. It is undisputed that failing to deliver Product by a date certain was not a contract requirement (Opp. at 24), but according to Soroof, failing to use reasonable efforts was. Soroof cannot claim on the one hand that working on alternative products establishes a breach of contract, while on the other, being informed of those alternatives due to the indefinite delays of the Product is irrelevant to the accrual of that same breach.

Even if Soroof's claims did not accrue in April 2001, they accrued during one of the many other discussions about the Product's delays and the availability of alternative products, and certainly by June 2004 when Soroof requested a refund of the $1 million distributor fee and

[12] Soroof also argues that "title would not pass to Soroof," and therefore the U.C.C. does not apply. Opp. at 23. Once again, Soroof ignores the facts and is simply wrong. The Agreement explicitly states that title will pass to Soroof. Ex. I, Agreement, Sch. D, § 3.2 ("Title to the Product shall pass to the Buyer on an Ex Works basis at Plug Power's manufacturing facility in Latham, New York, or such other U.S. point of shipment as specified by Seller.").

considered having attorneys review the contract terms.[13] Soroof's response that its decision to demand a refund and have an attorney review the Agreement is "irrelevant" to "support a finding as a matter of law that Soroof had reason to believe Defendants had breached the Agreement" strains credulity. Opp. at 24. This is particularly true, where the emails discussing consulting an attorney accuse GEFCS of "fail[ing] to fulfill [its] obligation." Ex. 39, June 23, 2004 email.

And even prior to this date, Soroof believed that GEFCS was not always keeping Soroof up-to-date with information. Specifically, in reference to an email in January 2004, Soroof's corporate representative was asked, "Was it Soroof's opinion *at that time* that it was always kept up-to-date with fuel cell development information from GEFCS?," and his answer was "No." Ex. 11, Soroof 30(b)(6) Dep., at 136:6-9 (emphasis added). Although Defendants deny there was a basis for Soroof's undisclosed distrust, there can be no more clear an indication of the accrual date than a party's admission that it did not believe that the contract was being satisfied, its decision to consult an attorney about such failure to comply, and a demand for a return of fees paid under the contract.

**C. Soroof's Argument That the Statute of Limitations was Tolled is Unavailing**

A cause of action accrues when "the plaintiff either acquires actual knowledge of the facts that comprise his action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." Opp. at 25 (citation omitted). Here, Soroof had actual knowledge of the facts that comprise its action well before June 2004. But assuming *arguendo* that it did not, its lack of knowledge was due solely

[13] The record is full of examples of emails between members of GEFCS and Soroof explaining the delays in the Product, while noting the continued development of other products. *See, e.g.*, Ex. 33, Apr. 26, 2001 (Barry Glickman writes, "Soroof and GE need to explore additional product relationships in order to meet our near-term objectives."); Ex. 34, Jan. 2, 2002 (listing the status of various products in development); Ex. 36, Apr. 23, 2003 (Frank Scovello writes, "I plan to provide Mr. Jackson with a complete status of the development of the fuel cell products, including the GenCore and On-Site Hydrogen production derivative products. . . . [T]hey should be economically viable in their applications earlier then [sic] the GenSys product."); *see also* Ex. 37, Jan. 24, 2004.

to its failure to exercise due diligence, and not the result of "blameless ignorance."

The risks and failures in the Product development were disclosed in detail in Plug Power's public filings made before Soroof signed the contract—filings that Prince Bander *admitted would have prevented him from entering the contract had he read them*. SUF ¶ 29. Soroof is charged with knowledge of these public filings. The contract terms and undisputed facts put the lie to Soroof's suggestion that it did not understand that Plug Power was a part of GEFCS. Plug Power's involvement was freely disclosed. Its role was identified in several parts of the Agreement including *its very first page*. Soroof further inaccurately excuses its failure to consult the Plug Power filings by claiming that the "Product was to bear the GE logo not Plug Power's" (Opp. at 27), but this statement is incorrect also. What the Agreement actually says is that the Product will be marked "with the trademarks of GEFCS and PP [Plug Power]." *See* Ex. 13, Agreement, ¶ 5.4. Moreover, prior to signing the Agreement, Soroof met with GEFCS in a building clearly labeled with Plug Power's signage, and discussed the product with both GE Microgen *and Plug Power employees*. Ex. 11, Soroof 30(b)(6) Dep., at 60:2-21. Further, Soroof testified that it reviewed Plug Power press releases regarding the Product prior to entering the Agreement. *Id.* at 75:6-15, 78:6-21. It would have taken less than "reasonable diligence" for Soroof to understand the risk factors that were being publicly disclosed and that Prince Bander has said would have stopped him from contracting with GEFCS.[14] Further, Soroof's attempt to label these disclosures as "boilerplate" and "fine print" ring hollow next to the five to six pages of detailed, specific Risk Factors listed in every year's public filings. *See, e.g.*, Exs. 8-9; 17-19;

