## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SOROOF TRADING DEVELOPMENT COMPANY, LTD.,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 Civ. 1391 (LGS) (JCF) |
| | ) | |
| v. | ) | |
| | ) | |
| **GENERAL ELECTRIC COMPANY, GE MICROGEN, INC. and PLUG POWER, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO CORRECT ITS NAME IN THE CASE CAPTION

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.    PRELIMINARY STATEMENT ...................................................................................1

II.    RELEVANT PROCEDURAL BACKGROUND ........................................................2

III.    FACTUAL BACKGROUND .....................................................................................4

      I.    Soroof's Change of its Name from Soroof Trading to Soroof International is Only Nominal ...........................................................................................5

      II.    Defendants Have Long Known of Soroof's Name Change, Failed to Raise Any Objections, and Acknowledged that Soroof Trading and Soroof International Are the Same Company ...............................................................9

      III.    The Facts Demonstrate that Despite Alternative English Translations of Soroof's Name, There Has, At All Times, Been One Company ...............11

IV.    ARGUMENT ..........................................................................................................13

      I.    Legal Standard .........................................................................................13

      II.    Plaintiff Does Not Seek to A Substantive Amendment, but Merely Seeks Leave to Correct its Name in the Case Title ...............................................14

      III.    Defendants Will Suffer No Prejudice from the Amendment .....................15

V.    CONCLUSION .......................................................................................................16

Plaintiff Soroof Trading Development Company, Ltd. ("Soroof Trading"), currently known as Soroof International Company, Ltd. ("Soroof International"), by its counsel and pursuant to Fed. R. Civ. P. 15, hereby submits its Memorandum of Points and Authorities in Support of its Renewed Motion to Correct Plaintiff's Name in the Case Caption.  Soroof Trading and Soroof International, the same company, will be referred to throughout this brief as "Soroof."

This lawsuit was originally brought in the name of Soroof Trading—the name of the Soroof business when it contracted with GE Fuel Cell Systems, LLC ("GEFCS") on June 6, 2000.  However, Soroof changed its name from Soroof Trading to Soroof International pursuant to a Partners Resolution dated September 4, 2001, and it still operates in that name today. This motion should be granted because, after extensive discovery on the issue of Soroof's name change, it is beyond dispute that the relief sought here is clerical in nature.  The proposed amendment does not add additional parties or claims, does not alter any issues of proof, and is not prejudicial to Defendants, who knew of Soroof's name change and never objected to it. Accordingly, the amendment should be "freely" granted, pursuant to Rule 15.

## PRELIMINARY STATEMENT

This case has been pending for over five and one-half years.  After four failed dispositive motions, Defendants cling to one last issue in hopes of avoiding trial:  that a simple, nominal change in Soroof's name from "Soroof Trading Development Company Ltd." to "Soroof International Company Ltd." should dispose of this litigation.  The facts surrounding and effects of Soroof's name change cannot be disputed.  Soroof's name change in no way changes Soroof's claims before this Court or the defenses to its claims, and Soroof's rights to recover against Defendants in this action were not impacted in any way whatsoever.

1

On the issue of Soroof's name change alone, Defendants have: (1) questioned three Soroof witnesses on the subject of its name change, including, on January 24, 2014, Tahir Rashid for over five hours (on 40 noticed topics both related and unrelated to Soroof's name change) and (2) issued 35 document requests, many of which were stricken by an order of this Court. While the parties and this Court have devoted substantial resources to this issue, after extensive discovery it is not disputable that Soroof Trading and Soroof International are the same entity. That is, Soroof was formed in the name of Soroof Trading, never dissolved, merely changed its name to Soroof International, and thereafter continued (and continues today) its business operations in that name.

Further, the Defendants have long known of and, until this litigation had acquiesced in, Soroof's name change. In early 2006 and well before litigation was commenced, Plug Power – at GE's insistence – sought that *Soroof International* sign an agreement that would have absolved themselves of liability for the actions giving rise to the claims.  Had Soroof actually signed this agreement, there can be little doubt that the Defendants would now argue to this Court that Soroof International and Soroof Trading are one in the same and, consequently, the claims brought by Soroof in this case are barred.

