UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOROOF TRADING DEVELOPMENT
COMPANY, LTD.,

                                    Plaintiff,

v.                                                              Civil Action No. 1:10-cv-01391-LGS-JCF

GENERAL ELECTRIC COMPANY,
GE MICROGEN, INC., and
PLUG POWER, INC.,

                                    Defendants.

MEMORANDUM IN OPPOSITION OF DEFENDANTS GE MICROGEN, INC.,
GENERAL ELECTRIC COMPANY AND PLUG POWER, INC. TO PLAINTIFF'S
"RENEWED MOTION TO CORRECT ITS NAME IN THE CASE CAPTION"

**Table of Contents**

                                                                                          **Page**

I.   Preliminary Statement and Summary of Argument ................................................................1

II.  Timeline ................................................................................................................................2

III. Discovery Has Confirmed That Soroof Trading No Longer Exists And That Soroof
     International Is A Different Business Organization Than The One That Contracted With
     GEFCS In June 2000 ...........................................................................................................3

IV.  Soroof Is Judicially Estopped From Now Claiming That The Soroof Business Organization
     Is a Single Entity ................................................................................................................9

V.   Even If Soroof International Is the Proper Party To Assert Claims Under the GEFCS/Soroof
     Trading Contract, Plaintiff's Motion to Amend Should Still be Denied And the Claims
     Should Be Dismissed Pursuant To FRCP Rule 17 ............................................................12

     A. Rule 17 Requirements ...................................................................................................12

     B. Substitution of Party Plaintiffs Is Not Available Under FRCP 17(a) .............................13

        1. Plaintiff's Allegations Regarding Events and Participants Have Changed ..................14

        2. Plaintiff has not provided a justifiable explanation why this suit was not
           originally brought in the name of Soroof International and has not established
           that the failure to do so was because of difficulty in identifying the proper party
           or understandable mistake ......................................................................................15

        3. Plaintiff failed to seek substitution within a reasonable time after Defendants'
           objection .................................................................................................................18

VI.  Defendants Will Be Unfairly Prejudiced If the Requested Substitution Is Allowed............19

VII. Plaintiff's Motion Should Also Be Denied Pursuant To FRCP Rules 15 and 16 .................20

VIII. The Unfair Prejudice to Defendants The Proposed Amendment Would Cause Has Been
     Compounded By Plaintiff's Failure to Provide Complete Discovery ...................................23

IX.  Conclusion ...........................................................................................................................24

## Table of Authorities

**Cases**                                                                                                    **Page**

Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2nd Cir.1997) ..........14, 16

Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc., 164 F.R.D. 1, 3
(E.D.N.Y.1995) ....................................................................................................................17

Barrows v. Forest Lab., Inc., 742 F.2d 54 (2d Cir. 1984)..................................................22

Berman v. Parco, 986 F.Supp. 195, 217-218 (S.D.N.Y. 1997) ......................................22

Bouzo v. Citibank, N.A., 88 Civ. 1446, 1995 WL 144825 (S.D.N.Y. 1995)................................22

Brach v. Levine, 2012 WL 2899021 (N.Y. Sup. Ct. 2012) ............................................8

Conroy Datsun Ltd. v. Nissan Motor Corp., 506 F.Supp. 1051, 1054 (N.D. Ill. 1980) ...............21

DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir.2010) .................................10

Engines Southwest, Inc. v. Kohler Co., No. 03-1460, 2006 WL 1896071 (W.D. La. 2006) ........14

Espinosa v. Delgado Travel Agency, Inc., No. 05 -6917, 2006 WL 27926892004 (S.D.N.Y.
2006)......................................................................................................................................14

Esposito v. U.S., 368 F.3d 1271, 1276 (10th Cir.2004)................................................................17

Feist v. Consolidated Freightways Corp., 100 F.Supp.2d 273, 276 (E.D.Pa.1999) ....................16

Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962) ......................20, 21

Freeman v. Continental Jenco, 381 F.2d 459, 469 (5th Cir. 1967).........................................21, 23

Guynn v. Potter, 2002 WL 243626 (S.D. Ind. 2002)....................................................................19

In Re Adelphia Recovery Trust, 634 F.3d 678, 696 (2nd Cir. 2011) ...........................................11

Intown Properties Mgmt. Inc. v. Wheaton Van Lines, Inc. 271 F.3d 164,  170, 171 (4th Cir.
2001)..............................................................................................................................16, 19

Kiamesha Dev. Corp. v. Guild Props., Inc., 4 N.Y.2d 378, 388-89 (1958) ..................................8

Land Mine Enters., Inc. v. Sylvester Builders, Inc., 74 F.Supp.2d 401, 406 (S.D.N.Y.1999)......15

_Lans v. Gateway 2000, Inc._, 84 F.Supp.2d 112, 120 (D.D.C. 1999) .....................................16, 17

_Lee v. Marvel Enterprises, Inc._, 765 F. Supp. 2d 440, 453 (S.D.N.Y. 2011)...............................14

_Metal Forming Technologies, Inc. v. Marsh & McLellan Co._, 224 FRD 431, 437, 438 (S.D. Ind. 2004)........................................................................................................................17, 19

_New Hampshire v. Maine_, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) ......10, 11

_Nilsen v. City of Moss Point_, 621 F.2d 117 (5th Cir. 1980)....................................................21, 23

_Simon v. Safelite Glass Corp._, 128 F.3d 68, 72 (2d Cir. 1997).....................................................11

_Southmark Corp. v. Schulte Roth & Zabel_, 88 F.3d 311, 317 (5th Cir. 1996).......................20, 21

_Uzdavines v. Weeks Marine, Inc._, 418 F.3d 138, 148 (2d Cir. 2005)............................................10

_Weissman v. Weener_, 12 F.3d 84, 87 (7th Cir.1993) .....................................................................19

_Wieburg v. GTE Southwest, Inc._, 272 F.3d 302, 308 (5th Cir.2001)..............................................15

_Wieburg v. GTE Southwest, Inc._, 2003 WL 21417074 (5th Cir.2003) ..........................................19

## Rules

Federal Rule of Civil Procedure 15 .....................................................................................2, 13, 21
Federal Rule of Civil Procedure 15(a) .....................................................................................20, 23
Federal Rule of Civil Procedure 16 .................................................................................2, 13, 20, 21
Federal Rule of Civil Procedure 16(b)(4) ........................................................................................21
Federal Rule of Civil Procedure 17 .....................................................................2, 12, 13, 17, 19, 21
Federal Rule of Civil Procedure 17(a) .........................................................................13, 14, 15, 16, 18

## Other Authorities

3 Moore, Moore's Federal Practice ¶ 15.08[4]................................................................................22
6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §1488.................................23

**MAY IT PLEASE THE COURT:**

Defendants, GE MicroGen, Inc., General Electric Company and Plug Power, Inc, (hereafter referred to as "Defendants"), appearing herein in their capacity as former members (or affiliated with former members) of the dissolved limited liability company identified herein as GE Fuel Cell Systems LLC ("GEFCS"), submit this Opposition to Plaintiff's "Renewed Motion to Correct Its Name in the Case Caption" (Rec. 231).  In support of this Opposition, Defendants show as follows.

