```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
SOROOF TRADING DEVELOPMENT        : 10 Civ. 1391 (LGS) (JCF)
COMPANY, LTD.,                     :
                                   :          MEMORANDUM
              Plaintiff,           :          AND   ORDER
                                   :
     - against -                   :
                                   :
GE MICROGEN, INC., PLUG POWER,     :
INC., and GENERAL ELECTRIC COMPANY,:
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This is an action for breach of contract and misrepresentation against defendants GE Microgen, Inc. and Plug Power, Inc., members of the now-defunct GE Fuel Cell Systems, LLC ("GEFCS"), and General Electric Company.  Plaintiff Soroof Trading Development Company, Ltd. ("Soroof Trading") has renewed its motion for leave to amend the caption to reflect the name under which it is currently operating, Soroof International Company, Ltd. ("Soroof International").  The motion is granted.

Background

The factual background of this dispute is set forth in my May 11, 2012, Memorandum and Order.  Soroof Trading Development Co. v. GE Microgen, Inc., 283 F.R.D. 142 (S.D.N.Y. 2012); see also Soroof Trading Development Co. v. GE Fuel Cell Systems, LLC, No. 10 Civ. 1391, 2013 WL 1286078 (S.D.N.Y. March 28, 2013); Soroof Trading Development Co. v. GE Fuel Cell Systems, LLC, No. 10 Civ. 1391, 2012 WL 6554862 (S.D.N.Y. Dec. 13, 2012).  I will summarize it briefly here, with necessary additions.

1

The plaintiff company was formed in 1996 in the Kingdom of Saudi Arabia under the name Soroof Trading Development Company, Ltd. (English Translation of Founding Contract of Saroof Trading Development Co., Ltd. (Limited Liability Company) dated May 13, 1996 ("Founding Contract"), attached as part of Exh. 1 to Declaration of Aaron W. Knights dated Feb. 10, 2014 ("1st Knights Decl."), at 2),[1] and it registered with the Ministry of Commerce and Industry in 1998 (English Translation of Company Registration Certificate dated March 17, 1998 ("1998 Registration"), attached as part of Exh. 2 to 1st Knights Decl.).  In June 2000, GEFCS and the plaintiff entered into an agreement under which the plaintiff would obtain the right to distribute GEFCS-produced fuel cells in Saudi Arabia in exchange for a $1 million distribution fee.  (Distributor Agreement Between GE Fuel Cell Systems, LLC, and Soroof Trading Development Company Ltd. dated June 6, 2000 ("Distribution Agreement"), attached as Exh. 1 to Second Amended Complaint ("SAC"), §§ 1, 2.3, 6.4).  At that time, the plaintiff's name was Soroof Trading Development Company, Ltd., and this is reflected in the agreement.  (Distribution Agreement).  In 2000, the company's

---

[1] The English translation of the Founding Contract identifies the company as "Saroof" rather than "Soroof."  (Founding Contract at 2).  Neither party asserts that this is a material difference, and it is likely a function of the transliteration of the name from Arabic to English.  Because the parties use the spelling "Soroof," I will do the same.

In addition, this document, like many of the supporting documents submitted in connection with this application, is not individually paginated.  For such unpaginated materials, I will use the page numbers generated by the court's Case Management/Electronic Case Filing system.

ownership expanded from two members of the Saudi royal family to seven. (English Translation of The Partners Resolution Concerning the Ammendment [sic] of Some Items of the Founding Contract of Soroof Trading Development Company Ltd. for the Enry [sic] of New Partners dated Dec. 17, 2000 ("2000 Partners Resolution"), attached as part of Exh. 4 to Declaration of Michael D. Fisse dated Feb. 24, 2014 ("Fisse Decl."), at 3). In 2001, Soroof Trading changed its name to Soroof International Company, Ltd.,[2] and "extend[ed] its purposes" to include electrical works contracting as well as wholesale and retail trading, among other things. (English Translation of The Partners Resolution Concerning the Ammendment [sic] of Some Items of the Founding Contract of Soroof Trading Development Company Ltd. Dated Sept. 4, 2001 ("2001 Partners Resolution"), attached as part of Exh. 4 to 1st Knights Decl., at 45).