[14] Soroof's disregard for Plug Power's public filings is emblematic of Soroof's general lack of diligence. Although Soroof emphasizes its relationship with GE, it admits that it did not even evaluate GE's public filings. Ex. 11, Soroof 30(b)(6) Dep., at 81:24-82:4. In fact, both Soroof's corporate representative and Soroof's President and CEO testified that Soroof did not do *any* due diligence prior to entering the contract. SUF ¶¶ 23-24.

29-30.[15]

Summary judgment is appropriate. Soroof cites *In re Executive Telecard, Ltd. Sec. Litig.*, 913 F. Supp. 280, 285 (S.D.N.Y. 1996) for the proposition that "any contention that such disclosures would have put a reasonable person on inquiry notice is not properly addressed on summary judgment." Opp. at 27. However, Soroof cites the headnotes, not the case. What the court actually said is that the stated proposition "has *not* been adopted in this Circuit." *In re Executive*, 913 F. Supp. at 283 (emphasis added). Rather, the court held that "a court can, as a matter of law, determine whether an investor of ordinary intelligence would be on inquiry notice . . . where no reasonable fact finder analyzing the circumstances as presented, could determine that inquiry notice did not exist." *Id*. In this case, with the plethora of information contained in Plug Power's public filings, and Soroof's hollow excuses for ignoring them, no reasonable fact finder could determine that inquiry notice did not exist.

## IV. DEFENDANTS' LIABILITY (IF ANY) IS LIMITED BY THE AGREEMENT

The undisputed material facts do not support a finding that that Defendants were grossly negligent, a necessary prerequisite to defeat commercial contract terms which limit a party's liability. And the very case law cited by Soroof confirms that this issue is properly resolved on summary judgment. *See Charter Oak Fire Ins. Co. v. Trio Realty Co.*, No. 99 Civ. 10827 (LAP), 2002 WL 123506, at *5 (S.D.N.Y. Jan. 31, 2002) (granting summary judgment on finding no record evidence to establish gross negligence). Here, Soroof has not, and cannot, show negligence on Defendants' part, much less clear and convincing evidence of willful misconduct sufficient to void the Agreement's terms limiting liability. *See also* Motion at pp. 17-18.

[15] Soroof's reliance on *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 229 (S.D.N.Y. 1999) is misplaced. Not only was that case restricted to "inquiry notice upon an investor for purposes of §13" of the Securities Act, but the alleged notice was one clause in an otherwise positive sentence. *Id.* That is a far cry from the Annual Reports, which contained several pages of information related to risk factors and product setbacks separate and distinct from any discussion of the company's achievements.

Dated: July 23, 2013

Respectfully submitted,

/s/ Dahlia S. Fetouh

Dahlia S. Fetouh (*pro hac vice*)
Abigail K. Hemani (AH 2071)
Lisa M. LoGerfo (*pro hac vice*)
Lauren S. Kupersmith (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
E-Mail: dfetouh@goodwinprocter.com
E-Mail: ahemani@goodwinprocter.com
E-Mail: llogerfo@goodwinprocter.com
E-Mail: lkupersmith@goodwinprocter.com

Attorneys for Defendant PLUG POWER INC.

/s/ Michael D. Fisse

Michael D. Fisse
John Dubreuil
Jon A. Van Steenis
DAIGLE FISSE & KESSENICH, PLC
P.O. Box 5350
Covington, LA 70434-5350
(985) 871-0800
Fax: (985) 871-0899
Email: mfisse@daiglefisse.com
Email: jdubreuil@daiglefisse.com
Email: jvansteenis@daiglefisse.com

Thomas Edward Healy
PINO & ASSOCIATES, LLP
50 Main Street
White Plains, NY 10606
(914) 946-0600
Fax: (914) 946-0650
Email: thealy@pinolaw.com

Attorneys for Defendant GENERAL ELECTRIC COMPANY and GE MICROGEN, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT has been served on all parties by electronically uploading the same to this Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established by this Court on this 23rd day of July, 2013.

/s/ Dahlia S. Fetouh
Dahlia S. Fetouh