## RELEVANT PROCEDURAL BACKGROUND

Soroof first moved to correct its name in the case caption on May 9, 2013.[1]  By that motion, as here, Soroof sought to conform the case title to reflect reality – that is, that Soroof

---

[1]     Contrary to Defendants' claims otherwise, the timing of Soroof's motion is an irrelevant red herring given that the relief requested is merely that the case title accurately reflect Soroof's name.  It does not seek to add any new parties, causes of action, or additional damages, and it in no way impacts the defenses at issue in this case.

This notwithstanding, the timing of Soroof's motion is not the result of any nefarious strategy on the part of Soroof.  In light of the parties' agreement to bifurcate discovery and first address issues relating to GEFCS's dissolution, the parties did not commence with general fact discovery regarding the claims at issue until the Spring of 2012 ("Phase II" discovery)—nearly four years after Soroof first filed its claims in arbitration.  Phase II discovery did not conclude until March 22, 2013.  After the commencement of Phase II discovery, Soroof compiled any and

2

Trading had changed its name to Soroof International on September 4, 2001 (after the June 2000 execution of the contract at dispute in this case). *See* Motion to Amend Case Caption, Dkt #175. Despite having already cross-examined three of Soroof witnesses – two of which were Soroof's corporate representatives – regarding the name change in depositions during ordinary fact discovery, and despite having prior knowledge of its effect (or lack thereof) as addressed more fully later in this brief, Defendants opposed that Motion.  *See* Defendant's Opposition to Plaintiff's Motion to Amend Case Caption ("Opp'n"), Dkt #183 at 2.

On May 31, 2013, this Court denied Soroof's Motion without prejudice. *See* May 31, 2013 Order, Dkt #191.   Specifically, the Court noted lack of clarity with regard to the following: (a) "whether the name change from Soroof Trading to Soroof International was only nominal," and (b) "whether Soroof International has any rights that differ from those of Soroof Trading." *Id.* at 4.  Consequently, the Court granted Defendants leave to "conduct discovery for the *limited purpose* of obtaining information related to the name change." *Id.* (emphasis added).

Thereafter, the parties agreed to schedule a further Rule 30(b)(6) deposition to be preceded by a document production "to address the topics of the circumstances, reasons, and effects, if any, of the name change from Soroof Trading Development Company to Soroof International." *See* June 7, 2013 Endorsement of Letter from Michael D. Fisse, Esq., Dkt. #192. The parties agreed to defer this further discovery until after Judge Schofield ruled on the parties' respective summary judgment motions, which were filed on May 10, 2013. *Id.*

---

all responsive documents and produced them to Defendants, some of which show that at some point Soroof changed its names.  During depositions, Defendants questioned Soroof's corporate representatives and Prince Bander on the subject of its name change.  After Defendants had the opportunity to conduct discovery on the issue, shortly after the close of discovery and within a few days of filing its motion for partial summary judgment, Soroof moved to correct its name in the case caption.  At no time until Soroof approached Defendants' counsel to seek their consent to correcting the case title did they note any objection to Soroof's name change or claim it impacted the merits of the litigation.

On October 30, 2013 – more than five years after this litigation commenced – Judge Schofield denied the parties' respective summary judgment motions and ordered that this case finally proceed to trial.  *See* Dkt. # 217.  The next day, Judge Schofield entered a scheduling order setting various pre-trial dates and the trial for the week of January 27, 2014.  *See* Dkt. # 218.  These dates were stayed, and the parties have completed the additional discovery, which included a further Rule 30(b)(6) deposition of Tahir Rashid that went over five hours and covered a multitude of topics, many of which had nothing to do with Soroof's name change whatsoever.