**I.   PRELMINARY STATEMENT AND SUMMARY OF ARGUMENT**

The title of Plaintiff's motion "to correct its name in the caption" wrongly suggests that the only issue raised by Plaintiff's motion is the difference between the names of the two identified Soroof business groups. To the contrary, the briefing herein confirms that Plaintiff's motion injects new factual and legal issues into this litigation regarding the status of the two business groups, and whether one should be substituted for the other in this litigation.

Contrary to Plaintiff's contention that the requested change in the pleadings is "only nominal," the evidence shows that the business entity that originally contracted with GEFCS (*i.e.*, Soroof Trading Development Company, Ltd; [hereafter "Soroof Trading"]) is different from the organization that Plaintiff now seeks to substitute as named plaintiff herein (*i.e.*, Soroof International Company, Ltd; [hereafter "Soroof International"]). The current organization is a holding company with multiple different business units each under separate management and organizational structures, each with separate employee groups and each pursuing different commercial activities than the original Soroof Trading organization that contracted with GEFCS.

GEFCS contracted with Soroof Trading, not Soroof International. There is no "identity of interest" between those two Soroof entities as alleged by Plaintiff. Rather, the evidence shows

1

that they are two distinct parties; that Soroof Trading no longer exists; and that claims arising from the GEFCS/Soroof Trading Distributorship Agreement (hereafter, the "Contract") accordingly cannot be maintained and should be dismissed.

But even assuming for argument that Soroof International might be the proper party to pursue these alleged claims (which Defendants deny), Plaintiff's request to now amend the complaint by adding Soroof International as the alleged real party in interest should still be denied for at least three reasons: (1) the requested amendment is not allowed by the applicable federal rules of civil procedure (FRCP Rules 17, 15 and 16), (2) the request has been too long delayed, and (3) allowing the amendment would unfairly prejudice the Defendants.

## II.   **TIMELINE**

The following timeline of important events is necessary for the determination of Plaintiff's motion to amend.

| | |
|---|---|
| **13 May 1996**: | Soroof Trading is formed through its "Founding Contract" (Exhibit 1 [Rashid II deposition at pp. 16-30] and Exhibit 2 [Rashid II deposition exhibit no. 3]) |
| **6 June 2000**: | Soroof Trading and GEFCS enter the "Contract" (Exhibit 3 [excerpts from GEFCS/Soroof Trading Distributor Agreement]) |
| **17 December 2000**: | Soroof Trading Partners Resolution modifies ownership interests in company (Exhibit 1 [Rashid II deposition at pp. 51-53] and Exhibit 4 [Rashid II deposition exhibit no 7]) |
| **4 September 2001**: | Soroof Trading Partners Resolution changes name of organization to "Soroof International" and "extend(s) its purposes." (Exhibit 1 [Rashid II at pp 60-104] and Exhibit 5 [Rashid deposition exhibit no.9]) |
| **22 February 2010**: | Soroof Trading files Original Complaint identifying the Plaintiff as "Soroof Trading." (Rec. 1) |
| **10 February 2012**: | Scheduling Order deadline for amended pleadings expires. (Rec.110 at p. 28) |

| | |
|---|---|
| **14 February 2012:** | Soroof Trading files first amended complaint identifying the Plaintiff as "Soroof Trading." (Rec. 113) |
| **14 May 2012:** | Soroof Trading files second amended complaint identifying the Plaintiff as "Soroof Trading."(Rec. 141) |
| **May – June 2012:** | Defendants file answers and affirmative defenses to second amended complaint (Rec. 142, 143 and 145) |
| **22 March 2013:** | Scheduling Order deadline for discovery expires. (Rec. 151) |
| **9 May 2013:** | Soroof Trading files motion to amend case caption. (Rec. 175) |
| **31 May 2013:** | Court orders additional discovery regarding September 2001 Partners Resolution (Rec. 191) |
| **24 January 2014:** | Soroof Rule 30(b)(6) deposition by telephone from Abu Dhabi (Exhibit 1) |
| **10 February 2014:** | Soroof files "renewed motion to correct its name in the case caption." (Rec. 231) |

### III.   DISCOVERY HAS CONFIRMED THAT SOROOF TRADING NO LONGER EXISTS AND THAT SOROOF INTERNATIONAL IS A DIFFERENT BUSINESS ORGANIZATION THAN THE ONE THAT CONTRACTED WITH GEFCS IN JUNE 2000.

Plaintiff incorrectly claims that there is an "identity of interest" between Soroof Trading and Soroof International; and that the September 2001 Partners Resolution (Exhibit 5) effected only a nominal change. But the Soroof Partners Resolution terms effected much more than that. The evidence shows that the 2001 Resolution (and the "extended purposes" that it implemented) along with an earlier December 2000 Resolution (Exhibit 4) were fundamental changes in the Soroof business organization, ownership, control, affiliations, and activities. On that score, Soroof described these changes as "a phase of restructuring whereby Soroof International would become a holding company" with "separate business units hav(ing) their own separate organization chart, separate financials and separate structure, management structure." (Exhibit 7, Rashid I at p. 30)

3

The evidence contradicts Plaintiff's claim that the Soroof Trading business group that contracted with GEFCS is the same organization as Soroof International. The evidence confirmed so far through discovery which shows that Soroof Trading no longer exists, and that Soroof International is a different business organization than the former Soroof Trading includes the following points:

(1) Prince Bander himself has testified that Soroof Trading no longer exists. (Exhibit 6, Bander deposition at p. 18)

(2) Prince Bander has further explained that the changes in the Soroof business organization were prompted "because we were doing something other than trade only;" and that the reasons for the changes included "giv(ing) it more broader, you know, business avenues rather than just trading and development." (Exhibit 6, Bander at pp. 17-18). Similarly, Plaintiff has explained that the activities of the organization were "amended to capitalize on market opportunities." (Exhibit 1, Rashid II at p. 66)

(3) Through its corporate representative, Plaintiff has also testified that the Soroof organization had been "…going through a phase of restructuring whereby Soroof International would become a holding company and all the (strategic business units) which I have mentioned earlier, would become -- would be spinoffs, separate business units, have their own separate organization chart, separate financials and separate structure, management structure. (Exhibit 7, Rashid I at p. 30)

(4) Plaintiff has explained the purpose of this restructuring as follows: "The company has grown over the years and we would like to have a holding company and empower the general managers to be decentralized from the head office." (Exhibit 7, Rashid I at p. 30)