The plaintiff filed its original complaint, identifying itself as Soroof Trading Development Company Ltd., in February 2010. (Complaint, ¶ 4). The first amended complaint, identifying the plaintiff identically, was filed in February 2012. (First Amended Complaint, ¶ 4). In March 2012, the plaintiff requested permission

---

[2] The plaintiff notes that certain translated documents identify the company variously as, for example, "Soroof International LLC," "Soroof International, Ltd.," or "Soroof International Company, Ltd." (Plaintiff's Memorandum of Law in Support of Renewed Motion to Correct its Name in the Case Caption ("Pl. Memo.") at 12). It asserts that this is merely a result of "issues relating to translation" and that the name "appears identically in every [] Arabic company document." (Pl. Memo. at 11-12 (emphasis omitted)). The defendants do not appear to contend otherwise.

to file a second amended complaint, which I granted. Soroof
Trading, 283 F.R.D. at 153. The second amended complaint again
identified the plaintiff as Soroof Trading Development Company Ltd.
(SAC, ¶ 4). Approximately one year after filing the now-operative
complaint, the plaintiff sought to amend the case caption to
identify itself as Soroof International Company, Ltd. I denied the
motion without prejudice and ordered additional discovery "for the
limited purpose of obtaining information related to the name
change." Soroof Trading Development Co. v. GE Fuel Cell Systems,
LLC, No. 10 Civ. 1391, 2013 WL 2398888, at *2 (S.D.N.Y. May 31,
2013). That discovery was stayed pending the resolution of the
parties' summary judgment motions. (Memorandum Endorsement dated
June 7, 2013, at 2). After the motions were denied, the ordered
discovery proceeded, culminating in depositions of Soroof
representatives pursuant to Rule 30(b)(6) of the Federal Rules of
Civil Procedure.

Discussion

The defendants offer a series of reasons for denying the
plaintiff's application. First, they contend that the change
effected through the 2001 Partners Resolution was more than merely
nominal; rather it altered the business so fundamentally that
Soroof Trading ceased to exist or merged into Soroof International.
(Memorandum in Opposition of Defendants GE Microgen, Inc., General
Electric Company and Plug Power, Inc. to Plaintiff's "Renewed
Motion to Correct its Name in the Case Caption" ("Def. Memo.") at
3-8). Second, they argue that the plaintiff should be judicially

estopped from claiming that Soroof Trading and Soroof International are a single entity.  (Def. Memo. at 9-12).  Third, the defendants assert that, even if Soroof International is the proper party to assert the claims at issue in this action, the motion to amend should be denied pursuant to Rule 17 of the Federal Rules of Civil Procedure.  (Def. Memo. at 12-19).  Fourth, they argue that Rules 15(a) and 16(b)(4) also mandate denial of the motion.  (Def. Memo. at 20-23).  Finally, they claim to have been prejudiced by the plaintiff's failure to  produce necessary discovery.  (Def. Memo. at 23-24).  Each argument fails.

    A.   <u>2001 Partners Resolution</u>

The evidence shows that the 2001 Partners Resolution was not the momentous change the defendants allege it to be.  On its face, the resolution accomplishes two things: it changes the name of Soroof Trading to Soroof International, and it allows the company to engage in certain additional activities.  (2001 Partners Resolution at 45-46).  As the plaintiff points out, Soroof Trading was not dissolved -- Soroof International is, like Soroof Trading, a Saudi limited liability company operating under the existing Company Registration ("CR") Number with the same founding date (1998 Registration; 2001 Partners Resolution at 44; English Translation of Company Registration Certificate dated Oct. 8, 2012, attached as part of Exh. 5 to 1st Knights Decl.); the company's assets were not dissipated or transferred (Auditors' Report and Financial Statements for the Yer [sic] Ended December 31, 2001, attached as part of Exh. 7 to 1st Knights Decl., at 8; Auditors'

Report and Financial Statements for the Yer [sic] Ended December 31, 2002, attached as part of Exh. 7 to 1st Knights Decl., at 14); indeed, the 2001 Partners Resolution explicitly leaves all provisions of the Founding Contract intact, with the exception of the name and the second article defining the company's purposes (2001 Partners Resolution at 47).