## **FACTUAL BACKGROUND**

After extensive discovery has been taken on the issue of Soroof's name change,  the undisputable facts are: (1) Soroof was formed in the name Soroof Trading in 1996; (2) Soroof changed its name from Soroof Trading to Soroof International on September 4, 2001 and has operated as Soroof International ever since; (3) Soroof Trading was never dissolved, it merely changed its name to Soroof International and continued its operations in that name thereafter; (4) Soroof has at all times remained a limited liability company and a going concern; (5) Soroof has at all times continued doing business pursuant to a single Founding Contract, which formed Soroof in the name of Soroof Trading; and (6) Soroof, whether in the name Soroof Trading or Soroof International, has at all times done business as a single company under the same Company Registration Number issued by the Saudi Ministry on March 17, 1998, which remains valid to this day.[2]

---

[2]     As we demonstrate here, even the Defendants (when it suited their best interests, treated the two as a single company.

I.    **Soroof's Change of its Name from Soroof Trading to Soroof International is Only Nominal.**

Both documents and testimony demonstrate beyond any doubt that Soroof at all times has operated as a single limited liability company either by the name Soroof Trading or Soroof International.

Soroof was formed in the name of Soroof Trading on May 13, 1996.  *See* Founding Contract, attached as Ex. 1.  Thereafter, Soroof was registered with the Kingdom of Saudi Arabia's Ministry of Commerce & Industry, which assigned it a Company Registration Number ("CR Number") of 2051022491 on March 17, 1998.  *See* March 17, 1998 Company Registration Certificate, attached as Ex. 2.  On June 6, 2000, Soroof entered into the Distributor Agreement with GEFCS at issue in this case ("Distributor Agreement").  Because Soroof wanted its name to give it "international exposure" (Jan. 24, 2014 Deposition of Tahir Rashid ("Rashid Dep. II") at 62:17-23, attached as Ex. 3), on September 4, 2001, Soroof Trading's name was changed to Soroof International by a Partners' Resolution.  *See* Sept. 4, 2001 Partners Resolution, attached as Ex. 4.  Soroof Trading was not dissolved.  *Id.*, *see also* Company Registration Certificates of Soroof International (containing the same unique CR Number), attached as Exs. 5 and 6.   Nor was the type of company Soroof was (and is) – a Saudi limited liability company – ever changed. *See*, *e.g.*, Exs. 1, 2, 4, 5, and 6.  In addition, the Company Registration Certificates issued by the Ministry of Commerce after Soroof's name change reference March 17, 1998 – the date Soroof was first issued a CR Number in the name of Soroof Trading – as the first date of the "company term."  *See* Exs. 5 and 6 (Company Registration Certificates of Soroof International).  After the name change, Soroof's assets were not dissipated or transferred.  They remained with Soroof operating under its new name, Soroof International.  *See*, e.g., Audited Financial Statements of Soroof for 2001 and 2002, attached as Ex. 7.

5

Testimony adduced during Phase II discovery also demonstrates that Soroof Trading continued operating under a new name, Soroof International.  According to Mr. James Jackson, who testified as one of Soroof's corporate designees, Soroof International and Soroof Trading are "the same company."  Deposition of James Jackson dated Oct. 18, 2012 ("Jackson Dep.") at 7:11-14, attached as Ex. 8.  Mr. Jackson's testimony was crystal clear that Soroof Trading's name "was changed to Soroof International," which "was just a change in the name, that's all." *Id.* at 7:15-21.  According to Mr. Tahir Rashid, who testified as Soroof's other corporate designee this time last year, "Soroof International and Soroof Trading, which was its earlier name, are both the same entity."  Deposition of Tahir Rashid dated Feb. 25, 2013 ("Rashid Dep. I") at 171:4-7, attached as Ex. 9.  Mr. Rashid further noted that Soroof Trading continues to exist "under the name of Soroof International" (*id.* at 171:12-14), that "the only thing that happened was the name change" (*id.* at 171:22-25), that Soroof continues to exist as Soroof International with the "[s]ame commercial registration number" (*id.* at 172:2-5).