(5) The Soroof restructuring process has reached the point where the various Soroof business units currently have different organization charts and separate staff and management structures (Exhibit 1, Rashid II at pp. 69-71). They have different employee groups (Exhibit 1, Rashid II at p. 76), and they "absolutely" engage in different kinds of commercial activities. (Exhibit 1, Rashid II at p. 77)

(6) The different Soroof business units also operate under different commercial registration numbers in Saudi Arabia. Plaintiff has testified that commercial registration numbers are issued by Saudi Arabia authorities "to start the company activities;" that they are "mandatory;" and that "any company commercially registered has a unique number within Saudi Arabia and that company is recognized by its name and number, so the number is unique number for every single entity." (Exhibit 1, Rashid II at pp. 31, 36-37) Significantly, the Soroof testimony contradicts

the statement made in Plaintiff's original motion to change the caption that Soroof Trading "continued carrying on business under the same Saudi commercial registration number" and "continues its operations" under that number (Rec. 175 at pp. 2-3). To the contrary, the Soroof testimony now confirms that each of the different Soroof business units operates under different branch "sub-numbers" and that each branch has "its own unique number." (Exhibit 1 [Rashid II at pp. 71, 111-114] and Exhibit 8 [Rashid II deposition exhibit nos. 5, 11-16]).

(7) The commercial registration certificates and the 2001 Partners Resolution specify commercial activities substantially different from those of the original Soroof Trading entity. *Compare*, Exhibit 9 (Soroof Trading Commercial Registration Certificate) *with* Exhibit 8 (Commercial Registration Certificates for Soroof International and its different business units). While the original Soroof Trading entity had a specified "business line" limited to land development, construction and trading[1] (Exhibit 9), the current Soroof International organization pursues business lines within the commercial industries of aviation, offshore oil and gas production, and military equipment for government tenders. (Exhibit 8 at Bates 001, 003). Further, the various business groups within the Soroof organization (each of which operates under its own unique commercial registration certificate and number) specify additional business lines within the additional industries of computer and internet services (Exhibit 8 at Bates 005), power generation and distribution (Exhibit 8 at Bates 007), water (Exhibit 8 at Bates 009), and retail sales (Exhibit 8 at Bates 011). *See also* Exhibit 1, Rashid II at pp. 62-69 comparing purposes of Soroof Trading before and after 2001 Partners Resolution)

(8) During the same time period that Plaintiff has pursued claims in this Court, Soroof has filed multiple pleadings in other U.S. courts on behalf Soroof business groups that are identified as two different limited liability companies within the Soroof organization. (Exhibit 10 at Bates 001-062) This evidence contradicts Plaintiff's claim in this litigation that Soroof International operates as a single business entity.

Most importantly, the process through which the Soroof organization extended its purposes included fundamental changes to its business structure and activities. Unlike the Soroof Trading organization that contracted with GEFCS and that was engaged "in trade only" (Exhibit 6, Bander at pp. 17-18), the changed organization was engaged in "broader business avenues rather than just trading and development." Id. More specifically, the reason behind the Soroof

---

[1] The complete description of the Soroof Trading business line was "Purchase lands and constructing buildings thereon and investing thereof for the benefit of the company by sell or rent – General contract for building (construction, demolition, repair and restoration) – wholesale trading in cars spare parts and its batteries and supplies – equipment and electrical machines – devices and electrical equipment – distribution agents, commercial agencies. (Exhibit 9)

5

name change was "to give it international exposure and a more international name than to be just a trading and development company." "[T]he vision behind this was to change it from a trading and development only to give it an international exposure and to make it an internationally recognized entity." (Exhibit 1, Rashid II at pp. 62-63) The activities of the company were amended in connection with the name change "to capitalize on market opportunities." (Id. at p. 66).

Soroof Trading provided no notice to GEFCS of these changes in its ownership, organization and business activities as required by its Contract with GEFCS. Notwithstanding the Contract's requirements that Soroof Trading "share promptly relevant information, including but not limited to … legal and regulatory requirements and actions" (Exhibit 3, Contract at p. 8, Section 7.4), and notwithstanding contract terms prohibiting assignment to affiliated Soroof entities (Id. at p. 11, Section 13.1), the changes within the Soroof organization effected through the 2001 Partners Resolution were not disclosed to GEFCS or its members until 2013 during the course of this litigation. (Exhibit 11, Declaration of Frank Scovello) [2] *See also,* Exhibit 1, Rashid II at p. 104 (Soroof does not know if the contents of the 2001 Partners Resolution were ever provided to third parties other than through filings in Saudi Arabia in the Arabic language).

Further, such changes in the Soroof organization's business structure and activities were most significant from the perspective of GEFCS when it contracted with Soroof Trading. Prior to the parties' June 2000 Contract, Soroof Trading was subject to a Distributor Review and Approval Process through which GEFCS determined whether Soroof would be an approved distributor of the fuel cell product. (Exhibit 11, Declaration of Frank Scovello) *See also* Exhibit

---

[2] An earlier Partners Resolution from December 2000 (also after the Soroof Trading/GEFCS Contract) effected a change in Soroof Trading's ownership structure. (Exhibit 1, Rashid II at pp. 51-53 and Exhibit 4, Rashid II deposition exhibit No. 7). Soroof did not notify GEFCS of these organizational changes either. (Exhibit 11, Declaration of Frank Scovello)

6

3 (Contract at p. 17, Section 22.4 (Distributor Review and Approval Process) and p. 13, Section 14.2.5 (Termination for Failure to Satisfy Distributor Review and Approval Process).

Matters regarding a proposed distributor's ownership, business activities, and commercial affiliations were important concerns to GEFCS because distributors of the fuel cell product would be selling a product under the General Electric Company name and logo.  (Exhibit 11) Because the General Electric Company name would accordingly be associated with distributors of the fuel cell product, GEFCS did not want to contract with a business organization whose actions and activities could potentially conflict with the interests of the General Electric Company. Id. GEFCS was also concerned about distributors using the relationship with the GEFCS and the GE brand to suggest a GEFCS or GE relationship with their other business activities unrelated to fuel cell distribution. Id.

By changing its ownership, organizational structure and business pursuits as reflected in its Partners Resolutions, Soroof initiated a process to become an organization different than the one which contracted with GEFCS. Moreover, GEFCS would have viewed the incorporation of Soroof Trading into a larger holding company organization as a prohibited assignment in violation of the Contract. Id. Further, the pursuit of "extended purposes" including commercial activities different than those related to fuel cell distribution, and commercial activities that could potentially conflict with the interests of GEFCS would have triggered a new Distributor Review and Approval Process that would have resulted in a termination of the Contract absent Soroof's exiting from such activities. Id.