The testimony from the company's representatives confirms this. In October 2012, corporate designee Jim Jackson testified that Soroof International and Soroof Trading are "the same company." (Excerpt of Deposition of Jim Jackson dated Oct. 18, 2012 ("Jackson Dep."), attached as Exh. 8 to 1st Knights Decl., at 7). In February 2013, corporate designee Tahir Rashid testified similarly, asserting that the change from Soroof Trading to Soroof International was merely a name change. (Excerpt from Deposition of Tahir Rashid dated Feb. 25, 2013 ("Pl. Excerpt 2013 Rashid Dep."), attached as Exh. 9 to 1st Knights Decl., at 171). Mr. Rashid reaffirmed this fact in testimony from January 2014:

> Q: What is Soroof International LLC in relation to Soroof Trading Development Ltd?
>
> A: It's the same company. Soroof International LLC is the same company as Soroof Trading. It was a name change from this company to Soroof International LLC.
>
> . . .
>
> Q: If I understood you[] . . . correctly, there is no separate founding contract for Soroof International LLC, rather the same founding contract applies to both entities; correct?
>
> . . .

      A: . . . . There are no two entities. . . . The number of the commercial registration remains the same . . . .

      . . .

      A: . . . [T]he main company is Soroof International and this . . . was initially Soroof Trading Development, then we took the name change and it became Soroof International . . . .

(Deposition of Tahir Rashid dated January 24, 2014 ("2014 Rashid Dep."), attached as Exh. 1 to Fisse Decl., at 38).

The defendants' counter-arguments are either obfuscatory, irrelevant, or both.  For example, the defendants insist that majority shareholder Bandar Abdullah Al-Saud[3] testified that "Soroof Trading no longer exists." (Def. Memo. at 4).  A glance at the deposition testimony reveals that he was actually explaining that Soroof Trading <u>became</u> Soroof International:

      Q: Did Soroof Trading Development Company eventually become Soroof International?

      A: That's correct.

      Q: And when did that take place?

      A: I would say almost in the same year because the world trade did not appeal because we were doing something other than trade only.

      Q: So that was the reason for the change in name?

      A: Yes, and to give it more broader, you know, business avenues rather than just trading and development.

      Q: Did anything other than the name change?  When you made the change in the name from Soroof Trading

---

[3] The documents submitted in connection with this motion spell the prince's name, variously, "Bander" and "Bandar."  Consistent with the majority of the documents translated from Arabic, I will use the spelling "Bandar" throughout.

Development Company to Soroof International, did anything
--

    A: No, the strategy stayed the same and objectives
stayed the same.

    Q: How was the name change completed?

    A: By requesting the change goes in the paperworks
and changing the CR, which is the commercial
registration.[4]

    Q: Does Soroof Trading Development Company still
exist?

    A: No.

(Excerpt from Deposition of Bandar Abdullah Al-Saud dated Dec. 11,
2012 ("Bandar Dep."), attached as Exh. 6 to Fisse Decl., at 17-18).

In addition, the defendants assert that the 2000 Resolution
and the 2001 Resolution effected "'a phase of restructuring whereby
Soroof International would become a holding company' with 'separate
business units hav(ing) their own separate organization chart,
separate financials and separate structure, management structure."
(Def. Memo. at 3 (quoting Excerpt from Deposition of Tahir Rashid
dated Feb. 25, 2013 ("Def. Excerpt 2013 Rashid Dep."), attached as
Exh. 7 to Fisse Decl., at 30)). However, Mr. Rashid's testimony is
clear: He did not begin at Soroof International until 2005, years
after the 2001 Resolution allegedly worked these significant
changes on the business; he discusses the planned changes in the
present tense, indicating that, even in 2012, such changes had not
yet been made (Def. Excerpt 2013 Rashid Dep. at 29-30); and he
confirms this in 2014, saying that "nothing of that nature has

---

[4] To the extent that Prince Bandar believed that the CR
changed, the records establish that he was mistaken.