Further, Mr. Rashid gave testimony on an array of issues, including the name change, for more than five hours on January 24, 2014.  His testimony only reinforces Mr. Jackson's testimony, Mr. Rashid's earlier testimony, and reinforces the fact that the name change was merely nominal; that is, Soroof, formed in the name of Soroof Trading, continued doing business as Soroof International.  Specifically, Mr. Rashid testified as follows:  (1) there is "only one founding contract" of Soroof – the document by which Soroof was formed in the name of Soroof Trading  (Ex. 3, Rashid Dep. II at 26:18-27:7); (2) that Soroof Trading and Soroof International are the same companies operating under the same commercial registration number (*id.* at 37:23-38:5 and 44:10-25); (3) that Soroof International operated under the same commercial registration number is significant because each commercial registration number "is [a] unique

number for every single entity" (*id.* at 36:25-37:16)[3]; and (4) that Soroof International "with the name change" inherited Soroof Trading's activities while the company under the name Soroof International added to and amended those activities to "capitalize on market opportunities" (*id.* at 66:18-67:14. Mr. Rashid could not have been more explicit in this regard:

> Yes, there is no two entities. There are no two entities. The founding contract which you have is for Soroof Trading Development. There are subsequent minutes – the subsequent board resolutions which change the name of Soroof Trading Development to Soroof International. The number of the commercial registration remains the same and the board resolutions which took effect of the change of the name, have all been presented.

*Id.* at 44:16-25.

Moreover, Soroof was never a holding company (*id.* at 65:7-25) and Soroof never created any spin-offs (*id.* at 66:5-67:14, 68:13-19). That Soroof organized itself into "branches" or "strategic business units" is of no moment, as these are "not separate. They are part of Soroof International." *Id.* at 68:21-69:4. They do not have their own set of financial records, but instead "Soroof International has only one set of financial records." *Id.* at 71:2-6. They do not and cannot enter into contracts, but instead contracts "are made under Soroof International." *Id.* at 71:20-72:16. Soroof's branches are issued their own sub-commercial registration numbers ("sub-CRs") by the Saudi Ministry, but none of Soroof's branches is "a separate formed company." *Id.* Instead, the "sub-CRs" are "allocated under the main commercial registration of Soroof International." *Id.* Employees tasked to these branches were and are paid from a Soroof International account. *Id.* at 76:21-77:6.

---

[3]   This sworn testimony all but equates a commercial registration number in Saudi Arabia to an individual's Social Security Number in the United States. Taking that a relevant step further, if a woman sued in her maiden name and then got married, she would still be the same plaintiff identified by her unique Social Security Number, only with a new name.

Finally, the fact that at the same time as it changed its name Soroof also identified and carved out other additional markets in which it might transact business in the future in addition to those already provided for in the Founding Contract is of no consequence and does not negate the nominal impact of the name change.   As Mr. Rashid testified, Soroof added "certain activities" in addition to those laid out at its formation to "capitalize on market opportunities" that might materialize.  *Id.* at 66:18-24.  This in no way impacted Soroof's (or the Defendants') rights vis-à-vis the Distribution Agreement.   Instead, it merely represents Soroof's evolving vision for future growth into new markets and provided it with the framework to do so.  *Id.* at 96:22-98:14.

Indeed, Soroof's ability to perform the GE agreement remained unaffected.  Although the September 4, 2001 Partners Resolution *extended* the purposes of the company to provide for Soroof's anticipated growth into more markets, it explicitly contemplated Soroof conducting the business outlined in the Distribution Agreement at Section 3.A – that is, it contemplates business in "[e]lectrical works contracting (power generation and distribution – lighting works)." Ex. 4, Sept. 4, 2001 Partners Resolution.  This is consistent with Soroof's earlier corporate governance documents, which likewise envision Soroof conducting business outlined in the Distribution Agreement.  *See* Ex. 1, Soroof's Founding Contract (business in "Electrical equipment and machines"); Soroof's Partners Resolution of June 15, 1999, attached as Ex.10 (business in "Electrical equipment and machines"); and Soroof's December 17, 2000 Partners Resolution, attached as Ex. 11 (business in "Electrical works contracting (power generation and distribution – lighting works").