In fact, the evidence shows that the potential for conflicts of interest between GEFCS and Soroof Trading as a result of the extended purposes and expanded commercial activities effected through the 2001 Partners Resolution has been realized on at least one occasion. Specifically,

7

Soroof International has contracted with and has filed arbitration claims against a customer of the General Electric Company in connection with its power production business; namely, Electricite de France SA (EDF). Id. *See also* Exhibit 1 (Rashid II at pp. 145-146) and Exhibit 12 (Rashid II deposition exhibit no. 19). Transactions of this sort are among kinds of conflicts of interest that GEFCS worked to avoid through its Distributor Review and Approval Process. Id.[3]

The evidence shows that as a result of the 2001 Partners Resolution, Soroof Trading was effectively merged into a larger business organization or "holding company" that is fundamentally different than the organization that contracted with GEFCS. In circumstances where such a merger takes place, the entity that is merged into the larger organization ceases to exist. Brach v. Levine, No. 3323-12, 2012 WL 2899021, at *3 (N.Y. Sup. Ct. July 16, 2012) ("It has been held that a business corporation that is merged with, and completely absorbed by, another corporation ceases to exist as an independent jural entity, and, therefore, lacks legal capacity to sue." (citation omitted). Moreover, the entity that ceases to exist no longer has the standing or capacity to sue in court. Kiamesha Dev. Corp. v. Guild Props., Inc., 4 N.Y.2d 378, 388-89 (1958) (non-existent entity "cannot . . . acquire rights by contract or otherwise, incur debts or other liabilities either in contract or tort, sue or be sued").

Here, the evidence establishes that Soroof Trading no longer exists. Rather, it has been merged into a larger organization consisting of multiple separate business units with commercial activities different than those of the original Soroof Trading entity. There is no identity of interest between Soroof Trading and Soroof International; and neither Soroof Trading nor Soroof International has standing or proper party status to pursue the claims advanced in this litigation. For these reasons, this lawsuit is appropriately dismissed with prejudice.

---

[3] Notably, Soroof's witness was instructed not to answer a deposition question regarding whether a Soroof joint venture entity offered the same kinds of products or services offered by GE or Plug Power. (Exhibit 1, Rashid II at pp. 126-133)

IV.    **SOROOF IS JUDICIALLY ESTOPPED FROM NOW CLAIMING THAT THE SOROOF BUSINESS ORGANIZATION IS A SINGLE ENTITY.**

This litigation is not the first time that Soroof has made representations in U.S. courts regarding its organizational structure. In 2009, Soroof filed an Original Petition in a Texas state court on behalf of two <u>different</u> Soroof business entities. These filing designations were repeated multiple times in both the Texas state court and the federal court to which the litigation was later removed (and subsequently remanded). *See* Exhibit 10 (excerpts from Soroof Texas litigation filings).

Specifically, Soroof has alleged in these other U.S. courts that "Soroof International Company and Soroof International Limited are <u>both</u> limited liability companies created under the laws of the Kingdom of Saudi Arabia." (<u>Id.</u> at Bates 004, emphasis added) The claims advanced in the Texas litigation are against a different party (Transocean), yet they allege similar breach of contract and misrepresentation claims as the ones alleged here. (<u>Id.</u> at Bates 018-023). But in the Texas litigation, it is made clear in multiple filings that there are at least two separate Soroof business organizations. That representation is the complete opposite of Plaintiff's claims in this litigation that Soroof International is a single business organization that has an "identity of interest" with the former Soroof Trading entity.

The identification of two separately organized business entities has been repeated multiple times throughout the Texas litigation. <u>Id</u>. These pleadings have been filed through the

9

same law firm that represents Plaintiff in this litigation. Id.[4]  And in that litigation, the Texas federal court has already granted relief to both of the Soroof International companies in connection with a motion to remand in their favor. (Exhibit 10 at Bates 056 *et seq.*)

Judicial estoppel is an equitable doctrine  which dictates that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir.2010) (quoting New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). "Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." Id., 595 F.3d at 103 (quoting New Hampshire, 532 U.S. at 750–51, 121 S.Ct. 1808). The third requirement is sometimes couched in terms of "unfair detriment [to] the opposing party" rather than advantage to the party to be estopped. New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808.

Moreover, the United States Court of Appeals for the Second Circuit has held that judicial estoppel applies "to situations where the risk of inconsistent results with its impact on judicial integrity is certain.' " DeRosa, 595 F.3d at 103 (quoting Uzdavines v. Weeks Marine,

---

[4]  Soroof's representative argued in his deposition that the designation of two different Soroof International entities in the Texas litigation must have been an "error" and that said error "will be corrected." (Exhibit 1, Rashid II at pp. 147-149). But this explanation is not reasonable or credible in light of the multiple pleadings (at least twelve of them) in the Texas litigation in which the two separate entities have been identified. (Exhibit 10 at Bates 001, 002, 026, 029, 033, 035, 037, 040, 042, 044, 048, 050, 052 and 055) Indeed, two of the Texas pleadings identifying the two separate Soroof International companies were filed on 29 January 2010 -- less than 30 days before  the filing of Soroof Trading's 22 February 2010 complaint in this litigation. (Id. at Bates 050 and 052). Further, all of the Texas litigation pleadings and papers were filed through the same law firm representing Plaintiff in this litigation. (Id. at Bates 025, *et seq.*) And as of this date (24 February 2014), there is no filing reflected in the on-line Pacer system for the Texas litigation purporting to "correct the error." Rather, it appears that the more likely explanation for the identification of two separate Soroof International entities in the Texas litigation is for some perceived strategic advantage of avoiding removal and/or the effect of a forum selection clause that is at issue in the litigation.(Id. at Bates 044 and 050)

Inc., 418 F.3d 138, 148 (2d Cir.2005)). This latter requirement means that judicial estoppel applies where the earlier tribunal accepted the accuracy of the litigant's statements. *See* Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir.1997).

Importantly, the purpose of judicial estoppel is not to look for, or punish, outright lies, but "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749–50, 121 S.Ct. 1808 (internal citation omitted). And a party puts the integrity of the judicial process at risk when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action. In Re Adelphia Recovery Trust, 634 F.3d 678, 696 (2nd Cir. 2011). Judicial estoppel is concerned not with the repose of individual claims but with the ability of courts to render their decisions based on faithful representations to the courts. In Re Adelphia Recovery Trust, 634 F.3d at 697.

Here, the requirements for the application of judicial estoppel are all satisfied. In the Texas litigation, Plaintiff has maintained a "clearly inconsistent" position than it is taking in this case regarding its organizational structure. In the Texas litigation, Plaintiff has represented in numerous filings that there are at least two distinct limited liability companies in the Soroof International organization. Yet in this litigation, Soroof claims that it is a single business organization having "identity of interest" with its former business unit (Soroof Trading).

Further, the Texas court has accepted the accuracy of the Plaintiff's statement in the litigation regarding its organizational structure and has rendered an order in favor of both organizations remanding the claims to the State court where they were originally filed. (Exhibit 10 at Bates 056 *et seq.*) Finally, Plaintiff would derive an unfair advantage if it is allowed to

adopt a different position in this litigation based on its alleged status as a single entity having identity of interest with the former Soroof Trading.