happened" (2014 Rashid Dep. at 68).  Moreover, the evidence establishes that Soroof International is not now and never has been a holding company.  It is a single entity with separate business units:

> A: [T]here [are] no spin-offs.  Soroof International comes from Soroof Trading Development.  Soroof Trading Development had certain activities.  Soroof International, with the name change, inherited those activities.  At a later date, those activities were amended [] to capitalize on market opportunities.
>
> . . .
>
> Q:  Do the various business units of Soroof now have separate organizational charts?
>
> . . .
>
> A:  They do have their own organization chart in terms of identifying their management structure, but they do not have their own founders' agreement, article of associations or anything of that nature.  So they are considered as part of Soroof International and as a branch of Soroof International.
>
> . . .
>
> Q:  Do these different business units of Soroof have separate financial records?
>
> A:  No.  Soroof International has only one set of financial records and everything is combined in that.
>
> . . .
>
> A:  I want to clarify one thing . . . . .  [T]he different branches have their own commercial registration and that commercial registration number is allocated to the branches for their activity purposes.
>
> Now, the contracts which are made are made under Soroof international.  It is the choice of Soroof International management to select which business unit will take this particular agreement or contract.  So the contract is done with the main company, which is Soroof International.  But when they are doing their own trading activities within the kingdom, to justify or legalize their activity within Saudi Arabia, they need to have a

> branch sub-CR. . . . [T]hat is the CR allocated under the main commercial registration of Soroof International. It's not a separate formed company.

(2014 Rashid Dep. at 66, 69, 71, 72).

The defendants' focus on purported structural changes highlights a fundamental problem with the their arguments. The essential question here is whether Soroof International is the proper party to be asserting rights under the contract at issue. Any change of ownership or planned (or accomplished) expansion into different areas of commerce did not affect the parties' rights with respect to the Distribution Agreement. The contentions that the Distribution Agreement required the plaintiff to provide notice of "changes in its ownership, organization and business activities" (Def. Memo. at 6), that the purported changes would have disturbed GEFCS' prior approval of the company as an approved distributor (Def. Memo. at 6-7), or that "GEFCS would have viewed the incorporation of Soroof Trading into a larger holding company organization as a prohibited assignment in violation" of the agreement (Def. Memo. at 7) may be arguments that the plaintiff breached the Distribution Agreement, but they are irrelevant to the question at hand.

To the extent the defendants claim that they have been prejudiced in this litigation by the plaintiff's alleged failure to give notice of the 2000 and 2001 Partners Resolutions, their arguments are unsuccessful. The defendants had notice that the plaintiff was operating under the name Soroof International well before this litigation arose. (Pl. Memo. at 9-10; E-mails of Ayman

I. Nabhan and Frank Scovello dated June 22, 2004, attached as Exh. 12 to 1st Knights Decl.; E-mail of Ravi Menon dated Jan. 26, 2006, attached as part of Exh. 13 to 1st Knights Decl.; E-mail of Ravi Menon dated March 10, 2006, attached as Exh. 14 to 1st Knights Decl.). The objections raised here are largely based on provisions of the Distribution Agreement and therefore could have been explored during discovery. And, indeed, the defendants probed the name change during depositions prior to the fact discovery deadline. (Bandar Dep. at 17-18; Jackson Dep. at 7; Pl. Excerpt 2013 Rashid Dep. at 171).

The plaintiff has shown that the 2001 Partners Resolution effected a mere nominal change, and that Soroof International is the proper party to prosecute this case under the Distribution Agreement.

B. <u>Judicial Estoppel</u>

The defendants argue that the plaintiff should be judicially estopped from claiming that the Soroof business organization is a single entity because "[i]n 2009, Soroof filed an Original Petition in a Texas state court on behalf of two <u>different</u> Soroof business entities" -- Soroof International Company and Soroof International Limited -- and "[t]hese filing designations were repeated multiple times in both the Texas state court and the federal court to which the litigation was removed (and subsequently remanded)." (Def. Memo. at 9). This argument fails.

"[J]udicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2)

the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." DeRosa v. National Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 114 (2d Cir. 1990) ("Judicial estoppel . . . applies only if the party against whom the estoppel is claimed actually obtained a judgment as a result of the inconsistent position."); A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank AG, 926 F. Supp. 378, 389 (S.D.N.Y. 1996) ("Thus, in order to meet its burden of establishing that judicial estoppel is appropriate . . . [the plaintiff] must show that in the [former action the defendant] argued a position inconsistent with that which it takes here, and that this position was adopted by the [other] court in its judgment.").