II.    **Defendants Have Long Known of Soroof's Name Change, Failed to Raise Any Objections, and Acknowledged that Soroof Trading and Soroof International Are the Same Company.**

After Soroof effected its name change, Defendants continued their communications and dealings with Soroof using the Soroof International name.  For example, in an e-mail dated June 22, 2004 and directed to GE's corporate representative, Frank Scovello, Ayman Nabhan, then Soroof's CEO, noting that "Soroof International" entered into the Distribution Agreement, demanded that GEFCS return the $1 million distributor fee to "Soroof International."  *See* June 22, 2004 E-mail from Mr. Nabhan to Mr. Scovello, attached as Ex. 12.  Mr. Scovello failed to raise any objection or inquiry on the subject of Soroof's name.

Moreover, in early 2006 Plug Power was engaged in negotiations with Soroof International for Soroof to distribute a different fuel cell product than was the subject of the Distribution Agreement.  GE monitored the negotiations between Plug Power and Soroof International and insisted that any follow-on agreement between Soroof International and Plug Power absolve GE of potential liability under the GEFCS Distributorship Agreement.

In an e-mail exchange dated January 26, 2006, Plug Power employee Ravi Menon apprised GE representative Frank Scovello of the status of these discussions:  "I spoke at length with Tahir Rashid the new COO of Soroof Intl…."  *See* January 26, 2006 Email Exchange between Mr. Menon and Mr. Scovello, attached as Ex. 13.  Mr. Menon continued:

> During our conversation this morning, they did bring up the financial issues surrounding the expired GE agreement, which would be best if resolved between GEFC and Soroof (Al and I discussed this with you a couple of weeks ago.  My fear is that even with a new agreement between Plug Power and Soroof, they may circle back to the investment they made to secure the GEFC distributorship and somehow hold Plug Power accountable.

*Id.*

9

Mr. Scovello's response was emphatic:  "We can not (sic) separate the GEFCS payment issue from your discussions with Soroof.  The new Plug Power agreement is the only vehicle we have to avoid a potential issue with Soroof."  *Id.*

Thereafter, Plug Power obliged GE.  That is, it drafted an International Distributor Agreement ("IDA") between Plug Power "and Soroof International," which, if executed, would have absolved <u>all</u> <u>Defendants</u> of any liability relating the Distributor Agreement, which is at the core of the instant litigation.  March 2006 Soroof International and Plug Power Draft International Distributor Agreement at p. 1 and ¶ 8.9, attached as Ex. 14 (emphasis added).

Specifically, the IDA provides that Soroof International "entered into a distributor agreement (hereinafter referred to as 'GEFCS Agreement') dated June 6, 2000…."  *Id.* at p. 1. The IDA further provides that it "replaces and supersedes all prior agreements…including but not limited to the GEFCS Agreement."  Id. at ¶ 8.8.  Significantly for this motion, the IDA provides for the release of any conceivable claims against the Defendants arising out of or relating to the Distributor Agreement:

> Distributor [defined as Soroof International] hereby releases and forever discharges Supplier [defined as Plug Power], GEFCS, General Electric Company, GE Microgen, Inc. the affiliates of each of the foregoing and the present and former shareholders, members, directors, officers, employees and agents of each of the foregoing and their affiliates of and from any and all claims, obligations and liabilities, whether known or unknown, of every kind and nature to the extent related to, arising from, or in connection with the GEFCS Agreement, including without limitation, the actions or omissions of any such person in connection with the negotiation of, entrance into or performance (or lack of performance) of its obligations under the GEFCS Agreement.

*Id.* at ¶ 8.9.

10

Although the IDA was never executed, its existence speaks volumes. It reveals that the Defendants did not view Soroof Trading or Soroof International as "separate entities" with differing rights. Its existence amplifies Defendants' misguided efforts to oppose this Motion. Indeed, there can be no doubt that had Plug Power and Soroof entered this agreement, the Defendants would have long ago moved to dismiss these claims by asserting that Soroof International, one in the same with Soroof Trading, waived all claims relating to the Distributorship Agreement.