Under the law of judicial estoppel, Plaintiff cannot be permitted to take the position in this litigation that Soroof International is a single business entity with "identity of interest" when it has taken the precisely opposite position in other U.S courts. Accordingly, Plaintiff's motion to amend should be denied, and these claims should be dismissed.

## V. EVEN IF SOROOF INTERNATIONAL IS THE PROPER PARTY TO ASSERT CLAIMS UNDER THE GEFCS/SOROOF TRADING CONTRACT, PLAINTIFF'S MOTION TO AMEND SHOULD STILL BE DENIED AND THE CLAIMS SHOULD BE DISMISSED PURSUANT TO FRCP RULE 17.

### A. Rule 17 Requirements

FRCP Rule 17 requires that "[e]very action shall be prosecuted in the name of the real party in interest." Here, the parties disagree on whether Soroof Trading or Soroof International (or either of them) is (or ever was) the real party in interest on these alleged claims. Plaintiff claims that there is a "identity of interest" between the two business groups; but Defendants maintain that Soroof Trading no longer exists. And Defendants further maintain that claims arising from the GEFCS/Soroof Trading Distributorship Agreement are accordingly not maintainable by either Soroof Trading or Soroof International.

Yet it is clear that even if Plaintiff's argument is accepted (*i.e.* that Soroof International might be the proper party for these claims), then Plaintiff's original complaint in this litigation was filed in clear and direct violation of Rule 17's mandate. By the time the original complaint herein was filed in February 2010, the change in the business organization and extended company purposes had occurred more than 8 years earlier with the September 2001 Partners Resolution. Yet Plaintiff filed the suit in the name of Soroof Trading even though Plaintiff knew that the organization's name and purposes had been altered in 2001.

And even assuming that Soroof International may be the proper party in interest to advance claims arising out of the GEFCS/Soroof Trading Contract (which Defendants deny), the pending motion to effectively join Soroof International as party plaintiff must still be denied because the applicable rules of federal procedure bar Plaintiff's current motion. Regardless of whether this Court applies the pleading amendment standards of Rule 17 (substitution of parties), Rule 15 (amendment by leave of court) or Rule 16 (amendment outside of scheduling order deadlines), it must be concluded that Plaintiff's proposed amendment should be denied as too long delayed, without explanation or excuse for failing to seek amendment earlier, and unfairly prejudicial to the Defendants.

### B.    Substitution of Party Plaintiffs Is Not Available Under FRCP 17(a)

Even assuming that Soroof International is the real party in interest, it is still inappropriate to allow Soroof International to substitute itself as the party plaintiff under the circumstances.

Rule 17(a) provides the standard to determine whether the Court should allow the substitution of one plaintiff for another.

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

*Id.*

Despite this allowance for substitution, courts hold that substitution should not be allowed in circumstances where (1) factual allegations regarding the events or participants are changed, **or** (2) the movant cannot establish that the failure to bring the suit in the name of the new plaintiff was because it was difficult to identify the party or because of an understandable

13

mistake, **or** (3) the movant has failed to seek the substitution within a reasonable time after objection. Any of these circumstances standing alone warrants the denial of substitution. Here, all three of the circumstances precluding substitution apply.

### (1) Plaintiff's Allegations Regarding Events and Participants Have Changed.

The substitution of plaintiffs under Rule 17(a) should be allowed "only when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997). *See also*, Lee v. Marvel Enterprises, Inc., 765 F. Supp. 2d 440, 453 (S.D.N.Y. 2011) (district court "retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of the incorrect party").

Here, Plaintiff's proposed substitution of Soroof International in the place of Soroof Trading injects factual and legal issues concerning whether Soroof International is a different organization than the one that contracted with GEFCS, whether Soroof International is authorized by contract or law to advance these claims, whether the substitution of Soroof International as party plaintiff would relate back to the original complaint filing date for purposes of the statute of limitations, and related matters. In such circumstances, Plaintiff's motion to amend should be denied. Lee, 765 F. Supp. 2d 440 at 453 (S.D.N.Y. 2011) (refusing to allow amendment of complaint and substitution of party when the proposed amended complaint presents different claims); Espinosa v. Delgado Travel Agency, Inc., No. 05 -6917, 2006 WL 2792689, at *4 (S.D.N.Y. Sept. 27, 2006) (denying motion to amend complaint and add plaintiffs where amended pleading sought to "alter[ ] the original complaint's factual allegations as to both events and participants."); Engines Southwest, Inc. v. Kohler Co., No. 03-1460, 2006 WL 1896071, at *4 (W.D. La. July 7, 2006) (denying Rule 17(a) relief where "the substitution

14

sought in this case is not merely a formal name changes seeking to make a technical correction in the name of a corporation. The substitution also alters the original complaint's factual allegations as to the participants ..."); Land Mine Enters., Inc. v. Sylvester Builders, Inc., 74 F.Supp.2d 401, 406 (S.D.N.Y.1999) ("Land Mine's reliance upon Rule 17(a) is misplaced, for Land Mine seeks not only to change the formal designation of the plaintiff in the complaint but also to amend the complaint to add new factual allegations about events and participants never mentioned in the complaint.").

> **(2) Plaintiff has not provided a justifiable explanation why this suit was not originally brought in the name of Soroof International and has not established that the failure to do so was because of difficulty in identifying the proper party or understandable mistake.**

Courts also hold that substitution under Rule 17(a) should not be allowed where the determination of the allegedly proper party to bring the action was not difficult and where no excusable mistake was made. In such circumstances, the last sentence of Rule 17(a) is not applicable and the action should be dismissed rather than allowing the substitution of the alleged real party in interest. This rule derives from the Advisory Committee's notes with respect to the last sentence of Rule 17(a):

> Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed.... The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.

Fed.R.Civ.P. 17(a). Relying on this language, courts that have addressed this issue have held this provision to be applicable only when the improper party brought suit as a result of an honest mistake or because the determination of the proper party was difficult. *See, e.g.,* Wieburg v.GTE Southwest, Inc., 272 F.3d 302, 308 (5th Cir.2001) ("In accordance with the Advisory Committee's note, most courts have interpreted the last sentence of Rule 17(a) as being

15

applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party ... is difficult."); Intown Properties Mgmt. Inc. v. Wheaton Van Lines, Inc., 271 F.3d 164, 171 (4th Cir.2001) (finding that Rule 17(a) was inapplicable because the "mistake had not been 'understandable' "); Advanced Magnetics, 106 F.3d at 20 (district court retains discretion to dismiss an action "where there was no semblance of any reasonable basis for the naming of an incorrect party"); Lans v. Gateway 2000, Inc., 84 F.Supp.2d 112, 120 (D.D.C.1999) ("it is appropriate to liberally grant leave to substitute a real party in interest when there has been an honest mistake in choosing the nominal plaintiff, meaning that determination of the proper party was somehow difficult at the time of the filing of the suit, or that the mistake is otherwise understandable."), aff'd, 252 F.3d 1320 (Fed.Cir.2001); Feist v. Consolidated Freightways Corp., 100 F.Supp.2d 273, 276 (E.D.Pa.1999) ("Rule 17(a) should not be applied blindly to permit substitution of the real party in interest in every case. In order to substitute the trustee as the real party in interest, Plaintiff must first establish that when he brought this action in his own name, he did so as the result of an honest and understandable mistake.")