The plaintiff's contention here is that, through a simple name-change, Soroof Trading became Soroof International Company. It is not clear to me how this is "clearly inconsistent" with the caption in the Texas case, which is irrelevant to whether Soroof International and Soroof Trading have an identity of interest under the Distribution Agreement.   As it turns out, it is not inconsistent: the caption erroneously named two entities because counsel for Soroof was unaware at the time the Texas case was filed that "Soroof's name as set forth in Arabic in its corporate records can be and has been expressed in different ways in English."

(Declaration of Haig V. Kalbian dated March 6, 2014 ("Kalbian Decl."), attached as Exh. B to Declaration of Aaron W. Knights dated March 6, 2014, ¶ 7; Pl. Memo. at 11-13).  Moreover, counsel affirms that, although the company prevailed on its motion for remand, the basis of the court's decision was "wholly unrelated to Soroof's name."  (Kalbian Decl., ¶ 5).  The defendants have not shown that the plaintiff has taken, or that any court has adopted, a position inconsistent from the one asserted here.

    C.   <u>Rule 17</u>

    The defendants argue that Rule 17(a) prohibits the amendment the plaintiff seeks.  I disagree for two reasons.

    First, I am not persuaded that Rule 17, which mandates that the "real party in interest" prosecute the action, Fed. R. Civ. P. 17(a)(1), is the proper rule under which to analyze this question. The rule's "modern function . . . is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."  Fed. R. Civ. P. 17, advisory committee's notes to 1966 Amendment.  Thus, it applies when two entities can claim an interest in the subject of an action -- for example, a bailor and bailee, a trustee and a beneficiary, or an executor (or administrator) and the subject estate.  <u>See</u> Fed. R. Civ. P. 17(a)(1)(A),(B),(D),(E).  Here, there are not two entities, there is only one: Soroof International.  The defendants have provided no reason to think that Rule 17 was meant to cover the circumstances of this case.

Second, were it to apply here, it would work in the plaintiff's favor. Rule 17(a)(3) prohibits a court from dismissing "an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Once this has been accomplished, the action "proceeds as if had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). The provision is "intended to insure against forfeiture and injustice." Fed. R. Civ. P. 17, advisory committee's notes to 1966 Amendment; see also Fed. R. Civ. P. 15, advisory committee's notes to 1966 Amendment (Rule 17(a) is designed "[t]o avoid forfeitures of just claims"). Thus, the Second Circuit has held that "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997).

Notwithstanding the defendants assertions (Def. Memo. at 14-15), the plaintiff's proposed amendment has absolutely no effect on the operative complaint's factual allegations: it merely changes the plaintiff's name in the caption. The defendants' insistence that new legal issues are "inject[ed]" into the case by the amendment is simply untrue. (Def. Memo. at 14). I have already found that Soroof International is not "a different organization

14

than the one that contracted with GEFCS," and, as a consequence of
that finding, it is clear that "Soroof International is authorized
by contract [and] law to advance these claims." (Def. Memo. at
14). "[W]hether the substitution of Soroof International as party
plaintiff [] relate[s] back to the original complaint filing date
for purposes of the statute of limitations" is easily answered: it
does. Fed. R. Civ. P. 17(a)(3); see also Advanced Magnetics, 106
F.3d at 19-20 (discussing the interplay between Rules 15(c) and
17(a)).

The defendants' claims of delay and prejudice fare no better.
They assert that they "objected" in their answer to the Second
Amended Complaint when they pleaded an affirmative defense that
Soroof Trading was "not a proper party to advance the claims."
(Def. Memo. at 18). Assuming that an affirmative defense that is
not pressed in any way (except in opposition to the motions to
amend the caption) is sufficient objection, but see Brohan ex rel.