III.    **The Facts Demonstrate that Despite Alternative English Translations of Soroof's Name, There Has, At All Times, Been One Company.**

Defendants will likely reference the Arabic-to-English translations of several documents in an effort to create confusion about Soroof's name change and to suggest that it was something more than it was. However, the confusion stems not from nefarious purposes or existence of any separate company, but from issues relating to the translation of the documents from their original Arabic into English, as discussed by Tahir Rashid at his most recent deposition.

For example, the English translation of the Company Registration Certificate for Soroof Trading Development Ltd. provides, next to the words "Type of Company," "*Foreign* Limited liability Company." *See* Ex. 2. However, in the original and controlling Arabic document, the word "foreign" does not appear.

> Q.    What's the significance of that designation, foreign?
>
> A.    I think this is a translation error, because in the Arabic version, it has no reference to any foreign, foreign registration, may it's a typing error or a copy – you know, when they're doing this, I think this is a typing – translation error. Type of company is ruled by Arabic version, in the Arabic version, it says it's a limited liability company and the nationality is Saudi.

11

Q.     Ok.  So I'm hearing you right, that looks to you to be an error in translation where it says foreign, correct?

A.     No, it not looks to me as an error, it is an error.

Ex. 3, Rashid Dep. II at 33:18-34:10.

The Defendants may also seek to complicate this issue by citation to documents that reference "Soroof International LLC," "Soroof International, Ltd." and "Soroof International Company, Ltd."  The undisputed fact is there is only one "Soroof International," the name of which appears <u>identically</u> in every single Arabic company document. In the course of translating the names, the concept "a company of limited liability" as expressed in Arabic has been translated in various ways into English, including "LLC" and "Ltd."   The word "company" has sometimes been omitted entirely. However, it is clear that there is only one company -- Soroof International.

Q.     Soroof International Limited Liability Co is the same company as Soroof International Ltd, am I understanding you correctly?

A.     Yes, it's often written as limited liability company, sometimes written as Soroof International Ltd., but it's the same company.

Q.     Is it the same company as Soroof International Co. Ltd?

A.     It's used interchangeably.  I mean, in the Arabic version, if you read, it will always be the same.  But in translation, when somebody translates it, he might put down Soroof International LLC, Soroof International Co. Ltd., but in the Arabic, you know, the Arabic version is the one which is the correct name, which is given on the commercial registration, in the Arabic.

Q.     If I'm understanding you correctly, Soroof International Co. Ltd., Soroof International LLC and Soroof International Ltd. are all the same company?

12

> A.    They are all the same.  I mean, from within the documents, which you have and under different translated names, it's the same company, we're referring to the same company.

Ex. 3, Rashid Dep. II at 61:20-62:16.

Finally, although litigation proceedings in Texas were initiated by a petition drafted by Soroof's counsel listing the plaintiffs as "Soroof International Company" and "Soroof International Limited," this filing was erroneous to the extent it indicates there are two such entities.  Mr. Rashid testified that there are no such two entities.  "I think that is incorrect here.  It should be only one, so Soroof International.  That is the only one that had the agreement with Soroof."  *Id.* at 147:18-148:12.  Mr. Rashid noted that the lawsuit being brought in the name of two entities was a "a mistake," and he would tell Soroof's counsel "to correct" it.  *Id.* at 148:13-21.

In short, notwithstanding any confusion over English translations of Arabic documents and errors in court filings in unrelated Texas proceedings, after extensive discovery, including deposition testimony, one fact cannot be disputed:  there is only one relevant Soroof company, a single entity that was named Soroof Trading and is now named Soroof International.