Here, Plaintiff cannot establish that the "honest mistake" test is satisfied in the situation at hand. It is undisputed that the 2001 Partners Resolution that effected the change in name and expanded purposes of the Soroof organization occurred more than eight years before the Plaintiff filed the lawsuit. This is clearly not a case where determination of the alleged proper party was somehow difficult. Indeed, in 2009 (less than 5 months before this lawsuit was filed in 2010), Soroof initiated similar litigation claims against a third party in Texas courts (see Section IV above); and in that litigation, the party plaintiffs were identified as Soroof International business entities. Here, Plaintiff cannot argue that any honest or understandable mistake resulted from any

16

difficulty in determining the alleged proper party for this lawsuit given its contrary filings in another lawsuit at the same time these claims were pursued. (*See,* Footnote 3, *supra*)

Plaintiff's apparent reasons for waiting so many years -- over twelve years after the name change occurred – before requesting to add Soroof International as the alleged real party in interest here do not disclose an honest or understandable mistake. To the contrary, Plaintiff chose to sue in Soroof Trading's name knowing that Soroof International was the alleged owner of the asserted claims and knowing that the Soroof Trading business group had changed both organizationally and in name in September 2001 (more than eight years earlier). In short, Plaintiff made a tactical and strategic decision to contravene Rule 17 by suing in the name of a party that it knew had changed in name and in organization more than eight years before.

Plaintiff still has not offered explanation of why the suit was originally filed in the name of Soroof Trading; but the testimony of Soroof's representative indicates that the decision to do so was a tactical and strategic one: "Had we filed in the name of Soroof International, you would have said that the agreement is between Soroof Power – Soroof Trading and this, so I don't know why it was so." (Exhibit 1, Rashid II at p. 150).

Amendment under Rule 17 should not be allowed in circumstances like those presented here. *See,* Esposito v. U.S., 368 F.3d 1271, 1276 (10th Cir.2004) ("our cases focus primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and on whether the defendant was prejudiced thereby"); Lans, 84 F.Supp.2d at 120 ("'justice would not be served if the plaintiffs were rewarded for their failures, oversights and misrepresentations by permitting an amendment of their pleadings ....'"), *quoting* Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc., 164 F.R.D. 1, 3 (E.D.N.Y.1995); Metal Forming Technologies, Inc. v. Marsh & McLellan Co., 224 FRD 431, 437 (S.D. Ind. 2004)

17

("sleight of hand" in advancing claims on behalf of plaintiff that was not real party in interest and attempting to substitute real party in interest at later date "should not be rewarded").

### (3) **Plaintiff failed to seek substitution within a reasonable time after Defendants' objection.**

Courts also hold that substitution under Rule 17(a) should not be allowed where the movant does not request the substitution within a reasonable time after objection. Fed.R.Civ.P. 17(a) (allowing for a reasonable time "after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest"). Here, Defendants filed their pleadings responsive to Plaintiff's Second Amended Complaint in May and June of 2012. (Rec. 142, 143 and 145) General Electric Company's nineteenth defense in its Answer and Affirmative Defenses stated that "Plaintiff is without standing or is otherwise not a proper party to advance the claims alleged in the Second Amended Complaint." (Rec. 145 at p. 5) GE Microgen raised the same defense (Rec. at 142 at p. 5). And Plug Power's Answer and Affirmative Defenses incorporated by reference "each and every affirmative defense pleaded by any similar situated defendants herein." (Rec. 143 at p. 18) Despite this defense, Plaintiff failed to take advantage of Rule 17(a)'s savings clause by seeking the ratification, joinder or substitution of Soroof International.

Plaintiff took more than eleven months after Defendants objected to Plaintiff's standing and proper party capacity to move for a substitution of parties. Moreover, Plaintiff waited until discovery was concluded to make this request notwithstanding having already had multiple opportunities to amend its complaint over a three year period, notwithstanding having amended the complaint twice during the course of the litigation, and notwithstanding knowing of the facts upon which the proposed substitution was based since 2001. This is an unreasonable amount of time, and denial of the proposed substitution as well as dismissal of the claims is appropriate.

18

*See,* Weissman v. Weener, 12 F.3d 84, 87 (7th Cir.1993) (affirming dismissal after plaintiff failed to remedy real party in interest defect within reasonable time); Wieburg v. GTE Southwest, Inc., 2003 WL 21417074, at *2 (5th Cir.2003) ("Seven months is more than reasonable" time to seek substitution under Rule 17) (unpublished); Guynn v. Potter, 2002 WL 243626, at *6 (S.D.Ind.2002) (dismissal appropriate after plaintiff failed to join or substitute trustee within reasonable time).

## VI.   DEFENDANTS WILL BE UNFAIRLY PREJUDICED IF THE REQUESTED SUBSTITUTION IS ALLOWED.

Importantly, prejudice to the opposing party is <u>not</u> dispositive of or required for the denial of a Rule 17 substitution where no "honest mistake" has been shown or where the plaintiff failed to substitute the real party in interest within a reasonable time after being notified of the potential road block. Metal Forming Technologies, Inc. v. Marsh & McLellan Co., 224 FRD 431, 438 (S.D. Ind. 2004); Intown Properties Mgmt. Inc. v. Wheaton Van Lines, Inc., 271 F.3d 164, 170 (4th Cir.2001) ("Rule 17 is 'intended to insure against forfeiture and injustice' *in cases where* 'an honest mistake has been made in choosing the party in whose name the action is to be filed.") (emphasis added). On these bases alone, Plaintiff's pending motion should be denied regardless of its prejudiced effect on Defendants.

But here, the prejudice to the Defendants is obvious and substantial. None of the Plaintiff's complaints informed the Defendants that a Saudi Arabian holding company would claim to be the party that had acquired the alleged claims. Nor did the complaints alert the Defendants that there would be asserted a Partners Resolution which had the alleged effect under Saudi Arabia law of allowing the holding company to assert claims against the Defendants. Nor were the Defendants notified in the complaints that the transactions through which the holding company was created had occurred years before the complaints were filed. Nor were the

Defendants notified that transactions incident to the so-called name change would require the development of defenses to the claims based on Contract prohibitions against assignments, Contract requirements that relevant information be promptly shared, and Contract terms related to the qualification of distributors.