Brohan v. Volkswagen Manufacturing Corp. of America, 97 F.R.D. 46,
49-50 (E.D.N.Y. 1983) (indicating that "reasonable time" is
measured not from interposition of affirmative defense but from
motion to dismiss on standing grounds); see also Abu Dhabi
Commercial Bank v. Morgan Stanley & Co., 888 F. Supp. 2d 478489
(S.D.N.Y. 2012) (measuring "reasonable time" from filing of motion
for summary judgment arguing plaintiff did not have standing), the
plaintiff waited approximately 11 months before attempting to
rectify the problem (Def. Memo. at 18). There is no need to decide
whether this is a reasonable time because, given the circumstances,

I would exercise my considerable discretion under the rule to allow amendment. The objection the defendants identify was a mere boilerplate affirmative defense. The proposed amendment only substitutes the correct name for the incorrect one included in the complaint. And the introduction of the error was an honest, if careless, mistake, given that (1) the name of the entity that entered into the Distribution Agreement was Soroof Trading and (2) the relevant documents were originally written in Arabic, which introduces translation and transliteration issues into the mix.[5] See Advanced Magnetics, 106 F.3d at 20 (noting that "the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party").

Finally, the amendment will not prejudice the defendants. They recite a litany of complaints, all based on the unfounded and unsupported notion that a "holding company" is now asserting claims against them. (Def. Memo. at 19). The evidence shows that there is no holding company; the company asserting claims against them is

---

[5] The defendants' interpretation of Mr. Rashid's testimony as revealing a nefarious purpose for the mistake is unconvincing. (Def. Memo. at 17). Asked "why the lawsuit that we're involved in today was filed on behalf of Soroof Trading as opposed to Soroof International,", Mr. Rashid repeatedly answered, "I don't know." (2014 Rashid Dep. at 149-50). The fact that he then speculated that "the original agreement was signed between Soroof Trading Development and Plug Power and GE," so "[h]ad we filed in the name of Soroof International you would have said the agreement is between . . . Soroof Trading Development and this" (2014 Rashid Dep. at 150) is not, as the defendants would have it, evidence that the plaintiff was attempting to gain a tactical advantage by misnaming itself. This is yet another instance of the defendants obscuring the clear meaning of the evidence presented here.

the same company that filed the original complaint in this action. They also allege that they will now have to investigate the effects of the 2001 Partners Resolution on the case. It is not clear why that is so, or why, if such investigation is necessary, it is caused by the plaintiff's proposed amendment. As noted above, the name change was known to the defendants before this litigation began. Even if they had no knowledge of that fact, the defendants could have explored during discovery whether they could defend against the claims or interpose a counterclaim by asserting that the plaintiff had breached the Distribution Agreement, which is the thrust of their arguments. Thus, there is no prejudice to the defendants. See, e.g. Berisford Metals Corp. v. Universal Maritime Service Corp., 653 F. Supp. 419, 421 (S.D.N.Y. 1986) (allowing Rule 17 motion to join parties because of lack of prejudice, notwithstanding plaintiff's delay). In sum, were Rule 17 the appropriate rule here, I would grant the motion to amend.

     D.   <u>Rules 15 and 16</u>

The defendants also argue that the motion should be denied under Rule 15 and Rule 16 of the Federal Rules of Civil Procedure. These arguments fail.

Under Rule 15(a)(2), after responsive pleadings have been filed, amendments are possible only with the consent of opposing party or leave of the court. While "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "'the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue

prejudice to the opposing party.'" Noqbou v. Mayrose, 400 F. App'x 617, 620 (2d Cir. 2010) (quoting Jin v. Metropolitan Life Insurance Co., 310 F.3d 84, 101 (2d Cir. 2002)); see also Foman v. Davis, 371 U.S. 178, 182 (1962).    Rule 16 governs scheduling orders and prohibits their modification except with the consent of the court and for good cause.    Fed. R. Civ. P. 16(b)(4).

Clearly, the plaintiff's motion to amend falls within the purview of Rule 15.    See Dorchester Financial Securities, Inc. v. Banco BRJ, S.A., No. 11 Civ. 1529, 2014 WL 684831, at *4 (S.D.N.Y. Feb. 21, 2014) (allowing plaintiff to amend caption under Rule 15 to reflect correct name of plaintiff).    I therefore have discretion to deny it for good reason, which, in this situation, could only be for delay and prejudice.    See Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." (internal quotation marks omitted)).    But, as discussed above, the defendants have identified no prejudice that they will suffer if this technical amendment is allowed.