## ARGUMENT

### I.    Legal Standard

Under Rule 15(a)(2), a party may amend its pleadings with the other parties' written consent or with leave of the court. Even when another party opposes amendment, "[t]he court should freely give leave when justice so requires."  *Id.*  Rule 15(c) further allows for the relation of amendments back to the date of the original pleading where the amendment changes a party name. In fact, Rule 15(c) was specifically amended in 1966 to clarify that it could be properly used to correct a misnomer.  *See* Advisory Committee Notes to 1966 Amendment.  Courts have

13

freely permitted parties to correct a misnomer, whether it relates to a plaintiff's name or a defendant's name. *See Asher v. Unarco Material Handling, Inc*., 596 F.3d 313, 318-19 (6th Cir. 2010); *SMS Fin., Ltd. Liab. Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 244-45 (5th Cir. 1999) (noting that Rule 15(c) applies to plaintiffs even though the rule itself refers only to changes in defendant name); *see also*, 6 Wright and Miller §1498 (even before the 1966 amendment, many courts applied Rule 15(c) "to achieve just and sensible results by allowing the relation back of amendments changing parties to the action"). *See, e.g., Reyna v Flashtax, Inc.*, 162 F.R.D. 530, 533 (S.D. Tex. 1995) (plaintiff that sued under trade name permitted to correct a misnomer by substituting the name of individual who owned the company, and an amendment 'relates back' to the date of filing upon satisfying three elements: (1) the amended complaint must arise out of the same conduct, transaction, or occurrence set forth in the original proceeding; (2) a sufficient identity of interests between the new plaintiff and the old plaintiff, so as to give fair notice to the defendants; and (3) an absence of undue prejudice). *Id.*; *see also* Fed. R. Civ. P. 15(c).

## II.   Plaintiff Does Not Seek to A Substantive Amendment, but Merely Seeks Leave to Correct its Name in the Case Title.

The proposed correction to Soroof's name satisfies this standard. Defendants have at no point disputed that Plaintiff's proposed amendment involves the same conduct as underlies its original complaint. Instead, their opposition to Plaintiff's amendment seems to sound primarily out of concern that Soroof Trading no longer exists, and that the rights and responsibilities of Soroof International do not reflect an "identity of interest" – concerns wholly belied by the evidence. *See, e.g.,* Opp'n at 2.

Further, having now conducted extensive discovery on the issue of Soroof's name change (as well as issues that extend far beyond it) to the facts and circumstances surrounding the change in Soroof's name, Defendants can no longer reasonably claim that the name change

14

reflects anything more than a change to an existing entity's name and an expansion of its corporate purpose, a practice as commonplace in Saudi Arabia as it is in the United States.[4]  For example, the text of the 2001 Partners' Resolution provides that the board members merely "wish to change the company name and to extend [the company's] purposes." Ex. 4, Sept. 4, 2001 Partners Resolution.  At all times – from 1998 to the present – Soroof, whether transacting as Soroof Trading or Soroof International – retained the same CR Number; that is to say, *the entity continued to exist and remained the same*.  *See* Exs. 2, 4-7; *see also* Ex. 3, Rashid Dep. II at 36:25-37:16.  Indeed, this fact is also amply supported by deposition testimony provided by Jim Jackson and Tahir Rashid in October of 2012 and February of 2013, respectively – prior to the close of fact discovery. *See* Exs. 8 and 9.

In short, the overwhelming, undisputed evidence shows the "identity of interest" between Soroof Trading and Development Corp. and Soroof International Company, Ltd.  In fact, that same evidence demonstrates that Soroof Trading was simply renamed Soroof International and, consequently, are *the same company* in every respect.

## III.   Defendants Will Suffer No Prejudice from the Amendment.

Incredibly, Defendants' have argued that they will suffer prejudice from the proposed correction of Soroof's name. They cannot demonstrate any cognizable prejudice from any purported delay in seeking the amendment.  As noted herein, it is beyond any dispute that the proposed correction to the case title changes none of the Plaintiff's underlying allegations or theories of liability, brings in no new parties, and arises out of the same occurrences and pattern of conduct as the original complaint. *See, e.g., Reyna v Flashtax, Inc.*, 162 F.R.D. 530, 533 (S.D. Tex. 1995) (listing elements to merit relation-back under Rule 15(c)). It is, to quote Mr.