If the proposed pleading amendment is allowed, the Defendants will also be forced to add to the burden of their defense investigation into (1) the legal effects of the Partners Resolution under Saudi Arabia law; (2) the details of the Soroof organization's business activities as they relate to contractual prohibitions against assignments, terms related to the qualification of distributors, and requirements for the prompt sharing of information; (3) whether the claims of Soroof International relate back to the filing date of the original complaint for purposes of the statute of limitations. The unfair prejudice to the Defendants that has resulted from Plaintiff's belated disclosures and litigation actions is substantial, and it warrants the dismissal of these claims.

## VII.   PLAINTIFF'S MOTION SHOULD ALSO BE DENIED PURSUANT TO FRCP RULES 15 AND 16.

Under FRCP Rule 15(a), once a defendant has answered, a plaintiff may amend the complaint "only by leave of the court or by written consent of the adverse party." Although Rule 15(a) directs that leave to amend be granted freely when justice so requires, leave to amend is by no means automatic. Southmark Corp. v. Schulte Roth & Zabel, 88 F.3d 311, 317 (5th Cir. 1996). Specifically, leave to amend is inappropriate where there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962).   Further, where a Scheduling Order deadline for pleading amendment has

long passed as in this litigation, FRCP 16 adds the additional requirement that a Plaintiff show "good cause" for not seeking amendment before the deadline.   FRCP Rule 16(b) (4).  *See also*, Scheduling Order (Rec. 19) (originally setting a 31 August 2010 application deadline to amend pleadings or join parties and permitting adjournment of deadlines only "in the court's discretion upon good cause as shown in a written application signed by both counsel and counsel's client and served upon all parties") and Memorandum Opinion and Order (Rec. 110) (extending the 31 August 2010 deadline to 10 February 2012).

Here, in addition to the standards of Rule 17, both the standards of FRCP Rule 15 and Rule 16 require that Plaintiff's current motion be denied. Plaintiff has not shown good cause (or even any cause at all) why the proposed amendment was not earlier sought; and the circumstance presented here establish  undue delay, improper or dilatory motive on the part of the Plaintiff; and undue prejudice to Defendants mandate that Plaintiff's request to file yet another pleading amendment at this stage of these proceedings should be denied. Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962).

Typically, denial of a proposed amendment is appropriate where there is an unexplained delay in requesting the amendment. *See, e.g.* Southmark, *supra* at 316 ("unexplained delay" warrants denial of motion to amend); Nilsen v. City of Moss Point, 621 F.2d 117 (5th Cir. 1980) (same); Freeman v. Continental Jenco, 381 F.2d 459, 469 (5th Cir. 1967) (holding that "lack of diligence is a reason for refusing to permit amendment," and that such a lack of diligence requires the party seeking amendment to show "some valid reason for his neglect and delay"). *Accord*, Conroy Datsun Ltd. v. Nissan Motor Corp., 506 F.Supp. 1051, 1054 (N.D. Ill. 1980) (ruling that it was "incumbent upon the movant to show that the information upon which the new claim is based was unknown or unavailable prior to the filing of the motion").

[L]eave may be withheld if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them."); 3 Moore, *Moore's Federal Practice* ¶ 15.08[4] ("The most common reasons for denying leave to amend are that the amendment will result in undue prejudice to the other party, is unduly delayed, is offered in bad faith or for a dilatory purpose, or that the party has had sufficient opportunity to state a claim and has failed.").

* * *

*Barrows v. Forest Lab., Inc.,* 742 F.2d 54 (2d Cir.1984) (amendment denied where plaintiffs failed to "explain why the new theories could not have been presented in the original complaint as alternatives"); *Bouzo v. Citibank, N.A.,* 88 Civ. 1446, 1995 WL 144825 at *7-8 (S.D.N.Y. March 31, 1995) (court declines to permit plaintiff to amend breach of contract complaint to also raise claims of fraud and negligent supervision, stating that "there does not appear to be any reason why these claims could not have been raised earlier," and additional discovery would be needed on new claims), *vacated on other grounds,* 96 F.3d 51 (2d Cir.1996).

Berman v. Parco, 986 F.Supp. 195, 217-218 (S.D.N.Y. 1997).

Here, Plaintiff does not (and cannot) allege that "newly discovered" information warrants amendment and substitution of Soroof International as the party plaintiff. There is nothing to suggest that Plaintiff was unaware that its own Partners Resolution had occurred almost a decade before Plaintiff filed this suit. Plaintiff has known for years the alleged information that it now claims to warrant yet another complaint amendment. Plaintiff has offered no justifiable explanation for why it has waited until many years after the transactions at issue to request the proposed amendment. Indeed, Plaintiff apparently has no explanation at all based on its corporate representative's testimony. On that score, the representative was prompted to provide an "I don't know" answer to the question in his deposition asking why it was not until 2013 that Plaintiff asked to amend the pleadings in the litigation. (Rashid II at pp. 150-151)

Absent a compelling reason explaining the delay in requesting the proposed amendment, Plaintiff's motion to amend should be denied. Berman, *supra.* If a party knew of the alleged facts on which the proposed amendment is based (as Plaintiff's Texas litigation filings[Exhibit 10] show

22

to be the case), but delays asserting the necessary allegations, leave to amend should be denied. *See generally,* 6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u>: Civil 2d §1488 at p. 688 *et seq.* It is appropriate to deny leave to amend in such situations because

> a pleader who purposefully delays asserting the matter contained in the amendment has acted contrary to both the general spirit of the federal rules and the liberal amendment policy of rule 15(a), which are designed to avoid the old "sporting theory of justice" and to facilitate decisions on the merits. By failing to introduce the matter contained in the proposed amendment at as early a stage in the litigation as possible, the pleader has demonstrated bad faith in not apprising his opponent of his true position in the action.

*Id* at p. 92. *Accord,* <u>Nilsen</u>, *supra;* <u>Freeman</u>, *supra.*

## VIII. <u>THE UNFAIR PREJUDICE TO DEFENDANTS THE PROPOSED AMENDMENT WOULD CAUSE HAS BEEN COMPOUNDED BY PLAINTIFF'S FAILURE TO PROVIDE COMPLETE DISCOVERY.</u>

The additional burdens for the defense of these claims if the amendment is allowed has not been appreciably simplified by the discovery that Plaintiff has produced (or, more precisely, not produced) to date. Notwithstanding an agreement approved and ordered by this Court (Rec. 192), Plaintiff's discovery deficiencies include the following.