The defendants argue that the plaintiff has not shown "good cause" under Rule 16(b) to allow amendment after the deadline included in the scheduling order.    See Soroof Trading, 283 F.R.D. at 147 ("[T]he lenient standard of Rule 15(a) is toughened by Rule 16's higher standard under which the party seeking to amend must also demonstrate good cause for an untimely amendment.").    In determining whether to modify a scheduling order to allow amendment

to a complaint, the plaintiff's diligence is certainly a consideration, but it is "not [] the only consideration." <u>Kassner v. 2nd Avenue Delicatessen, Inc.</u>, 496 F.3d 229, 244 (2d Cir. 2007). In light of all of the circumstances here, particularly the fact that, while the defendants will suffer no prejudice from allowing the amendment, disallowing it could result in forfeiture of the plaintiff's claims, there is good cause to modify the scheduling order to allow this amendment.[6] <u>See, e.g.</u>, <u>Digital Encoding Factory, LLC v. Iron Mountain Information Management, Inc.</u>, Civ. A. No. 06-1449, 2008 WL 3838014, at *2 (W.D. Pa. Aug. 13, 2008) (allowing amendment under Rule 16 where "[p]laintiffs have not acted unreasonably, and the prior mis-identification of the EDA Plaintiff has not caused any undue or unfair (if indeed any) delay in the identification of claims/issues or in the progress of discovery."); <u>cf.</u> <u>Dorchester Financial Securities</u>, 2014 WL 684831, at *4 (declining to "dismiss Plaintiff's claims simply because the case caption contains a misnomer" and quoting <u>Foman</u>, 371 U.S. at 181, for the proposition that it is "'entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided' on the basis of 'mere technicalities.'").

Finally, because there is no question that the defendants had timely notice of the claims alleged here, and the name-change does not prejudice them, the amendment relates back to the date of the

---

[6] The defendants also complain about outstanding discovery from the plaintiff. (Def. Memo. at 23-24). If these issues cannot be resolved in the required meet and confer process, the defendants may raise the dispute in a motion or letter. However, this motion to amend is not the proper forum to determine those issues.

filing of the original complaint.  Cf. Sokolski v. Trans Union Corp., 178 F.R.D. 393, 398 (E.D.N.Y. 1998) (allowing amendment adding class action to relate back where defendant had adequate notice of matters raised in amended pleading); Neufeld v. Neufeld, 910 F. Supp. 977, 985 (S.D.N.Y. 1996) (allowing amendment adding plaintiff to relate back where defendant had adequate notice of matters raised in amended pleading); 6A Charles Allen Wright, et al., Federal Practice and Procedure § 1501 (3d ed.) ("As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the actions, defendant's ability to protect itself will not be prejudicially affected . . . and defendant should not be permitted to invoke a limitations defense").

Conclusion

The motion to amend the Second Amended Complaint to correct the plaintiff's name (Docket no. 230) is granted.  The Third Amended Complaint shall be filed within one week of the date of this order.


                    SO ORDERED.


                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          April 8, 2014


                    20

Copies mailed this date:

James R. Lynch, Esq.
Lynch Daskal Emery, LLP
264 West 40th Street
New York, New York 10018

Haig V. Kalbian, Esq.
Mary M. Baker, Esq.
Aaron W. Knights, Esq.
Kalbian Hagerty LLP
888 17th Street, N.W., Suite 1000
Washington, DC 20006

Thomas E. Healy, Esq.
Pino & Associates, LLP
50 Main Street
White Plains, New York 10606

Michael D. Fisse, Esq.
Jan Van Steenis, Esq.
John Dubreuil, Esq.
Daigle, Fisse & Kessenich PLC
P.O. Box 5350
Covington, LA 70434

Abigail K. Hemani, Esq.
Goodwin Procter, LLP
620 Eighth Avenue
New York, New York 10018

Dahlia S. Fetouh, Esq.
Natalie F. Langlois, Esq.
Lisa Lo Gerfo, Esq.
Lauren S. Kupersmith, Esq.
Goodwin Procter LLP
53 State Street, Exchange Place
Boston, MA 02109