---

[4] *See, e.g.,* N.Y. Bus. Corp. § 801(b) ("A corporation may amend its certification of incorporation, from time to time, so as: (1) to change its corporate name. (2) To enlarge, limit or otherwise change its corporate purposes. ...").

Jackson's sworn testimony, a simple name change, nothing more. *See* Knights Decl. Ex. 2, Deposition of Jim Jackson on October 18, 2012, at 7:17-21. In any event, Defendants were afforded ample opportunity to explore the circumstances of Soroof's name change in Phase II discovery and, by leave of Court, after the denial of their summary judgment motion (having issued 35 document requests and taken more than five hours of testimony covering 40 noticed topics purportedly on the issue of the name change alone).

Nor can Defendants seriously claim that they suffer prejudice for any claimed lack of notice. In addition to the lack of any new factual allegations or theories of recovery, it is plain after reviewing documents produced by Defendants that they were well aware that Soroof Trading and Soroof International are the same entity. *See* Exs. 12-14. Indeed, rather than object to the name change, Plug Power—at GE's insistence—sought for Soroof International to absolve the Defendants of any conceivable liability under the Distributor Agreement. Ex. 14, Draft International Distributor Agreement at ¶ 8.9. It is worth repeating that it is almost beyond doubt that, if this agreement had actually been executed, and the suit had been filed as captioned above, Defendants would have long ago asserted that Soroof International, one in the same with Soroof Trading, agreed to release the claims brought in this case.

## CONCLUSION

For the reasons set forth herein, Plaintiff Soroof respectfully requests that the Court grant Soroof's Motion and enter an Order correcting the caption in this case to reflect the correct name of Plaintiff as "Soroof International Company, Ltd.," and for such other and further relief as the Court deems necessary and appropriate.

Dated: February 10, 2014         Respectfully submitted,

KALBIAN HAGERTY LLP

/s/ Aaron W. Knights
Haig V. Kalbian (admitted *pro hac vice*)
Aaron W. Knights (admitted *pro hac vice*)
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
T: (202) 223-5600
F: (202) 223-6625
hkalbian@kalbianhagerty.com
aknights@kalbianhagerty.com

LYNCH DASKAL EMERY LLP

James R. Lynch (JL-2778)
264 West 40th Street
New York, New York 10018
(212) 302-2400 (t)
(212) 302-2210 (f)
lynch@lawlynch.com

*Counsel for Plaintiff Soroof Trading Development Company, Ltd.*

17

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of Plaintiff Soroof Trading Development Company Ltd's Memorandum of Law in Support of Renewed Motion to Correct Its Name in the Case Caption was filed this 10th day of February, 2014, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Dahlia S. Fetouh, Esq.
> Abigail K. Hemani, Esq.
> Lisa M. LoGerfo, Esq.
> Lauren S. Kupersmith, Esq.
> GOODWIN PROCTER LLP
> 53 State Street
> Boston, Massachusetts 02109
> E-mail: dfetouh@goodwinprocter.com
> E-mail: ahemani@goodwinprocter.com
> E-mail: llogerfo@ goodwinprocter.com
> E-mail: lkupersmith@ goodwinprocter.com
>
> *Counsel for PLUG POWER, INC.*
>
>
> Michael D. Fisse, Esq.
> John Dubreuil, Esq.
> Jon A. Van Steenis, Esq.
> DAIGLE FISSE & KESSENICH
> PO Box 5350
> Covington, LA 70434-5350
> E-mail: mfisse@daiglefisse.com
> E-mail: jdubreuil@daiglefisse.com
> E-mail: jvansteenis@daiglefisse.com
>
> *Counsel for Defendants GENERAL ELECTRIC*
> *COMPANY and GE MICROGEN, INC.*
>
>
> /s/ Aaron W. Knights
> Aaron W. Knights

18