(1) <u>Failure to provide discovery on compliance with Saudi Arabia law:</u> Plaintiff has alleged that "its name was changed through the proper procedures under Saudi law." (Rec. 175 at p. 2) Yet in response to questions in a deposition noticed to cover Plaintiff's allegations regarding Saudi law (Exhibit 13 at item 31, Rashid II Deposition Notice), deposition questions regarding the procedures and requirements of Saudi law concerning business entity filings and related compliance were met with "I don't know" answers. (Exhibit 1, Rashid II at pp. 10-11, 18-24, 31, 40-53, 100) As the evidence currently stands, Plaintiff cannot establish that it did, in fact, follow the proper procedures under Saudi law incident to its organizational changes. Further, Plaintiff's failure to provide the requested discovery compromises Defendants' ability to inquire into other areas that may be relevant to the claims.

(2) <u>Failure to provide discovery on business activities after 2001 Partners Resolution:</u> The Soroof witness was asked multiple questions to determine the details of the business activities that the Soroof organization engaged in after the 2001 Partners Resolution. *See* Exhibit 13 at item 23 (notice of deposition topic regarding Soroof business operations after 2001). Again, the witness disclaimed Soroof knowledge of relevant matters. The witness testified that although the Soroof organization was structured in such a way that it was able to pursue activities in the various industries identified in the company

23

commercial registration certificates, he could not confirm the extent to which those activities were in fact pursued. (Exhibit 1, Rashid II at pp. 77-90, 92-93, 99-100, 117-120). Indeed, the witness could not confirm whether the Soroof organization established any limited liability companies after the 1996 Founding Contract (Exhibit 1, Rashid II at pp. 28-30); whether any contract in the name of Soroof Trading was made after June 2001 (Id. at pp. 73-74) (*see also* Exhibit 13 at item 24); whether the different Soroof business units ever contracted with each other (Id. at pp. 74-75); or whether particular Soroof business units existed before the 2001 Partners Resolution (Id. at pp. 106-107) Further, the witness was instructed not to answer a question to determine whether a joint venture that exists between Soroof International and an oil and gas company out of Italy (Soroof Fiorentini KSA) offers prducts or services in Saudi Arabia that are similar to products or services offered by GE or Plug Power (Id. at pp. 125-134). As the evidence currently stands, Soroof's position is that it "does not know" the full extent of its business activities after the 2001 Partners Resolution.

(3) <u>Failure to produce, identify and/or translate relevant documents</u>: The discovery has also been marked by Plaintiff's failure to produce relevant documents including (a) "articles of association" and "annexes" and "resolutions" (Exhibit 1, Rashid II at pp. 34-35, 55-56); and (b) commercial registration certificates from the 1998-2012 time period (Id. at 42-44). The Plaintiff has also failed to confirm whether audit reports prior to 2001 were ever prepared for Soroof Trading (Id. at pp. 154-155); and whether Soroof Trading or Soroof International made any public filings in the U.S. (Id. at pp. 157-158). The discovery failures also include production of documents that are undated and/or whose dates or translations could not be confirmed. (Id. at pp. 31-34).

After requiring Defendants to spend significant time and to incur substantial fees and expense in organizing and pursuing the deposition of Plaintiff's representative (including thousands of dollars in court reporter fees for the telephone deposition venue in Abu Dhabi), Plaintiff has still not provided complete discovery, notwithstanding their agreement and this Court's order to do so. These circumstances stand as additional reasons for this Court to deny Plaintiff motion to amend and to dismiss these claims.

## IX. <u>CONCLUSION</u>

More than nine years after effecting changes to the name and the structure of its organization, and long after all applicable litigation deadlines have passed, and without providing any justification for the delay in making their request, Plaintiff is asking the Court to alter these claims in clear violation of the applicable rules of civil procedure. Further, Plaintiff's

unexplained delay stands as additional grounds to deny Plaintiff's motion and to dismiss these claims. And although prejudice is not required under the circumstances presented to deny Plaintiff's motion, the unfair prejudice that would be caused to the Defendants by allowing the amendment is significant. For all of these reasons too Plaintiff's motion should be denied and the claims should be dismissed. Each of these reasons standing alone requires that Plaintiff's motion be denied. Collectively, they mandate denial of the motion and the dismissal of the claims.

ACCORDINGLY, Defendants respectfully request that Plaintiff's motion to amend (Rec. 231) be denied, that the claims made against the Defendants be dismissed, and that Defendants be awarded such other and further relief as may be appropriate.

Dated: Covington, LA
       24 February 2014

Respectfully submitted,

**DAIGLE FISSE & KESSENICH, PLC**

*/s/ Michael D. Fisse*

Michael D. Fisse (New York Attorney Registration Number 5023346)
Jon A. Van Steenis (*Pro Hac Vice*)
John M. Dubreuil (*Pro Hac Vice*)
P. O. Box 5350
Covington, LA 70434-5350
Telephone:   985.871.0800
Facsimile:   985.871.0899
E-mail: mfisse@daiglefisse.com
       jvansteenis@daiglefisse.com
       jdubreuil@daiglefisse.com

Counsel for Defendants,
GE MICROGEN, INC. and
GENERAL ELECTRIC COMPANY

**GOODWIN PROCTOR LLP**

*/s/ Dahlia S. Fetouh*

Dahlia S. Fetouh (*Pro Hac Vice*)
Abigail K. Hemani (AH 2071)
Lisa M. LoGerfo (*Pro Hac Vice*)
Lauren S. Kupersmith (*Pro Hac Vice*)
53 State Street
Boston, MA 02109
Telephone:   617.570.1000
Facsimile:   617.523.1231
E-mail: dfetouh@goodwinprocter.com
       ahemani@goodwinprocter.com
       llogerfo@goodwinprocter.com
       lkupersmith@goodwinprocter.com

Counsel for Defendant,
PLUG POWER, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MEMORANDUM IN OPPOSITION OF DEFENDANTS GE MICROGEN, INC., GENERAL ELECTRIC COMPANY AND PLUG POWER, INC. TO PLAINTIFF'S "RENWED MOTION TO CORRECT ITS NAME IN THE CASE CAPTION"** was filed on this 24th day of February, 2014, with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Haig V. Kalbian, Esq.
Aaron W. Knights, Esq.
KALBIAN HAGERTY, LLP
888 17th Street, NW, Suite 1000
Washington, DC 20006
E-mail: hkalbian@kalbianhagerty.com
        aknights@kalbianhagerty.com
**COUNSEL FOR SOROOF TRADING
DEVELOPMENT COMPANY, LTD.**

Dahlia S. Fetouh, Esq.
Abigail K. Hermani, Esq.
Lauren S. Kupersmith, Esq.
Lisa M. LoGerfo, Esq.
GOODWIN PROCTER
53 State Street
Boston, MA 02109
E-mail: dfetouh@goodwinprocter.com
        lkupersmith@goodwinprocter.com
        llogerfo@goodwinprocter.com
        ahemani@goodwinprocter.com
**COUNSEL FOR PLUG POWER, INC.**

/s/ Michael D. Fisse
Michael D. Fisse

26